UNITED STATES DISTRICT COURT
FOR THE DISTCT OF COLUMBIA

_____
                              )
Ralph Nader, et al.,          )
                              )        Civ. Action 1:07-cv-2136 (RMU)
v.                            )        Motion to Dismiss
The Democratic National Committee )
                    et al. )
_____)

### DEFENDANTS DEMOCRATIC NATIONAL COMMITTEE'S, JACK CORRIGAN'S AND MARK BREWER'S MOTION TO DISMISS

Defendants Democratic National Committee, Jack Corrigan and Mark Brewer move to dismiss the first amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The malicious prosecution and abuse of process claims arise out of ballot access petition challenges for the 2004 presidential election. These claims are time barred because the applicable statute of limitations is one year. Requests to enjoin activities in connection with the 2004 election are moot and not redressable by this Court. The cost of defending the ballot access challenges – the alleged financial harm – was borne allegedly by Ralph Nader's campaign, and therefore, none of the Plaintiffs were financially harmed. Finally, merely filing ballot access petition challenges are neither malicious prosecutions nor an abuse of process.

Respectfully submitted,

February 4, 2008                    _____/s/_____
                                    Joseph E. Sandler,
                                    D.C. Bar No. 255919
                                    John Hardin Young
                                    D.C. Bar No. 190553
                                    Stephen E. Hershkowitz
                                    D.C. Bar No. 282947

                                    SANDLER, REIFF & YOUNG, P.C.
                                    50 E. Street, S.E., Suite 300
                                    Washington, D.C. 20003

(202) 479-1111
(202) 479-1115 (facsimile)
young@sandlerreiff.com

After February 8, 2008
300 M Street, S.E., Suite 1102
Washington, D.C. 20003

Attorneys for Defendants
The Democratic National Committee
Jack Corrigan
Mark Brewer

UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

_____
                                                    )
Ralph Nader, et al.,                          )
                                                    )        Civ. Action 1:07-cv-2136 (RMU)
v.                                                 )        Memorandum In Support of
                                                    )        Motion to Dismiss
The Democratic National Committee )
                                        et al. )
_____)

**DEFENDANTS DEMOCRATIC NATIONAL COMMITTEE'S, JACK CORRIGAN'S
AND MARK BREWER'S MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS**

Joseph E. Sandler,
D.C. Bar No. 255919
John Hardin Young
D.C. Bar No. 190553
Stephen E. Hershkowitz
D.C. Bar No. 282947

SANDLER, REIFF & YOUNG, P.C.
50 E. Street, S.E., Suite 300
Washington, D.C. 20003
(202) 479-1111
(202) 479-1115 (facsimile)
young@sandlerreiff.com

After February 8, 2008
300 M Street, S.E., Suite 1102
Washington, D.C. 20003

Attorneys for Defendants
The Democratic National Committee
Jack Corrigan
Mark Brewer

# TABLE OF CONTENTS

INTRODUCTION                                                                          1

I.  PRIOR PROCEEDINGS                                                                 2

II. PLAINTIFFS' ALLEGATIONS                                                           3

III.  THIS CASE SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b).                7

A.  THE ONE YEAR STATUTE OF LIMITATIONS BARS THE CLAIMS.                              8

    1.  D.C. Code § 12-301(4) bars the abuse of prosecution and malicious prosecution
        claims (Count II).                                                     9

    2.  D.C. Code § 12-301(4) bars the conspiracy claims (Count I).              11

B.  THE SAME STATUTES OF LIMITATIONS BARRING THE UNDERLYING
    CLAIMS ALSO BARS THE CONSPIRACY CLAIM (COUNT I).                                11

C.  PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IS MOOT.                                11

D.  PLAINTIFFS DO NOT HAVE STANDING TO LITIGATE THEIR CLAIMS.                         13

    1. Plaintiffs' have not alleged a legally cognizable harm                   14

        a.  Voter plaintiffs have alleged only a generalized grievance.          14

        b.  Plaintiffs have not alleged that they were financially harmed.       16

        c.  Plaintiffs were not harmed by the administrative complaints filed with the FEC.   17

    2.  Plaintiffs alleged harm was not caused by the Defendants.               17

        a. The voter Plaintiffs' alleged harm was not caused by Defendants.     18

        b. Plaintiff Nader's loss of $100,000 was not caused by Defendants.     19

    3. Plaintiffs' alleged harms are not redressable.                           19

E.  PLAINTIFFS HAVE NOT ALLEGED AN ABUSE OF PROCESS OR A
    CONSPIRACY OF AN ABUSE OF PROCESS (COUNTS I AND II).                            20

F. PLAINTIFFS HAVE FAILED TO ALLEGE MALICIOUS PROSECUTION OR A
   CONSPIRACY OF A MALICIOUS PROSECUTION (COUNTS I AND II).          21

   1.  Favorable termination and probable cause.                        22

   2. The plaintiffs have not alleged malice.                           22

   3.  Plaintiffs have not alleged a special injury.                    23

G. PLAINTIFFS HAVE FAILED TO ALLEGE A MALICIOUS PROSECUTION OR
   CONSPIRACY TO COMMIT A MALICIOUS PROSECUTION FOR THE
   ADMINISTRATIVE COMPLAINTS FILED WITH THE FEC.                     24

H. PLAINTIFFS HAVE FAILED TO ALLEGE A CONSPIRACY (COUNT I).          25

CONCLUSION                                                           26

# TABLE OF AUTHORITIES

**CASES**

*Adler v. Fenton*, 65 U.S. 407 (1861)                                                    26

*Ammerman v. Newman,* 384 A. 2d 637 (D.C. 1978)                           22, 23

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)                                     15

*Babb v. Superior Court of Sonoma County*, 479 P. 2d 379 (Cal. 1971)    21

*Beck v. Prupis,* 529 U.S. 494 (2000)                                                   26

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)                          8, 16

*Best v. United States*, 2007 U.S. Dist. LEXIS 88028 (D.D.C. 2007)      7, 16

*Blanchard v. Employers Liab. Assurance Corp*, 197 So. 2d 386 (La. Ct App 1967)    21

*Blankenship v. Blackwell*, 817 N.E. 2d 382 (Ohio 2004)                      18

*Boschette v. Bach*, 914 F. Supp. 769 (D.P.R. 1995)                            25

*Bown v. Hamilton*, 601 A.2d 1074 (D.C. 1992)                                   20

*Brady v. Livingood*, 360 F. Supp. 2d 94 (D.D.C. 2004)                        25

*Brown v. Carr*, 503 A.2d 1241 (D.C. 1986)                                         22

*Dant v. District of Columbia*, 829 F.2d 69 (D.C. Cir. 1987)                 10

*Dellums v. Powell,* 566 F.2d 167 (D.C. Cir. 1977)                            22, 25

*Dennis v. Sparks,* 449 U.S. 24 (1980)                                                 3

*Earp v. Detroit*, 167 N.W.2d 841 (1969)                                             26

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp*., 749 A.2d 724 (D.C. 2000)    25

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998)                       14

*Fulani v. McAuliffe*, 2005 U.S. Dist. LEXIS 20400 (S.D.N.Y. 2005)      3

*Griva v. Davison*, 637 A.2d 830 (D.C. 1994)                                       25

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)    26

*Hancock v. HomEq Servicing Corp.*, 2007 U.S. Dist. LEXIS 31051 (D.D.C. 2007)    11, 26

*Hubbard v. Beatty & Hyde Inc*, 178 N.E.2d 485 (Mass. 1961)    21

*In re Navy Chaplaincy*, 516 F. Supp. 2d 119 (D.D.C. 2007)    14

*In re Nomination Paper of Ralph Nader*, 865 A.2d 8 (Pa. Commw. Ct. 2004)    18

*Kadri v. Bureau of Prisons*, 2006 U.S. Dist. LEXIS 12963 (D.D.C. 2006)    12, 13

*Kauffman v. Sherman,* 426 N.W.2d 819 (Mich. Ct App.1988)    24

*Larsen v. United States Navy*, 486 F. Supp. 2d 11 (D.D.C. 2007)    12

*Leamon & Co v. Victory Iron Works Inc*, 411 So. 2d 666 (La Ct App. 1982)    21

*Lee v. Dunbar*, 37 A. 2d 178 (D.C. 1944)    22

*Lesperance v. North American Aviation, Inc.*, 31 Cal. Rpt 873 (Cal. Ct. App. 1963)    26

*McConnell v. Federal Election Comm'n*, 540 U.S. 93 (2003)    19

*Melvin v. Pence*, 130 F.2d 423 (D.C. Cir. 1942)    24

*Morfessis v. Baum,* 281 F.2d 938 (D.C. Cir. 1960)    10

*Nader v. Brewer*, 2006 U.S. Dist. LEXIS 38500 (D. Ariz. 2006)    18

*Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004)    18

*Nolan v. Allstate Home Equipment Co.,* 149 A.2d 426 (D.C. 1959)    22, 23

*Parker v. The Grand Hyatt Hotel*, 124 F. Supp. 2d 79 (D.D.C. 2000)    9

*Peckham v. Union Fin. Co.*, 48 F.2d 1016 (D.C. 1931)    23

*Perot v. Federal Election Comm'n*, 97 F. 3d 553 (D.C. Cir. 1996)    25

*Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162 (D.D.C. 2006)    9, 20

*Rothenberg v. Ralph D. Kaiser Co.*, 173 B.R. 4 (Bankr. D.D.C. 1994)    10

*Royster v. Baker*, 365 S.W.2d 496 (Mo. 1963)    26

*Rynn v. Jaffe*, 457 F. Supp. 2d 22 (D.D.C. 2006) — 9, 10

*Saunders v. Nemati*, 580 A.2d 660 (D.C. 1990) — 9

*Schroeder v. De Bertolo,* 912 F. Supp. 23 (D.P.R. 1996) — 25

*Scott v. District of Columbia*, 101 F.3d 748 (D.D.C. 1997) — 20

*SEC v. One Or More Unknown Traders in the Common Stock of Certain Issuers*, 2008 U.S. Dist. LEXIS 2330 (D.D.C. 2008) — 8

*Shirk v. Garrow*, 505 F. Supp. 2d 169 (D.D.C. 2007) — 8

*Simpson v. District of Columbia Metropolitan Police Dept.*, 789 F. Supp. 5 (D.D.C. 1992) — 10

*Smith v. Wade,* 461 U.S. 30 (1983) — 23

*Storer v. Brown*, 415 U.S. 724 (1974) — 15

*Tri-State Hospital Supply Corp. v. U.S.*, 2007 U.S. Dist. Lexis 48609 (D.D.C. 2007) — 24

*Tyler v. Cent. Charge Serv.,* 444 A. 2d 965 (D.C. 1982) — 22

*U.S. House of Representatives v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76 (D.D.C. 1998) — 17

*United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp 2d. 158, (D.D.C. 2007) — 8

*Waldon v. Covington*, 415 A.2d 1070 (D.C. 1980) — 25

*Weisman v. Middleton,* 390 A. 2d 996 (D.C. 1978) — 22, 24

*Wetmore v. Mellinger*, 18 N.W. 870 (Iowa 1884) — 23

*Whelan v. Abell*, 48 F. 3d 1247 (D.C. Cir. 1995) — 15

*Young v. First State Bank*, 628 P. 2d 707 (Okla. 1981) — 21

*Zandford v. NASD,* 19 F. Supp. 2d 4 (D.D.C. 1998) — 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1)                                                7

Fed. R. Civ. P. 12(b)(6)                                                7

Fed. R. Evid. 201                                                       6

Fed. R. Evid. 803(8)                                                    6

Fed. R. Evid. 803(10)                                                   6

D.C. Code § 12-301(4)                                              9, 10, 11

D.C. Code § 12-301(8)                                              9, 10, 11

2 U.S.C. § 437g                                                        25

1 Am. Jur. 2d *Abuse of Process* § 3                                   10

52 Am. Jur. 2d. *Malicious Prosecution* § 46                           23

54 C.J.S., *Malicious Prosecution*, § 3                                21

*Federal Elections 2004: Election Results for the U.S. President,
     the U.S. Senate, and the U.S. House of Representatives*,
     http://www.fec.gov/pubrec/fe2004/federalelections2004.shtml       15

*Restatement (Second) of Torts* § 682 (1977)                          20

www.FEC.gov                                                          5, 17

UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

_____
                                                    )
Ralph Nader, et al.,                                )
                                                    )          Civ. Action No. 07-2136 (RMU)
v.                                                  )          Memorandum In Support of
                                                    )          Motion to Dismiss
The Democratic National Committee )
                                   et al. )
_____)

**DEFENDANTS DEMOCRATIC NATIONAL COMMITTEE'S, JACK CORRIGAN'S
AND MARK BREWER'S MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs' Amended Complaint alleges that in 2004 the Defendants conspired with

dozens of citizens and their attorneys in 17 states to file challenges to Ralph Nader's petitions to

gain access to those states' presidential ballots.  Even though no state court found any legal or

ethical violation in connection with those challenges, Plaintiffs allege that merely filing those

ballot access challenges constitute malicious prosecution and abuse of process.

Defendants Democratic National Committee, Jack Corrigan and Mark Brewer move to

dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The claims are time

barred because the applicable statute of limitations for malicious prosecution and abuse of

process is one year.  Requests to enjoin activities in connection with the 2004 election are moot

and not redressable by this Court.  The cost of defending the ballot access challenges – the

alleged financial harm – was borne allegedly by Ralph Nader's campaign, and therefore, none of

the Plaintiffs were financially harmed.  Finally, merely filing ballot access challenges are neither

malicious prosecutions nor an abuse of process.  Accordingly, for all of these reasons the complaint should be dismissed.

## I.  PRIOR PROCEEDINGS

On October 30, 2007 the Plaintiffs filed a complaint in the Superior Court of the District of Columbia against the Democratic National Committee, Jack Corrigan, Mark Brewer and others alleged to be co-conspirators. The Plaintiffs alleged that the Defendants and non-party co-conspirators engaged in malicious prosecution, abuse of process, violations of 42 U.S.C. § 1983, and conspiracy to engage in such violative activity. On October 31, 2007, Plaintiffs filed an identical complaint in the United States District Court for the Eastern District of Virginia. *Nader, v. McAuliffe*, No. 1:07cv1101.  On November 1, 2007, Plaintiffs filed an "Amended Complaint" in the Eastern District attempting to correct various style errors caused by filing the Superior Court complaint in another forum.  On December 10, 2007, the Superior Court case was removed to this Court.  On January 23, 2008, the Plaintiffs amended the Complaint by removing the counts alleging violations of and conspiracy to violate 43 U.S.C § 1983, Counts III and IV. The Plaintiffs also moved to remand the case back to the Superior Court of the District of Columbia because the complaint no longer alleged a violation of any Federal claims. Today, the Defendants filed an opposition to that motion.  On January 30, 2008, the Plaintiffs filed a motion to amend their complaint in the Eastern District to remove the state tort claims and add some of the Defendants in the Complaint herein.  On January 31, 2008, the Defendants in the Eastern District filed motions to dismiss that complaint (or, in the alternative, to transfer that case to this Court in the interest of judicial economy), and will oppose the motion to add defendants.

All of the complaints set forth identical factual allegations (except for the proposed second amended complaint in the Eastern District) and requests for relief.  All the complaints

allege a conspiracy to prevent Plaintiffs Ralph Nader and Peter Camejo from appearing on

various state ballots as candidates for President and Vice President in 2004, respectively, and to

cause them financial injury by requiring their campaign to expand resources to defend their right

to be on those ballots.  Six other voter Plaintiffs claim they were harmed because state officials

or courts prevented them from voting for Plaintiff Nader when they found that his campaign had

not submitted adequate petitions to place him on the ballot. The defendants in the District of

Columbia not named in the Eastern District complaint are described as non-defendant co-

conspirators in the Eastern District complaint.  Both complaints originally alleged the same

counts: conspiracy to commit abuse of process and malicious prosecution, abuse of process and

malicious prosecution, conspiracy to violate 43 U.S.C § 1983, and violations of 43 U.S.C. §

1983.  Both complaints seek identical relief: compensatory damages, punitive damages,

injunctions, attorney's fees and court costs.

## II. PLAINTIFFS' ALLEGATIONS

This case and the Eastern District case are the most recent in a long line of cases filed by

Plaintiff Ralph Nader or his political supporters complaining about unfair treatment in the 2000

and 2004 Presidential elections.[1]  Some cases were filed directly against governmental agencies

---

[1] For example, essentially the same allegations have already been litigated and dismissed, albeit
brought by a different Nader supporter in a different court.  In *Fulani v. McAuliffe*, 2005 U.S.
Dist. LEXIS 20400 (S.D.N.Y. 2005) the plaintiffs alleged that in 2004 Terry McAuliffe, the
chairman of the Democratic National Committee and others "conspired to keep Ralph Nader
('Nader') and Peter Camejo ('Camejo') off of the ballot in states across the country as
independent candidates for the offices of President and Vice President of the United States" in
the 2004 election in violation of 42 U.S.C. §§ 1983 and 1985. *Id*. at *3.  *Fulani* at *8-9.
"Plaintiffs seem to argue that the various lawsuits initiated to challenge the Nader/Camejo
nominating petitions deprived Plaintiffs of their voting and equal protection rights. However,
'merely resorting to the courts and being on the winning side of a lawsuit does not make a party'
responsible for depriving a plaintiff of his rights." *Id.* at *11 n.4 (citing *Dennis v. Sparks,* 449
U.S. 24, 28 (1980).  "Consequently, to the extent that Plaintiffs accuse Defendants of using State
election law to impede the Nader/Camejo candidacy and violate Plaintiffs' equal protection rights

alleging that the agencies and their regulations unfairly favored the major party candidates, and others, like this one, were filed against a major party candidate or his supporters claiming that they unfairly exploited the governmental agencies or their regulations.  This case is yet another example of the political contests between major party, and minor party or independent candidates being fought in the courts instead of the political arena.  In essence, the Plaintiffs allege that the Defendants engaged in a so-called political "dirty trick" by challenging Plaintiff Nader's nominating petitions in 18 state agencies or courts.  Significantly, Plaintiffs cite no law that has been broken or a finding of a procedural violation by a court.  Instead, they allege that by merely asking the appropriate state official in 18 states to review nominating petitions, the Defendants have committed an abuse of process, engaged in malicious prosecution and violated the Constitution.  Regardless of the Plaintiffs' views of proper campaign practices, the Plaintiffs cannot demonstrate that this Court has the ability to undo the 2004 election.  They have not alleged a financial injury to themselves – only a cost of litigation paid by the Nader-Camejo campaign, entities which are not a party to this action.  Specifically, as applied to Counts III and IV, the Plaintiffs have not described a state actor or anyone acting under color of law responsible for a violation of the Constitution.  And even if they could prove violative conduct, the two-year statute of limitations applicable to their claims has expired.

The Plaintiffs allege Plaintiff Nader's Democratic political opponents believed that there were many voters who would have voted for Democratic Presidential candidate Kerry if Plaintiff Nader did not run.  Allegedly, Defendant McAuliffe conspired with other Kerry supporters opposed to Nader's campaign by, among other things, challenging his petitions to obtain ballot access in 18 states (the "ballot access cases") and filing five administrative complaints with the

---

or right to vote (Compl., PP29-30), that claim fails as a matter of law."  *Id.* at *11.

Federal Election Commission ("FEC").  Plaintiffs allege that this political opposition satisfies the legal definition of malice.  Because filing these challenges involved many individuals, Plaintiffs also allege the existence of a conspiracy.  The alleged unifying purpose among the conspirators is a common interest to increase the number of votes cast for Kerry.  As demonstrated by the public statements described and the public nature of the ballot access complaints, there was nothing secret about Kerry supporters' plans or purpose.  Not surprisingly, the Nader-Camejo campaign – not the Plaintiffs -- expended resources to respond to these challenges.

Plaintiffs Nader and Camejo registered two national campaign committees with the Federal Election Commission ("FEC") pursuant to 2 U.S.C. § 431(6): Nader For President 2004, the principal campaign committee (FEC registration number C00395038), and Nader For President General Election, an authorized campaign committee (FEC registration number C00397216).  *See* FEC filings at www.FEC.gov.  Both committees were authorized to accept contributions and make expenditures on behalf of the Nader-Camejo 2004 campaign for President and are headquartered in the District of Columbia.  *Id*.  The Defendants assume that the Plaintiffs are referring to one or both of these committees when they use the term "Nader-Camejo campaign" and the "campaign".  *E.g.* ¶¶ 230, 231, and 234.

Specifically, Plaintiffs allege that Defendants and others opposed Plaintiffs Nader's and Camejo's election so that they would not siphon votes from Defendant Kerry's campaign for President (¶¶ 45-54) by filing five complaints against the Nader-Camejo campaign with the FEC (¶ 55), and 24 state agency or court complaints alleging that the Nader-Camejo's campaigns' petitions to gain access to those states' ballots were inadequate ("ballot access cases") (¶¶ 56, 72-232).  The six voter Plaintiffs are voters from the states of Arizona, Ohio and Oregon (¶¶ 17-22).  Plaintiffs allege that Defendants and others filed the ballot access cases and FEC complaints for

the following purposes: (1) "Defendants and co-conspirators unlawfully conspired to cause financial injury of the damages to the Nader-Camejo 2004 presidential campaign;" (2) "Defendants and co-conspirators unlawfully conspired to cause financial injury and other damages to Mr. Nader and Mr. Camejo personally;" (3) "Defendants and co-conspirators unlawfully conspired with state actors and acted under color of state law to violate Nader-Camejo's constitutional rights by preventing them appearing on the ballot as candidates in the 2004 presidential election;" and (4) "Defendants and co-conspirators unlawfully conspired with state actors and acted under color of state law to violate Plaintiffs voters' constitutional rights, and those of others similar situated, by denying voters the free choice of candidates in the 2004 presidential election." (¶ 66)  The Plaintiffs allege that the filing of the state ballot access cases and the FEC complaints constituted a conspiracy to commit abuse of process and malicious prosecution (¶¶ 233-237), and  abuse of process and malicious prosecution in 18 states and the district of Columbia (¶¶ 238-242).

The only relevant allegations are: 18 ballot access cases and five administrative FEC complaints were filed that resulted in Arizona, Ohio, Oregon and other states denying ballot access.  All of the ballot access cases' litigation and the FEC administrative action were completed more than two years ago.  *See* Attached Chart.[2] The Complaint alleges that the Nader-Camejo campaign, not a Plaintiff herein, paid for and its staff participated in the defense of the challenges described above (¶ 228).  Although Plaintiff Nader alleges that he loaned $100,000 to his campaign, speculates that those funds were used "to cover legal bills, staff salaries and operating expenses," and the campaign has not repaid the loan (*id*.), he does not allege that either his loan or the failure to re-pay the loan was caused by a conspirator.  Plaintiffs allege that they

---

[2] This Court may take judicial notice of court records, Fed. R. Evid. 201, and other government records, Fed. R. Evid. 803(8) and (10).

were injured because Plaintiffs Nader and Camejo were denied ballot access in their home states

(¶ 231), but they do not allege that any conspirator was responsible for submitting inadequate

ballot petitions or otherwise prevented them from voting for Plaintiff Nader.

### III. THIS CASE SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b).

This Court is well aware of the legal standard for a motion to dismiss pursuant to Rule

12(b)(1) or 12(b)(6).

> Federal courts are courts of limited jurisdiction. They therefore may only hear cases
> entrusted to them by a grant of power contained in either the Constitution or in an act of
> Congress. …
> Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter
> jurisdiction. In determining whether to grant a motion to dismiss for lack of subject
> matter jurisdiction, the Court may either consider the complaint alone, or "the complaint
> supplemented by undisputed facts evidenced in the record, or the complaint
> supplemented by undisputed facts plus the court's resolution of disputed facts." The Court
> must accept all of the factual allegations in the complaint as true, but may, in appropriate
> cases, consider certain materials outside the pleadings. While the complaint is to be
> construed liberally, the Court need not accept factual inferences drawn by plaintiff if
> those inferences are not supported by facts alleged in the complaint. Nor must the Court
> accept plaintiff's legal conclusions."

*Best v. United States*, 2007 U.S. Dist. LEXIS 88028, *4-5 (D.D.C. 2007) (citations

omitted).

> A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. The
> complaint need only set forth a short and plain statement of the claim, giving the
> defendant fair notice of the claim and the grounds upon which it rests. "Such
> simplified notice pleading is made possible by the liberal opportunity for
> discovery and the other pre-trial procedures established by the Rules to disclose
> more precisely the basis of both claim and defense to define more narrowly the
> disputed facts and issues." It is not necessary for the plaintiff to plead all elements
> of his prima facie case in the complaint, or "plead law or match facts to every
> element of a legal theory."

> Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth
> "any set of facts consistent with the allegations." While these facts must "possess
> enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does
> not need detailed factual allegations." In resolving a Rule 12(b)(6) motion, the
> court must treat the complaint's factual allegations--including mixed questions of
> law and fact--as true and draw all reasonable inferences therefrom in the plaintiff's

favor. While many well-pleaded complaints are conclusory, the court need not
accept as true inferences unsupported by facts set out in the complaint or legal
conclusions cast as factual allegations.

*SEC v. One Or More Unknown Traders in the Common Stock of Certain Issuers*, 2008 U.S. Dist.

LEXIS 2330, *5-8 (D.D.C. 2008) (internal citations omitted); *Shirk v. Garrow*, 505 F. Supp. 2d

169, 171-172 (D.D.C. 2007) (same).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed
factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment]
to relief" requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do (on a motion to dismiss, courts "are not bound to
accept as true a legal conclusion couched as a factual allegation"). Factual allegations
must be enough to raise a right to relief above the speculative level,  ("[T]he pleading
must contain something more . . . than . . . a statement of facts that merely creates a
suspicion [of] a legally cognizable right of action"), on the assumption that all the
allegations in the complaint are true (even if doubtful in fact),

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (U.S. 2007) (internal citations omitted).

## A.  THE ONE YEAR STATUTE OF LIMITATIONS BARS THE CLAIMS.

This Court is also well aware of the legal standard applicable to the statute of limitations.

Statutes of limitations "represent a pervasive legislative judgment that it is unjust to
fail to put the adversary on notice to defend within a specified period of time and
that 'the right to be free of stale claims in time comes to prevail over the right to
prosecute them.'" Statutes of limitations are designed to afford[ ] plaintiffs what
the legislature deems a reasonable time to present their claims [while
simultaneously] protecting defendants and the courts from having to deal with
cases in which the search for truth may be seriously impaired by the loss of
evidence, whether by death or disappearance of witnesses, fading memories,
disappearance of documents, or otherwise. Accordingly, courts "are not free to
construe [a statute of limitations] so as to defeat its obvious purpose, which is to
encourage the prompt presentation of claims."

*United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp 2d. 158, *22, 2007 U.S. Dist. LEXIS

82717, *22 (D.D.C. 2007) (internal citations omitted).

1. **D.C. Code § 12-301(4) bars the abuse of prosecution and malicious prosecution claims (Count II).**

The District of Columbia, does not have a specific statute of limitations for malicious prosecution. Therefore, it is subject to the one-year statute of limitations. D.C. Code § 12-301(4).[3] "According to D.C. Code § 12-301(4), malicious prosecution falls in the category of torts specified as having a one-year statute of limitations." *Parker* [*v. The Grand Hyatt Hotel*], 124 F. Supp. 2d [79 87 (D.D.C. 2000)]; *see* D.C. Code § 12-301(4) (2001) (listing malicious prosecution among the torts with a one-year statute of limitations)." *Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162, 174 (D.D.C. 2006); *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 24 (D.D.C. 2006) (same).

Like the tort of malicious prosecution, the District of Columbia does not have a specific statue of limitations for abuse of process. "It is well settled that in a determination of the applicable statute of limitations, the plaintiff's characterization of the claim is not controlling. 'The action thus pleaded cannot . . . be removed from its place in the law of torts by calling what occurred also an abuse of process.'" *Saunders v. Nemati*, 580 A.2d 660, 662 (D.C. 1990) (internal citations omitted).

> Actions "for which a limitation is not otherwise specifically prescribed" are time-barred after three years. D.C. Code § 12-301(8). Residual tort claims, however, are subject to subsection 4's one-year limitation if they are sufficiently "intertwined" with subsection 4 claims.

---

[3] D.C Code § 12-301. Limitation of time for bringing actions

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment -- 1 year;
>
> (8) for which a limitation is not otherwise specially prescribed -- 3 years

> The only remaining tort claim against Officer Jaffe is abuse of process, which generally falls within subsection 8. *See Rothenberg v. Ralph D. Kaiser Co*., 173 B.R. 4, 11 n. 5 (Bankr. D.D.C. 1994). That plaintiff labels the claim 'abuse of process' does not prevent the Court from finding that the claim actually alleges malicious prosecution. *Morfessis v. Baum,* 108 U.S. App. D.C. 303, 281 F.2d 938, 940 (D.C. Cir. 1960); *Zandford v. NASD,* 19 F. Supp. 2d 4, 8 (D.D.C. 1998). A crucial distinction between the two torts is whether the defendant has caused an act to issue with or without probable cause. *Zandford*, 19 F. Supp. 2d at 7 (citing 1 Am. Jur. 2d *Abuse of Process* § 3, at 412 (1994)). Because plaintiffs claim that defendants acted "without probable cause" (Compl. P P 14, 24, 33), their "abuse of process" claims against Officer Jaffe actually concern malicious prosecution. Therefore, plaintiffs' abuse of process claims are time-barred under D.C. Code § 12-301(4).

*Rynn*, 457 F. Supp. 2d at 24-25.

The plaintiffs here, like the plaintiff in *Rynn,* allege that the Defendants bought legal actions without probable cause.  See. e.g., ¶ 1 (Defendants "would launch a massive, nationwide unlawful assault on [Plaintiff Nader's] candidacy, using unfounded litigation"); ¶5 (defendants and others pursued "their unfounded and abusive litigation"); ¶¶ 235, 240, 246, 252 (all repeating: "Defendants' purpose was to use unfounded and abusive litigation."). Thus, the plaintiffs' abusive process claims are intertwined with and actually concern malicious prosecution.  *See Rynn*, 457 F. Supp. 2d at 24-25.  Although abuse of process "is not expressly addressed in Section 12-301(4)," "[t]he Court notes that abuse of process is related to the tort of malicious prosecution, *Dant v. District of Columbia*, 264 App. D.C. 284, 829 F.2d 69, 76 (D.C. Cir. 1987), which is expressly provided for by Section 12-301(4), and that the one-year limitation therefore likely does apply to it."  *Simpson v. District of Columbia Metropolitan Police Dept.*, 789 F. Supp. 5, *7 (D.D.C. 1992).

Accordingly, the applicable statute of limitations period is the malicious prosecution one-year period in D.C. Code § 12-301(4).

10

Even if these claims were not intertwined, D.C. Code 12-301(8) the three-year residual statute of limitations would bar the abuse of prosecution claim. As described above, all of the state litigation concluded before October 30, 2004, more than three years before this case was filed. (As described below, the FEC complaints did not involve litigation and are not subject to malicious prosecution or abuse of process).

Accordingly, the malicious prosecution and abuse of process claims are barred by the statute of limitations.

### 2. D.C. Code § 12-301(4) bars the conspiracy claims (Count I).

"Because civil conspiracy depends on an actionable underlying tort, the statute of limitations for plaintiffs' conspiracy claim is 'established by the statute of limitations governing the underlying tort,' and begins to run when the plaintiff is on notice of the underlying injury." *Hancock v. HomEq Servicing Corp.*, 2007 U.S. Dist. LEXIS 31051, *28 (D.D.C. 2007) (internal citation omitted). Like the underlying torts, the conspiracy claims are more than a year old and are time barred.

### B. THE SAME STATUTES OF LIMITATIONS BARRING THE UNDERLYING CLAIMS ALSO BARS THE CONSPIRACY CLAIM (COUNTS I).

"In the District of Columbia, 'there is no recognized independent tort action for civil conspiracy . . . .'. Rather, "'it is a means for establishing vicarious liability for the underlying tort.' As a result, 'civil conspiracy depends on performance of some underlying tortious act,'" which establishes the appropriate statue of limitations. *Hancock*, 2007 U.S. Dist. LEXIS 31051 at *27 (citations omitted). Therefore, as described above, Count I, conspiracy to commit abuse of process and malicious prosecution, is subject to D.C. Code § 12-301(4), and is time barred because the underlying claims occurred more than a year before this case was filed.

## C. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IS MOOT.

This Court is also well aware of the mootness doctrine.

Under Rule 12(b)(1), a party may move to dismiss a case on grounds of mootness. Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues. "The doctrine of mootness is a logical corollary of the case or controversy requirement[.]" In cases where challenged conduct ceases and "there is no reasonable expectation that the wrong will be repeated, . . . it becomes impossible for the court to grant any effectual whatever to the prevailing party, and any opinion as to the legality of the challenged action would be advisory." Accordingly, a court may not rule on the merits of a case in which the claim for relief is moot.

Courts must evaluate mootness "through all stages" of the litigation in order to ensure that a live controversy remains. As a result, "even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."

A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." An intervening event may render a claim moot if (1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations. A case is not moot, however, so long as any single claim for relief remains viable, as the remaining live issues satisfy the case-or-controversy requirement. The burden of establishing mootness rests on the party raising the issue, and it is a heavy burden.

*Kadri v. Bureau of Prisons*, 2006 U.S. Dist. LEXIS 12963, *3-5 (D.D.C. 2006) (internal citations omitted); *Larsen v. United States Navy*, 486 F. Supp. 2d 11, 23-24 (D.D.C. 2007)(same).

Plaintiffs' request for injunctive relief (all Counts) to enjoin the Defendants from filing challenges to Plaintiffs Nader's and Camejo's 2004 ballot petitions is moot because the 2004 election has concluded. *See* ¶ 66 iii ("to violate Nader-Camejo's constitutional rights by preventing them from appearing on the ballot as candidates in the 2004 presidential election"); ¶ 66 iv ("to violate Plaintiff-voters' constitutional rights, and those of others similarly situated, by denying voters their free choice of candidates in the 2004 presidential election"). It is not

possible for Defendants to file ballot access complaints to keep Plaintiffs Nader and Camejo off

the 2004 state ballots.  Thus, "there is no reasonable expectation that the wrong will be repeated"

and "interim relief or events have completely and irrevocably eradicated the effects of the

alleged violations."  *Kadri*, 2006 U.S. Dist. LEXIS 12963 at *4, 5. A decision or an injunction

would be merely "advisory."  *Id.* at *5.

Even if, *arguendo*, Plaintiff Nader were to run for President in the future, and a

Defendant filled a ballot access challenge before that election, it would be remote and

speculative to assume the alleged events would recur.  One would have to assume that Plaintiff

Nader would petition to obtain access to the same 18 state ballots, those petitions would be

susceptible to challenge, and Defendants would conspire with dozens of others, and they would

challenge those petitions  without cause.  And even if one made all of those assumptions, there

would be ample time to file a new complaint to be heard simultaneously with the ballot access

challenges, which by definition occur before an election.  Therefore, the capable of repetition yet

evading review exception to the mootness doctrine is not applicable to Plaintiffs' claims.

## D. PLAINTIFFS DO NOT HAVE STANDING TO LITIGATE THEIR CLAIMS.

This Court is also well aware of the plaintiffs standing requirements.

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction."

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. The extent of the plaintiff's burden varies according to the procedural posture of the case. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true."

To demonstrate standing, a plaintiff must satisfy a three-pronged test. First, the plaintiff must have suffered an injury-in-fact, defined as a harm that is concrete

and actual or imminent, not conjectural or hypothetical. Second, the injury must be fairly traceable to the governmental conduct alleged. Finally, it must be likely that the requested relief will redress the alleged injury. Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]."

*In re Navy Chaplaincy*, 516 F. Supp. 2d 119, 123-24 (D.D.C. 2007) (internal citations omitted).

### 1. Plaintiffs' have not alleged a legally cognizable harm

#### a. Voter plaintiffs have alleged only a generalized grievance.

The Supreme Court considered voter standing in *FEC v. Akins*, 524 U.S. 11 (1998) and explained that a generalized grievance "shared in substantially equal measure by all or a large class of citizens" may not be sufficiently concrete to confer standing. *Id*. at 23 (internal citation omitted). For example, where the "harm at issue is not only widely shared, but is also of an abstract and indefinite nature – for example, harm to the "common concern for obedience to law," *id*., the Plaintiffs do not have standing. "Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Id*. at 24. The Court noted that in a previous case it found standing "where large numbers of voters suffer interference with voting rights conferred by law" and held that "the informational injury at issue here, directly related to voting, the most basic of political rights, is sufficiently concrete and specific such that the fact that it is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id*. at 24-25.

Here, the six voter Plaintiffs allege that they were harmed because "Defendants and co-Conspirators unlawfully conspired with state actors and acted under color of law to violate

Plaintiff-voters' constitutional rights, and those of others similarly situated, by denying voters their free choice of candidates in the 2004 presidential election." (¶ 64 iv). Their alleged harm is not based on: an alleged unconstitutional state statute or procedure, an alleged state imposed illegal discrimination, nor a desire to obtain information legally required to be disclosed. However, states have the "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot," *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *Storer v. Brown*, 415 U.S. 724, 730 (1974) ("[T]here must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."). State statutes provide a right and procedure for challenging a candidate's petitions to gain access to the state's ballot.[4] State officials are required to deny ballot access if candidates do not satisfy the state's requirements. Nothing distinguishes the voter Plaintiffs from the millions of voters in 2004 who desired to vote for candidates that were not on the ballot for any reason, or from those voters who expressed their choice for President by submitting write in votes for candidates not on the ballot.[5] In essence, the voter Plaintiffs are asking no more than the right to vote for the candidate of their choice – a common desire of all voters. Therefore, the voter Plaintiffs' grievance, that the candidate of their choice was not on the ballot, is not concrete and too general to confer standing.

---

[4] Also, the *Noerr-Pennington* doctrine protects the filing of claims in courts and before administrative agencies based on the First Amendment right to petition the government. Because the Defendants are alleged to have asked state officers to take action in all of the ballot access cases and Federal officials in the FEC administrative complaints, the Defendants' actions are protected by the *Noerr-Pennington* doctrine as long as this Court does not find that the challenges were known to be false or fraudulent or filed for an improper purpose. *Whelan v. Abell*, 48 F. 3d 1247, 1254 (D.C. Cir. 1995).

[5] A compilation of the votes cast in the 2004 presidential election, including write in votes, can be found in *Federal Elections 2004: Election Results for the U.S. President, the U.S. Senate, and the U.S. House of Representatives*, http://www.fec.gov/pubrec/fe2004/federalelections2004.shtml.

Also, Plaintiffs' alleged harm is also too remote and speculative to confer standing. Plaintiff Nader has not alleged that he will run for President again, and the voter Plaintiffs have not alleged that they would vote for him even if he does run again.  It is speculative whether his campaign would submit questionable ballot petitions, whether the same alleged conspiracy would recur, and if it did, whether a Nader candidacy would be perceived to help or harm the Democratic candidate.  Even assuming all of the above, there is no reason to assume that the alleged massive conspiracy involving dozens of people, including almost 100 attorneys, across the country would engage in coordinated ballot access petition challenges.   The chain of events necessary to repeat the alleged harm is too remote and speculative to confer standing.

### b. Plaintiffs have not alleged that they were financially harmed.

Although the complaint herein frequently proclaims that the plaintiffs were financially injured, "the Court need not accept factual inferences drawn by plaintiff if those inferences are not supported by facts alleged in the complaint. Nor must the Court accept plaintiff's legal conclusions." *Best,* 2007 U.S. Dist. LEXIS 88028 at *4.  "[O]n a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp*, 127 S. Ct. at 1965 (internal citation omitted)..

In the specific factual section of the Complaint describing the alleged financial loss (¶¶ 228-231), the Plaintiffs allege that "Defendants' conspiracy caused severe financial injury to Nader-Camejo's 2004 presidential campaign," and "consumed Nader-Camejo staffers' time" (¶ 230) (emphasis added).  "In short, Defendants' and co-Conspirators' efforts to bankrupt the Nader-Camejo Campaign produced its intended effect: in October 2004, Mr. Nader was forced to loan the campaign $100,000 to cover legal bills, staff salaries and operating expenses" (¶ 228) (emphasis added).  The so-called Nader-Camejo Campaign does not refer to Plaintiffs Nader and

Camejo, but to a non-party entity:  Nader For President 2004, the candidates' principal campaign committee, or Nader For President General Election, the candidates' other authorized committee, are both headquartered in Washington, D.C. and registered with the FEC pursuant to 2 U.S.C. § 431(6) to accept contributions and make expenditures. Nader For President 2004 and/or Nader For President 2004 General Election made the expenditures for the litigation and its staff salaries alleged to be involved in the litigation.  *See* www. FEC.gov.

Plaintiffs do not allege that the campaign did not have sufficient funds to defend the ballot access cases or used the funds Plaintiff Nader loaned exclusively to defend the ballot access cases.  The Plaintiffs do not allege the Defendants have prevented the campaign from repaying the loan. Thus, Plaintiffs conclusory claim that "Defendants and co-Conspirators conspired to and did in fact cause financial injury … to Mr. Nader and Mr. Camejo personally" (¶ 230), is not supported by and is inconsistent with the alleged facts.  Because none of the Plaintiffs paid the unspecified legal bills that are the alleged harm, they have failed to allege a legally cognizable harm to confer standing.

### c.  Plaintiffs were not harmed by the administrative complaints filed with the FEC.

The plaintiffs admit that the FEC administrative complaints were filed against the Nader-Camejo campaign and not against any of the plaintiffs.  Furthermore, the only alleged harm is that, "Campaign staff and attorneys dedicated a significant amount of time, energy and recourses to respond to these complaints" (¶ 227).  The Complaint does not allege that any Plaintiff incurred any costs as a result of the administrative complaints. Therefore, none of the Plaintiffs have standing to complain about the FEC administrative filings.

## 2. Plaintiffs alleged harm was not caused by the Defendants.

"[T]here must be a causal connection between the injury alleged and the conduct complained of; the injury must be fairly traceable to the defendants' acts and not the result of conduct by a third party not before the court." *U.S. House of Representatives v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76, 83 (D.D.C. 1998).

### a. The voter Plaintiffs' alleged harm was not caused by Defendants.

The voter Plaintiffs' alleged injury – the inability to vote for Plaintiffs Nader and Camejo – were not caused by the Defendants any more than the state officials and the judges that decided the petitions submitted by the Nader-Camejo campaign were inadequate. *See e.g. Nader v. Brewer*, 2006 U.S. Dist. LEXIS 38500, *17 (D. Ariz. 2006) ("Nader's failure to get on the [Arizona] ballot was caused by his failure to start earlier."); *Nader v. Keith*, 385 F.3d 729, 736 (7th Cir. 2004) ("By waiting as long as he did to sue, and despite the strenuous efforts by the district court and this court to expedite the litigation, Nader created a situation in which any remedial order would throw the state's preparations for the election into turmoil."); *Blankenship v. Blackwell*, 817 N.E. 2d 382, 387-89 (Ohio 2004) ("[Plaintiffs] failed to act with the requisite diligence in asserting their claims. Instead, they delayed at least *31 days* before raising their claim concerning unprocessed voter registration applications and about *four months* before challenging the constitutionality of statutory requirements for petition circulators.  [D]elay in raising these claims prejudiced the Secretary of State, the protesters, election officials, and electors.")(emphasis in original);  *In re Nomination Paper of Ralph Nader*, 865 A.2d 8, 18 (Pa. Commw. Ct. 2004) ("[T]his signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon this Court.  The conduct of the [Nader-Camejo campaign], through their representatives (not their attorneys), shocks the conscience of the Court.  In

18

reviewing signatures, it became apparent that in addition to signing names such as 'Mickey Mouse,' 'Fred Flintstone,' 'John Kerry,' and the ubiquitous 'Ralph Nader,' there were thousands of names that were created at random and then randomly assigned either existent or non-existent addresses by the circulators.").

The alleged harm of not obtaining access to the ballot was not caused by the Defendants, but by a chain of third parties who caused improper ballot petitions to be submitted to state authorities, and those authorities who performed their mandated duties to examine and rule on the quality of those petitions .

### b. Plaintiff Nader's loss of $100,000 was not caused by Defendants.

Plaintiff Nader alleges that he "was forced to loan the campaign $100,000 to cover legal bills, staff salaries and operating expenses" (¶ 218).  Plaintiff Nader has not alleged that the loan will not be re-paid.  Even if the loan is not re-paid, he does not allege, nor can he, that the Defendants forced him to loan funds to his campaign committee. *C.f. McConnell v. Federal Election Comm'n*, 540 U.S. 93, 227 (2003) (Plaintiffs' voluntary decision that harms them is insufficient to show causation by the defendants).  Moreover, he has not alleged, nor can he, that the Defendants are responsible for his campaign committee's decision to pay others or its inability to raise funds to repay the loan. Thus, even if Plaintiff Nader were financially harmed, the loss was not fairly traceable to the Defendants.[6]

---

[6] Even though the Nader-Camejo campaign committees are not plaintiffs, it is noteworthy that their costs were not caused by the Defendants for the same reason that Defendants did not cause the courts to rule that the campaign failed to submit adequate ballot petitions.  Litigation expenditures are one of many costs of our society.  The decision to make those expenditures belongs to the campaign committees and not the Defendants.

### 3. Plaintiffs' alleged harms are not redressable.

As described above in the section describing why injunctive claims are moot, even if the Plaintiffs were harmed in connection with the 2004 election, an injunction cannot remedy that harm because this Court cannot void the election and order it to be held again. Thus, the Plaintiffs' request for injunctive relief cannot redress their alleged injury.

With respect to Plaintiff Nader's allegation that he lent $100,000 to his campaign committee, this Court does not have the authority to require the campaign committee, which is not a party here, to re-pay the loan. Therefore, Plaintiff Nader's claim of financial harm is not redressable.

### E. PLAINTIFFS HAVE NOT ALLEGED AN ABUSE OF PROCESS OR A CONSPIRACY OF AN ABUSE OF PROCESS (COUNTS I AND II).

"The essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.D.C. 1997) (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)). There is no abuse of process when, although a person 'acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding,' the proceeding in question is also used for its intended purpose." *Rogers*, 466 F. Supp. 2d at 175. "Thus, the entirely justified prosecution of another on a criminal charge does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm . . . ." (alterations in original) (quoting *Restatement (Second) of Torts* § 682 cmt. b (1977))." *Rogers*, 466 F. Supp. 2d at 175 (quoting *Scott*, 101 F.3d at 755). The Plaintiffs allege that the Defendants filed ballot access challenges to prevent plaintiffs Nader and Camejo from appearing on state ballots and to drain the Nader-Camejo's campaign's resources. Although some of these

20

challenges were dismissed outright, others were initially upheld and then dismissed on appeal, and still others were upheld.  Although Plaintiffs allege that all were filed maliciously, they admit all filed for a proper purpose – to test the Nader-Camejo campaigns ballot petitions and to keep the candidates off the ballot if those petitions were inadequate.  Plaintiffs describe many completed proceedings, but do not cite to any finding or order that the Defendants abused the legal system.  *See Scott,* 101 F. 3d at 755.  At most, they complain that it is expensive to defend lawsuits. But if that is an abuse of process, then every defendant can claim an abuse of process. Courts have taken the position that one who seeks to enforce rights which have been violated is not thereby committing a legal wrong, but may actually be performing a moral duty, and that a citizen should have free access to the courts in having his rights determined without being forced to respond in damages when he has caused a prosecution in good faith and on reasonable grounds. *See* 54 C.J.S., *Malicious Prosecution* § 3 at 955. Thus, the plaintiffs have not pled the elements of an abuse of process, and that claim should be dismissed.  Because conspiracy to abuse process necessary requires an abuse of process to be plead, that claim should also be dismissed.

## F.  PLAINTIFFS HAVE FAILED TO ALLEGE MALICIOUS PROSECUTION OR A CONSPIRACY OF A MALICIOUS PROSECUTION (COUNTS I AND II).

Malicious prosecution frequently is viewed as a cause of action not favored in the law because they are seen as having a chilling effect upon the right of free access to the courts. Honest potential litigants might not invoke the aid of the courts if by so doing they risk a lawsuit in return. *See Hubbard v. Beatty & Hyde Inc*, 178 N.E.2d 485 (Mass. 1961). *See, e.g.*, *Babb v. Superior Court of Sonoma County*, 479 P. 2d 379 (Cal. 1971); *Leamon & Co v. Victory Iron Works Inc*, 411 So. 2d 666 (La. Ct App. 1982); *Blanchard v. Employers Liability Assurance Corp*, 197 So. 2d 386 (La Ct App 1967); *Young v. First State Bank*, 628 P. 2d 707 (Okla. 1981).

"[T]o support a claim of malicious prosecution, a plaintiff in the District of Columbia must prove:

(1) the underlying suit terminated in the plaintiff's favor;

(2) malice on the part of the defendant;

(3) lack of probable cause for the underlying suit; and

(4) special injury occasioned by the plaintiff as the result of the original action.

*Tyler v. Cent. Charge Serv.,* 444 A. 2d 965, 968 (D.C. 1982) (per curiam) (citation and footnote omitted); *see also Weisman v. Middleton*, 390 A.2d 996, 1002 (D.C. 1978); *Ammerman v. Newman,* 384 A. 2d 637, 639 (D.C. 1978) (per curiam); *Nolan v. Allstate Home Equipment Co.,* 149 A.2d 426, 429 (D.C. 1959). *Brown v. Carr*, 503 A.2d 1241, 1244 (D.C. 1986); *c.f .Dellums v. Powell,* 566 F. 2d 167, 191 n.65 (D.C. Cir. 1977) (similar elements in a malicious prosecution for a criminal case).

Of course, if there is no malicious prosecution, there cannot be a conspiracy to commit a malicious prosecution.

**1. Favorable termination and probable cause.**

"According to the generally accepted view, probable cause depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it. It may flow from a belief that turns out to be unfounded as long as it is not unreasonable." *Lee v. Dunbar*, 37 A. 2d 178 (D.C. 1944); *See Ammerman v. Newman*, 384 A. 2d at 639. Whether the Defendants were involved in the ballot access challenges and whether those challengers had probable cause to file those challenges is not susceptible to resolution on a motion to dismiss. Nevertheless, it is noteworthy that in at least half of the state ballot access cases the Plaintiffs had an unfavorable result at some stage of the proceedings. Thus, the conclusory allegation that the

ballot access challenges were filed without probable cause is contradicted by other factual allegations in the complaint.

### 2. The plaintiffs have not alleged malice.

It is generally held that the requisite malice is dependent on the existence of an improper motive (as distinguished from malice in the technical legal sense), and has also been described as the existence of an evil purpose or motive, a wicked or mischievous intent, or a willful, wanton, reckless or oppressive disregard to the rights of the plaintiff. 52 Am. Jur. 2d. *Malicious Prosecution* § 46 (2007). In short, "torts like malicious prosecution [] require a particular antisocial state of mind." *Smith v. Wade,* 461 U.S. 30, 53 (1983) (internal citations omitted).

Here, no evil or wicked intent, personal spite, rancor or antisocial motive has been alleged. Rather, the Plaintiffs ascribe only a political adversary's motive to Defendants, who were concerned that Nader's candidacy would draw votes that otherwise would be cast for the Democratic candidate. The costs defending those challenges were a necessary by-product of our legal system, and not a malicious motive. Certainly, actions taken to assist a favored candidate by his or her supporters and party by challenging ballot access petitions are adversarial, but they do not rise to the level of legal malice. Ballot access challenges are not infrequent and are often, as here, found to be justified. The Nader-Camejo campaign's expenditures in response to legal challenges are no different than expending resources in response to an opponent's advertising. That is part of our political system and certainly is not an example of malicious intent.

### 3. Plaintiffs have not alleged a special injury.

"Finally, in order for a plaintiff to prevail in an action for malicious prosecution in a civil suit, there must be an arrest of the person or seizure of the property of the plaintiff, or other special injury sustained. *See Nolan,* 149 A. 2d at 429-30. "This doctrine is supported by the

following consideration: The courts are open and free to all who have grievances and seek remedies therefor, and there should be no restraint upon a suitor, through fear of liability resulting from failure in his action, which would keep him from the courts." *Peckham v. Union Fin. Co.*, 48 F.2d 1016, 1017-18 (D.C. 1931) (quoting *Wetmore v. Mellinger*, 18 N.W. 870, 871 (Iowa 1884)); *see also Ammerman,* 384 A.2d at 639. Under both Michigan and D.C. law, in order to prevail on a malicious prosecution claim, the plaintiff must prove special injury, that is, "some injury which would not necessarily occur in all suits prosecuted for similar causes of action." *Kauffman v. Sherman,* 426 N.W.2d 819, 824 (Mich.Ct App.1988)(internal citation omitted); *see also Weisman v. Middleton,* 390 A. 2d at 1000 (same). Under the law of the District of Columbia, however, being forced to defend multiple proceedings may constitute special injury. *See id.* at *1000; Weisman,* 390 A.2d at 1000; *Tri-State Hospital Supply Corp. v. United States*, 2007 U.S. Dist. Lexis 48609, *15 (D.D.C. 2007).

  Being excluded from a ballot and paying litigation costs are the expected consequences of those cases, and not special injuries unique to any ballot access challenges. Plaintiffs might allege a special injury under the *Weisman* case of being forced to defend multiple proceedings. However, unlike the *Weisman* case, there is no allegation that multiple proceedings were instituted for a common frivolous purpose. Each state has its own ballot access rules and each state's presidential electors are unique to that state's election. Assuming *arguendo*, that all of the ballot access cases were instigated by a single group acting together, the defendants could not have resolved their challenges in a single action; the law requires a challenge to be initiated in each state. Thus, the multiple proceedings were a legal necessity and cannot constitute a special injury.

**G. PLAINTIFFS HAVE FAILED TO ALLEGE A MALICIOUS PROSECUTION OR CONSPIRACY TO COMMIT A MALICIOUS PROSECUTION FOR THE ADMINISTRATIVE COMPLAINTS FILED WITH THE FEC.**

It has long been held in this Circuit that the tort of malicious prosecution applies to actions in administrative agencies as well as the courts. *Melvin v. Pence*, 130 F.2d 423, 425 (D.C. Cir. 1942). However, malicious prosecution claims cannot be applied legally solely to the filing of administrative complaints with the FEC. First, even if a complaint is maliciously filed with an administrative agency, that filing by itself would be insufficient to sustain a malicious prosecution claim if the agency dismissed the complaint without initiating a proceeding. *Id. Dellums*, 566 F.2d at 192*; Schroeder v. De Bertolo,* 912 F. Supp. 23, 26 (D.P.R. 1996)*; Boschette v. Bac*h, 914 F. Supp. 769, 774 (D.P.R. 1995). Second, the agency must be one with the authority to conduct an adjudicative proceeding and impose sanctions similar to a civil court. *Id.*

The FEC took no action on and dismissed all of the administrative complaints without initiating a proceeding. Furthermore, even if it had not done so, the FEC has none of the powers of a civil court. Except for one type of violation not applicable here, the FEC does not have the authority to impose sanctions or to initiate an evidentiary proceeding that may result in a sanction. It only may file civil action in an appropriate United States district court, and ask that court to conduct a proceeding and impose sanctions. 2 U.S.C. § 437g; *Perot v. Federal Election Comm'n*, 97 F. 3d 553, 558 (D.C. Cir. 1996). Therefore, even if a Plaintiff were a respondent in an FEC action, the Plaintiffs have failed to state a claim of malicious prosecution.

**H. PLAINTIFFS HAVE FAILED TO ALLEGE A CONSPIRACY (COUNT I).**

"In order to prove civil conspiracy, plaintiffs must show '(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in an unlawful manner; and (3) an injury

caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.'" *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (*citing Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994)); *see also Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004).  In the District of Columbia, "there is no recognized independent tort action for civil conspiracy . . . ." *Executive Sandwich Shoppe, Inc.,* 749 A.2d at 738 (*citing Waldon v. Covington*, 415 A.2d 1070, 1074 n.14 (D.C. 1980)).  Rather, "it is a means for establishing vicarious liability for the underlying tort." *Id.* (citing *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir 1983)).  As a result, "[c]ivil conspiracy depends on performance of some underlying tortious act." *Id.* (citing *Halberstam v. Welch*, 705 F.2d at 479);  *see also Hancock,* 2007 U.S. Dist. LEXIS 31051 at *28.[7]

As shown above, no tortious acts have occurred.  Plaintiffs only allege that Defendants filed complaints with government officials, and not that Defendants agreed to engage in an

---

[7] *See also Beck v. Prupis*, 529 U.S. 494, 503 n.7 (U.S. 2000) ("When read in context, it is clear that these passages refer to harm, not from any overt act, but only from overt acts that are themselves tortious. Compare *ibid*, with *Adler v. Fenton*, 65 U.S. 407, 24 HOW 407, 410, 16 L. Ed. 696 (1861) ("It must be shown that the defendants have done some wrong, that is, have violated some right of theirs . . . . In these cases the act must be tortuous"); *Royster v. Baker*, 365 S.W.2d 496, 499 (Mo. 1963) ("Strictly speaking, there has been no distinct form of writ or action of conspiracy; but the action sounds in tort, and is of the nature of an action on the case upon the wrong done under the conspiracy alleged. The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy" (citations and internal quotation marks omitted)); *Lesperance v. North American Aviation, Inc*., 217 Cal. App. 2d 336, 345, 31 Cal. Rptr. 873, 878 (1963) ("It is well settled that a conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action"'); *Earp v. Detroi*t, 16 Mich. App. 271, 275, 167 N.W.2d 841, 845 (1969) ("There is no civil action for conspiracy alone. It must be coupled with the commission of acts which damaged the plaintiff. Recovery may be had from parties on the theory of concerted action as long as the elements of the separate and actionable tort are properly proved" (citation omitted); *Halberstam v. Welch*, 227 U.S. App. D.C. 167, 705 F.2d 472, 479 (CADC 1983) (stating that civil conspiracy requires "an overt tortious act in furtherance of the agreement that causes injury . . . . Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort").

unlawful act or act in an unlawful manner. Also as shown above, the Plaintiffs do not have a

legally cognizable harm. Accordingly, Plaintiffs have not alleged that Defendants have engaged

in a conspiracy.

## CONCLUSION

In view of the above, the Complaint should be dismissed pursuant to Fed. R. Civ.

P. 12(b).

February 4, 2008                                    Respectfully submitted,

                                                    _____/s/_____
                                                    Joseph E. Sandler,
                                                    D.C. Bar No. 255919
                                                    John Hardin Young
                                                    D.C. Bar No. 190553
                                                    Stephen E. Hershkowitz
                                                    D.C. Bar No. 282947

                                                    SANDLER, REIFF & YOUNG, P.C.
                                                    50 E. Street, S.E., Suite 300
                                                    Washington, D.C. 20003
                                                    (202) 479-1111
                                                    (202) 479-1115 (facsimile)
                                                    young@sandlerreiff.com

                                                    After February 8, 2008
                                                    300 M Street, S.E., Suite 1102
                                                    Washington, D.C. 20003

                                                    Attorneys for Defendants
                                                    The Democratic National Committee
                                                    Jack Corrigan
                                                    Mark Brewer

**BALLOT ACCESS CASES AND FEC ADMINISTRATIVE COMPLAINTS**

| STATE | ACTIONS | RESULTS |
|-------|---------|---------|
| **Arizona** | On June 23, 2004, a complaint was filed in Arizona challenging Plaintiffs Nader's and Camejo's nomination papers (¶ 75).  On July 2, 2004 the nomination papers were withdrawn (¶ 74).  On August 16, 2004, Plaintiffs Nader and Camejo filed a complaint in Arizona challenging its petition filing deadline (¶ 77).  That action was resolved on September 10, 2004 against the Plaintiffs (¶ 79).  *See also Nader v. Brewer*, 2006 U.S. Dist. LEXIS 38500, *17 (June 8,D. Ariz.  2006) ("Nader's failure to get on the ballot was caused by his failure to start earlier."). | Final Result:<br><br>No ballot access,<br><br>ballot petition<br><br>withdrawn<br><br>Final date:<br><br>September 10, 2004 |
| **Arkansas** | On September 10, 2004 complaint was filed in Arkansas successfully challenging Plaintiffs Nader's and Camejo's nomination papers (¶¶ 80, 82).  The state trial court judge<br><br>did not make a ruling on the motion to dismiss but took testimony and evidence.   He summarized the arguments by stating: I believe these are the areas that are in play. That The Populist Party of Arkansas, at least at some point in time, somebody signed as The Better Life of Arkansas, that it's not qualified as a party or a new party because it didn't receive three percent or more of the vote in the last Presidential | Interim result:<br><br>Ballot access denied<br><br>Final result:<br><br>Ballot access granted |

| | | |
|---|---|---|
| | election for a candidate . . . And the next thing that happens is that you have to get at least 1,000 signatures that are in the proper form and from qualified folks to sign petitions.  So those are two separate things. Then also the plaintiffs are arguing that the defendants Nader and Camejo have accepted the nomination in other states from parties that are different than The Populist Party and that they are therefore ineligible as candidates for that party in Arkansas pursuant to Ark. Code Ann. § 7-7-204 . The petition forms themselves are invalid regardless of the number of signatures, because they do not identify The Populist Party sponsorship of the candidates and they don't contain a canvasser's verification.<br><br>*Populist Party of Ark. v. Chesterfield*, 195 S.W.3d 354, 355-56 (Ark. Oct. 1, 2004).<br><br>Plaintiffs Nader and Camejo appealed and ultimately were successful on October 1, 2004 (¶ 83).  *Id.* (order issued vacating writ of mandamus and directing the Secretary of State to certify Nader-Camejo's nomination papers). | Final date:<br><br>October 1, 2004 |
| **Colorado** | On September 13, 2004, a case was filed in Colorado challenging Plaintiffs Nader's and Camejo's nomination papers (¶ 85).  That case was resolved in the plaintiffs' favor.  (¶85). | Final result:<br><br>Ballot access granted<br><br>Final date;<br><br>Before November<br><br>2004 |
| **Florida** | On September 2, 2004, two complaints were filed in Florida challenging Plaintiffs Nader's and Camejo's nomination papers (¶ 89).  On September 9, 2004, the Florida circuit court | Interim result:<br><br>Ballot access denied |

| | | |
|---|---|---|
| | denied the Plaintiffs access to the Florida ballot (¶ 91). The Plaintiffs appealed and on September 17, 2004 the Florida Supreme Court reversed the circuit court and Plaintiffs appeared on the Florida ballot (¶ 99). *See Reform Party v. Black*, 885 So. 2d 303 (Fla. Sept. 17, 2004). | Final result: Ballot access granted Final date: September 17, 2004 |
| **Illinois** | On June 28, 2004 , a complaint was filed in Illinois challenging Plaintiffs Nader and Camejo's nomination papers (¶ 100). The Board of Elections concluded that Plaintiffs did not have the required number of signatures to be on the ballot (¶ 104). On July 27, 2000, the Plaintiffs appealed to the United States District Court for the Northern District of Illinois (¶ 105). On August 23, 2004, the District Court denied the Plaintiffs' request for a preliminary injunction because the Plaintiffs lacked the likelihood of success on the merits. *Nader v. Keith*, 2004 U.S. Dist. LEXIS 16660 (D. Ill. 2004). Plaintiffs appealed that decision to the Seventh Circuit, and also appealed Board of Elections decision to the Illinois Appellate Court (¶¶ 108 and 109). On September 23, 2004, Illinois Appellate Court affirmed the Board of Elections decision denying the Plaintiffs access to the Illinois ballot (¶ 109). *See Nader v. Ill. State Bd. of Elections*, 2004 Ill. App. LEXIS 1277 (October 22,Ill. App. Ct. 2004); *Nader v. Ill. State Bd. of Elections*, 819 N.E.2d 1148 (Ill. App. Ct. Nov. 18, | Final result: Ballot access denied Final date: October 15, 2004 |

| | | |
|---|---|---|
| | 2004).  On September 29, 2004, the Seventh Circuit denied Plaintiffs' appeal (¶ 111).<br><br>*Nader v. Keith*, 385 F.3d 729, 736-37 (7th Cir. 2004) ("Moreover, it would be inequitable to order preliminary relief in a suit filed so gratuitously late in the campaign season." "By waiting as long as he did to sue, and despite the strenuous efforts by the district court and this court to expedite the litigation, Nader created a situation in which any remedial order would throw the state's preparations for the election into turmoil." "At argument Nader's lawyer offered no reason for the delay in filing the suit.") *reh'g denied en banc*, *Nader v. Keith*, 2004 U.S. App. LEXIS 22473 (7th Cir. Ill., Oct. 15, 2004). | |
| **Iowa** | On August 20, 2004, a complaint was filed with the Iowa State Commissioner of Elections challenging Plaintiffs Nader and Camejo's nomination papers (¶ 113).  On August 30, 2004, the Secretary of State found the nomination papers valid and the Plaintiffs appeared on the ballot (¶ 116). | Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>August 30, 2004 |
| **Maine** | Two complaints were filed in Maine challenging Plaintiffs Nader's and Camejo's nomination papers (¶¶ 118, 119).  The complaints were resolved in the Plaintiffs' favor on October 8, 2004 (¶ 121).  *Melanson v. Sec'y of State*, 861 A.2d 641 (Me. 2004). | Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>October 8, 2004 |

| Michigan | On July 22, 2004, a complaint was filed with the Michigan State Bureau of Elections challenging Plaintiffs Nader's and Camejo's nomination papers (¶ 125).   On September 3, the Michigan State Court of Appeals ruled that the Plaintiffs were qualified to appear on the Michigan ballot (¶ 127). *Deleeuw v. State Bd. of Canvassers*, 688 N.W.2d 847 (Mich. Ct. App. 2004). | Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>September 3, 2004 |
| --- | --- | --- |
| Mississippi | On September 3, 2004, a complaint was filed in Mississippi challenging Plaintiff Nader's and Camejo's nomination papers (¶ 131).  On September 7, 2004, the challenge was resolved in Plaintiffs' favor (¶ 131). | Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>September 7, 2004 |
| Nevada | On August 24, 2004, a complaint was filed in Nevada challenging Plaintiff Nader's and Camejo's nomination papers (¶ 133).  On September 1, 2004, the complaint was resolved in Plaintiffs' favor, and the complainant appealed to the Nevada Supreme Court (¶ 135).  On September 15, 2004, the Nevada Supreme Court ruled in favor of the Plaintiffs (¶ 137). | Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>September 1, 2004 |
| New Hampshire | On September 7, 2004, a complaint was filed in New Hampshire challenging Plaintiff Nader's and Camejo's nomination papers (¶ 138), and a second complaint was filed on September 13, 2004 (¶ 139).  Those complaints were resolved in the Plaintiffs favor on | Final result:<br><br>Ballot access granted<br><br>Final date: |

| | September 24, 2004 (¶ 141). | September 24, 2004 |
|---|---|---|
| **New Mexico** | On September 15, 2004, a complaint was filed in the New Mexico District Court to prevent the Secretary of State from placing Plaintiffs Nader and Camejo on the ballot (¶ 145).  On September 17, 2004, the New Mexico District Court issued an order denying Plaintiffs right to run as an independent candidate on the New Mexico ballot (¶ 146).   The Plaintiffs appealed to the New Mexico Supreme Court, which stayed the District Court's Order on September 23, 2004 (¶ 147).  On the same day, three of the Plaintiffs' supporters sought injunctive relief in the United States District Court for the District of New Mexico (¶ 147). On September 28, 2004, the District Court directed the New Mexico Secretary of State to place Plaintiffs on the ballot (¶ 149). | Interim result:<br><br>Ballot access denied<br><br>Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>September 28, 2004 |
| **Ohio** | On August 30, 2004, a complaint was filled with the Ohio Secretary of State challenging Plaintiffs Nader's and Camejo's nomination papers (¶ 152).  On September 2, 2004, a complaint was filed in the Court of Common Pleas to enjoin the Secretary of State from placing the Plaintiffs on the ballot (¶ 152).  On September 28, 2004, the Secretary of State denied the Plaintiffs a position on the ballot (¶ 161).  The Plaintiffs asked the Ohio court and the United States District Court for the Southern District of Ohio to order the Secretary of | Final result:<br><br>Ballot access denied<br><br>Final date:<br><br>October 22, 2004 |

| | State to put their names on the ballot. The District Court denied the Plaintiffs' request for a preliminary injunction because they lacked a likelihood of success on the merits. On October 22, 2004, the Ohio Supreme Court denied the Plaintiffs' request for a writ of mandamus to place them on the Ohio ballot. *Blankenship v. Blackwell*, 817 N.E.2d 382, 387-88, (Ohio 2004). | |
|---|---|---|
| **Oregon** | On August 25, 2004, a complaint was filed with the Oregon Secretary of State challenging Plaintiffs Nader's and Camejo's nomination papers (¶ 175). On September 2, 2004, the challenge was sustained and the Plaintiffs were denied a position on the Oregon ballot (¶ 176). On September 9, 2004, the Plaintiffs appealed that decision and the Marion County Circuit Court reversed the Secretary of State's decision (¶ 177). On September 17, 2004, the Oregon Supreme Court reversed the lower court and reinstated the Secretary of State's decision denying the Plaintiffs a position on the ballot (¶ 178). *Kucera v. Bradbury*, 97 P.3d 1191 (Or. 2004). | Final result:<br><br>Ballot access denied<br><br>Final date:<br><br>September 17, 2004 |
| **Pennsylvania** | On August 9, 2004, two complaints were filed in Pennsylvania challenging Plaintiffs Nader's and Camejo's nomination papers (¶¶ 181, 182). On August 30, 2004, the Pennsylvania Commonwealth Court ordered the Plaintiffs names stricken from the ballot (¶ | Final result:<br><br>Ballot access denied<br><br>Final date: |

| | | |
|---|---|---|
| | 185).  *See In re Nomination Paper of Nader*, 865 A.2d 8, (Pa. Commw. Ct. 2004).  The Plaintiffs appealed and the Pennsylvania Supreme Court vacated that order and remanded the case for hearings (¶ 188); *see In re Nomination Paper of Nader*, 865 A.2d 8 (Pa. Commw. Ct. 2004).  On October 13, 2004, the court found that Plaintiffs Nader's and Camejo's nomination papers were insufficient (¶ 191).  The Pennsylvania Supreme Court summarily sustained the lower court's decision on October 19, 2004 (Order filed October 22, 2004) (¶ 192); *In re Nomination Paper of Nader*, 860 A.2d 1 (Pa. 2004).  The United States Supreme Court denied the Plaintiffs' petition for *certiorari* on October 23, 2004 (¶ 192).  *Nader v. Serody*, 543 U.S. 951 (2004). | October 19, 2004 |
| **Washington** | On August 31, 2004 a complaint was filed with the Washington Secretary of State challenging Plaintiffs Nader's and Camejo's nomination papers (¶ 208).  On September 1, 2004, the Secretary of State denied the complaint and certified the Plaintiffs for placement on the Washington ballot (¶ 209).   Two complaints were filed in Thurston County Superior Court challenging the secretary of State's decision (¶¶ 210, 211).  On September 15, 2004, the court upheld the Secretary of State's decision (¶ 213). | Final result:  Ballot access granted  Final date:  September 15, 2004 |

| West Virginia | On July 29, 2004, the West Virginia Secretary of State determined that Plaintiffs Nader and Camejo satisfied the requirements to be placed on the ballot.  On August 16, 2004, a complaint was filed in the West Virginia Supreme Court of Appeals to require the Secretary of State to initiate an investigation of the Plaintiffs' nomination papers (¶ 216). On August 19, 2004, the Secretary of State changed his decision and requested the Attorney General to institute an investigation (¶ 218).  On August 23, 2004, the Attorney General filed a complaint in Circuit Court asking the court to issue a show cause order to the Plaintiffs to describe why they should not be on the ballot (¶ 220).  On August 30, 2004, the circuit court dismissed the complaint and the Plaintiffs appeared on the ballot (¶ 220). | Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>August 30, 2004 |
|---|---|---|
| Wisconsin | On September 10, 2004, a complaint was filed with the Wisconsin Elections Board challenging Plaintiffs Naders' and Camejo's nomination papers (¶ 223).  On September 22, 2004 the Elections Board dismissed the complaint. (¶ 224).  That decision was appealed to the circuit court, and on September 28, 2004 the circuit court ordered the Plaintiffs removed from the ballot (¶ 223).  The Plaintiffs appealed, and on September 30, 2004 the Wisconsin Supreme Court reversed the lower court's decision, and Plaintiffs appeared on the ballot (¶ 227). | Interim result:<br><br>Ballot access denied<br><br>Final result:<br><br>Ballot access granted<br><br>Final date:<br><br>September 30, 2004 |

| FEC administrative complaints | Five complaints were filed with the Federal Election Commission that were dismissed (¶¶ 128, 137, 229).  They were dismissed on February 10, 2005, June 23, 2005 and April 21, 2006. *Id.* | |

UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

_____
                                                )
Ralph Nader, et al.,                            )
                                                )          Civ. Action 1:07-cv-2136 (RMU)
v.                                              )
The Democratic National Committee )
                              et al. )
_____)

**ORDER**

Defendants having moved to dismiss the complaint pursuant to Fed. R. Civ. P. Rules

12(b)(1) and 12(b)(6) and the Plaintiffs having been heard, IT IS ORDERED that the complaint

is dismissed.

Dated:                                          _____
                                                United States District Court Judge