UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-02136 (RMU) |
| | ) | |
| | ) | |
| THE DEMOCRATIC NATIONAL COMMITTEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SEIU'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant Service Employees International Union ("SEIU") moves, pursuant to Rules 12(b)(6) and 12(b)(1), to dismiss the amended complaint in this action because the amended complaint fails to state a claim upon which relief can be granted and because the court lacks subject matter jurisdiction. The grounds in support of this motion are set forth in detail in the Memorandum of Points and Authorities In Support of SEIU's Motion to Dismiss submitted herewith.

February 4, 2008                                        Respectfully submitted,


                                                       /s/ Michael B. Trister
                                                       _____

                                                       Michael B. Trister
                                                       DC Bar No. 54080
                                                       Lichtman, Trister & Ross PLLC
                                                       1666 Connecticut Avenue, NW
                                                       Washington, D.C. 20009

(202) 328-1666

Judith A. Scott
General Counsel
D.C. Bar No. 374089
John J. Sullivan
Associate General Counsel
D.C. Bar No. 371278
SEIU
1800 Massachusetts Avenue, NW
Washington, D.C. 20036
(202) 730-7465

*Attorneys for Defendant Service Employees*
*International Union*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-02136 (RMU) |
| | ) | |
| | ) | |
| THE DEMOCRATIC NATIONAL | ) | |
| COMMITTEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
SEIU'S MOTION TO DISMISS THE AMENDED COMPLAINT**

The Service Employees International Union ("SEIU") submits this memorandum in support of its motion to dismiss the amended complaint under Rule 12(b)(1) and (6), F.R.Cv.P.

<u>Statement of the Case</u>

The complaint in this case was originally filed in the Superior Court of the District of Columbia on October 30, 2007.[1]   SEIU removed the case to this Court pursuant to 28 U.S.C. § 1441(a) because the original complaint included claims for violation of federal rights over which the district courts of the United States have original jurisdiction.  Notice of Removal by Service Employees International Union (Dkt. # 1). The remaining defendants served in the Superior Court filed consents to the removal.   Counsel for plaintiffs and defendants then reached

---

[1]        SEIU was served with a summons and the complaint on November 9, 2007.
.

agreement that defendants would have until January 31, 2008 to file their responsive pleadings. *See* Minute Order Granting [9] Motion for Extension of Time to Answer (12/07/07).

On January 23, 2008, before any of the defendants had filed their responsive pleadings, plaintiffs filed an amended complaint which is virtually identical to the original complaint except that Counts III and IV alleging violations of federal law were deleted.[2]  Amended Complaint Against Democratic National Committee, et al. (Dkt. # 23 ) ("Amend. Compl." The filing of this amended complaint had the effect of extending until February 4, 2008 the date for defendants to file a responsive pleading to the amended complaint.  *See* Rule 15(a), F.R.Cv.P.

---

[2]        Although Counts III and IV of the original complaint were dropped, the amended complaint mysteriously continues to refer to alleged violations of constitutional  rights.  *See* Amended Complaint, ¶¶ 66(iii), 66(iv); 231, 232, 234, 239.   These stand-alone references do not require a response, since the amended complaint no longer sets forth a short and plain statement of any federal claim, as required by Rule 8(a)(2), F.R.Cv.P.  The amended complaint also continues to include the six individual voter plaintiffs who were named in the original complaint.  As discussed *infra,* p. 21, in the absence of constitutional claims, these plaintiffs do not have standing to sue and should be dismissed from the case if it goes forward.

On January 23, 2008, plaintiffs also filed a motion to remand the entire case to the District of Columbia Superior Court on the ground that the court now lacks jurisdiction over the action "because the Amended Complaint raises no federal claims arising under the laws or Constitution of the United States." Plaintiffs' Motion to Remand (Dkt. # 24). SEIU, along with the other defendants named in the amended complaint, is today filing a memorandum in opposition to the motion to remand on the ground that plaintiffs failed to provide a memorandum of points and authorities in support of that motion in accordance with the local rules.[3] Since the motion to remand has not been acted upon, we have simultaneously filed a motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6).

<u>Allegations of the Amended Complaint</u>

The amended complaint alleges that the twelve named defendants as well as an uncertain number of "non-defendant co-conspirators" and unnamed co-conspirators conspired to prevent plaintiffs Ralph Nader and Peter Miguel Camejo ("Nader-Camejo) from running for President and Vice President of the United States in 2004. Amend. Compl., ¶ 1. At the heart of this conspiracy, the amended complaint alleges that in a twelve week period between June and September 2004, defendants and their co-conspirators filed 24 complaints challenging ballot

---

[3] The motion to remand states that it is based on 28 U.S.C. § 1441(c), a provision which the Supreme Court has ruled does not allow remand in cases such as this one because the federal claims in the original complaint were not "separate and independent" from the state claims. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 354-55 (1988 ). If plaintiffs eventually put forward other grounds in support of their motion to remand, defendant SEIU expects to oppose that motion on the ground that it is part of an effort by plaintiffs to manipulate the jurisdiction of the federal courts based on plaintiffs actions in a parallel case they filed in the United States District Court for the Eastern District of Virginia in which plaintiffs are continuing to assert, against some but not all of the defendants here, the same federal claims which they dropped from their amended complaint in this case.

access for the Nader-Camejo Campaign in 17 states and intervened in proceedings to remove

Nader-Camejo from the ballot in Oregon.  Amend.Compl., ¶ 3.   The amended complaint also

alleges that as part of the conspiracy five administrative complaints were filed with the Federal

Election Commission ("FEC") by non-defendants.  Amend. Compl., ¶ 55.

     In addition to SEIU, the defendants named in the amended complaint include the

Democratic National Committee ("DNC"), Kerry-Edwards 2004 Inc. ("Kerry-Edwards"), the

principal presidential/vice-presidential campaign committee of John Kerry and John Edwards,

and the Ballot Project, Inc. ("Ballot Project"), which the amended complaint alleges is a section

527 political organization established to coordinate and finance the litigation against Nader-

Camejo. Amend. Compl., ¶ 25.   The amended complaint also names six individual defendants,

none of whom are alleged to have any connection to SEIU, and an independent political

organization known as America Coming Together ("ACT").   Although the amended complaint

is replete with allegations against the "Defendants,"  "conspirators," and "co-conspirators," it

acknowledges that, "[u]nless otherwise stated," these terms "and the charges alleged herein do

not necessarily apply to every Defendant and every conspirator named in this amended

complaint." Amend. Compl., ¶ 14.

     With a few very limited exceptions,[4] the specific allegations against SEIU  involve

Nader-Camejo's efforts to obtain ballot access in the State of Oregon.  Amend. Compl., ¶¶ 69,

---

[4]     In addition to the allegations relating to Oregon, the amended complaint alleges
that the Secretary-Treasurer of SEIU is a "DNC official,"  that SEIU supported the election of
John Kerry and President in the 2004 election, and that SEIU provided financial support to
defendant Democratic National Committee.  Amend. Compl., ¶¶ 56, 177.  The amended
complaint also alleges that SEIU is a founding member of ACT and its largest contributor, and
housing ACT in the union's Portland office.  Amend. Compl, ¶ 177.

166-78.   With respect to Oregon,  the amended complaint  alleges that unnamed  "conspirators"  took steps to discourage people at Nader-Camejo's April 2004 and June 2004 conventions from nominating them, and , after Nader-Camejo later undertook a petition drive to obtain  ballot access, took additional steps to interfere with this drive.  Amend.Compl., ¶¶ 166-68.  In its only specific reference to SEIU in connection with the Oregon activities, the amended complaint alleges that  SEIU hired private investigators who on August 12, 2004 visited an uncertain number of unnamed "petitioners"[5] at their homes and falsely threatened them with jail time if their signatures were subsequently invalidated.  Amend. Compl., ¶ 170.   SEIU is also alleged to have delivered to the petitioners a letter from an attorney which reiterated the false threat.  *Id.* There is no allegation that SEIU undertook these alleged activities at the request, suggestion or in coordination with any other defendant or non-defendant co-conspirator.

The amended complaint goes on to allege that Nader-Camejo was able to submit a sufficient number of signatures to qualify for ballot access to the Oregon Secretary of State. Amend. Compl., ¶ 172.   These signatures, however, were challenged in a letter dated August 25, 2004 from an attorney, Roy Puliver,  who is alleged to be a contributor to the DNC and a member of the Oregon Democratic Party's President (sic) Council, Amend. Compl., ¶ 173, and, on September 2, 2004, the Secretary of State sent Nader-Camejo a letter stating that the campaign had failed to submit a sufficient number of qualified signatures.  Amend. Compl., ¶ 174.   In response to the Secretary's decision, on September 9, 2004, Nader-Camejo filed a complaint in the Marion County Circuit Court, which found that the Secretary's decision was not

---

[5]     Neither of the individual named Oregon plaintiffs allege that he was the victim of this alleged harassment.  Amend. Compl., ¶¶ 21, 22.

consistent with state law. Amend. Compl., ¶ 175.  The lower court's decision, however, was

reversed by the Oregon Supreme Court on September 17, 2004, in an appeal by the Secretary in

which the Oregon Democratic Party and its Executive Director intervened as parties.  Amend.

Compl., ¶ 176.   As a result of the Supreme Court's decision, Nader-Camejo did not appear on

the Oregon ballot  in the 2004 election. Amend. Compl., ¶ 176.

Argument

**I.      All of Plaintiffs' Claims Against SEIU Are Time-Barred.**

The amended complaint pleads two separate legal claims.  Count I  alleges a civil

conspiracy to commit abuse of process and malicious prosecution.  Amend.Compl., ¶¶ 233-37.

Count II alleges claims of abuse of process and malicious prosecution under the individual  laws

of the District of Columbia and the 18 states in which litigation is alleged to have transpired

against Nader-Camejo.  Amend. Compl., ¶¶ 238-43.   Although the amended complaint fails to

specify which of these claims are asserted against which of the defendants and on the basis of

which alleged facts, it is nevertheless clear that to the extent that they are meant to be brought

against SEIU each of the claims is barred by the applicable statute of limitations.

A.      Plaintiffs' Claim of Malicious Prosecution is Barred By the One-Year Limitations Period
        Under DC Law.

Under D.C. Code Ann. § 12-301(4), the limitations period for bringing a claim of

malicious prosecution is one year.[6]   This period runs from the date of termination of the

underlying civil action.  *See, e.g., Shulman v. Miskell,* 626 F. 2d 173, 175-76 (D.C. Cir. 1980);

---

[6]      The general rule in the District of Columbia is that the statute of limitations of the forum state nearly always applies.  *See, e.g., A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F. 3d 1454, 1458 (D.C. Cir. 1995), citing *Namerdy v. Generalcar*, 217 A. 2d 109, 113 (D.C. App. 1966); *Huang v. D'Alboara,* 644 A. 2d 1, 4 (D.C. 1994).

*Parker v. The Grand Hyatt Hotel,* 124 F.Supp.2d 79, 87 (D.D.C. 2000) (Urbina, J).

The amended complaint is unclear whether plaintiffs are even asserting a malicious

prosecution claim against SEIU, which is not alleged to have had any direct role in the Oregon

ballot access litigation. However, even if plaintiffs are asserting such a claim against SEIU

based on the Oregon litigation, it is clearly time-barred because that litigation was terminated in

September, 2004, far more than one year before the original complaint was filed in this action.

B.    Plaintiffs' Claim of Abuse of Process Is Barred By the Three-Year Limitations Period
      Under DC Law.

Under D.C. Code Ann. § 12-301(8), the limitations period for bringing a claim of abuse

of process is three years.[7]   This period runs from the date of the last act constituting the tort.

*See*, *Whelan v. Abell*, 953 F.2d 663, 673 (D.C.Cir. 1992); *Fraternal Order of Police, D.C. Lodge*

*1, Inc. v. Gross,* C.A. No. 04-1531 (GK), 2005 WL 3201400, at n. 3 (D.D.C. 2005); *In Re*

*Rothenberg,* 173 B.R. 4, * 12, 1994 Bankr. LEXIS 1435 (D.C. Bk. 1994); *Neumann v. Vidal,*

1981 U.S. Dist. LEXIS 17688, *8-9 (D.D.C. 1981), rev'd on other grounds, 710 F. 2d 856

(D.C.Cir.1983).

The amended complaint is also unclear whether plaintiffs are asserting an abuse of process

claim directly against SEIU and, if so, what facts are alleged to give rise to this claim. In any

event, SEIU's alleged activities involving the Nader-Camejo petitions in Oregon cannot provide

---

[7]    A plaintiff may not avoid the one-year limitations period applicable to a malicious prosecution claim by recasting the claim as an abuse of process claim. *See Zandford v. Nat'l Ass'n of Securities Dealers,* 19 F.Supp.2d 4, 8 (D.D.C. 1988). Insofar as the amended complaint alleges no abuse of process in connection with the Oregon litigation other than the intervention of certain non-defendants in the litigation instigated by Nader-Camejo, plaintiff's abuse of process claim is in fact a claim for malicious prosecution governed by the one-year statute. In any event, the abuse of process claim is untimely even under the three-year statute.

the basis for a timely claim of common law abuse of process because they all allegedly took place in August 2004, beyond the three-year limitations period. Moreover, although SEIU had no alleged role in the Oregon ballot access litigation described in the amended complaint, it too transpired entirely during September 2004 and was concluded by the Oregon Supreme Court's decision on September 17, 2004. Any possible action relating to that litigation, therefore, cannot provide the basis for a timely claim of abuse of process filed no earlier than October 30, 2007.

C.    Plaintiffs' Civil Conspiracy Claim Is Barred By The Same One-Year and Three Year Limitations Periods.

It is firmly established that in the District of Columbia "there is no recognized independent tort action for civil conspiracy ..." *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A. 2d 724, 738 (D.C. 2000), citing *Waldon v. Covington,* 415 A. 2d 1070, 1074 n. 14 (D.C. 1980). *Accord: Media General, Inc. v. Tomlin,* 505 F.Supp.2d 51, 61 (D.D.C. 2007). Rather, as numerous cases have held, conspiracy is a means for establishing vicarious liability for an underlying tort. *E.g., Dove v. Washington Met. Area Transit Authority,* 402 F. Supp. 2d 91, 93 (D.D.C. 2005); *Daisley v. Riggs Bank, N.A.,* 372 F. Supp. 2d 61 (D.D.C. 2005) . "Because civil conspiracy depends on an actionable underlying tort, the statute of limitations for plaintiffs' conspiracy claim is 'established by the statute of limitations governing the underlying tort,'" *Hancock v. Homeq Servicing Corp.,* 2007 U.S.Dist. LEXIS 31051, at *28 (D.D.C. 2007), quoting *Thomas v. News World Commc's,* 681 F. Supp. 55, 73 (D.D.C. 1988). *See Lawrence v. Acree,* 665 F.2d 1319, 1324 (D.C.Cir. 1981) (statute of limitations in civil conspiracy action "runs separately from each overt act that is alleged to cause damage to the plaintiff.").

Count I of the amended complaint alleges a conspiracy to commit malicious prosecution and abuse of process. As shown above, insofar as the amended complaint purports to allege malicious prosecution and/or abuse of process claims directly against SEIU as a result of the

union's purported actions in Oregon, these claims are time-barred and cannot provide the basis for a conspiracy claim.   Similarly, if the amended complaint seeks to hold SEIU vicariously liable for malicious prosecution and abuse of process committed by the Oregon Democratic Party or other non-defendants in connection with the Oregon ballot access litigation, this claim too must fail because the alleged underlying torts would be time-barred against those individuals and entities, just as they are time-barred against SEIU.  Finally, insofar as the amended complaint may be read to seek to hold SEIU vicariously liable under a conspiracy theory for malicious prosecution or abuse of process allegedly committed by other defendants in other jurisdictions, these claims are barred by the applicable statutes of limitations, as demonstrated in the memoranda submitted by the other defendants in this case.

> **II.     Plaintiffs' Allegations of Malicious Prosecution, Abuse of Process and Conspiracy Fail To State Claims Upon Which Relief Can Be Granted.**

In addition to being time-barred, plaintiffs common law claims of malicious prosecution, abuse of process and conspiracy are defective as a matter of law and should be dismissed for failure to state a claim.

A.     <u>The Amended Complaint Fails to State a Claim for Malicious Prosecution Against SEIU Because The Union Did Not Bring Any Judicial Proceeding Against The Nader-Camejo Campaign And The Only Litigation To Which It May Possibly Be Linked In The Amended Complaint Was Resolved Against Nader-Camejo.</u>

In order to support an action for malicious prosecution, a plaintiff must show that the underlying civil action was instigated by the defendant with malice and without probable cause and that the action was terminated in the plaintiff's favor.  *See Pitt v. District of Columbia,* 491 F. 3d 494, 501 (D.C. Cir. 2007) (applying DC law);  *Joeckel v. Disabled American Veterans,* 793 A. 2d 1279, 1282 (D.C. 2002); *Morowitz v. Marvel,* 423 A. 2d 196, 198 (D.C. 1980);  *Ammerman v. Newman,* 384 A. 2d 637, 639 (D.C. 1978).  In the District of Columbia, the plaintiff must also show that he or she suffered special injury as a result of the underlying action.  *See Joeckel,* 793 A. 2d at 1282; *Morowitz,* 423 A. 2d at 198;  *Ammerman,* 384 A. 2d at 641.   Assuming that the amended complaint seeks to state a claim for malicious prosecution directly, as distinct from

vicariously, against SEIU, this claim must fail for at least two separate reasons.[8]

---

[8]     It is unclear whether Oregon law requires a showing of special injury in order to prevail in a malicious prosecution claim.  Since this claim against SEIU must fail for two other reasons, it is not necessary for the court to resolve the choice of law issue presented by any difference between Oregon and DC law on this point.

First, the amended complaint does not allege that SEIU was responsible for or had any role in any civil action brought against the Nader-Camejo campaign in Oregon, or anywhere else for that matter.[9]  Instead, the amended complaint alleges that after Nader-Camejo submitted its ballot access petitions to the Oregon Secretary of State, those petitions were disqualified by the Secretary of State, acting pursuant to his statutory duties under state law.[10]  Amend.Compl., ¶ 174.  Nader-Camejo then filed an action to overturn this decision and after the trial court ruled in the campaign's favor, the Secretary of State appealed this decision to the Supreme Court. Amend. Compl., ¶ 175-76.  These facts fail to show that SEIU was responsible for bringing the underlying civil action, which was brought by Nader-Camejo, or for the appeal to the Oregon Supreme Court, which was instigated by the Secretary of State.[11]  In short, SEIU did not cause any process to be issued against plaintiffs.

---

[9]    As noted earlier, even broadly read, the amended complaint does not attempt to implicate SEIU in the litigation involving Nader-Camejo in other jurisdictions except Oregon. Obviously, therefore, there can be no malicious prosecution claim against SEIU related to those cases.

[10]    The only allegation in the amended complaint linking SEIU to the Secretary of State's action invalidating the Nader-Camejo signatures is an unsupported suggestion that the Secretary's decision was "just as SEIU and ACT had planned." Amend. Compl., ¶ 174.  The amended complaint does not even allege, however, that the Secretary's decision was based on infirmities in the petitions that had been caused by SEIU, nor does it allege that SEIU had any other responsibility for the Secretary's action.  The fact that a private party might have taken steps which could cause the Secretary of State, acting pursuant to his independent statutory duty, to later nvalidate some signatures falls far short of an allegation that the private party was responsible for the Secretary's action and any ensuing litigation.

[11]    The amended complaint alleges  that the Oregon Democratic Party intervened in the Oregon Supreme Court.  It is unclear whether intervention as a defendant may be the basis for a malicious prosecution action, at least where the intervention was not necessary to allow the underlying action to go forward.  In any event, the amended complaint does not even raise this issue with respect to SEIU.

Second, even if the amended complaint alleged that SEIU was responsible for the filing of the Oregon litigation, that case was terminated unfavorably to Nader-Camejo by the Oregon Supreme Court's decision. This fact alone is fatal to plaintiffs' malicious prosecution claim as it may  pertain  to the Oregon litigation.  *See, e.g., Brown v. Carr,* 503 A. 2d 1241, 1244 (D.C. 1986); *Shulman v. Miskell*, 626 F. 2d 173, 175 (D.C. Cir. 1980); *Lucas v. District of Columbia*, 505 F.Supp. 2d 122 (D.D.C. 2007).

B.    The Amended Complaint Fails to State a Claim for Abuse of Process Because SEIU Was Not Involved In The Use of Any Process and No Process Is Alleged To Have Been Abused.

The tort of abuse of process occurs when there is a "perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." *Neumann v. Vidal,* 710 F. 2d 856, 860 (D.C.Cir. 1983), quoting *Hall v. Field Enterprises, Inc.,* 94 A. 2d 479, 481 (D.C. Mun. App. 1953). "The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in improper use after issuance." *Morowitz v. Marvel,* 423 A. 2d 196, 198 (D.C. 1980), citing *Jacobson v. Thrifty Paper Boxes, Inc.,* 230 A. 2d 710, 711 (D.C. 1967). Plaintiffs' allegations are also insufficient to state a claim against SEIU for abuse of process, if indeed the amended complaint can be read  to assert such a claim against SEIU.

First, similar to its claim for malicious prosecution, plaintiffs' abuse of process claim must fail because the amended complaint fails to link SEIU to any "process " which might have been abused.  SEIU is not even alleged to have been a party in the Oregon litigation involving the validity of the Nader-Camejo signatures, so it is impossible to fathom how the union might have

abused that litigation.

Second, the amended complaint does not allege any "perversion" or "abuse" carried out in connection with the Oregon litigation. Abuse of process requires "an act in the use of process other than such as would be proper in the regular prosecution of the charge." *National Football League Players Assn v. OPEIU, Local 2,* 947 F. Supp. 540, 543 (D.D.C. 1996). *Accord: Fraternal Order of Police, D.C. Lodge 1, Inc. v. Gross,* C.A. No. 04-1531 (GK), 2005 WL 3201400 (D.D.C. Nov. 9, 2005) ("[Plaintiffs] do not allege, however, that [defendant] acted in any way other than what would be expected in the normal course of a lawsuit, or that he accomplished any improper end by filing the lawsuit.")

Third, the amended complaint must fail because there is no allegation that the Oregon litigation was used primarily for a purpose for which it was not intended. The Oregon litigation ensured that a candidate who was unable to secure a sufficient number of valid signatures did not obtain ballot access, precisely the purpose for which the legal procedure was created. Indeed, the amended complaint acknowledges that keeping Nader-Camejo off of ballots throughout the country was precisely the purpose of the litigation filed against it.

Plaintiffs attempt to allege an ulterior motive by claiming that the defendants' overall purpose of the legal efforts to keep them off the ballot was to make it impossible for them to conduct their campaign by depleting their resources. However, neither this general allegation nor any of the other allegations of the amended complaint undercut the fact that the litigation primarily had the very purpose for which it was intended, namely to keep Nader-Camejo off the ballot in the jurisdictions where the litigation transpired. As the DC courts have stated, "in addition to ulterior motive, one must allege and prove that there has been a perversion of the

judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Morowitz v. Marvel,* 423 A. 2d at 198.

C.    Plaintiffs' Allegations of Civil Conspiracy Are Insufficient to Establish Vicarious Liability Against SEIU.

As noted earlier, in the District of Columbia , there is no independent cause of action for civil conspiracy.   Rather,  a conspiracy, if established,  serves only to create vicarious liability amongst multiple defendants for separate and independent torts. *See supra* pp. 7-8 .   Dismissal of plaintiffs' underlying malicious prosecution and abuse of process claims, therefore, must *per force* result in dismissal of their conspiracy claim as well. Furthermore,  even if the underlying torts are not dismissed, the amended complaint fails to state a basis for vicarious liability against SEIU under a conspiracy theory.

In order to prove the existence of a civil conspiracy, plaintiffs must allege and show "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful over act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Hancock v. Homeq Servicing Corp.,* 2007 U.S.Dist. LEXIS 331051, * 27 (D.D.C. 2007), quoting *Executive Sandwich Shoppe, Inc. v.  Carr Realty Corp.,* 749 A. 2d 724, 738 (D.C. 2000).   Here, the amended complaint fails to allege facts sufficent to establish  the existence of an agreement between SEIU and the other defendants and non-defendant co-conspirators to undertake any form of unlawful activity,[12] and, even if such an agreement existed,  it further fails to allege sufficient

---

[12]      This is not the first case to allege unsuccessfully that a conspiracy existed to keep Nader-Camejo off the 2004 ballot.  In *Fulani v. McAuliffe,* O4 Civ. 6973 (LAP) (S.D.N.Y. Sept. 7, 2005), a group of Nader-Camejo supporters brought federal claims under 42 U.S.C. §§ 1983 and 1985 against some of the same defendants as are named in this case and based on some of

facts showing that SEIU had a specific intent to advance any unlawful goals which the group may have held.

    1.      Conclusory Allegations of the Existence of a Conspiracy Are Insufficient to State A Claim.

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. ____, 127 S.Ct.1955 (2007), the Supreme Court recently clarified the standards to be applied by district courts when considering the adequacy of conspiracy allegations in a complaint in response to a motion to dismiss under Rule 12(b)(6).  The case involved a claim under § 1 of the Sherman Act, which requires a "contract, combination ..., or conspiracy, in restraint of trade."  In an effort to satisfy the conspiracy

---

the same facts as are alleged in the amended complaint.  Describing the case as "an attempt to pursue a political agenda" which the plaintiffs were unable to accomplish at the ballot box, Judge Preska dismissed these claims because of the absence of specific facts showing that a conspiracy existed:

> ... Plaintiffs claim to have identified a conspiracy among Defendants generally, yet they fail to specify when the conspiracy was formed, where the conspiracy was formed, or who participated in the conspiracy.  In fact, Plaintiffs concede that they are 'unable to specify when, by what means, and where all of the communications and meetings took place by which the conspiracy was formed and implemented.'" Slip op. at 11-12, quoting Def's. Br. at 3.  .

requirement, the amended complaint relied on allegations of "parallel conduct unfavorable to competition," but the Court held that these allegations standing alone were not sufficient to state a claim. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" the Court stated, requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do... Factual allegations must be enough to raise a right to relief above the speculative level, ...." 127 S.Ct.. at 1964-65 (citations omitted).    In a case alleging a conspiracy as an element of the claim, the Court went on, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made ...[including] plausible grounds to infer an agreement ...." *Id.*

*Twombly*'s "reasonable plausibility" test has been applied in numerous subsequent cases, including several in this court.    In *Shirk v. Garrow*, 505 F. Supp. 2d 169 (D.D.C. 2007), for example, this court applied *Twombly* in dismissing a case involving a failed property sale. And, in *Kopff v. World Research Group, LLC,* 2007 WL 3274791 (D,D.C. 2007), the court quoted extensively from *Twombly* in dismissing an abuse of process counterclaim.    *See also Dye v. United States,* 516 F.Supp.2d 61, 68 (D.D.C. 2007);   *Aktieselskabet AF 21 v. Fame Jeans, Inc.,* 511 F.Supp.2d 1, 16-19 (D.D.C. 2007); *Dorsey v. American Express Co.,* 499 F.Supp.2d 1 (D.D.C. 2007).

Although these cases make it clear that *Twombly* applies to cases such as this one, there are also strong policy reasons why the "reasonable plausibility" standard announced in *Twombly* should be applied in this case.  One of the principal reasons given by the Supreme Court for its decision was the extreme burden of massive discovery which follows the denial of a motion to dismiss in anti-trust cases.  127 S.Ct.. at 1966-67.  The amended complaint in this case alleges a

broad range of activities in 24 different states involving hundreds of alleged participants.  Full-blown discovery into these claims could similarly impose a tremendous burden on the defendants and the court.  Moreover,  the fact that the underlying issues alleged in the amended complaint involve core political activities of  parties, candidates, and politically active individuals and organizations provides an equally important reason why the case should not go forward in the absence of a "reasonable plausibility" that the existence of a conspiracy can ultimately  be shown.

  As the Supreme Court recently made clear, time-consuming, expensive investigations into private political activity may have a chilling effect on protected First Amendment speech and association.  *See Federal Election Commission v. Wisconsin Right to Life, Inc.,* 127 S.Ct. 2652, 2666 (2007).  There will be a similar negative  impact on free speech and association if unsuccessful political candidates may bring actions such as this one by merely alleging that their political opponents "conspired" to defeat them without any supporting allegations showing that such a conspiracy is plausible.

> 2.    The Amended Complaint Fails To Demonstrate A Reasonable Plausibility That SEIU Entered Into An Agreement With the Other Defendants.

Under *Twombly,* plaintiffs' repeated assertions that the defendants "conspired," "agreed" or "combined " with one another are not sufficient to establish a claim for conspiracy.  Such "labels and conclusions," 127 S.Ct. at 1966, cannot substitute for factual allegations which, if true, would plausibly show that an agreement occurred.   This conclusion is strengthened in this case by plaintiffs' admission that the terms "Defendants" and "conspirators" or "co-conspirators" "do not necessarily apply to every Defendant and every conspirator named in this complaint." Amend.Compl., ¶ 14

With respect to the alleged activities in Oregon, there is no suggestion in the amended

complaint that SEIU entered into an agreement with anyone to keep Nader-Camejo off the ballot through unlawful or any other means, including the Oregon Democratic Party and the party representatives who participated in the Oregon litigation.    Beyond Oregon, the closest that the amended complaint comes to alleging the existence of an agreement amongst any of the defendants is its assertion concerning a private meeting in Boston, Massachusetts on July 26, 2004.  According to the amended complaint, defendant Robert Brandon "organized" the meeting and,"on information and belief," defendant DNC paid for it.  Amend. Compl., ¶ 46.  Three individuals associated with defendant Ballot Project are alleged to have attended this meeting, *id.,* at which, it is further alleged, "the leaders and organizers of the conspiracy specifically agreed to sue and otherwise obstruct Nader-Camejo...."  Amend. Compl., ¶ 47.   Nowhere does the amended complaint allege that representatives of SEIU participated in, knew about, or had any other role in this meeting.

Beyond the alleged meeting between unidentified defendants, the amended complaint is devoid of factual allegations even remotely related to an agreement between the defendants.  With respect to SEIU, the amended complaint instead seeks to infer the existence of an agreement from extraneous facts which are insufficient on their face.  The amended complaint twice alleges, for example,  that SEIU's Secretary-Treasurer, Anna Burger, is a "DNC official",  Amend. Compl., ¶¶ 56, 177 , as if there is some sinister inference which can be drawn from this fact.   That a union official also sits as an "official" of a national political party is a very long way from alleging that the union and party have entered into an agreement to achieve an unlawful result.  If the bare fact of Ms. Burger's status as a DNC official was sufficient to establish a reasonable plausibility that SEIU and the DNC entered into an agreement to carry out the activities described

in the amended complaint, then little would be left to *Twombly* in cases alleging political conspiracies.

The other facts on which the amended complaint relies to show the existence of an agreement between SEIU and the other defendants are equally implausible.  The fact that SEIU "endorsed and publicly committed its resources to electing John Kerry in 2004," Amend. Compl., ¶ 177, says nothing about the existence of an agreement to carry out the litigation activities described in the amended complaint; if it did, then every person and entity who supported Senator Kerry could be named as a defendant or non-defendant co-conspirator in this case.   Endorsing and supporting federal candidates within the bounds of the law is at the heart of our political system; it should not serve as the basis for a conspiracy claim.  Similarly, the fact that SEIU allegedly donated $1,000,000 to the DNC in 2004,[13] *id.*, demonstrates nothing about the existence of an agreement.  If these allegations were sufficient to show a reasonable plausibility of an agreement between SEIU and DNC, then anyone who contributes to a party entity would be at risk whenever someone alleges that they participated in a conspiracy with the party.   Finally, the allegation that the DNC made certain limited  payments to SEIU, including $33,072 in political "consulting fees" in October and November 2004, *id.*, similarly  fails to show any plausible

---

[13]     We recognize that the allegations of the amended complaint must be taken as true in connection with a motion to dismiss under Rule 12(b)(6).  We would be remiss, however, if we let this statement stand uncorrected.  Under the Federal Election Campaign Act, labor organizations such as SEIU are not permitted to make any contributions to the national political parties.  *See* 2 U.S.C. § 441b(a).  Contributions by SEIU's political action committee to political parties are limited to $15,000.  *See* 2 U.S.C. § 441a(a)(2)(B).   The court may take judicial notice of these statutory provisions in evaluating the allegations of the amended complaint under Rule 12(b)(6).  *See Abhe & Svoboda, Inc.  v. Chao,* 508 F.3d 1052 (D.C. Cir. 2007); *Stewart v. National Education Ass'n,* 471 F.3d 169, 173 (D.C.Cir. 2006); *Hinton v. Shaw Pittman Potts & Trowbridge,* 257 F.Supp.2d 96, 100 n.5 (D.D.C. 2003);  *Baker v. Henderson,* 150 F.Supp.2d 17, 19 n.1 (D.D.C. 2001).

conspiratorial agreement with respect to the Nader-Camejo candidacies, since there are numerous reasons why a political party might make payments to an outside organization, including that the party used the organization's facilities or staff to carry out its political program. *See* 11 C.F.R. § 114.9(d).

In the end, the conspiracy claim against SEIU comes down to plaintiffs' speculation that because SEIU took actions which were allegedly intended to make it difficult for Nader-Camejo to obtain ballot access in Oregon, the union must have entered into an agreement with the other defendants to keep Nader-Camejo off of the ballot. As in *Twombly*, however, there is "an obvious alternative explanation," 127 S.Ct. at 1972, for the union's alleged Oregon activities which does not depend upon the existence of an agreement with the DNC, the Kerry-Edwards campaign, the Ballot Project or any of the other defendants. After the results of the 2000 election, "there was just no need for joint encouragement," 127 S.Ct. at 1971, of politically active unions, individuals and independent organizations to remind them about the potential impact of a renewed Nader candidacy on the chances of the Democratic candidate in 2004. The fact that a politically active, progressive, grass-roots organization is alleged to have acted to keep Nader-Camejo off the ballot in Oregon "does not make conspiracy plausible."

3.      The Amended Complaint Fails To Allege That SEIU's Actions Were Specifically Intended to Further Any Unlawful Actions of the other Defendants and Alleged Co-Conspirators.

In *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886 (1982), the Supreme Court set aside a state court damages judgement awarded against a civil rights organization and individual black citizens for a conspiracy to commit various torts in connection with a boycott of local merchants. Finding that certain elements of the boycott were "a form of speech or conduct that is

ordinarily entitled to protection under the First and Fourteenth Amendments," *id.*, at 907, the

Court ruled that "[t]he right to associate does not lose all constitutional protection merely because

some members of the group may have participated in conduct or advocated doctrine that itself is

not protected." *Id.*, at 908.  Where constitutionally protected activity may have been linked with

unlawful activity, the Court held, there are "restraints on the grounds that may give rise to

damages liability and on the persons who may be held accountable for those damages." *Id.*, at

916-17.  Specifically, "[f]or liability to be imposed by reason of association alone, it is necessary

to establish that the group itself possessed unlawful goals and that the individual held a specific

intent to further those illegal aims." *Id.*, at 920.  *See Pfizer, Inc. v. Giles (In re Asbestos School

Litigation),* 46 F.3d 1284, 1290 (3d Cir. 1994).

   The litigation activities described in the amended complaint through which the conspiracy

in this case is alleged to have been  carried out, like the boycott in *Claiborne Hardware,* plainly

involved constitutionally protected activity.  The "right of petition is one of the freedoms

protected by the Bill of Rights." *Eastern Railroad Presidents Conference v. Noerr Motor Freight

Inc.,* 365 U.S. 127, 137 (1961).  And, this includes coordinated action in petitioning

administrative agencies and courts.  *See California Motor Transport Co. v. Trucking Unlimited,*

404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right

of petition.").  Assuming *arguendo* that the amended complaint adequately pleads malicious

prosecution and abuse of process against some of the defendants and further assuming *arguendo*

that SEIU entered into some kind of agreement with those other defendants,  under *Claiborne

Hardware*,  SEIU still may not be held vicariously liable for the actions of other parties  unless

the goals of the group were to conduct unlawful activity and the union had  "a specific intent to

further those unlawful aims." There is no allegation in the amended complaint that either of these circumstances was present in this case.

### III. The Court Lacks Subject Matter Jurisdiction Because the Plaintiffs Have No Standing To Bring This Action.

The standing of the six voter plaintiffs to bring this action no longer exists, if it ever did. According to the amended complaint, the only injury alleged to have been suffered by the individual plaintiffs was the denial of their constitutional right to a "free choice of candidates" in the 2004 election. Amend. Compl., ¶¶ 231, 232. Putting aside whether this is the type of particularized injury in fact which may support standing under Article III, *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992), the amended complaint no longer seeks to pursue any violation of constitutional rights on behalf of any plaintiff. Instead, the amended complaint alleges common law torts arising from litigation against Nader-Camejo in which none of the voter plaintiffs were involved. Even if, as alleged, defendants actions in connection with litigation challenging Nader-Camejo's ballot access were tortious, only the parties involved in those cases could possibly have suffered any injury as a result of those actions, and the amended complaint alleges no such injury resulting from the litigation on the part of the voter plaintiffs. Amend. Compl., ¶¶ 228-230, 232. The voter plaintiffs do not have standing to seek relief for the alleged violations of their constitutional rights which are no longer in issue in this case.[14]

### Conclusion

---

[14] Plaintiffs Nader and Camejo also lack standing to pursue their claims because they have failed to allege that they, as distinct from their campaign committee, suffered any financial injury as a result of the ballot access litigation. While plaintiff Nader alleges that he made a loan to the committee which has not been paid back, there are numerous reasons why the loan might not have been paid which cannot be attributable to defendants.

For the foregoing reasons, all of the claims against SEIU should be dismissed for failure to state a claim for relief.

February 4, 2008                                    Respectfully submitted,


                                                   /s/ Michael B. Trister
                                                   Michael B. Trister
                                                   DC Bar No. 54080
                                                   Lichtman, Trister & Ross PLLC
                                                   1666 Connecticut Avenue, NW
                                                   Washington, D.C. 20009
                                                   (202) 328-1666

                                                   Judith A. Scott
                                                   General Counsel
                                                   D.C. Bar No. 374089
                                                   John J. Sullivan
                                                   Associate General Counsel
                                                   D.C. Bar No. 371278
                                                   SEIU
                                                   1800 Massachusetts Avenue, NW
                                                   Washington, D.C. 20036
                                                   (202) 730-7465

                                                   *Attorneys for Defendant Service Employees*
                                                   *International Union*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-02136 (RMU) |
| | ) | |
| | ) | |
| THE DEMOCRATIC NATIONAL COMMITTEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[Proposed] ORDER**

Upon consideration of the Motion of the Service Employees International Union to dismiss the amended complaint pursuant to Rules 12(b)(6) and 12(b)(1), F.R.Cv.P., the Memorandum of Points and Authorities In Support of SEIU's Motion to Dismiss, and the Opposition of Plaintiffs therefore, it is this _____ day of _____, 2008, ORDERED AND ADJUDGED that the mended complaint in this case (Dkt. No. 23) shall be and hereby is DISMISSED WITH PREJUDICE because the amended complaint fails to state a claim upon which relief can be granted and the court lacks subject matter jurisdiction.

_____
Hon. Ricardo M. Urbina
United States District Judge

Service List:

Oliver B. Hall
1835 16th Street, NW
Washington, D.C. 20009

Michael B. Trister
Lichtman, Trister & Ross, PLLC
Suite 500
1666 Connecticut Avenue, NW
Washington, D.C. 20009

Lawrence M. Noble
Skadden, Arps, Slate, Meagher
       & Flom LLP
1440 New York Avenue, NW
Washington, D.C. 20005-2111

Marc E. Elias
Perkins Coie
607 14th Street, NW
Washington, D.C. 20005

Laurence E. Gold
Suite 500
1666 Connecticut Avenue, NW
Washington, D.C. 20036

Lyn Utrecht
Ryan, Phillips, Utrecht
      & Mackinnon
1133 Connecticut Avenue, NW
Washington, D.C. 20036

Joseph E. Sandler
John Hardin Young
Steven Hershcowitz
Sandler, Reiff & Young, P.C.
50 E Street, SE #300
Washington, D.C. 20003

Douglas K. Spaulding
Reed Smith LLP
1301 K Street, NW
Washington, D.C. 20005

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-02136 (RMU) |
| | ) | |
| | ) | |
| THE DEMOCRATIC NATIONAL COMMITTEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**SEIU'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant Service Employees International Union ("SEIU") moves, pursuant to Rules 12(b)(6) and 12(b)(1), to dismiss the amended complaint in this action because the amended complaint fails to state a claim upon which relief can be granted and because the court lacks subject matter jurisdiction. The grounds in support of this motion are set forth in detail in the Memorandum of Points and Authorities In Support of SEIU's Motion to Dismiss submitted herewith.

February 4, 2008                                    Respectfully submitted,


/s/ Michael B. Trister

Michael B. Trister
DC Bar No. 54080
Lichtman, Trister & Ross PLLC
1666 Connecticut Avenue, NW
Washington, D.C. 20009

(202) 328-1666

Judith A. Scott
General Counsel
D.C. Bar No. 374089
John J. Sullivan
Associate General Counsel
D.C. Bar No. 371278
SEIU
1800 Massachusetts Avenue, NW
Washington, D.C. 20036
(202) 730-7465

*Attorneys for Defendant Service Employees
International Union*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-02136 (RMU) |
| | ) | |
| | ) | |
| THE DEMOCRATIC NATIONAL | ) | |
| COMMITTEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
SEIU'S MOTION TO DISMISS THE AMENDED COMPLAINT**

The Service Employees International Union ("SEIU") submits this memorandum in support of its motion to dismiss the amended complaint under Rule 12(b)(1) and (6), F.R.Cv.P.

<u>Statement of the Case</u>

The complaint in this case was originally filed in the Superior Court of the District of Columbia on October 30, 2007.[1]   SEIU removed the case to this Court pursuant to 28 U.S.C. § 1441(a) because the original complaint included claims for violation of federal rights over which the district courts of the United States have original jurisdiction.  Notice of Removal by Service Employees International Union (Dkt. # 1). The remaining defendants served in the Superior Court filed consents to the removal.   Counsel for plaintiffs and defendants then reached

---

[1]      SEIU was served with a summons and the complaint on November 9, 2007.
.

agreement that defendants would have until January 31, 2008 to file their responsive pleadings. *See* Minute Order Granting [9] Motion for Extension of Time to Answer (12/07/07).

On January 23, 2008, before any of the defendants had filed their responsive pleadings, plaintiffs filed an amended complaint which is virtually identical to the original complaint except that Counts III and IV alleging violations of federal law were deleted.[2]  Amended Complaint Against Democratic National Committee, et al. (Dkt. # 23 ) ("Amend. Compl." The filing of this amended complaint had the effect of extending until February 4, 2008 the date for defendants to file a responsive pleading to the amended complaint.  *See* Rule 15(a), F.R.Cv.P.

---

[2]    Although Counts III and IV of the original complaint were dropped, the amended complaint mysteriously continues to refer to alleged violations of constitutional  rights.  *See* Amended Complaint, ¶¶ 66(iii), 66(iv); 231, 232, 234, 239.   These stand-alone references do not require a response, since the amended complaint no longer sets forth a short and plain statement of any federal claim, as required by Rule 8(a)(2), F.R.Cv.P.  The amended complaint also continues to include the six individual voter plaintiffs who were named in the original complaint.  As discussed *infra,* p. 21, in the absence of constitutional claims, these plaintiffs do not have standing to sue and should be dismissed from the case if it goes forward.

On January 23, 2008, plaintiffs also filed a motion to remand the entire case to the District of Columbia Superior Court on the ground that the court now lacks jurisdiction over the action "because the Amended Complaint raises no federal claims arising under the laws or Constitution of the United States."  Plaintiffs' Motion to Remand (Dkt. # 24).   SEIU, along with the other defendants named in the amended complaint, is today filing a memorandum in opposition to the motion to remand on the ground that plaintiffs failed to provide a memorandum of points and authorities in support of that motion in accordance with the local rules.[3]   Since the motion to remand has not been acted upon, we have simultaneously filed a motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6).

<u>Allegations of the Amended Complaint</u>

The  amended complaint alleges that the twelve named defendants as well as an uncertain number of "non-defendant co-conspirators" and unnamed co-conspirators conspired to prevent plaintiffs Ralph Nader and Peter Miguel Camejo ("Nader-Camejo) from running for President and Vice President of the United States in 2004.  Amend. Compl., ¶ 1.   At the heart of this conspiracy, the amended complaint alleges that in a twelve week period between June and September 2004, defendants and their co-conspirators filed 24 complaints challenging ballot

---

[3]        The motion to remand states that it is based on 28 U.S.C. § 1441(c), a provision which the Supreme Court has ruled does not allow remand in cases such as this one because the federal claims in the original complaint were not "separate and independent" from the state claims. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 354-55 (1988 ).  If plaintiffs eventually put forward other grounds in support of their motion to remand, defendant SEIU expects to oppose that motion on the ground that it is part of an effort by plaintiffs to manipulate the jurisdiction of the federal courts based in part on plaintiffs actions in a parallel case they filed in the United States District Court for the Eastern District of Virginia in which plaintiffs are continuing to assert, against some but not all of the defendants here, the same federal claims which they dropped from their amended complaint in this case.

access for the Nader-Camejo Campaign in 17 states and intervened in proceedings to remove

Nader-Camejo from the ballot in Oregon.  Amend.Compl., ¶ 3.   The amended complaint also

alleges that as part of the conspiracy five administrative complaints were filed with the Federal

Election Commission ("FEC") by non-defendants.  Amend. Compl., ¶ 55.

     In addition to SEIU, the defendants named in the amended complaint include the

Democratic National Committee ("DNC"), Kerry-Edwards 2004 Inc. ("Kerry-Edwards"), the

principal presidential/vice-presidential campaign committee of John Kerry and John Edwards,

and the Ballot Project, Inc. ("Ballot Project"), which the amended complaint alleges is a section

527 political organization established to coordinate and finance the litigation against Nader-

Camejo. Amend. Compl., ¶ 25.   The amended complaint also names six individual defendants,

none of whom are alleged to have any connection to SEIU, and an independent political

organization known as America Coming Together ("ACT").   Although the amended complaint

is replete with allegations against the "Defendants,"  "conspirators," and "co-conspirators," it

acknowledges that, "[u]nless otherwise stated," these terms "and the charges alleged herein do

not necessarily apply to every Defendant and every conspirator named in this amended

complaint." Amend. Compl., ¶ 14.

     With a few very limited exceptions,[4] the specific allegations against SEIU  involve

Nader-Camejo's efforts to obtain ballot access in the State of Oregon.  Amend. Compl., ¶¶ 69,

---

[4]    In addition to the allegations relating to Oregon, the amended complaint alleges
that the Secretary-Treasurer of SEIU is a "DNC official,"  that SEIU supported the election of
John Kerry and President in the 2004 election, and that SEIU provided financial support to
defendant Democratic National Committee.  Amend. Compl., ¶¶ 56, 177.  The amended
complaint also alleges that SEIU is a founding member of ACT and its largest contributor, and
housing ACT in the union's Portland office.  Amend. Compl, ¶ 177.

166-78.   With respect to Oregon,  the amended complaint  alleges that unnamed  "conspirators" took steps to discourage people at Nader-Camejo's April 2004 and June 2004 conventions from nominating them, and , after Nader-Camejo later undertook a petition drive to obtain  ballot access, took additional steps to interfere with this drive.  Amend.Compl., ¶¶ 166-68.  In its only specific reference to SEIU in connection with the Oregon activities, the amended complaint alleges that  SEIU hired private investigators who on August 12, 2004 visited an uncertain number of unnamed "petitioners"[5] at their homes and falsely threatened them with jail time if their signatures were subsequently invalidated.  Amend. Compl., ¶ 170.   SEIU is also alleged to have delivered to the petitioners a letter from an attorney which reiterated the false threat.  *Id.* There is no allegation that SEIU undertook these alleged activities at the request, suggestion or in coordination with any other defendant or non-defendant co-conspirator.

The amended complaint goes on to allege that Nader-Camejo was able to submit a sufficient number of signatures to qualify for ballot access to the Oregon Secretary of State. Amend. Compl., ¶ 172.   These signatures, however, were challenged in a letter dated August 25, 2004 from an attorney, Roy Puliver,  who is alleged to be a contributor to the DNC and a member of the Oregon Democratic Party's President (sic) Council, Amend. Compl., ¶ 173, and, on September 2, 2004, the Secretary of State sent Nader-Camejo a letter stating that the campaign had failed to submit a sufficient number of qualified signatures.  Amend. Compl., ¶ 174.   In response to the Secretary's decision, on September 9, 2004, Nader-Camejo filed a complaint in the Marion County Circuit Court, which found that the Secretary's decision was not

---

[5]        Neither of the individual named Oregon plaintiffs allege that he was the victim of this alleged harassment.  Amend. Compl., ¶¶ 21, 22.

consistent with state law. Amend. Compl., ¶ 175.  The lower court's decision, however, was

reversed by the Oregon Supreme Court on September 17, 2004, in an appeal by the Secretary in

which the Oregon Democratic Party and its Executive Director intervened as parties.  Amend.

Compl., ¶ 176.   As a result of the Supreme Court's decision, Nader-Camejo did not appear on

the Oregon ballot  in the 2004 election. Amend. Compl., ¶ 176.

Argument

**I.    All of Plaintiffs' Claims Against SEIU Are Time-Barred.**

The amended complaint pleads two separate legal claims.  Count I  alleges a civil

conspiracy to commit abuse of process and malicious prosecution.  Amend.Compl., ¶¶ 233-37.

Count II alleges claims of abuse of process and malicious prosecution under the individual  laws

of the District of Columbia and the 18 states in which litigation is alleged to have transpired

against Nader-Camejo.  Amend. Compl., ¶¶ 238-43.   Although the amended complaint fails to

specify which of these claims are asserted against which of the defendants and on the basis of

which alleged facts, it is nevertheless clear that to the extent that they are meant to be brought

against SEIU each of the claims is barred by the applicable statute of limitations.

A.    Plaintiffs' Claim of Malicious Prosecution is Barred By the One-Year Limitations Period
      Under DC Law.

Under D.C. Code Ann. § 12-301(4), the limitations period for bringing a claim of

malicious prosecution is one year.[6]   This period runs from the date of termination of the

underlying civil action.  *See, e.g., Shulman v. Miskell,* 626 F. 2d 173, 175-76 (D.C. Cir. 1980);

---

[6]      The general rule in the District of Columbia is that the statute of limitations of the
forum state nearly always applies.  *See, e.g., A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62
F. 3d 1454, 1458 (D.C. Cir. 1995), citing *Namerdy v. Generalcar*, 217 A. 2d 109, 113 (D.C.
App. 1966); *Huang v. D'Alboara,* 644 A. 2d 1, 4 (D.C. 1994).

*Parker v. The Grand Hyatt Hotel,* 124 F.Supp.2d 79, 87 (D.D.C. 2000) (Urbina, J).

The amended complaint  is unclear whether plaintiffs are even asserting a malicious

prosecution claim against SEIU, which is not alleged to have had any direct role in the Oregon

ballot access litigation.  However, even if plaintiffs are asserting such a claim against SEIU

based on the Oregon litigation, it is clearly time-barred because that litigation was terminated in

September, 2004, far more than one year before the original complaint was filed in this action.

B.    Plaintiffs' Claim of Abuse of Process Is Barred By the Three-Year Limitations Period
       Under DC Law.

Under D.C. Code Ann. § 12-301(8), the limitations period for bringing a claim of abuse

of process is three years.[7]   This period runs from the date of the last act constituting the tort.

*See*, *Whelan v. Abell*, 953 F.2d 663, 673 (D.C.Cir. 1992); *Fraternal Order of Police, D.C. Lodge

1, Inc. v. Gross,* C.A. No. 04-1531 (GK), 2005 WL 3201400, at n. 3 (D.D.C. 2005); *In Re

Rothenberg,* 173 B.R. 4, * 12, 1994 Bankr. LEXIS 1435 (D.C. Bk. 1994);  *Neumann v. Vidal,*

1981 U.S. Dist. LEXIS 17688, *8-9 (D.D.C. 1981), rev'd on other grounds, 710 F. 2d 856

(D.C.Cir.1983).

The amended complaint is also unclear whether plaintiffs are asserting an abuse of process

claim directly against SEIU and, if so, what facts are alleged to give rise to this claim.  In any

event, SEIU's alleged activities involving the Nader-Camejo petitions in Oregon cannot provide

---

[7]    A plaintiff may not avoid the one-year limitations period  applicable to a
malicious prosecution claim by recasting the claim as an abuse of process claim.  *See Zandford
v. Nat'l Ass'n of Securities Dealers,* 19 F.Supp.2d 4, 8 (D.D.C. 1988).  Insofar as the amended
complaint alleges no abuse of process in connection with the Oregon litigation other than the
intervention of certain non-defendants in the litigation instigated by Nader-Camejo, plaintiff's
abuse of process claim is in fact a claim for malicious prosecution governed by the one-year
statute. In any event, the abuse of process claim is untimely even under the three-year statute.

the basis for a timely claim of common law abuse of process because they all allegedly took place in  August 2004, beyond the three-year limitations period.  Moreover, although SEIU had no alleged role in the Oregon ballot access litigation described in the amended complaint, it too transpired entirely during September 2004 and was concluded by the Oregon Supreme Court's decision on September 17, 2004.  Any  possible action relating to that litigation, therefore, cannot provide the basis for a timely claim of  abuse of process filed no earlier than October 30, 2007.

C.    Plaintiffs' Civil Conspiracy Claim Is Barred By The Same One-Year and Three Year
      Limitations Periods.

      It is firmly established that in the District of Columbia "there is no recognized independent tort action for civil conspiracy ..." *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A. 2d 724, 738 (D.C. 2000), citing *Waldon v. Covington,* 415 A. 2d 1070, 1074 n. 14 (D.C. 1980). *Accord: Media General, Inc. v. Tomlin,* 505 F.Supp.2d 51, 61 (D.D.C. 2007). Rather, as numerous cases have held, conspiracy is a means for establishing vicarious liability for an underlying tort. *E.g.,  Dove v. Washington Met. Area Transit Authority,* 402 F. Supp. 2d 91, 93 (D.D.C. 2005); *Daisley v. Riggs Bank, N.A.,* 372 F. Supp. 2d 61  (D.D.C. 2005) .  "Because civil conspiracy depends on an actionable underlying tort, the statute of limitations for plaintiffs' conspiracy claim is 'established by the statute of limitations governing the underlying tort,'" *Hancock v. Homeq Servicing Corp.,* 2007 U.S.Dist. LEXIS 31051, at *28 (D.D.C. 2007), quoting *Thomas v. News World Commc's,* 681 F. Supp. 55, 73 (D.D.C. 1988). *See Lawrence v. Acree,* 665 F.2d 1319, 1324 (D.C.Cir. 1981) (statute of limitations in civil conspiracy action "runs separately from each overt act that is alleged to cause damage to the plaintiff.").

      Count I of the amended complaint alleges a conspiracy to commit malicious prosecution and abuse of process.  As shown above, insofar as the amended complaint purports to allege malicious prosecution and/or abuse of process claims directly against SEIU as a result of the

˘  8  ˘

union's  purported actions in Oregon, these claims are time-barred and cannot provide the basis
for a conspiracy claim.   Similarly, if the amended complaint seeks to hold SEIU vicariously
liable for malicious prosecution and abuse of process committed by the Oregon Democratic Party
or other non-defendants in connection with the Oregon ballot access litigation, this claim too must
fail because the alleged underlying torts would be  time-barred against those individuals and
entities, just as they are time-barred against SEIU.  Finally, insofar as the amended complaint may
be read to seek to hold SEIU  vicariously liable under a conspiracy theory for malicious
prosecution or abuse of process allegedly committed by other defendants in other jurisdictions,
these claims are barred by the applicable statutes of limitations, as demonstrated in the
memoranda submitted by the other defendants in this case.

II.    **Plaintiffs' Allegations  of Malicious Prosecution, Abuse of Process and
Conspiracy Fail To State Claims Upon Which Relief Can Be Granted.**

In addition to being time-barred, plaintiffs common law claims of malicious prosecution,

abuse of process and conspiracy are defective as a matter of law and should be dismissed for

failure to state a claim.

A.    <u>The Amended Complaint Fails to State a Claim for Malicious Prosecution Against SEIU
Because The Union Did Not Bring Any Judicial Proceeding Against The Nader-Camejo
Campaign And The Only Litigation To Which It May Possibly Be Linked In The
Amended Complaint Was Resolved Against Nader-Camejo.</u>

In order to support an action for malicious prosecution, a plaintiff must show that the

underlying civil action was instigated by the defendant with malice and without probable cause

and that the action was terminated in the plaintiff's favor.  *See Pitt v. District of Columbia,* 491 F.

3d 494, 501 (D.C. Cir. 2007) (applying DC law);  *Joeckel v. Disabled American Veterans,* 793 A.

2d 1279, 1282 (D.C. 2002); *Morowitz v. Marvel,* 423 A. 2d 196, 198 (D.C. 1980);  *Ammerman v.*

*Newman,* 384 A. 2d 637, 639 (D.C. 1978).  In the District of Columbia, the plaintiff must also

show that he or she suffered special injury as a result of the underlying action.  *See Joeckel,* 793

A. 2d at 1282; *Morowitz,* 423 A. 2d at 198;  *Ammerman,* 384 A. 2d at 641.   Assuming that the

amended complaint seeks to state a claim for malicious prosecution directly, as distinct from

vicariously, against SEIU, this claim  must fail  for at least two separate reasons.[8]

---

[8]     It is unclear whether Oregon law requires a showing of special injury in order to prevail in a malicious prosecution claim.  Since this claim against SEIU must fail for two other reasons, it is not necessary for the court to resolve the choice of law issue presented by any difference between Oregon and DC law on this point.

First, the amended complaint does not allege that SEIU was responsible for or had any role in any civil action brought against the Nader-Camejo campaign in Oregon, or anywhere else for that matter.[9]   Instead, the amended complaint alleges that after Nader-Camejo submitted its ballot access petitions to the Oregon Secretary of State, those petitions were disqualified by the Secretary of State, acting pursuant to his statutory duties under state law.[10] Amend.Compl., ¶ 174.   Nader-Camejo then filed an action to overturn this decision and after the trial court ruled in the campaign's favor, the Secretary of State appealed this decision to the Supreme Court. Amend. Compl., ¶ 175-76.  These facts fail to show that SEIU was responsible for bringing the underlying civil action, which was brought by Nader-Camejo, or for the appeal to the Oregon Supreme Court, which was instigated by the Secretary of State.[11]   In short, SEIU did not cause any process to be issued against plaintiffs.

---

[9]    As noted earlier, even broadly read, the amended complaint does not attempt to implicate SEIU in the litigation involving Nader-Camejo in other jurisdictions except Oregon. Obviously, therefore, there can be no malicious prosecution claim against SEIU related to those cases.

[10]    The only allegation in the amended complaint linking SEIU to the Secretary of State's action invalidating the Nader-Camejo signatures is an unsupported suggestion that the Secretary's decision was "just as SEIU and ACT had planned." Amend. Compl., ¶ 174.  The amended complaint does not even allege, however, that the Secretary's decision was based on infirmities in the petitions that had been caused by SEIU, nor does it allege that SEIU had any other responsibility for the Secretary's action.  The fact that a private party might have taken steps which could cause the Secretary of State, acting pursuant to his independent statutory duty, to later nvalidate some signatures falls far short of an allegation that the private party was responsible for the Secretary's action and any ensuing litigation.

[11]    The amended complaint alleges  that the Oregon Democratic Party intervened in the Oregon Supreme Court.  It is unclear whether intervention as a defendant may be the basis for a malicious prosecution action, at least where the intervention was not necessary to allow the underlying action to go forward.  In any event, the amended complaint does not even raise this issue with respect to SEIU.

Second, even if the amended complaint alleged that SEIU was responsible for the filing of the Oregon litigation, that case was terminated unfavorably to Nader-Camejo by the Oregon Supreme Court's decision. This fact alone is fatal to plaintiffs' malicious prosecution claim as it may pertain to the Oregon litigation. *See, e.g., Brown v. Carr,* 503 A. 2d 1241, 1244 (D.C. 1986); *Shulman v. Miskell*, 626 F. 2d 173, 175 (D.C. Cir. 1980); *Lucas v. District of Columbia*, 505 F.Supp. 2d 122 (D.D.C. 2007).

B.    <u>The Amended Complaint Fails to State a Claim for Abuse of Process Because SEIU Was Not Involved In The Use of Any Process and No Process Is Alleged To Have Been Abused.</u>

The tort of abuse of process occurs when there is a "perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." *Neumann v. Vidal,* 710 F. 2d 856, 860 (D.C.Cir. 1983), quoting *Hall v. Field Enterprises, Inc.,* 94 A. 2d 479, 481 (D.C. Mun. App. 1953). "The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in improper use after issuance." *Morowitz v. Marvel,* 423 A. 2d 196, 198 (D.C. 1980), citing *Jacobson v. Thrifty Paper Boxes, Inc.,* 230 A. 2d 710, 711 (D.C. 1967). Plaintiffs' allegations are also insufficient to state a claim against SEIU for abuse of process, if indeed the amended complaint can be read to assert such a claim against SEIU.

First, similar to its claim for malicious prosecution, plaintiffs' abuse of process claim must fail because the amended complaint fails to link SEIU to any "process " which might have been abused. SEIU is not even alleged to have been a party in the Oregon litigation involving the validity of the Nader-Camejo signatures, so it is impossible to fathom how the union might have

abused that litigation.

Second, the amended complaint does not allege any "perversion" or "abuse" carried out in connection with the Oregon litigation. Abuse of process requires "an act in the use of process other than such as would be proper in the regular prosecution of the charge." *National Football League Players Assn v. OPEIU, Local 2,* 947 F. Supp. 540, 543 (D.D.C. 1996). *Accord: Fraternal Order of Police, D.C. Lodge 1, Inc. v. Gross,* C.A. No. 04-1531 (GK), 2005 WL 3201400 (D.D.C. Nov. 9, 2005) ("[Plaintiffs] do not allege, however, that [defendant] acted in any way other than what would be expected in the normal course of a lawsuit, or that he accomplished any improper end by filing the lawsuit.")

Third, the amended complaint must fail because there is no allegation that the Oregon litigation was used primarily for a purpose for which it was not intended. The Oregon litigation ensured that a candidate who was unable to secure a sufficient number of valid signatures did not obtain ballot access, precisely the purpose for which the legal procedure was created. Indeed, the amended complaint acknowledges that keeping Nader-Camejo off of ballots throughout the country was precisely the purpose of the litigation filed against it.

Plaintiffs attempt to allege an ulterior motive by claiming that the defendants' overall purpose of the legal efforts to keep them off the ballot was to make it impossible for them to conduct their campaign by depleting their resources. However, neither this general allegation nor any of the other allegations of the amended complaint undercut the fact that the litigation primarily had the very purpose for which it was intended, namely to keep Nader-Camejo off the ballot in the jurisdictions where the litigation transpired. As the DC courts have stated, "in addition to ulterior motive, one must allege and prove that there has been a perversion of the

judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Morowitz v. Marvel,* 423 A. 2d at 198.

C.   Plaintiffs' Allegations of Civil Conspiracy Are Insufficient to Establish Vicarious  
     Liability Against SEIU.

As noted earlier, in the District of Columbia , there is no independent cause of action for civil conspiracy.  Rather,  a conspiracy, if established,  serves only to create vicarious liability amongst multiple defendants for separate and independent torts. *See supra* pp. 7-8 .   Dismissal of plaintiffs' underlying malicious prosecution and abuse of process claims, therefore, must *per force* result in dismissal of their conspiracy claim as well. Furthermore,  even if the underlying torts are not dismissed, the amended complaint fails to state a basis for vicarious liability against SEIU under a conspiracy theory.

In order to prove the existence of a civil conspiracy, plaintiffs must allege and show "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful over act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Hancock v. Homeq Servicing Corp.,* 2007 U.S.Dist. LEXIS 331051, * 27 (D.D.C. 2007), quoting *Executive Sandwich Shoppe, Inc. v.  Carr Realty Corp.,* 749 A. 2d 724, 738 (D.C. 2000).   Here, the amended complaint fails to allege facts sufficent to establish  the existence of an agreement between SEIU and the other defendants and non-defendant co-conspirators to undertake any form of unlawful activity,[12] and, even if such an agreement existed,  it further fails to allege sufficient

---

[12]     This is not the first case to allege unsuccessfully that a conspiracy existed to keep Nader-Camejo off the 2004 ballot.  In *Fulani v. McAuliffe,* O4 Civ. 6973 (LAP) (S.D.N.Y. Sept. 7, 2005), a group of Nader-Camejo supporters brought federal claims under 42 U.S.C. §§ 1983 and 1985 against some of the same defendants as are named in this case and based on some of

facts showing that SEIU had a specific intent to advance any unlawful goals which the group may

have held.

      1.      Conclusory Allegations of the Existence of a Conspiracy Are Insufficient to State A Claim.

      In *Bell Atlantic Corp. v. Twombly,* 550 U.S. ____, 127 S.Ct.1955 (2007), the Supreme

Court recently clarified the standards to be applied by district courts when considering the

adequacy of conspiracy allegations in a complaint in response to a motion to dismiss under Rule

12(b)(6).   The case involved a claim under § 1 of the Sherman Act, which requires a "contract,

combination ..., or conspiracy, in restraint of trade."   In an effort to satisfy  the conspiracy

---

the same facts as are alleged in the amended complaint.  Describing the case as "an attempt to pursue a political agenda" which the plaintiffs were unable to accomplish at the ballot box, Judge Preska dismissed these claims because of the absence of specific facts showing that a conspiracy existed:

> ... Plaintiffs claim to have identified a conspiracy among Defendants generally, yet they fail to specify when the conspiracy was formed, where the conspiracy was formed, or who participated in the conspiracy.  In fact, Plaintiffs concede that they are 'unable to specify when, by what means, and where all of the communications and meetings took place by which the conspiracy was formed and implemented.'" Slip op. at 11-12, quoting Def's. Br. at 3.  .

requirement, the amended complaint relied on allegations of "parallel conduct unfavorable to competition," but the Court held that these allegations standing alone were not sufficient to state a claim. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" the Court stated,  requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do... Factual allegations must be enough to raise a right to relief above the speculative level, ...." 127 S.Ct.. at 1964-65 (citations omitted).   In a case alleging a conspiracy as an element of the claim, the Court went on, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made ...[including] plausible grounds to infer an agreement ...." *Id.*

*Twombly*'s "reasonable plausibility" test has been applied in numerous subsequent cases, including several in this court.   In *Shirk v. Garrow*, 505 F. Supp. 2d 169 (D.D.C. 2007), for example, this court applied *Twombly* in dismissing a case involving a failed property sale.  And, in *Kopff v. World Research Group, LLC,* 2007 WL 3274791 (D,D.C. 2007), the court quoted extensively from *Twombly* in dismissing an abuse of process counterclaim.  *See also Dye v. United States,* 516 F.Supp.2d 61, 68 (D.D.C. 2007);  *Aktieselskabet AF 21 v. Fame Jeans, Inc.,* 511 F.Supp.2d 1, 16-19 (D.D.C. 2007); *Dorsey v. American Express Co.,* 499 F.Supp.2d 1 (D.D.C. 2007).

Although these cases make it clear that *Twombly* applies to cases such as this one, there are also strong policy reasons why the "reasonable plausibility" standard announced in *Twombly* should be applied in this case.  One of the principal reasons given by the Supreme Court for its decision was the extreme burden of massive discovery which follows the denial of a motion to dismiss in anti-trust cases.  127 S.Ct.. at 1966-67.  The amended complaint in this case alleges a

broad range of activities in 24 different states involving hundreds of alleged participants.  Full-blown discovery into these claims could similarly impose a tremendous burden on the defendants and the court.  Moreover,  the fact that the underlying issues alleged in the amended complaint involve core political activities of  parties, candidates, and politically active individuals and organizations provides an equally important reason why the case should not go forward in the absence of a "reasonable plausibility" that the existence of a conspiracy can ultimately  be shown.

  As the Supreme Court recently made clear, time-consuming, expensive investigations into private political activity may have a chilling effect on protected First Amendment speech and association.  *See Federal Election Commission v. Wisconsin Right to Life, Inc.,* 127 S.Ct. 2652, 2666 (2007).  There will be a similar negative  impact on free speech and association if unsuccessful political candidates may bring actions such as this one by merely alleging that their political opponents "conspired" to defeat them without any supporting allegations showing that such a conspiracy is plausible.

> 2.      The Amended Complaint Fails To Demonstrate A Reasonable Plausibility That
> SEIU Entered Into An Agreement With the Other Defendants.

Under *Twombly,* plaintiffs' repeated assertions that the defendants "conspired," "agreed" or "combined " with one another are not sufficient to establish a claim for conspiracy.  Such "labels and conclusions," 127 S.Ct. at 1966, cannot substitute for factual allegations which, if true, would plausibly show that an agreement occurred.   This conclusion is strengthened in this case by plaintiffs' admission that the terms "Defendants" and "conspirators" or "co-conspirators" "do not necessarily apply to every Defendant and every conspirator named in this complaint." Amend.Compl., ¶ 14

With respect to the alleged activities in Oregon, there is no suggestion in the amended

complaint that SEIU entered into an agreement with anyone to keep Nader-Camejo off the ballot through unlawful or any other means, including the Oregon Democratic Party and the party representatives who participated in the Oregon litigation.   Beyond Oregon, the closest that the amended complaint comes to alleging the existence of an agreement amongst any of the defendants is its assertion concerning a private meeting in Boston, Massachusetts on July 26, 2004.  According to the amended complaint, defendant Robert Brandon "organized" the meeting and,"on information and belief," defendant DNC paid for it.  Amend. Compl., ¶ 46.  Three individuals associated with defendant Ballot Project are alleged to have attended this meeting, *id.,* at which, it is further alleged, "the leaders and organizers of the conspiracy specifically agreed to sue and otherwise obstruct Nader-Camejo...."  Amend. Compl., ¶ 47.   Nowhere does the amended complaint allege that representatives of SEIU participated in, knew about, or had any other role in this meeting.

Beyond the alleged meeting between unidentified defendants, the amended complaint is devoid of factual allegations even remotely related to an agreement between the defendants.  With respect to SEIU, the amended complaint instead seeks to infer the existence of an agreement from extraneous facts which are insufficient on their face.  The amended complaint twice alleges, for example,  that SEIU's Secretary-Treasurer, Anna Burger, is a "DNC official",  Amend. Compl., ¶¶ 56, 177 , as if there is some sinister inference which can be drawn from this fact.   That a union official also sits as an "official" of a national political party is a very long way from alleging that the union and party have entered into an agreement to achieve an unlawful result.  If the bare fact of Ms. Burger's status as a DNC official was sufficient to establish a reasonable plausibility that SEIU and the DNC entered into an agreement to carry out the activities described

in the amended complaint, then little would be left to *Twombly* in cases alleging political conspiracies.

The other facts on which the amended complaint relies to show the existence of an agreement between SEIU and the other defendants are equally implausible. The fact that SEIU "endorsed and publicly committed its resources to electing John Kerry in 2004," Amend. Compl., ¶ 177, says nothing about the existence of an agreement to carry out the litigation activities described in the amended complaint; if it did, then every person and entity who supported Senator Kerry could be named as a defendant or non-defendant co-conspirator in this case. Endorsing and supporting federal candidates within the bounds of the law is at the heart of our political system; it should not serve as the basis for a conspiracy claim. Similarly, the fact that SEIU allegedly donated $1,000,000 to the DNC in 2004,[13] *id.*, demonstrates nothing about the existence of an agreement. If these allegations were sufficient to show a reasonable plausibility of an agreement between SEIU and DNC, then anyone who contributes to a party entity would be at risk whenever someone alleges that they participated in a conspiracy with the party. Finally, the allegation that the DNC made certain limited payments to SEIU, including $33,072 in political "consulting fees" in October and November 2004, *id.*, similarly fails to show any plausible

---

[13]    We recognize that the allegations of the amended complaint must be taken as true in connection with a motion to dismiss under Rule 12(b)(6). We would be remiss, however, if we let this statement stand uncorrected. Under the Federal Election Campaign Act, labor organizations such as SEIU are not permitted to make any contributions to the national political parties. *See* 2 U.S.C. § 441b(a). Contributions by SEIU's political action committee to political parties are limited to $15,000. *See* 2 U.S.C. § 441a(a)(2)(B). The court may take judicial notice of these statutory provisions in evaluating the allegations of the amended complaint under Rule 12(b)(6). *See Abhe & Svoboda, Inc. v. Chao,* 508 F.3d 1052 (D.C. Cir. 2007); *Stewart v. National Education Ass'n,* 471 F.3d 169, 173 (D.C.Cir. 2006); *Hinton v. Shaw Pittman Potts & Trowbridge,* 257 F.Supp.2d 96, 100 n.5 (D.D.C. 2003); *Baker v. Henderson,* 150 F.Supp.2d 17, 19 n.1 (D.D.C. 2001).

conspiratorial agreement with respect to the Nader-Camejo candidacies, since there are numerous reasons why a political party might make payments to an outside organization, including that the party used the organization's facilities or staff to carry out its political program. *See* 11 C.F.R. § 114.9(d).

In the end, the conspiracy claim against SEIU comes down to plaintiffs' speculation  that because SEIU took actions which were allegedly intended to make it difficult for Nader-Camejo to obtain ballot access in Oregon, the union must have entered into an agreement with the other defendants to keep Nader-Camejo off of the ballot.  As in *Twombly*, however, there is "an obvious alternative explanation," 127 S.Ct. at 1972, for the union's alleged Oregon activities which does not depend upon the existence of an agreement with the DNC, the Kerry-Edwards campaign, the Ballot Project or any of the other defendants.   After the results of the 2000 election, "there was just no need for joint encouragement," 127 S.Ct. at 1971, of politically active unions, individuals and independent organizations to remind them about the potential impact of a renewed Nader candidacy on the chances of the Democratic candidate in 2004.   The fact that a politically active, progressive, grass-roots organization is alleged to have acted to keep Nader-Camejo off the ballot in Oregon "does not make conspiracy plausible."

> 3.    The Amended Complaint Fails To Allege That SEIU's Actions Were Specifically Intended to Further Any Unlawful Actions of the other Defendants and Alleged Co-Conspirators.

In *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886 (1982), the Supreme Court set aside a state court damages judgement awarded against a civil rights organization and individual black citizens for a conspiracy to commit various torts in connection with a boycott of local merchants.  Finding that certain elements of the boycott were "a form of speech or conduct that is

ordinarily entitled to protection under the First and Fourteenth Amendments," *id.*, at 907, the Court ruled that "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Id.,* at 908. Where constitutionally protected activity may have been linked with unlawful activity, the Court held, there are "restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *Id.,* at 916-17. Specifically, "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id.,* at 920. *See Pfizer, Inc. v. Giles (In re Asbestos School Litigation),* 46 F.3d 1284, 1290 (3d Cir. 1994).

The litigation activities described in the amended complaint through which the conspiracy in this case is alleged to have been  carried out, like the boycott in *Claiborne Hardware,* plainly involved constitutionally protected activity.  The "right of petition is one of the freedoms protected by the Bill of Rights." *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127, 137 (1961).  And, this includes coordinated action in petitioning administrative agencies and courts.  *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").  Assuming *arguendo* that the amended complaint adequately pleads malicious prosecution and abuse of process against some of the defendants and further assuming *arguendo* that SEIU entered into some kind of agreement with those other defendants,  under *Claiborne Hardware*,  SEIU still may not be held vicariously liable for the actions of other parties  unless the goals of the group were to conduct unlawful activity and the union had  "a specific intent to

further those unlawful aims." There is no allegation in the amended complaint that either of these circumstances was present in this case.

### III.     The Court Lacks Subject Matter Jurisdiction Because the Plaintiffs Have No Standing To Bring This Action.

The standing of the six voter plaintiffs to bring this action no longer exists, if it ever did. According to the amended complaint, the only injury alleged to have been suffered by the individual plaintiffs was the denial of their constitutional right to a "free choice of candidates" in the 2004 election. Amend. Compl., ¶¶ 231, 232. Putting aside whether this is the type of particularized injury in fact which may support standing under Article III, *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992), the amended complaint no longer seeks to pursue any violation of constitutional rights on behalf of any plaintiff. Instead, the amended complaint alleges common law torts arising from litigation against Nader-Camejo in which none of the voter plaintiffs were involved. Even if, as alleged, defendants actions in connection with litigation challenging Nader-Camejo's ballot access were tortious, only the parties involved in those cases could possibly have suffered any injury as a result of those actions, and the amended complaint alleges no such injury resulting from the litigation on the part of the voter plaintiffs. Amend. Compl., ¶¶ 228-230, 232. The voter plaintiffs do not have standing to seek relief for the alleged violations of their constitutional rights which are no longer in issue in this case.[14]

Conclusion

---

[14]     Plaintiffs Nader and Camejo also lack standing to pursue their claims because they have failed to allege that they, as distinct from their campaign committee, suffered any financial injury as a result of the ballot access litigation. While plaintiff Nader alleges that he made a loan to the committee which has not been paid back, there are numerous reasons why the loan might not have been paid which cannot be attributable to defendants.

For the foregoing reasons, all of the claims against SEIU should be dismissed for failure to state a claim for relief.

February 4, 2008                                    Respectfully submitted,


                                                   /s/ Michael B. Trister
                                                   Michael B. Trister
                                                   DC Bar No. 54080
                                                   Lichtman, Trister & Ross PLLC
                                                   1666 Connecticut Avenue, NW
                                                   Washington, D.C. 20009
                                                   (202) 328-1666

                                                   Judith A. Scott
                                                   General Counsel
                                                   D.C. Bar No. 374089
                                                   John J. Sullivan
                                                   Associate General Counsel
                                                   D.C. Bar No. 371278
                                                   SEIU
                                                   1800 Massachusetts Avenue, NW
                                                   Washington, D.C. 20036
                                                   (202) 730-7465

                                                   *Attorneys for Defendant Service Employees*
                                                   *International Union*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-02136 (RMU) |
| | ) | |
| | ) | |
| THE DEMOCRATIC NATIONAL COMMITTEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**[Proposed] ORDER**

Upon consideration of the Motion of the Service Employees International Union to dismiss the amended complaint pursuant to Rules 12(b)(6) and 12(b)(1), F.R.Cv.P., the Memorandum of Points and Authorities In Support of SEIU's Motion to Dismiss, and the Opposition of Plaintiffs therefore, it is this _____ day of _____, 2008, ORDERED AND ADJUDGED that the mended complaint in this case (Dkt. No. 23) shall be and hereby is DISMISSED WITH PREJUDICE because the amended complaint fails to state a claim upon which relief can be granted and the court lacks subject matter jurisdiction.

_____
Hon. Ricardo M. Urbina
United States District Judge

Service List:

Oliver B. Hall
1835 16th Street, NW
Washington, D.C. 20009

Michael B. Trister
Lichtman, Trister & Ross, PLLC
Suite 500
1666 Connecticut Avenue, NW
Washington, D.C. 20009

Lawrence M. Noble
Skadden, Arps, Slate, Meagher
    & Flom LLP
1440 New York Avenue, NW
Washington, D.C. 20005-2111

Marc E. Elias
Perkins Coie
607 14th Street, NW
Washington, D.C. 20005

Laurence E. Gold
Suite 500
1666 Connecticut Avenue, NW
Washington, D.C. 20036

Lyn Utrecht
Ryan, Phillips, Utrecht
    & Mackinnon
1133 Connecticut Avenue, NW
Washington, D.C. 20036

Joseph E. Sandler
John Hardin Young
Steven Hershcowitz
Sandler, Reiff & Young, P.C.
50 E Street, SE #300
Washington, D.C. 20003

Douglas K. Spaulding
Reed Smith LLP
1301 K Street, NW
Washington, D.C. 20005