UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, *et al.*,

                Plaintiffs,

    v.

THE DEMOCRATIC NATIONAL COMMITTEE, *et al.*,

                Defendants.

Civil Action No. 07-2136-RMU

## MOTION TO DISMISS OF DEFENDANT AMERICA COMING TOGETHER

Defendant America Coming Together ("ACT") respectfully moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure that the Court dismiss the amended complaint insofar as it pertains to ACT. This motion is supported by the attached memorandum.

                Respectfully submitted,

                */s/ Laurence E. Gold*

                Laurence E. Gold
                D.C. Bar No. 336891
                1666 Connecticut Avenue, N.W.
                Suite 500
                Washington, DC  20036
                (202) 328-1666, ext. 1352

                */s/ Lyn Utrecht*

                Lyn Utrecht
                D.C. Bar No. 272666
                RYAN, PHILLIPS, UTRECHT & MACKINNON
                1133 Connecticut Avenue, N.W.
                Washington, DC  20036
                (202) 293-1777

                *Counsel for Defendant America Coming Together*

February 4, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, *et al.*,

Plaintiffs,

v.

THE DEMOCRATIC NATIONAL COMMITTEE, *et al.*,

Defendants.

Civil Action No. 07-2136-RMU

## **ORDER**

Upon consideration of the motion to dismiss of defendant America Coming Together, and the Court being duly advised, it is this ___ day of ___, 2008,

ORDERED, that the motion is granted.

_____

UNITED STATES DISTRICT JUDGE

cc:

Joseph E. Sandler
D.C. Bar No. 255919
John Hardin Young
Stephen E. Hershkowitz
SANDLER, REIFF & YOUNG
50 E Street, S.E. #300
Washington, DC  20003

*Counsel for Defendants Democratic*
*National Committee, Jack Corrigan, and Mark Brewer*

Preeta D. Bansal
D.C. Bar No. 431195
Lawrence Noble
D.C. Bar No. 244434
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111

*Counsel for Defendants Toby Moffett, Robert
Brandon,  Elizabeth Holtzman and
The Ballot Project, Inc.*

Michael B. Trister
D.C. Bar No. 54080
LICHTMAN, TRISTER & ROSS, PLLC
1666 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20009

*Counsel for Defendant Service Employees
International Union*

Laurence E. Gold
D.C. Bar No. 336891
1666 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20036

Lyn Utrecht
D.C. Bar No. 272666
RYAN, PHILLIPS, UTRECHT &
MACKINNON
1133 Connecticut Avenue, N.W.
Washington, DC  20036

*Counsel for America Coming Together*

Douglas K. Spaulding
D.C. Bar No. 936948
REED SMITH, LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005

*Counsel for Defendant Reed Smith, LLP*

_____
Marc E. Elias
Perkins Coie LLP
D.C. Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street N.W., Suite 800
Washington, D.C.  20005-2011
Telephone:  202.628.6600
Facsimile:  202.654.9126

*Counsel for Defendants*
*John Kerry and Kerry-Edwards 2004 Inc*.

Oliver B. Hall
1835 16th Street, NW
Washington, DC  20009

2

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, *et al*.,

                     Plaintiffs,

     v.

THE DEMOCRATIC NATIONAL COMMITTEE, *et al*.,

                     Defendants.

Civil Action No. 07-2136-RMU

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## OF DEFENDANT AMERICA COMING TOGETHER

### INTRODUCTION

Defendant America Coming Together ("ACT") respectfully moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure that the Court dismiss the amended complaint insofar as it pertains to ACT.  As explained below, plaintiffs fail to allege facts sufficient to make out a malicious prosecution or abuse of process claim against ACT; even if they did, their claims are plainly barred by the applicable statutes of limitations; and their civil conspiracy claims are not legally cognizable.

These defects, apparent on the face of plaintiffs' rambling and hyperbolic complaint, bespeak a confused, belated and misdirected effort to seek judicial relief for actions, if any, that are more properly redressed in the political sphere and the court of public opinion.  Similar sweeping and conclusory claims of conspiracy to secure relief against alleged efforts during 2004 to challenge ballot access by plaintiffs Ralph Nader and Peter Miguel Camejo, including

against some of the same defendants as in the case at bar (although not ACT), were advanced and decisively rejected on a motion to dismiss in *Fulani v. McAuliffe*, 2005 U.S. Dist. LEXIS 20400 (S.D.N.Y. 2005). In the two years since that decision, plaintiffs have failed to amass any other facts sufficient to avoid dismissal, and their effort in the case at bar to replace the 42 U.S.C. §§ 1983 and 1985 theories that failed in *Fulani* with common law torts (in their newly amended complaint, if not their original complaint) fails as well.

Meanwhile, as explained more fully in the motions to dismiss being filed by other defendants, plaintiffs have filed a virtually identical action in the United States District Court for the Eastern District of Virginia, and now seek to amend it as well, so they maintain an inexplicable litigation plan to put two courts to the task of hosting the same litigation at the same time. Most recently, they have amended the complaint in the case at bar in order to secure a remand to the Superior Court; ACT and the other defendants today oppose that motion, for now because plaintiffs have violated the Local Rules by supplying no memorandum of law to explain its basis. But regardless of the disposition of that motion, dismissal is warranted as to ACT.

## PLAINTIFFS' FACTUAL AND LEGAL ALLEGATIONS

Plaintiffs Ralph Nader and Peter Miguel Camejo ran, respectively, as independent candidates for President and Vice President in 2004. Complaint ¶¶ 15 and 16. Plaintiffs claim that ACT, eleven other defendants, 17 named "non-defendant co-conspirators," and innumerable unnamed "non-defendant co-conspirators," *id.,* ¶¶ 23-44, undertook a variety of actions "between June and September of 2004," ¶ 3, including the initiation of "complaints" in 17 states and five complaints with the Federal Election Commission (FEC). *Id.*, ¶¶ 3-6, 11. Plaintiffs allege that "[d]efendants" are "members, allies or agents of the Democratic Party" who "conspired to prevent Plaintiffs Ralph Nader and Peter Camejo… from running for President and Vice

President…in 2004, in an effort to deny Plaintiff-voters and others the choice of voting for them." *Id.*, ¶ 1.  Plaintiffs contend that on February 22, 2004, "[d]efendants set their obstructive plans and conspiracy in motion." *Id.*, ¶ 2.

Plaintiffs allege that "[d]efendants' admitted purpose" for their litigation actions "was not to vindicate valid legal claims, but rather to bankrupt Nader-Camejo's campaign by forcing the candidates to spend their limited resources of time, talent and money on the defense of unfounded lawsuits." *Id.*, ¶ 4; *see also id.,* ¶ 45.  Plaintiffs claim that "[d]efendants" applied "millions of dollars' worth of illegal and unreported campaign contributions to their conspiracy," "recruited at least 95 lawyers from 53 law firms" and "organized hundreds of other lawyers" to assist them, and "incorporated several Section 527 political organizations, including … The Ballot Project," for this effort. *Id.* ¶ 5.  Plaintiffs allege that "the conspirators … lost the great majority of lawsuits they filed," but "prevent[ed]" Nader-Camejo "from gaining ballot access in several states," "caused financial injury and other damages to Mr. Nader and Mr. Camejo personally," and "did severe damage to the third-party and independent candidacy structure which Mr. Nader had built…" *Id.*, ¶ 8.

Plaintiffs allege that "the organizers and leaders of the conspiracy" met on July 26, 2004 in Boston and "discussed polling, research, and strategy to undermine the Nader-Camejo campaign" in numerous states. *Id.*, ¶ 47.  Plaintiffs allege that "[a]pproximately three dozen" individuals attended the meeting, and they name four, none of whom is identified as an agent of ACT. *Id.*, ¶¶ 25, 30, 31, 32, 46.  Plaintiffs allege that the "conspirators prepared a memo" about their plans and distributed it to delegates and donors at the Democratic National Convention that was taking place at the same time in Boston, and that this memorandum explained that "[d]efendants would coordinate and finance their activities with three 527 organizations the

conspirators had established," namely, The Ballot Project, the National Progress Fund and Uniting People for Victory. *Id.*, ¶¶ 49-51.

Plaintiffs' allegations that identify ACT are confined to activities taking place in the State of Oregon, as follows:

ACT is "a Democratic Section 527 organization, funded in part by [defendant Service Employees International Union (SEIU)], which organized a campaign of harassment, intimidation and sabotage in an effort to deny Nader-Camejo ballot access." *Id.* ¶ 26. In April 2004, an unnamed "spokesperson" for ACT told CBS News that "[i]f we think it gets to the point where we need to step in and mobilize to make sure [Nader] doesn't get on the ballot, then we will.'" *Id.*, ¶¶ 69, 166. ACT, SEIU, a Multnomah County (Oregon) Democratic Party official named Moses Ross and unnamed Oregon state party "members" "discourage[d]" people from signing Nader-Camejo petitions at the Nader-Camejo nominating convention in April 2004 in Oregon. *Id.*, ¶¶ 69, 166. "[T]he conspirators" later attended a June 2004 Nader-Camejo nominating convention in Oregon "under false pretenses" and refused to sign Nader-Camejo nominating petitions. *Id.*, ¶ 167. That same day "[t]hey" also "organized a campaign of harassing phone calls" to the office of plaintiff Gregory Kafoury, which served as the Nader-Camejo "nomination convention headquarters." *Id.*, ¶ 169. Either "ACT and SEIU," "the conspirators" or SEIU alone, compare *id.,* ¶ 69 with *id.,* ¶ 170, "sabotage[d]" Nader-Camejo's effort to gain ballot access through nominating petitions by engaging in various conduct during August 2004. An Oregon ACT employee posted an entry on his personal weblog in August that described actions by ACT and SEIU to invalidate Nader petitions. *Id.*, ¶ 171.

## **ARGUMENT**

### I.    **The Court Should Dismiss Count II With Respect to ACT**

### A. Except With Respect to Oregon, Plaintiffs Fail to Allege Any Conduct Whatsoever Undertaken by ACT Anywhere at Any Time

Except for plaintiffs' claims concerning ACT's conduct in the State of Oregon, which must be dismissed for other reasons (see Parts B and C, below), plaintiffs' complaint fails to allege facts sufficient to withstand ACT's motion to dismiss because it simply fails to allege that *ACT itself* did anything.

The Federal Rules of Civil Procedure require that plaintiffs provide "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2). Last year, in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007), the Supreme Court explained how this rule must be satisfied, and, in doing so, "retire[d]" the longstanding formulation of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a court shall not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'

In *Twombly*, the plaintiffs alleged that the defendants violated the Sherman Act by entering into a conspiracy to engage in anti-competitive conduct in the telecommunications industry. To support their claim, the plaintiffs' complaint included factual details of the defendants' "parallel non-competitive conduct. But parallel conduct in the absence of an *agreement* does not violate the Sherman Act. *Id.* at 1964. The plaintiffs did allege an "agreement" among the defendants, but only '"on information and belief"' based upon defendants' parallel conduct and lack of meaningful competition in each other's markets. *Id*. at 1963-64.

The Court held that the plaintiffs failed to state a cognizable claim of anti-trust conspiracy because they made only "a bare assertion of conspiracy" and, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some

unidentified point does not supply facts adequate to show illegality." *Id*. at 1966. Rather, the

Court, stated, a complaint must allege "enough factual matter (taken as true) to suggest that an

agreement was made." *Id*. at 1965. The Court explained that *Conley v. Gibson* "described the

breadth of opportunity to prove what an *adequate* complaint claims, not the minimum standard

of adequate pleading to govern a complaint's *survival*." *Id*. at 1969 (emphasis added) (footnote

omitted).

Plaintiffs' complaint against ACT in the case at bar does not satisfy the *Twombly*

pleading standard. *First*, except with respect to allegations concerning events in Oregon (which

are legally inadequate for the reasons explained below), *plaintiffs fail to allege that ACT did*

*anything anywhere at any time*. Instead, virtually all of plaintiffs' allegations about

conspiratorial behavior refer vaguely and categorically to "defendants," "conspirators" and "co-

conspirators" without individual identification. Such conclusory contentions lacking specific

factual allegations regarding conduct by a particular defendant have long been held inadequate as

a matter of law to allege participation in a conspiracy. *See, e.g., Brady v. Livingood*, 360 F.

Supp. 2d 94, 104 (D.D.C. 2004); *Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997);

*Hill v. Medlantic Health Care* Group, 933 A. 2d 314, 334 (D.C. 2007); *Paul v. Howard*

*University*, 754 A. 2d 297, 310 (D.D.C. 2000). Indeed, that principle supplied a principal basis

of the dismissal in *Fulani v. McAuliffe,* 2005 U.S. Dist. LEXIS 20400 at *13-16.

Even so, *plaintiffs themselves explicitly disclaim the application of most of their*

*allegations to any particular defendant*:

> Unless otherwise stated, the terms "Defendants" and "conspirators" or "co-
> conspirators" and the charges alleged herein do not necessarily apply to every
> Defendant and every conspirator named in this complaint.

Complaint ¶ 14.  For purposes of ACT's motion to dismiss, then, this paragraph necessarily means that *none* of these generalized references throughout the complaint may, let alone must, be "taken as true" concerning ACT; it is as if the complaint repeatedly alleged that ACT "might" have engaged in the conduct about which plaintiffs predicate their claims.  Indeed, plaintiffs' factual assertions about ACT on their face are even less assertive than the allegations "on information and belief" that were held to be inadequate as a matter of law in *Bell Atlantic Corp. v. Twombly*.

As this Court recently held in applying the *Twombly* standard in *Shirk v. Garrow*, 505 F. Supp. 2d 169 (D.D.C. 2007), liability contentions lacking predicate facts cannot withstand a motion to dismiss.  The Court there granted a motion to dismiss a third-party breach-of-contract complaint[1] because it only described the defendant's role as a broker in a real state transaction, "articulate[d] no specific claim or allegations against [him], merely asserte[d] a legal conclusion as to [his] liability," and incorporated by reference the original complaint that "ma[de] no references to [him]."  *See also Dye v. United States*, 516 F. Supp. 2d 61, 69-70 (D.D.C. 2007).  Plaintiffs' complaint in the case at bar contains the same flaws with respect to ACT in all of its factual allegations that do not pertain to Oregon.

*Second,* insofar as plaintiffs do refer to specific conduct by specific actors with respect to the overall alleged "conspiracy" and the initiation, pursuit or other participation in administrative and judicial proceedings in the 17 states other than Oregon, their complaint identifies only individuals and entities other than ACT, and at no point states that either ACT itself or any ACT agent of ACT participated in any particular proceeding.  See Complaint ¶¶ 72-227.  Indeed, the Complaint specifically alleges (however insufficiently as matter of law) that particular *other*

---

[1] As the Court noted, the *Twombly* standard is not restricted to Sherman Act claims.  *Shirk v. Garrow*, 505 F. Supp. 2d at 174 n.3.

named defendants "conspired": "The Ballot Project directed the conspiracy in conjunction with the [Democratic National Committee] and the Kerry-Edwards Campaign, … and coordinated with state Democratic Parties to recruit attorneys to provide counsel for the conspiracy's nationwide assault," *id.*, ¶ 60, and "[t]he DNC, state Democratic Parties and The Ballot Project collectively paid" the 53 recruited law firms "nearly $1 million." *Id.*, ¶ 61. *See also* Complaint ¶¶ 56-59.

In short, with respect to ACT, plaintiffs' complaint does not "does not raise a right to relief above the speculative level," and fails to allege *facts* that "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1965, 1974. Dismissal is therefore warranted.

### B. Plaintiffs Fail to Allege That ACT Engaged in Either Malicious Prosecution or Abuse of Process in Oregon

Plaintiffs' substantive claims against ACT with respect to the State of Oregon consist solely of malicious prosecution and abuse of process.[2] But their complaint fails to allege facts that state a claim under either cause of action against ACT.

Plaintiffs bring these two tort claims under the common law of Oregon, see Complaint ¶ 241, but because their lawsuit was filed in the District of Columbia a threshold choice-of-law issue arises with respect to this aspect of ACT's motion. A district court presiding over a state-law claim must apply the choice-of-law rules of the forum. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). That principle applies whether the court has diversity or (as here) supplemental jurisdiction over the claim. *Mastro v. Potomac Electric Power Co.*, 447 F. 3d 843 (D.C. Cir. 2006), *cert. denied,* 127 S. Ct. 1140 (2007); *Ideal Electronic Security*

---

[2] As explained in Part II below, plaintiffs' Count I, which distinctly alleges a "conspiracy" to commit malicious prosecution and abuse of process, does not allege a legally cognizable tort that is independent of those two tort claims.

*Co., Inc. v. International Fidelity Ins. Co.,* 129 F. 3d 143, 148 (D.C. Cir. 1997); *Gaudreau v. American Promotional Events, Inc.,* 511 F. Supp. 2d 152, 157 (D.D.C. 2007); *Nix v. Hoke*, 139 F. Supp. 2d 125, 132 (D.D.C. 2001).

However, where there is no true conflict between the applicable law of the forum and foreign jurisdictions involved, then the substantive law of the forum applies. *Eli Lilly & Co. v. Home Insurance Co.*, 746 F. 2d 876, 882 (D.C. Cir. 1985); *Wright v. Sony Pictures Entertainment, Inc.*, 394 F. Supp. 2d 27 (D.D.C. 2005); *Duncan v. G.E.W, Inc.*, 526 A. 2d 1358, 1363 (D.C. 1987). And, where a complaint fails to state a claim under the respective law of *either* jurisdiction, it is unnecessary even to undertake the choice-of-law analysis. That is the situation in the case at bar.

In the District of Columbia, the elements of a malicious prosecution claim are "(1) that the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probably cause for the underlying suit; and (4) special injury occasioned plaintiff as a result of the original action." *Joeckel v. Disabled American Beterans*, 793 A. 2d 1279, 1282 (D.C. 2002). *See also Morfessis v. Baum*, 281 F. 3d 938, 940 (D.C. Cir. 1960). The corresponding Oregon claim is essentially the same, except that the final element requires a showing of "damages" rather than special injury. *See Rogers v. Hill*, 281 Or. 491, 566 P. 2d 328 (1978); *Donovan v. Barnes*, 274 Ore. 701, 548 R 2d 980 (1976); *Alvarez v. Retail Credit Ass'n of Portland*, 234 Or. 255, 259-60, 381 P. 2d 499, 501 (1963). Accordingly, there is an arguable conflict of law between the respective causes of action only with respect to that element.

As for abuse of process, in the District of Columbia the claim is stated or made out where "'process has been used…to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he

could not legally and regularly be required to do.'" *Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97, 2007 U.S. Dist. LEXIS 82149, *6 (D.D.C. 2007), quoting *Jacobsen v. Thrifty Paper Boxes, Inc.*, 230 A. 2d 710, 711 (D.C. 1967). The mere "issuance" of or "ulterior motive" behind the process is immaterial; the claim instead concerns "'the improper use [of process] after issuance.'" *Kopff, supra*, 2007 U.S. Dist. LEXIS 82149, *7, quoting *Hall v. Hollywood Credit Clothing Co.*, 147 A. 2d 866, 868 (D.C. 1959) (emphasis deleted). *See also Rogers v. Johnson-Norman*, 466 F. Supp. 162, 175 (D.D.C. 2006).

The corresponding Oregon cause of action is essentially the same: "the perversion of legal procedure to accomplish an ulterior purpose"; a plaintiff must allege "a willful act in the use of the process that is not proper in the regular conduct of the proceeding" that consists of "[s]ome definite act or threat," and no liability follows where the defendant only "carr[ied] out the process to its authorized conclusion even though with bad intentions." *Larsen v. Credit Bureau*, 279 Ore. 405, 408, 568 P. 2d 657, 658 (1977) (interior quotation marks and citations omitted). The process must be misused "as a club by which the extort something unrelated to the process from the other party." *Clausen v. Carstens*, 83 Ore. App. 112, 118, 730 P. 2d 604, 608 (1986). *See also Columbia County v. Sandes*, 175 Ore. App. 400, 407-08, 28 P. 3d 657, 661 (Ore. Ct. App. 2001). Accordingly, the District of Columbia and Oregon causes of action here are substantially the same.

Plaintiffs' complaint fails to state a claim against ACT with respect to both the common elements of the two jurisdictions' torts of malicious prosecution and their essentially identical torts of abuse of process. For, *there is no allegation that ACT initiated a judicial or administrative proceeding in Oregon, let alone one that terminated in the plaintiffs' favor, which are necessary elements of a malicious prosecution claim; and, there is no allegation that ACT*

*issued any "process" in Oregon in any proceeding whatsoever, let alone did so to accomplish an improper collateral goal, which are necessary elements of an abuse of process claim.* Rather, the only alleged submission of any kind to any governmental body in Oregon is that of two "letters" to the Oregon Secretary of State by "attorney Roy Pulvers," whom plaintiffs allege to be "a contributor to the DNC and a member of the Oregon Democratic Party's President Council," that "challenged" the Nader-Camejo nomination papers in the state. Complaint ¶ 173. Plaintiffs do not allege that Mr. Pulvers had any connection to ACT, or even that ACT participated in any manner in the subsequent Oregon ballot-access litigation that was *"filed by the Nader-Camejo Campaign," id.* ¶ 175 (emphasis added), and not by ACT or any other defendant -- a lawsuit that failed when the Supreme Court of Oregon upheld the Secretary of State's administrative determination that Nader-Camejo failed to qualify for the state's ballot. See Complaint 176; *Kucera v. Bradbury*, 337 Ore. 384, 97 P. 3d 1191 (2004), *cert. denied*, 544 U.S. 1056 (2005).[3]

Plaintiffs' allegations concerning Oregon and, indeed, every state are deficient for another reason: they identify no "abuse" of any process. In fact, the process that plaintiffs do identify was allegedly used for its intended purpose in the regular conduct of the litigation: challenging the qualification of Nader-Camejo for various state ballots under the state law that established those qualifications. Plaintiffs' contention that those efforts also were intended to divert the campaign's resources to qualifying for the ballot and dealing with the challenges not only does not impeach its direct and regular purpose, but also alleges only an inevitable consequence of any litigation, not an "abuse" for a collateral improper purpose. *See generally Heck v. Humphrey*, 512 U.S. 477, 486 (1994).

---

[3] Additionally, even if plaintiffs' allegations about interference with the Nader-Camejo Oregon state conventions and petition-circulation efforts are taken as true for purposes of this motion, in addition to their lack of specificity they do not allege conduct that could be the subject of either a malicious prosecution or an abuse of process claim.

Accordingly, even as to Oregon, plaintiffs fail to state a claim against ACT for malicious prosecution or abuse of process, and this aspect of Count II should be dismissed against ACT for that reason.

### C. Even If Plaintiffs Did State Tort Claims Against ACT, They Are Barred by the Applicable Statutes of Limitations

Even if plaintiffs did state the elements of a cause of action against ACT for either malicious prosecution or abuse of process under the common law of the District of Columbia and each of the 18 states identified in their complaint, the applicable statutes of limitations plainly bar all of them.

### 1. The District of Columbia Statutes of Limitations Apply

As with the elements of plaintiffs' tort claims themselves, the statutes of limitations that govern them must be determined by application of the District of Columbia's choice-of-law rules. And, those rules "treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations." *A. I. Trade Finance, Inc. v. Petra International Banking Corp.*, 62 F. 3d 1454, 1458 (D.C. Cir. 1995). *See also Steorts v. American Airlines, Inc.*, 647 F. 2d 194 (D.C. Cir. 1981); *Kaplan v. Manhattan Life Ins. Co.*, 109 F. 2d 436, 465-66 (D.C. Cir. 1939); *Gaudreau, supra; Reeves v. Eli Lilly & Co.*, 368 F. Supp. 2d 11, 25-27 (D.D.C 2005) (analyzing legal history of this doctrine); *National Railroad Passenger Corp. v. Lexington Ins. Co.,* 357 F. Supp. 2d 287, 292 (D.D.C. 2005); *Nix v. Hoke, supra; Manatee Cablevision Corp. v. Pierson,* 433 F. Supp. 571, 573-74 (D.D.C. 1977); *May Department Stores Co., Inc. v. Devercelli*, 314 A. 2d 767, 773 (D.C. 1973); *Namerdy v. Generalcar*, 217 A. 2d 109, 113 (D.C. 1966).

There is only one recognized exception to this principle -- namely, when a state's statutory limitation period is a *substantive* component of a claim, which arises only when the

claim itself is statutory and the limitations period explicitly applies to that statutory cause of action.  *See generally Lewis v. Reconstruction Finance Corp.,* 177 F. 2d 654 (D.C. Cir. 1949); *Moran v. Harrison,* 91 F. 2d 310, 312-13 (D.C. Cir.), *cert denied,* 302 U.S. 740 (1937); *Smith v. Hope Village, Inc.*, 281 F. Supp. 2d 172, 206-09 (D.D.C. 2007); *Klayman v. Judicial Watch, Inc.,* 2007 U.S. Dist. LEXIS 24548 (D.D.C. 2007);  *Bell v. Kelly Motor Lines, Inc.,* 95 F. Supp. 682 (D.D.C. 1951);  *Hodge v. Southern Railway Co.,* 415 A. 2d 543, 544 (D.C. 1980).  That exception is inapplicable to the case at bar: plaintiffs specifically acknowledge that *all* of their malicious prosecution and abuse of process claims are common-law claims: "Defendants' conduct…violated the *common law* of abuse of process and malicious prosecution under the state law of [the 18 states]."  Complaint ¶ 241 (emphasis added).  Accordingly, as to all such claims, the District of Columbia supplies the limitations period.

### 2.   The Applicable District of Columbia Limitations Periods Are One Year for Malicious Prosecution and Three Years for Abuse of Process

D.C. Code § 12-301(4) explicitly provides a one-year limitations period for malicious prosecution, and the claim accrues when the underlying action against the malicious-prosecution plaintiff (who was the defendant in the underlying action) was terminated.  *Shulman v. Miskell*, 626 F. 2d 173 (D.C. Cir. 1980); *Wiggins v. State Farm and Casualty Co.*, 153 F. Supp. 2d 16, 20 (D.D.C. 2001); *Allen v. District of Columbia*, 533 A. 2d 1259, 1261 (D.C. 1987).

D.C. Code § 12-301(8), which provides a three-year limitations period for "actions…for which a limitation is not otherwise specially prescribed," applies to abuse-of-process claims.  *In re Rothenberg*, 173 B.R. 4, 10-11 (Bankr. D.D.C. 1994).  *But see Simpson v. District of Columbia Metropolitan Police Dept.*, 789 F. Supp. 5, 7 (D.D.C. 1992) (abuse of process claim is "likely" governed by the one-year limitation period of D.C. Code § 12-301(4) because the tort is

"related to the tort of malicious prosecution"). This cause of action accrues from "the last act constituting the tort," *id*. at 11, meaning the last issuance of some form of process by the defendant; accrual des not depend upon either the termination of the prior proceeding itself or the identity of its prevailing party. *See generally* Prosser, *Handbook of the Law of Torts,* § 131, at 856 (4TH ed. 1971); *Brooks v. Harding*, 2001 U.S. Dist. LEXIS 6777, *17-22 (S.D. Ind. 2001); *Penn v. Iowa State Board of Regents*, 577 N.W. 2d 393, 400 (Iowa 1998); *Greenberg v. Wolfberg*, 890 P. 2d 895, 905 (Okla. 1994); *Preiser v. MacQueen*, 177 W. Va. 273, 279-80, 352 S.E. 2d 22, 28-29 (1985); *Read v. City of Fairview Park*, 146 Ohio App. 3d 15, 19, 764 N.E. 2d 1079, 1081-82 (Ohio Ct. App. 2001); *Guyot v. Multnomah County*, 51 Ore. App. 373, 377-78, 625 P. 2d 1344, 1346-47 (Ore. Ct. App. 1981).

### 3. All Arguable "Process" in Every State Was Issued, and Every Proceeding in Every State Was Terminated, Prior to the Applicable Limitations Periods

The addendum to this memorandum lists every submission to a state judicial or executive authority about which plaintiffs complain. Each submission -- which, for purposes of this argument only, ACT assumes would qualify as "process" that either could be subject to an abuse of process claim or, when it consists of the initiation of a judicial or administrative proceeding, could qualify as bringing an "underlying suit" that could be subject to a malicious prosecution claim -- is listed by alleged date; and, where no date is alleged, it is listed by dates that are necessarily inferred from the contextual allegations of the complaint. Also listed by nature and date are all administrative and judicial "terminations" of the proceedings described in the complaint. Not listed are "process" issued by plaintiffs or their allies, including their own initiation and pursuit of judicial and administrative proceedings to secure ballot access, since, of course, these efforts cannot trigger tort claims by plaintiffs themselves.

As the addendum reflects, all of the state proceedings that were commenced by persons

other than plaintiffs themselves, and so conceivably could be the subject of a malicious

prosecution claim, terminated long before October 30, 2006, the date one year before plaintiffs

filed their complaint in the case at bar.  And, in every state, the last act of "process" about which

plaintiffs complain occurred prior to October 30, 2004, the date three years before plaintiffs filed

their complaint.   Accordingly, all such claims are time-barred.

> **4.  All Five FEC Complaints Were Filed, and All Ensuing Administrative Proceedings Were Terminated, Prior to the Applicable Limitations Periods**

With respect to each of the five FEC administrative cases about which plaintiffs

complain, the only action alleged by plaintiffs are the filing of a complaint by someone with the

FEC in each proceeding, and, as with all of the alleged state litigation, *none* of the alleged

complainants includes ACT or anyone whom plaintiffs identify with ACT.  In any event,

plaintiffs' claims with respect to those administrative proceedings are plainly time-barred.  Two

complaints are alleged to have been filed on August 10 and September 17, 2004, more than three

years before the complaint in the case at bar was filed.  See Complaint ¶¶ 126, 135.  Plaintiffs do

not allege when the other three FEC complaints were filed.[4]  See *id.*, ¶ 227.  However, the Court

may take judicial notice of the FEC's administrative records of these cases (denominated as

"Matters Under Review" ("MURs") in the FEC's lexicon), which may be found at the FEC

website at http://eqs.sdrdc.com/eqs/searcheqs and contain the complaints, supplemental

complaints, FEC analyses and final dispositions in them.  Those records reveal the following key

dates in the five proceedings:

| MUR # | Complaint Filed | Supplement to Complaint Filed | Complainant | Case Terminated |
|---|---|---|---|---|

---

[4] Unlike a judicial proceeding, a complainant's role during an FEC administrative proceeding is confined to filing a complaint.  See generally 2 U.S.C. § 437g; 11 C.F.R. Part 111, Subpart A.

| MUR # | Complaint Filed | Supplement to Complaint Filed | Complainant | Case Terminated |
|-------|-----------------|-------------------------------|-------------|-----------------|
| 5475 | 6/24/04 | None | CREW | 2/11/05 |
| 5489 | 6/30/04 | 6/24/04 and 7/20/04 | CREW and Ellen Lowe | 6/23/05 |
| 5513 | 8/10/04 | 9/23/04 | Kathleen Sullivan | 6/23/05 |
| 5533 | 9/17/04 | 10/25/04 | Mark Brewer | 6/23/05 |
| 5581 | 10/25/04 | None | Daniel Schneider | 6/23/05 |

Because all "process" in these five cases issued more than three years before the filing of the complaint in the case at bar, and because all five cases were terminated more than one year before that event, plaintiffs' abuse of process and malicious prosecution claims that are predicated on those cases are time-barred.

## II.    The Court Should Dismiss Count I With Respect to ACT

Count I of plaintiffs' complaint is styled "Conspiracy to Commit Abuse of Process and Malicious Prosecution," and apparently differs from the virtually identical body of Count II by alleging a "conspiracy" as a distinct tort in itself.  However, there is no such distinct tort in either the District of Columbia or Oregon (which is, again, the only other jurisdiction where plaintiffs actually allege that ACT did anything).[5]

Thus, "'there is no recognized *independent* tort action for civil conspiracy in the District of Columbia.'"  *Halberstam v. Welch*, 705 F. 2d 472, 479 (D.C. Cir. 1983) (emphasis added), quoting *Waldon v. Covington*, 415 A. 2d 1070, 1074 n. 14 (D.C. 1980).  And, "[s]ince liability

---

[5] Even if there were such a distinct claim, it would be time-barred under the residual three-year limitations period of D.C. Code § 12-301(8).  But because civil conspiracy allegations instead are inseparable from and dependent upon the underlying torts to which they pertain, they are also bound by the respective limitations period that apply to those torts.  *See Hancock v. Homeq Servicing Corp.*, 2007 U.S. Dist. LEXIS 31051, *27-28 (D.D.C. 2007).

for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort," 705 F. 2d at 479.  *See also Media General, Inc. v. Tomlin*, 505 F. Supp. 2d 51, 61 (D.D.C. 2007); *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.* 749 A. 2d 724, 738 (D.C. 2000).

Likewise, under Oregon law, "neither 'conspiracy' nor 'aid and assist' is a separate theory of recovery … Rather, conspiracy to commit or aiding and assisting in the commission of a tort are two of several ways in which a person may become jointly liable for another's tortious conduct." *Granewich v. Harding*, 329 Ore. 47, 53, 985 P. 2d 788, 792 (1999).  *See also Compton v. Oregon State Highway Commission*, 31 Ore. App. 919, 921, 571 P. 2d 1271, 1272 (Ore. Ct. App. 1977).

Because Count I fails to allege a legally cognizable claim in either jurisdiction, irrespective of any choice-of-law determination it must be dismissed with respect to ACT.

## CONCLUSION

For the reasons set forth above, defendant America Coming Together respectfully requests that its motion to dismiss the amended complaint be granted.

Respectfully submitted,

*/s/ Laurence E. Gold*

Laurence E. Gold
D.C. Bar No. 336891
1666 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20036
(202) 328-1666, ext. 1352

*/s/ Lyn Utrecht*

Lyn Utrecht

D.C. Bar No. 272666
RYAN, PHILLIPS, UTRECHT & MACKINNON
1133 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 293-1777

*Counsel for Defendant America Coming Together*

Dated: February 3, 2008

### ADDENDUM TO MEMORANDUM OF AMERICA COMING TOGETHER

The following summarizes key allegations in plaintiffs' complaint regarding conduct and events in 18 states, as discussed on pages 13-14, above. Parenthetical "yes" and "no" references in each state heading indicate whether or not Nader-Camejo finally appeared on that state's ballot for the 2004 general election. Where a pertinent judicial decision is available, it is cited.[6] Unless otherwise stated, all dates are in 2004.

1. **Arizona (no)**

   a. **Process**

   **June 23:** State court complaint challenging Nader-Camejo nomination papers filed. Complaint ¶ 72.

   **August 31:** Intervener motion to dismiss and motion for Rule 11 sanctions filed regarding Nader-Camejo's August 16 United States District Court lawsuit against the State of Arizona. Complaint ¶ 76.

   b. **Termination of Proceedings**

   **July 2:** Nader-Camejo withdrew nomination papers and end state court litigation. Complaint ¶ 74. ("Nader advised the court that he was withdrawing his petition and his candidacy in Arizona because he failed to collect enough valid signatures. Based on Nader's statement, the Superior Court entered judgment enjoining the Secretary of State and county election officials from placing Nader and his electors on the ballot." *Nader v. Brewer*, 2006 U.S. Dist. LEXIS 38500, *2.)

   **September 10:** United States District Court denied motion for sanctions. Complaint ¶ 77.

---

[6] Although plaintiffs provide no such citations, the Court may take judicial notice of them in considering a Rule 12(b)(6) motion. *See, e.g., Hinton v. Shaw, Pittman, Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 n. 5 (D.D.C. 2003).

**2. <u>Arkansas (yes)</u>**

    **a. <u>Process</u>**

    **September 10:**  State court complaint challenging Nader-Camejo nomination

papers filed.  Complaint ¶ 79.

    **b. <u>Termination of Proceedings</u>**

    **September 21:**  Arkansas Supreme Court directed Secretary of State to certify

Nader-Camejo nomination papers.  Complaint ¶ 81.  (*Populist Party of Arkansas*

*v. Chesterfield,* 359 Ark. 58 (Oct. 1, 2004).)

**3. <u>Colorado (yes)</u>**

    **a. <u>Process</u>**

    **September 13:** Two state court complaints challenging Nader-Camejo

nomination papers filed.  Complaint ¶¶ 83, 84.

    **b. <u>Termination of Proceedings</u>**

    **[September 13-November 3, 2004]:**  State court dismissed both complaints.

Complaint ¶¶ 85.

**4. <u>Florida (yes)</u>**

    **a. <u>Process</u>**

    **September 2:**  Two state court complaints challenging Nader-Camejo nomination

papers filed.  Complaint ¶¶ 87, 88.

    **[September 11- 15]:**  Opposition filed to Nader-Camejo appeal from state court's

injunction precluding Secretary of State from certifying Nader-Camejo  for ballot.

Complaint ¶¶ 91.

**September 16:** Two briefs filed with Florida Supreme Court in support of plaintiffs.  Complaint ¶¶ 93.

**September 17:** Appeal argued before Florida Supreme Court.  Complaint ¶¶ 95, 96.

### b.  Termination of Proceedings

**September 17:** Florida Supreme Court reversed trial court and vacated appeals court's injunction.  Complaint ¶ 97.  (*Reform Party of Florida v. Black*, 885 So. 2d 303 (Fla. Sept. 17, 2004).)

## 5.  Illinois (no)

### a.  Process

**June 28:** Complaint filed with State Board of Elections challenging Nader-Camejo nomination papers.  Complaint ¶ 100.

**August 4:** Motion to dismiss Nader-Camejo complaint filed in United States District Court, seeking order enjoining State Board of Elections from removing them from ballot.  Complaint ¶¶ 103, 104.

### b.  Termination of Proceedings

**August 19:** State Board of Elections refused to certify Nader-Camejo for ballot. Complaint ¶ 105.

**August 23:** United States District Court denied injunctive relief sought by Nader-Camejo.  Complaint ¶ 106.  (*Nader v. Keith*, 2004 U.S. Dist. LEXIS 16660 (N.D. Ill. Aug. 23, 2004).)

**September 23:** State appellate court affirmed State Board of Elections' decision. Complaint ¶ 108.  (*Nader v. Illinois State Board of Elections*, 2004 Ill. App.

LEXIS 1277 (Ill. Ct. App. Oct. 22, 2004) (affirming order of Circuit Court of

Cook County), identical opinion filed, 354 Ill. App. 3d 335 (Ill. Ct. App. Nov. 18,

2004).)

**September 29:**  United States Court of Appeals for the Seventh Circuit denied

Nader-Camejo appeal.  Complaint ¶ 109.  (*Nader v. Keith*, 385 F. 3d 729 (7th Cir.

Sept. 22, 2004),[7] *petition for rehearing denied*, 2004 U.S. App. LEXIS 22473

(Oct. 15, 2004).)

## 6.  Iowa (yes)

### a.  Process

**August 20:**  Complaint filed with State Commissioner of Elections challenging

Nader-Camejo nomination papers.  Complaint ¶ 111.

### b.  Termination of Proceeding

**August 30:**  Secretary of State determined that nomination papers valid.

Complaint ¶ 114.

## 7.  Maine (yes)

### a.  Process

**August 23:**  **T**wo complaints filed with Secretary of State challenging Nader-

Camejo nomination papers.  Complaint ¶¶ 116, 117.

**August 30-31:**  Unnamed individuals participated in hearing conducted by

Bureau of Corporations, Elections and Commissions.  Complaint ¶ 118.

---

[7] The Seventh Circuit found that Nader failed to achieve the modest requirement of 25,000 valid signatures despite having four months to do so after his declaration of candidacy.  See *Nader v. Keith*, 385 F. 3d at 731.  The court further held that Nader filed the lawsuit, which challenged the state's petition and other ballot-access requirements, "gratuitously late" and "[b]y waiting as long as he did to sue, and despite the strenuous efforts by the district court and this court to expedite the litigation, Nader created a situation in which any remedial order would throw the state's preparations for the election into turmoil."  *Id*. at 736.

**September 10:  A**ppeal filed in state court from Secretary of State's denial of complaints.  Complaint ¶ 119.

**[September 27 – October 7]:**  Appeal filed with Maine Supreme Judicial Court from state court's denial of appeal.  Complaint ¶ 119.

**b.  Termination of Proceeding**

**September 8:**  Secretary of State denied both complaints.  Complaint ¶ 119.

**September 27:** State court denied appeal.  Complaint ¶ 119.

**October 8:**  Maine Supreme Judicial Court denied appeal.  Complaint ¶ 119.

(*Melanson v. Secretary of State*, 2004 Me. 127 (Oct. 8, 2004).)

8. **Michigan** (yes)

   **a.  Process**

   **July 22:**  Complaint filed with State Bureau of Elections challenging Nader-Camejo nomination papers.  Complaint ¶ 123.

   **b.  Termination of Proceeding**

   **September 3:**  Michigan Court of Appeals decided that Nader-Camejo qualify for ballot.  Complaint ¶ 125.  (*Deleeuw v. Board of State Canvassers*, 263 Mich. App. 497, 688 N.W. 2d 847 (Mich. Ct. App. Sept. 3, 2004).)

9. **Mississippi (yes)**

   **a.  Process**

   **September 3:  C**omplaint filed with State Board of Elections challenging Nader-Camejo nomination papers.  Complaint ¶ 128.

   **September 7:**  Unnamed individuals participated in State Board of Elections hearings.  Complaint ¶ 129.

### b.  Termination of Proceeding

**September 7:**  State Board of Elections denied complaint.  Complaint ¶ 129.

## 10.  Nevada (yes)

### a.  Process

**August 24:**  State court complaint challenging Nader-Camejo nomination papers filed.  Complaint ¶ 131.

**August 30 – September 1:**  Unnamed individuals participated in state court hearing.  Complaint ¶ 132.

**[September 1-14]:**  Appeal filed with Nevada Supreme Court from state court's denial of complaint.  Complaint ¶ 133.

### b.  Termination of Proceedings

**September 1:**  State court denied complaint.  Complaint ¶ 133.

**September 15:**  Nevada Supreme Court affirmed state court.  Complaint ¶ 133.

## 11.  New Hampshire (yes)

### a.  Process

**September 7:**  Complaint filed with New Hampshire Ballot Law Commission challenging Nader-Camejo nomination papers.  Complaint ¶ 136.

**September 13:**  Second such complaint filed.  Complaint ¶ 137.

### b.  Termination of Proceeding

**September 24:**  State Commission denied both complaints.  Complaint ¶ 139.

## 12.  New Mexico (yes)

### a.  Process

**September 15:**  State court complaint filed against Secretary of State challenging Nader-Camejo's access to ballot.  Complaint ¶ 143.

**September 24:**  Oral motion by voters to intervene in United States District Court lawsuit filed on September 23 against Secretary of State to compel him to place Nader-Camejo on ballot.  Complaint ¶ 146.

### b.  <u>Termination of Proceedings</u>

**September 17:**  State court denied Nader-Camejo access to ballot.  Complaint ¶ 144.

**[September 24-28]:**  United States District Court denied motion to intervene. Complaint ¶ 146.

**September 28:**  United States District Court order directed Secretary of State to place Nader-Camejo on ballot.  Complaint ¶ 147.

## 13.  <u>Ohio (no)</u>

### a.  <u>Process</u>

**August 30:**  Complaint filed with Secretary of State challenging Nader-Camejo nomination papers, and requesting that Secretary of State issue subpoenas. Complaint ¶ 149.

**September 2:**  Complaint filed in state court to enjoin Secretary of State from placing Nader-Camejo on the ballot.  Complaint ¶ 152.

**September 4:**  Subpoenas secured from state court.  Complaint ¶ 153.

**September 7:**  Motion to compel depositions filed with state court.  Complaint ¶ 158.

**September 24:** Deposition of Nader-Camejo campaign manager taken. Complaint ¶ 160.

**October 7:** Motion to intervene filed in lawsuit initiated on October 6 by Nader-Camejo in United States District Court for the Southern District of Ohio. Complaint ¶¶ 162, 163.

### b.  Termination of Proceedings

**September 28:** Secretary of State reversed his September 8 certification of Nader-Camejo petition.  Complaint ¶ 161.

**October 12:** United States District Court denied Nader-Camejo motion for injunctive relief.  Complaint ¶ 162.  (*Blankenship v. Blackwell*, 341 F. Supp. 2d 911 (S.D. Ohio Oct. 12, 2004).[8])

**October 18:** United States Court of Appeals for the Sixth Circuit denied Nader-Camejo appeal.  Complaint ¶ 162.  (*Blankenship v. Blackwell*, No. 04-4259 (6th Cir. Oct. 18, 2004).[9])

**October 19:** Ohio Supreme Court denied Nader-Camejo request for writ of *mandamus*.  Complaint ¶ 162.  (*Blankenship v. Blackwell*, 103 Ohio St. 3d 567, 817 N.E. 2d 382 (Oct. 22, 2004).[10])

---

[8] The district court observed that "the record in this case is replete with credible, unchallenged instances of actual fraud in the circulation of petitions," and the "numerous and substantial instances of fraud," "outright fraud" and "widespread fraud" included false addresses, false attestations that petitions circulated and false attestations to signatures.  341 F. Supp. 2d at 923.

[9] The court of appeals concluded that Nader-Camejo failed to demonstrate a likelihood of success on the merits because "'the state administrative hearing officer found substantial evidence of fraud by the petition circulators which is supported by evidence in the record below.'"  *Blankenship v. Blackwell*, 429 F. 3d 254, 257 (6th Cir. 2005), quoting No. 04-4259 (Oct. 18, 2004).  And, Nader-Camejo "refus[ed] to challenge Ohio's circulator-residency requirement until more than seven months after Nader announced his candidacy – and even then only after many of the petitions had been disallowed for fraud, "so they are not entitled to the extraordinary remedy" of vacating the district court's judgment against them.  429 F. 3d at 259.

14. **Oregon (no)**

   a. **Process**

   **August 25:**  Two letters submitted to Secretary of State challenging Nader-Camejo nomination papers.  Complaint ¶ 173.

   b. **Termination of Proceeding**

   **September 2:**  Secretary of State determined that Nader-Camejo do not qualify for ballot.  Complaint ¶ 174.

   **September 9:**  State court ordered Secretary of State to certify Nader-Camejo for ballot.  Complaint ¶ 175

   **September 17:**  Oregon Supreme Court issued writ of *mandamus* requiring state court to vacate order.  Complaint ¶ 176.  (*Kucera v. Bradbury*, 337 Ore. 384, 97 P. 3d 1191 (Sept. 22, 2004).)

   **Undated, 2005**: United States Supreme Court denied Nader-Camejo petition for a writ of *certiorari* to Oregon Supreme Court.  (544 U.S. 1056 (May 23, 2005).)

15. **Pennsylvania (no)**

   a. **Process**

   **August 9:**  Two complaints filed in state court challenging Nader-Camejo nomination papers.  Complaint ¶¶ 179-182.

   **September - October 13:**  Unnamed individuals participated in state court hearings.

---

[10] The court found that the Nader campaign did not sue until October 4, 31 days after the adverse actions by various boards of elections, and failed to seek information from those boards, so the campaign "failed to act with the requisite diligence in asserting their claims."  *Blankenship v. Blackwell*, 103 Ohio St.3d at 571-72, 817 N.E. 2d at 386-87.

**December 3:**  Bill of costs filed in state court against Nader-Camejo.  Complaint ¶¶ 191-92.

**July 13, 2007:**  Writ of attachment served on Nader in District of Columbia Superior Court.  Complaint ¶ 202.

**August 28, 2007:**  Motion filed to condemn Nader's court-frozen accounts.  Complaint ¶ 203.

**September 25, 2007:**  Second such motion filed.  Complaint ¶¶ 203.

**b.  <u>Termination of Proceeding</u>**

**October 13:**  State court determined that Nader-Camejo nomination papers are insufficient.  Complaint ¶ 188.  (*In re Nomination Paper of Ralph Nader,* 865 A. 2d 8 (Pa. Commw. Ct. Oct. 13, 2004).[11])

**October 19:**  Pennsylvania Supreme Court affirmed state court decision.  Complaint ¶ 190.  (*In re Nomination Paper of Ralph Nader,* 580 Pa. 134, 860 A. 2d 1 (Oct. 19, 2004).)

**October 23:**  United States Supreme Court denied Nader-Camejo petition for a writ of *certionari.*  Complaint ¶ 190.  (*Nader v. Serody*, 543 U.S. 1052 (2005).)

**January 14, 2005:**  State court approved bill of costs.  Complaint ¶ 194.

---

[11] The court struck two-thirds of the Nader-Camejo signatures as invalid and stated:

"[T]his signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon this Court. The conduct of the [Appellants] through their representatives (not their attorneys) shocks the conscience of the Court.  In reviewing signatures, it became apparent, that in addition to signing names such as 'Mickey Mouse,' 'Fred Flintstone,' 'John Kerry,' and the ubiquitous 'Ralph Nader,' there were thousands of names that were created at random and then randomly assigned either existent or non-existent addresses by the circulators."

*In re Nomination Paper of Ralph Nader*, 588 Pa. 450, 458, 905 A. 2d 450, 455 (2006) (emphasis deleted), quoting Consolidated Findings, Opinion, and Order at 14 (Pa. Commw. Ct. Oct. 13, 2004).

**[August 28 – September 24, 2007]:** State court denied motion to condemn Nader's court-frozen accounts. Complaint ¶ 203.

16. **Washington (yes)**

  **a. Process**

  **August 31:** Two letters submitted to Secretary of State requesting that he not certify Nader-Camejo for the ballot and challenging of Nader-Camejo nomination papers. Complaint ¶ 206.

  **September 1:** Third letter requesting investigation submitted to Secretary of State. Complaint ¶ 207.

  **September 3:** Complaint filed in state court challenging Nader-Camejo nomination papers. Complaint ¶ 208.

  **September 8:** Second such complaint filed in state court. Complaint ¶ 209.

  **b. Termination of Proceeding**

  **September 1:** Secretary of State certified Nader-Camejo for ballot. Complaint ¶ 207.

  **September 15:** State court upheld Secretary of State's certification order. Complaint ¶ 211.

17. **West Virginia (yes)**

  **a. Process**

  **August 16:** Petition filed with state court of appeals seeking writ of *mandamus* to Secretary of State either to investigate Nader-Camejo nomination papers or to refer matter to State Attorney General. Complaint ¶ 214.

**[August 16-19]:**  Affidavits filed complaining that Nader-Camejo petitioners did not display proper credentials.  Complaint ¶ 217.

**August 23:**  Attorney General filed state court complaint challenging Nader nomination.  Complaint ¶ 218.

**[August 30 – September 8]:**  Attorney General appealed to West Virginia Supreme Court of Appeals from state court's August 30 dismissal of complaints. Complaint ¶ 219.

**b.   Termination of Proceedings**

**August 30:**  State court dismissed Attorney General's complaint.  Complaint ¶ 219.

**September 9:**  Supreme Court of Appeals denied appeal.  Complaint ¶ 219.

**18.  Wisconsin (yes)**

**a.   Process**

**September 10:**  Complaint filed with Wisconsin Elections Board challenging Nader-Camejo nomination papers.  Complaint ¶ 221.

**September 24:**  Appeal filed with State Election Board's September 22 dismissal of complaint.  Complaint ¶ 223.

**b.   Termination of Proceedings**

**September 22:**  Election Board dismissed complaint.  Complaint ¶ 222.

**September 28:**  State court reversed Election Board and ordered Nader-Camejo removed from ballot.  Complaint ¶ 223.

**September 30:**  Wisconsin Supreme Court reversed state court decision. Complaint ¶ 225.