UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, et al., | : |
| Plaintiffs, | : |
| | : |
| v. | : Civil Action No.: 07-2136-RMU |
| | : |
| THE DEMOCRATIC NATIONAL COMMITTEE, et al., | : |
| Defendants. | : |

### DEFENDANT REED SMITH'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant Reed Smith, by and through counsel, hereby moves this Court pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint and as

grounds therefor refers to the Memorandum in Support of Its Motion attached hereto and

incorporated herein.

Dated: February 4, 2008

Respectfully submitted,
REED SMITH LLP
    /s/
Douglas K. Spaulding
D.C. Bar No. 936948
Lasagne A. Wilhite
D.C. Bar No. 475438
REED SMITH LLP
1301 K Street, N.W.,
Suite 1100 - East Tower
Washington, D.C.  20005-3373
Telephone:   202 414 9200
Facsimile:    202 414 9299
*Counsel for Defendant Reed Smith*

# Attachment 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

    Plaintiffs,

v.

THE DEMOCRATIC NATIONAL
COMMITTEE, et al.,

    Defendants.

    Civil Action No. 07-2136-RMU

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT REED SMITH'S MOTION TO DISMISS

   This litigation represents another chapter in Plaintiff Ralph Nader's ongoing attempts to avoid paying a judgment duly entered by the Commonwealth Court of Pennsylvania. Defendant Reed Smith LLP represented a number of registered voters in Pennsylvania who successfully challenged the validity of signatures on the nominating papers of the Nader-Camejo campaign in 2004. The Pennsylvania courts conducted a thorough and comprehensive review involving weeks of hearings in counties throughout the state to determine the validity of signatures on the petitions. A representative of the Nader-Camejo campaign testified that he knew petitions lacked validity at the time he submitted the petitions, but did not disclose that signatures on the petition were invalid. The courts concluded that the signature-gathering process of the Nader-Camejo campaign was "the most deceitful and fraudulent exercise ever perpetrated" and assessed costs against the campaign. The Nader-Camejo campaign failed to persuade the Pennsylvania Supreme Court to reverse the lower court decisions striking their names from the ballot and awarding costs to the plaintiffs. The United States Supreme Court denied certiorari to the Nader-Camejo campaign's appeals.

Having exhausted all opportunities to appeal the Pennsylvania judgment and the award of costs, Plaintiff Nader now has embarked on a campaign to collaterally and impermissibly attack the merits of the Pennsylvania judgment. In one action before the Superior Court of the District of Columbia, Plaintiff Nader seeks relief from the Pennsylvania judgment.[1] In this action, Plaintiff Nader and his supporters seek to further obstruct enforcement of the judgment in the District of Columbia by bringing claims against Reed Smith regarding the firm's role as counsel in the underlying Pennsylvania litigation. Plaintiffs' claims against Reed Smith for conspiracy, abuse of process, and malicious prosecution are completely without merit and should be dismissed.

Plaintiffs have no legal basis for the conspiracy claim against Reed Smith. First, Plaintiffs have not and cannot establish an underlying cause of action necessary to support a claim for civil conspiracy. Second, the complaint contains insufficient allegations regarding Reed Smith's alleged involvement and participation with the alleged conspiracy. Third, even if there was coordinated activity between the Defendants in filing ballot access suits against the Nader-Camejo campaign, this is protected First Amendment activity under the *Noerr-Pennington* doctrine.

In addition, there is no basis for Plaintiffs' claims of abuse of process or malicious prosecution against Reed Smith. First, both of these claims are barred by the applicable statute of limitations in the District of Columbia. Second, Plaintiffs have no basis for alleging an abuse

---

[1] *See Serody v. Nader*, Case No. 2007 003385 F (D.C. Sup. Ct. 2007). Nader has also filed an action similar to the instant action in the United States District Court for the Eastern District of Virginia. On January 30, 2008, Nader filed a motion seeking leave to amend his complaint in the Virginia federal court action to add Reed Smith, the Democratic National Committee, Kerry-Edwards 2004, Inc., and John Kerry as parties. Based upon this filing, Reed Smith would potentially be required to litigate the same issues in three separate lawsuits in three different courts.

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

of process because the litigation filed by the clients of Reed Smith pursued judicial remedies permitted under Pennsylvania law. Third, Plaintiffs have no basis for malicious prosecution because the Nader-Camejo campaign did not prevail in the underlying litigation. Therefore, this Court should dismiss all of Plaintiffs' claims against Defendant Reed Smith under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. FACTUAL & PROCEDURAL BACKGROUND

Defendant Reed Smith is a large, well respected law firm with offices throughout the United States and overseas. The firm was founded in Pennsylvania in 1877, and it has continued to maintain a strong reputation and standing within the Pennsylvania legal community. Reed Smith was neither a party to the underlying litigation in Pennsylvania regarding the nomination papers of the Nader-Camejo campaign, nor did the firm act in any capacity other than as the lawyers for the parties involved. Nevertheless, Plaintiffs have chosen to sue the firm for its actions in representing its clients in Pennsylvania, even though none of Reed Smith's clients in the underlying case is a party to this action.

Plaintiffs' claims against Reed Smith arise out of the firm's representation of voters in Pennsylvania that successfully challenged the nomination papers of the Nader-Camejo campaign.[2] On August 9, 2004, a number of voters represented by Reed Smith filed a Petition

---

[2] Defendant Reed Smith relies in part on the factual findings of the Pennsylvania courts in setting out the background regarding the underlying litigation involving the Nader-Camejo campaign and Reed Smith. It is well-settled in the D.C. Circuit that on a motion to dismiss under Rule 12(b)(6) of the Federal Rules a court may consider the complaint, "documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice" *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). Court records are matters of which the court may take judicial notice. *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 n.5 (D.D.C. 2003) ("'[T]he court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment.'") (quoting *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001)). A copy of the Pennsylvania
Continued on following page

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

alleging that the nomination papers of the Nader-Camejo campaign contained insufficient valid, genuine, authentic and complete signatures to qualify Plaintiff Nader and Plaintiff Peter Miguel Camejo to appear on the ballot. *In re Nomination Paper of Ralph Nader*, 905 A.2d 450, 453 (Pa. 2006), *cert denied* 127 S.Ct. 995 (2007). On August 30, 2004, the Pennsylvania Commonwealth Court set aside the nomination papers and disqualified Nader and Camejo from the ballot because they were running as independent candidates in Pennsylvania and as candidates of a political party in other states.3 Compl. ¶ 183. The Nader-Camejo campaign appealed that order to the Pennsylvania Supreme Court. On September 20, 2004, the Pennsylvania Supreme Court reversed and vacated the order and remanded the case for expedited evidentiary hearings to review the signatures. Compl. ¶ 184.

On remand, the Commonwealth Court dedicated monumental effort and resources to implement the standards for signature review that the Pennsylvania Supreme Court set forth. *In re Nader*, 905 A.2d at 454. The Commonwealth Court held weeks of hearings across the state, with 12 judges conducting a line-by-line review of the challenged signatures in 63 counties. *Id.* In addition to regular business hours, the court sat on evenings and weekends and also issued continuances regarding its regular hearing schedule to enable the judges to conduct these hearings. *Id.* During the course of these hearings, the Campaign Coordinator for Pennsylvania testified that the Nader-Camejo campaign had knowledge that false signatures were submitted on

---

Continued from previous page

Supreme Court decision in *In re Nomination Paper of Ralph Nader*, 905 A.2d 450 (Pa. 2006), *cert denied* 127 S.Ct. 995 (2007) is attached hereto.

3 The Commonwealth Court further disqualified Camejo for the reason that his candidate's affidavit falsely indicated that he was not enrolled in a political party, despite the fact that he was a member of the California Green Party. *In re Nomination Paper of Ralph Nader*, 856 A.2d 908 (Pa.Cmwlth.2004) ( *rev'd, In re Nomination Paper of Ralph Nader*, 579 Pa. 561, 858 A.2d 58 (2004)).

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

the nomination papers. *See In re Nomination Paper of Ralph Nader*, 865 A.2d 8, 17 (Pa. Cmwlth. 2004).

After the hearings commenced, the Nader-Camejo campaign filed an Application to Amend the Order, arguing that the signatures of individuals who were not registered voters should be counted in evaluating the sufficiency of the nomination papers. *Id.* On September 27, 2004, the Commonwealth Court denied this Application. *Id.* On September 27, 2004, Appellants filed an Application for Extraordinary Relief, asking the Pennsylvania Supreme Court to exercise King's Bench jurisdiction. *Id.* That request was also denied. *Id.*

On October 13, 2004, the Commonwealth Court issued its Findings, Opinion and Order setting aside the nomination papers. *In re Nader*, 905 A.2d at 454-55. The Commonwealth Court concluded that the nomination papers did not contain the required 25,697 valid signatures and found that the nomination papers contained only 18,818 valid signatures. *Id.* The court struck nearly two-thirds of the signatures that had been submitted in support of the Nader-Camejo campaign. *Id.* at 455. The court concluded the following:

> "[T]his signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon this Court. The conduct of the [Nader-Camejo campaign] through their representatives (not their attorneys) shocks the conscience of the Court. In reviewing signatures, it became apparent, that in addition to signing names such as 'Mickey Mouse,' 'Fred Flintstone,' 'John Kerry,' and the ubiquitous 'Ralph Nader,' there were thousands of names that were created at random and then randomly assigned either existent or non-existent addresses by the circulators."

*In re Nader*, 865 A.2d at 18.

On October 14, 2004, the Commonwealth Court issued an order imposing all costs for court stenographer appearances and transcript preparation involved in the hearings on the Nader-Camejo campaign, Ralph Nader and Peter Miguel Camejo individually. *In re Nader*, 905 A.2d at 455. On that same day, the Nader-Camejo campaign appealed the October 13, 2004 order

- 5 -

setting aside the nomination papers to the Pennsylvania Supreme Court. *Id.* at 455. On October

19, 2004, the Pennsylvania Supreme Court issued a *per curiam* order affirming the October 13,

2004 order to remove Nader and Camejo's names from the ballot. *Id.* at 455. The United States

Supreme Court denied the Nader-Camejo campaign's petition for certiorari on October 23, 2004.

Compl. ¶ 190.

After the elections, the Commonwealth Court issued a further order, on January 14, 2005,

directing the Nader-Camejo campaign to pay $81,102.19 in total costs for court stenographer

appearances and transcript preparation. *In re Nader*, 905 A.2d at 455. The Pennsylvania

Supreme Court affirmed the decision of the Commonwealth Court on August 22, 2006, with

Justice Saylor the lone dissenter. *In re Nomination Paper of Ralph Nader*, 905 A.2d 450 (Pa.

2006), *cert denied* 127 S.Ct. 995 (2007). The Pennsylvania Supreme Court held that "[t]he

Commonwealth Court acted pursuant to statutory authority in assessing costs to [the Nader-

Camejo campaign], where their signature-gathering campaign involved fraud and deception of

massive proportions." *In re Nader*, 905 A.2d at 460. The court found that "[g]iven the

magnitude of the fraud and deception" implicated in the signature-gathering process, the Nader-

Camejo campaign's claims that the imposition of costs were unjust or unconstitutional "does not

pass the straight-face test." *Id.* at 459.

The plaintiffs from the Pennsylvania action then took steps to domesticate their judgment

for costs in the District of Columbia. On May 16, 2007, the Superior Court for the District of

Columbia entered the Pennsylvania judgment against Mr. Nader and Mr. Camejo. *See Serody v.

Nader*, Case No. 2007 003385 F (D.C. Sup. Ct. 2007). Mr. Nader took no steps at that time to

challenge or object to the Superior Court giving "full faith and credit" to the Pennsylvania

judgment.

- 6 -

On behalf of their clients, Reed Smith was able to negotiate a settlement of all claims with Mr. Camejo, but Mr. Nader refused to settle. Compl. ¶ 201. Therefore, the Pennsylvania plaintiffs, through counsel Reed Smith, commenced attachment proceedings against Mr. Nader's personal accounts. On July 17, 2007, the Superior Court entered writs of attachment against Amalgamated Bank, M&T Bank and PNC Bank as garnishees of Mr. Nader's accounts. Compl. ¶ 203. On behalf of their clients, Reed Smith filed a motion to condemn the funds frozen in Mr. Nader's account. The court granted the motion on October 25, 2007. Compl. ¶ 203. Mr. Nader then filed a belated motion for relief from judgment on November 7, 2007. Mr. Nader supported his claim for relief by making a number of allegations identical to those made in the current Complaint regarding the alleged impropriety of relationships between Reed Smith and members of the Pennsylvania Supreme Court. The November 7 motion is still pending before the Superior Court. Compl. ¶ 203.

Plaintiffs have named several parties as defendants in the instant case in addition to Reed Smith. The other defendants in this case are individuals, a campaign, unions, and groups associated with the Democratic Party who engaged, to varying degrees, in activities to promote the election of John Kerry for President in the 2004 general election. Plaintiffs in broad and conclusory fashion allege that the lawful activities of these individuals and groups to promote the candidacy of John Kerry and to challenge the nominating petitions of the Nader-Camejo campaign in a number of states constituted a nationwide conspiracy to prevent Plaintiffs Ralph Nader and Peter Miguel Camejo "from running for President and Vice President of the United States in 2004." Compl. ¶ 1.

Plaintiff Ralph Nader is an unsuccessful third party candidate for President. He failed to garner more than 2.75% of the popular vote in his 2000 and 2004 campaigns for President.

Plaintiff Peter Miguel Camejo is an unsuccessful third party candidate for Vice-President. He

asserts no claims against Reed Smith. The other plaintiffs are alleged to be registered voters in

several states, not including Pennsylvania, who supported the unsuccessful candidacy of Mr.

Nader and Mr. Camejo.[4]

Plaintiffs allege causes of action for conspiracy, abuse of process and malicious

prosecution[5] against Reed Smith. None of Plaintiffs' claims has any merit. Therefore, this case

should be dismissed.

## II. PLAINTIFFS' COMPLAINT FAILS TO STATE A LEGALLY SUFFICIENT CLAIM AND SHOULD BE DISMISSED AS TO REED SMITH

### A. Plaintiffs Have Failed to Allege a Legally Cognizable Claim Conspiracy.

#### 1. D.C. law requires an underlying claim upon which conspiracy may be founded.

In order to prove civil conspiracy under District of Columbia law, plaintiffs must show

"(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a

lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed

by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common

scheme." *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 738 (D.C. 2000)

(citing *Griva v. Davison,* 637 A.2d 830, 848 (D.C. 1994)).

Plaintiffs must establish the existence of an underlying unlawful tort because in the

District of Columbia "there is no recognized independent tort action for civil conspiracy."[6]

---

4 Reed Smith incorporates by reference the arguments made in Defendant John Kerry's brief that these voters lack standing to bring an action against Reed Smith and any of the other defendants. These arguments are especially relevant with regard to Reed Smith, as none of the registered voters is a resident of Pennsylvania where any cause of action or injury regarding the activities of Reed Smith would have arisen.

5 Pennsylvania has codified the common law tort of malicious prosecution into a cause of action known as "wrongful use of civil proceedings" in 42 Pa.C.S.A. § 8351 et seq.

6 This court should apply District of Columbia law to Plaintiffs' claims based on the presence of
Continued on following page

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

*Executive Sandwich Shoppe*, 749 A.2d at 738 (citing *Waldon v. Covington,* 415 A.2d 1070, 1074 n. 14 (D.C. 1980)). Because civil conspiracy is a derivative claim predicated on the existence of at least one valid underlying tort, a failure to establish an actionable tort will result in the dismissal of a conspiracy claim. *Halberstam v. Welch,* 705 F.2d 472, 479 (D.C. Cir. 1983). As this memorandum of law will demonstrate, Plaintiffs cannot establish their claims for abuse of process or malicious prosecution. Therefore, the Court must dismiss their civil conspiracy claim.

### 2. Plaintiffs have failed to plead sufficient factual allegations of conspiracy.

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must "allege a plausible entitlement to relief by setting forth any set of facts consistent with the allegations." *Shirk v. Garrow*, 505 F. Supp.2d 169, 172 (D.D.C. 2007) (citing *Bell Atl. Corp. v. Twombly,* __ U.S.__ 127 S.Ct. 1955, 1967, 1969 (2007)); *see also Kopff v. World Research Group, LLC.*, 519 F.Supp.2d 97, 98-99 (D.D.C. 2007). Plaintiffs' "obligation to provide the grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Shirk*, 505 F.Supp.2d at 173 (citing *Twombly*, 127 S.Ct. at 1964-65); *see also Aktieselskabet AF 21 v. Fame Jeans, Inc.*, 511 F.Supp.2d 1, 5 (D.D.C. 2007) ("While a complaint need not plead detailed factual allegations, the factual allegations it does include must be enough to raise a right to relief above the speculative level."). Plaintiffs'

---

Continued from previous page

a majority of the Defendants in the District during the course of the alleged conspiracy. However, should the Court choose to apply Pennsylvania law to the claims against Reed Smith arising from its actions in the Pennsylvania litigation, Plaintiffs must make a similar showing of the existence of an underlying tort. *See Pelagatti v. Cohen*, 536 A.2d 1337, 1341-42 (Pa. Super 1988) ("absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act..."); *see also Floyd v. Brown & Williamson Tobacco Corp.*, 159 F.Supp.2d 823, 834 (E.D. Pa. 2001) ("[P]laintiff must prove a separate underlying tort as a predicate for civil conspiracy liability.") (citation omitted).

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

complaint must give fair notice to Defendants of what the Plaintiffs' claims are and the grounds upon which those claims rest. *Id.* at 171 (citing *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003)).

Plaintiffs have failed to provide the requisite notice to Reed Smith regarding the basis of their claim for conspiracy. Instead, Plaintiffs rely on bare, conclusory allegations of a general nationwide conspiracy to keep Nader-Camejo out of the 2004 general election. At no point do Plaintiffs provide specific facts alleging when or how Reed Smith entered into this alleged conspiracy. In fact, Plaintiffs seek to establish the existence of the conspiracy solely on the allegation of a meeting during the Democratic convention where "the organizers and leaders of the conspiracy met privately to discuss their plans." Compl. ¶ 46. However, Plaintiffs do not allege that any member of Reed Smith attended this meeting.[7]

Instead, Plaintiffs attempt a sleight of hand by incorporating factual allegations regarding the lawsuit filed by Ralph Dade and a class of individuals against the Nader-Camejo campaign in the Philadelphia Court of Common Pleas[8] (Compl. ¶ 179) in the same section as Plaintiffs' factual allegations regarding the lawsuit filed by voters represented by Reed Smith in the Pennsylvania Commonwealth Court. Compl. ¶ 180. However, Reed Smith was not involved in any way regarding the Ralph Dade lawsuit. Nor do Plaintiffs allege that Reed Smith was involved. Instead, they suggest that the plaintiffs in the Philadelphia lawsuit signed false names on the Nader-Camejo petitions in order "to manufacture evidence to support their

---

7 The Court must assume that Plaintiffs do not intend the use of the general term "conspirators" to cover Reed Smith in this paragraph of the complaint since Plaintiffs make it very clear in ¶ 14 of their complaint that "the terms 'Defendants' and 'conspirators' or 'co-conspirators' and the charges herein do no necessarily apply to every Defendant and every conspirator named in this complaint." Therefore, the Court must conclude that only the specific use of a Defendant's name denotes a charge against that Defendant.

8 The proposed class complained that the Nader-Camejo campaign had failed to pay them each approximately $200 for collecting signatures on behalf of the campaign. Compl. ¶ 179.

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

Commonwealth Court complaint." Compl. ¶ 193. Yet, Plaintiffs have not provided any factual allegations to support a connection between these two separate groups of individuals suing the campaign. Further, Plaintiffs have not named Ralph Dade or Reed Smith's clients from the Commonwealth Court case as defendants or non-defendant co-conspirators in this case.

Thus, Plaintiffs rely exclusively on "labels and conclusions" to justify their entitlement to relief against Reed Smith as a conspirator. *Shirk*, 505 F.Supp.2d at 173. Plaintiffs' broad, conclusory statements regarding the formation and membership of this alleged conspiracy is insufficient to survive a motion to dismiss.[9] *See Twombly*, 127 S.Ct. at 1964-65.

### 3. The Noerr-Pennington Doctrine Protects the Actions of Defendants.

Defendants' actions in filing suits to challenge the nomination petitions of the Nader-Camejo campaign in various states are protected by the First Amendment right to petition the government. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127, 138 (1961). In *Noerr*, the Court considered whether the Sherman Act prohibited a publicity campaign waged by an association of 24 Eastern railroads against the trucking industry. *Id.* Noting that the "right of petition is one of the freedoms protected by the Bill of Rights" the Court held that the Sherman Act did not prohibit "two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action." *Id.*, at 137-138. The U.S. Supreme Court reaffirmed the principles of *Noerr* in *United Mine Workers v. Pennington*, 381 U.S. 657 (1968), where the court held that the defendants' collective efforts to

---

[9] If this court chooses to apply Pennsylvania law, Plaintiffs have an even greater burden because "[p]roof of malice is an essential part of a cause of action for conspiracy." *Pfizer Inc v. Giles* (*In re Asbestos School Litigation*), 46 F.3d 1284, 1292-93 (3d Cir. 1994) (quoting *Burnside v. Abbot Lab.*, 351 Pa.Super. 264, 505 A.2d 973, 980 (1985); *see also Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). At no point in the complaint have Plaintiffs provided factual allegations that Reed Smith has acted with malice toward the Plaintiffs. Therefore, Plaintiffs have failed to meet the pleading requirements of *Twombly* with regard to a claim for civil conspiracy under Pennsylvania law.

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

lobby the Secretary of Labor could not be the basis of antitrust liability. *Id.* at 670.

The First Amendment principles announced in *Noerr* and *Pennington* have come to be known as the "*Noerr-Pennington* Doctrine." The United States Supreme Court has extended the doctrine to protect coordinated action in petitioning administrative agencies and courts, as well as executive and legislative bodies. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972). The Supreme Court has characterized this right of access to courts as an "aspect of the First Amendment right to petition." *See Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741 (1983).

While the doctrine initially developed in antitrust cases involving business disputes, the doctrine is equally applicable in non-business and non-antitrust cases. *See Whelan v. Abell,* 48 F.3d 1247, 1254 (D.C. Cir. 1995) (finding no reason why *Noerr-Pennington* doctrine should not apply to common law torts). Courts have extended the immunity provided by the doctrine to include such causes of action as federal civil rights claims, abuse of process and civil conspiracy (among other causes of action). *See, e.g., Barnes v. Township of Lower Merion,* 242 F.3d 151, 160-61 (3d Cir. 2001) (recognizing *Noerr-Pennington* immunity as a defense to causes of action arising under federal civil rights law); *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.,* 858 F.2d 1075, 1084 (5th Cir. 1988) (finding *Noerr-Pennington* precluded defendant's liability as conspirator with city in violation of civil rights under 42 U.S.C. § 1983); *Protect Our Mountain Environment, Inc. v. District Court,* 677 P.2d 1361, 1369 (Colo.1984) (*Noerr-Pennington* analysis applicable to suit for abuse of process and civil conspiracy).

Pursuant to the doctrine, the D.C. Circuit has recognized that an individual "cannot be held liable as a result of his or her filing a good-faith lawsuit or administrative claim or otherwise

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

seeking governmental redress." *Whelan*, 48 F.3d at 1253. Furthermore, an individual associated with others in a joint action cannot be held liable, even if some of the other individuals involved in the joint action are engaged in wrongful conduct, unless there is evidence that a particular individual's actions with regard to the joint action "were intended specifically to further that wrongful conduct." *Pfizer, Inc. v. Giles (In re Asbestos School Litigation)*, 46 F.3d 1284, 1290 (3d Cir. 1994) (citing *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 919 (1982)). The court must judge whether a particular individual had the specific intent "according to the strictest law." *Claiborne Hardware*, 458 U.S. at 919.

Clearly, the actions taken by Defendants in filing "good-faith" lawsuits challenging the nomination papers of the Nader-Camejo campaign are the types of actions protected by the *Noerr-Pennington* doctrine. *See Whelan*, 48 F.3d at 1253. The Supreme Court has stated that states have the "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *see also American Party of Texas v. White*, 415 U.S. 767 (1974); *Jenness v. Fortson*, 403 U.S. 431 (1971). Therefore, citizens of a state may associate together in petitioning the government to determine whether a particular candidate is meeting the requirements of state law in demonstrating that support. The fact that Defendants were successful in keeping Nader-Camejo off the ballot in Pennsylvania does not mean they infringed on Plaintiffs' rights – for "merely resorting to the courts and being on the winning side of lawsuit does not make a party" liable for depriving a plaintiff of his rights.[10] *Dennis v. Sparks*, 449 U.S.

---

[10] Plaintiffs also complain that Defendants' alleged concerted actions violated Plaintiffs' constitutional rights by "denying voters the choice of voting for them." Compl. ¶ 246. However, a candidacy for office is not a fundamental right in our political system. *See Clements*

Continued on following page

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

24, 28 (1980).

Even if Plaintiffs were to allege that other members associated in the joint action were engaged in wrongful conduct, they have failed to allege that there was specific intent on the part of Reed Smith to engage in any wrongful conduct. *See Claiborne Hardware*, 458 U.S. at 919. Without an allegation of specific intent to engage in wrongful conduct, any action that Reed Smith may have undertaken to assist Defendants in exercising their First Amendment rights is protected by the *Noerr-Pennington* doctrine. *Id.*

Plaintiffs can avoid application of the *Noerr-Pennington* doctrine only if they claim that Defendants' otherwise protected conduct in filing lawsuits was a "sham." *See Whelan v. Abell*, 48 F.3d 1247, 1253 (D.C. Cir. 1995). To establish that a claim falls within the "sham exception," Plaintiffs must demonstrate, in a business case, two factors: (1) "the claim was so objectively baseless that no reasonable litigant could realistically expect success on the merits; and (2) the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon." *WAKA LLC v. DC Kickball*, 517 F.Supp.2d 245, 251 (D.D.C. 2007) (citing *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993)); *see also Whelan*, 48 F.3d at 1253 (adopting the two part framework, but recognizing the element of baseless litigation as the primary factor).

Plaintiffs cannot establish either factor required to invoke the "sham exception." First, the lawsuit filed in Pennsylvania challenging the petition papers of the Nader-Camejo campaign was successful. *See In re Nomination Paper of Ralph Nader*, 905 A.2d 450 (Pa. 2006), *cert*

---

Continued from previous page
*v. Fashing*, 457 U.S. 957, 963 (1982).

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

*denied* 127 S.Ct. 995 (2007). Therefore, Plaintiffs cannot challenge the suit as baseless. Second, while this is not a business and the second element may be less significant, there is no evidence that the lawsuit in Pennsylvania was an attempt by Reed Smith (or any other defendants) to conceal an attempt to interfere with the business relationships of the Nader-Camejo campaign. The lawsuit was a legitimate exercise of First Amendment rights to petition the government to determine whether the Nader-Camejo campaign had met the requirements of state law to get onto the ballot. Therefore, the *Noerr-Pennington* doctrine prevents any imposition of liability on Defendants. *See Claiborne Hardware*, 458 U.S. at 919; *see also Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (finding that joint action by United States Senator and private individuals to mobilize public interest and call attention of state and federal authorities to violations of law by nursing home "cannot serve as the basis of tort liability").

## B. **Plaintiffs' Abuse of Process Claim Must be Dismissed.**

### 1. **Plaintiffs have failed to allege a "perversion" of the judicial process.**

In order to establish a claim for abuse of process under District of Columbia law, Plaintiffs must show that Defendants engaged in "a perversion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge."[11] *Whelan v. Abell*, 953 F.2d 663, 670 (D.C. Cir. 1992) (quoting *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.

---

[11] Pennsylvania law requires a similar showing as the District of Columbia with regard to claims of abuse of process. Pennsylvania courts define abuse of process as "the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Tomalonis v. Levant*, 2005 WL 1677555, *2 (Pa. Super. Ct. 2005) (quoting *Werner v. Plater-Zyberk*, 799 A.2d 776, 782-83 (Pa. Super. 2002)). In order to maintain an action, a plaintiff must show that a defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Werner*, 799 A.2d at 783 (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998)). Therefore, Plaintiffs must meet the same standard whether the court applies District of Columbia or Pennsylvania law.

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

1980); *see also Zandford v. National Ass'n of Securities Dealers, Inc.*, 19 F. Supp.2d 4, 8

(D.D.C. 1998). Plaintiffs may not maintain an action for abuse of process "when the process is

used for the purpose for which it is intended, but there is an incidental motive of spite or an

ulterior purpose of benefit to the defendant." *Rogers v. Johnson-Norman*, 466 F.Supp.2d 162,

175 (D.D.C. 2006) (quoting *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1997)).

For abuse of process to occur, Defendants must have used the process "for an immediate purpose

other than that for which it was designed or intended."[12] *Scott*, 101 F.3d at 755. The District of

Columbia has adopted a cautious approach in defining the scope of abuse of process because of

its policy of "allowing[ing] unfettered access to our courts." *Bown v. Hamilton*, 601 A.2d 1074,

1080 (D.C. 1992) (quoting *Morowitz*, 423 A.2d at 197).

    Plaintiffs have failed to allege that there was any "perversion of the judicial process" by

Reed Smith. Reed Smith represented a group of registered voters who filed a good-faith lawsuit

in Pennsylvania against the Nader-Camejo campaign challenging their nomination papers. *See*

*In re Nader*, 905 A.2d 450. Plaintiffs allege that the real purpose of this litigation was to "help

John Kerry win the election" and "to bankrupt the Nader-Camejo Campaign." Compl. ¶¶ 182,

11. However, even if these allegations were true, this is not sufficient grounds to maintain an

action for abuse of process. Initiation of litigation is not actionable "no matter what ulterior

motive may have prompted it" unless Plaintiffs can prove the process was "used to accomplish

an end not regularly or legally obtainable." *Bown*, 601 A.2d at 1080 (citing *Morowitz*, 423 A.2d

at 198). The Pennsylvania statute upon which the clients of Reed Smith proceeded clearly

allows concerned citizens to challenge the nomination petitions of a candidate they believe lack

---

[12] Pennsylvania courts have been more explicit in requiring plaintiffs to show "an act or threat
not authorized by the process, or the process must be used for an illegitimate aim such as
extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action."
*Tomalonis*, 2005 WL 1677555 at *3 (citing *Werner*, 799 A.2d at 785).

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

the requisite number of genuine, authentic signatures. *See* 25 P.S. § 2937. Therefore, there was

no abuse of process because the process was being used for an end (to remove Nader-Camejo

from the ballot) that was "regularly and legally obtainable."[13]

### 2. Plaintiffs abuse of process claim is time-barred.

District of Columbia courts have long held that "under customary choice of law

principles, the laws of the forum ... apply to matters of procedure ... and, save where limitations

are part of the cause of action itself, [a] limitation on the time of suit is procedural and is

governed by the law of the forum." *Olivarius v. Stanley J. Sarnoff Endowment for*

*Cardiovascular Science, Inc.*, 858 A.2d 457, 463 (D.C. 2004) (citing *Huang v. D'Albora,* 644

A.2d 1, 4 (D.C.1994). While the common law torts of malicious prosecution and abuse of

process have been codified in Pennsylvania into a single statute, *see* 42 Pa.C.S.A. § 8351 et seq.,

that statute does not provide a limitations period as "part of" the causes of action. Instead, a

general statute provides a statute of limitations for these actions. 42 Pa. C.S.A. § 5524(1).

Therefore, the statute of limitations for these claims should be treated as a procedural rule and

the court should apply District of Columbia law.

Under District of Columbia law, the time period for filing an abuse of process claim is

three years. *See* D.C. Code § 12-301(8). The limitations period runs from the date of the "last

---

13 In the alternative, if Plaintiffs' abuse of process claim stems from the alleged "undisclosed ties" between Reed Smith and justices of the Pennsylvania Supreme Court, the claim should also fail. The alleged "undisclosed ties" were matters of public record that were not improper under Pennsylvania law. Plaintiffs could have easily discovered these "undisclosed ties" through the exercise of due diligence. It is common practice in the Commonwealth of Pennsylvania, where judges and justices are elected, for attorneys and law firms to contribute to election campaigns. *See Sheperdson v. Nigro*, 5 F.Supp.2d 305, 310 (E.D. Pa. 1998) (finding that a judge's receipt of campaign contributions from lawyers for litigants did not present the kind of bias required to implicate the federal constitution). If the Nader-Camejo campaign wished to call into question the partiality of a judge, they were required by Pennsylvania law to do so initially before that judge. *See Reilly v. Southeastern Pennsylvania Transp. Auth.*, 489 A.2d 1291, 1299 (Pa. 1985). Instead, Plaintiffs seek to use this federal court (and the D.C. Superior Court) to mount a collateral attack upon the state court judgment against them.

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

act constituting the tort." *In re Rothenberg*, 173 B.R. 4, 11 (Bkrtcy. D. Dist. Col. 1994).

Plaintiffs have failed to allege a specific "perversion of the judicial process" other than the filing

of the lawsuit challenging the Nader-Camejo nomination papers in Pennsylvania. Therefore, the

filing of the lawsuit against the campaign would be the last act constituting the tort. This action

was filed on August 9, 2004. The limitations period for an abuse of process claim would have

expired on August 9, 2007 – more than two months before Plaintiffs filed the present action

against Reed Smith. Therefore, Plaintiffs abuse of process claim should be dismissed as time-

barred.[14]

## C. **Plaintiffs' Malicious Prosecution Claim Must be Dismissed.**

### **1. Plaintiffs' allegations fail to satisfy the elements of malicious prosecution.**

In order to support a claim for malicious prosecution in the District of Columbia,

Plaintiffs must plead and be able to prove: "(1) that the underlying suit terminated in plaintiff's

favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit;

and (4) special injury occasioned plaintiff as a result of the original action."[15] *Joeckel v.*

---

[14] If Plaintiffs are relying upon the initiation of the lawsuit as the only basis for abuse of process, this claim properly should be construed as a claim for malicious prosecution. *See Zandford v. National Ass'n of Securities Dealers*, 19 F.Supp. 2d 4, 8 (D.D.C. 1998) (finding that complaint alleging Defendant lacked a sound foundation for instigation of an action was properly construed as a claim for malicious prosecution). As discussed below, the shorter limitations period for a malicious prosecution claim also would bar Plaintiffs' claim.

[15] Pennsylvania law requires a similar showing by Plaintiffs. In order to maintain an action under Pennsylvania's Wrongful Use of Civil Proceedings statute, 42 Pa.C.S.A. § 8351 et seq. (which codified and modified the common law cause of action for malicious prosecution), Plaintiffs must allege and prove: "(1) The defendant has procured, initiated, or continued the civil proceedings against him; (2) [t]he proceedings were terminated in his favor; (3) [t]he defendant did not have probable cause for his action; (4) [t]he primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based; (5) [t]he plaintiff has suffered damages as set forth in section 8353 (relating to damages)." 42 Pa.C.S.A. § 8354. The only difference between D.C. law and Pennsylvania law is that Pennsylvania has eliminated the requirement for Plaintiffs to prove a "special injury." However, the court does not even need to reach this element because the underlying suit did not terminate in Plaintiffs' favor.

*Disabled American Veterans*, 793 A.2d 1279, 1282 (D.C. 2002) (citing *Morowitz v. Marvel*, 423

A.2d 196, 198 (D.C. 1980); *Ammerman v. Newman*, 384 A.2d 637, 639 (D.C. 1978).

### (1) The underlying suit did not terminate in Plaintiffs' favor.

Plaintiffs' malicious prosecution claim against Reed Smith fails on its face because

Plaintiffs cannot meet the first requirement. The litigation in Pennsylvania resulted in a

judgment against the Nader-Camejo campaign. *See In re Nader*, 905 A.2d 450. The Supreme

Court of Pennsylvania held that the "Commonwealth Court had acted pursuant to statutory

authority in assessing costs to [the Nader-Camejo campaign], where their signature-gathering

campaign involved fraud and deception of massive proportions." *Id.* at 466. Plaintiffs certainly

have no basis for arguing that this litigation terminated in their favor. Therefore, Plaintiffs'

claim for malicious prosecution fails as a matter of law.

### (2) Plaintiffs have not alleged malice

In order to establish malice, Plaintiffs must show "the existence of an evil purpose or

motive, a wicked or mischievous intent, or a willful, wanton, reckless or oppressive disregard to

the rights of the plaintiff." *Ammerman*, 384 A.2d at 640-41 (citing 52 Am.Jur.2d. Malicious

Prosecution § 46 (1970)). Plaintiffs have failed to allege any evil or wicked intent, personal spite

or rancor on the part of Reed Smith. Defendant has zealously represented the interests of its

clients in challenging the access of the Nader-Camejo campaign to the Pennsylvania ballot. Any

costs associated with defending the lawsuit were a necessary by-product of our legal system, and

not a malicious motive.

### (3) Plaintiffs have not alleged a lack of probable cause.

"Lack of probable cause is an essential element of an action for malicious prosecution,

and a showing of probable cause is thus a valid defense..." *Ammerman*, 384 A.2d at 639; *see*

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

*also Lyles v. Micenko*, 468 F.Supp.2d 68, 76 (D.D.C. 2006) ("Evidence of probable cause is a valid defense to a claim for malicious prosecution."). Probable cause has been defined as "facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper." *Lyles*, 468 F.Supp.2d at 76 (quoting *Ammerman*, 384 A.2d at 639). However, the party instituting the suit does not need to be sure that his action will be successful in order to establish probable cause. *Id.*

Here, Reed Smith's clients *were successful* in the underlying Pennsylvania action. Therefore, they had sufficient probable cause to institute the action against the Nader-Camejo campaign. Plaintiffs' claim of malicious prosecution then must be dismissed for failing to establish this "essential element." *See Ammerman*, 384 A.2d at 639.

### (4) Plaintiffs have not alleged a "special injury."

In the District of Columbia, "the special injury required has been defined as arrest, seizure of property, or injury which would not necessarily result from suits to recover for like causes of action." *See Joeckel*, 793 A.2d at 1282 (citing *Mazanderan v. McGranery*, 490 A.2d 180, 182 (D.C. 1984)). District of Columbia courts have held that injuries to reputation, emotional distress, loss of income, and substantial expenses incurred in defending against a lawsuit fall outside the scope of the definition of special injury. *See Joeckel*, 793 A.2d at 1282 (citing *Mazanderan*, 490 A.2d at 182); *see also Tri-State Hospital Supply Corp. v. United States*, 2007 WL 2007587, *7 (D.D.C. 2007) ("incurring substantial expense in defending against a lawsuit does not rise to the level of special injury").

Plaintiffs' allegations that they suffered substantial expenses in defending the lawsuit brought by Reed Smith's clients are not sufficient to establish a special injury. Plaintiffs have suffered no more than any other candidate whose nomination papers may have been challenged

- 20 -

in Pennsylvania. Being excluded from the ballot and paying litigation costs are the expected

consequences of cases brought pursuant to 25 P.S. § 2937, and not special injuries that resulted

from the litigation brought by Reed Smith's clients. *See In re Nader*, 905 A.2d at 460 ("[T]he

court is authorized to impose costs when a nominating petition is set aside or a petition to set

aside a nominating petition is dismissed."). Therefore, Plaintiffs cannot establish a claim for

malicious prosecution.

### 2. Plaintiffs' malicious prosecution claim is time-barred.

For the reasons stated above, the court should apply District of Columbia law to

determine the limitations period for the malicious prosecution claim. *Olivarius*, 858 A.2d at 463

(holding that limitations periods are procedural and therefore court should apply laws of the

forum state). The District of Columbia provides a one year statute of limitations for malicious

prosecution claims. *See* D.C. Code § 12-301(4). The limitations period is "properly computed

from the date of the disposition of the underlying civil or criminal action." *Shulman v.

Miskell*, 626 F.2d 173, 175, (D.C. Cir. 1980); *Rogers v. Johnson-Norman*, 466 F.Supp.2d 162,

174 (D.D.C. 2006) ("The statute of limitations applicable to a claim for malicious prosecution

begins to run when the underlying action against a plaintiff terminates....").

The underlying litigation involving Reed Smith concluded, at the very latest, on January

10, 2005, when the United States Supreme Court denied the Nader-Camejo campaign's petition

for writ of certiorari. *See Nader v. Serody*, 543 U.S. 1052 (January 10, 2005). The further

proceedings and appeals regarding the assessment of costs were purely collateral matters that did

not affect the underlying result denying the names of Mr. Nader and Mr. Camejo from appearing

on the Pennsylvania ballot. The one year limitations period therefore should have expired on

January 10, 2006. Plaintiffs filed this case in D.C. Superior Court on October 30, 2007 – more

than a year after the limitations period expired.  Therefore, Plaintiffs' claim for malicious

prosecution is time-barred.[16]

### D. **Plaintiffs' Allegations of Harm are Overly Broad and Speculative**.

#### 1. **Plaintiffs have failed to plead sufficient factual allegations regarding the harm they have suffered.**[17]

Plaintiffs must "allege a plausible entitlement to relief by setting forth any set of facts

consistent with the allegations." *Shirk*, 505 F. Supp.2d at 172 (citing *Twombly*, 127 S.Ct. at

1967, 1969 (2007)).  The factual allegations of a plaintiff "must be enough to raise a right to

relief above the speculative level." *Twombly*, 127 S.Ct. at 1965.  Plaintiffs' complaint must give

fair notice to Defendants of what the Plaintiffs' claims are and the grounds upon which those

claims rest.  *Shirk*, 505 F. Supp.2d at 172.

Here, Plaintiffs have failed to provide sufficient notice to Defendants regarding the

amount of damages they have allegedly suffered.  Plaintiffs have failed to establish sufficient

factual allegations to raise their right to relief beyond the speculative level.   Plaintiffs allege that

"Defendants and co-Conspirators conspired to and did in fact cause financial injury ... to Mr.

Nader and Mr. Camejo personally." Compl. ¶ 232.  However, Plaintiffs fail to provide any

specific factual allegations regarding the extent of this harm.  Plaintiffs allege that "Defendants'

---

16 Plaintiffs may seek to argue that the statute of limitations has not run yet because of the litigation in D.C. Superior Court involving the domestication of the Pennsylvania judgment against the Nader-Camejo campaign imposing costs. *See Serody v. Nader*, Case No. 2007 CA 003385 F. However, if Plaintiffs seek to argue this, their claim should alternatively be dismissed as premature.  A claim for malicious prosecution cannot be properly asserted until the complained of litigation has terminated in the plaintiff's favor. *Joeckel*, 793 A.2d at 1282. Therefore, any complaint of malicious prosecution arising from the current litigation in D.C. Superior Court is premature.

17 Reed Smith further argues that Plaintiffs have not alleged a legally cognizable harm. Plaintiffs allege only a generalized grievance; fail to set forth allegations establishing that Defendants caused Plaintiffs' alleged harms; and fail to set forth a redressable injury.  Defendant Democratic National Committee details this argument in its memorandum of law in support of its motion to dismiss.  Reed Smith incorporates the argument here.

conspiracy caused severe financial injury to Nader-Camejo's 2004 presidential campaign," and "consumed Nader-Camejo staffers' time" Compl. ¶ 230. Yet, Plaintiffs fail to provide any factual allegations regarding the measure of damages resulting from this alleged "financial injury."

While Plaintiffs allege that "Mr. Nader was forced to loan the campaign $100,000," (Compl. ¶ 228), they fail to allege that this money was lent exclusively to defend against the ballot access cases. Furthermore, Plaintiffs do not allege that the Defendants have prevented the campaign from repaying the loan. The injuries alleged by Plaintiffs are so overly broad and speculative that this court must dismiss the Complaint.[18]

### 2. Plaintiffs' Claim for Injunctive Relief is Moot.

In general, a claim becomes moot when the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). Federal courts recognize an exception to the general rule where matters are "capable of repetition, yet evading review." *Murphy*, 455 U.S. at 482. This exception is limited to two situations: (1) the duration of the challenged action is too short to be fully litigated before its expiration; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again.[19] *Id.*; *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 187 (1979).

---

[18] There are two additional problems regarding Plaintiffs' specific allegations regarding Reed Smith. First, Plaintiff Camejo has settled any claims he has against Reed Smith regarding the Pennsylvania litigation and does not assert any claims against Reed Smith in this case. Compl. ¶ 16. Therefore, the $20,000 that he was allegedly "induced" to pay is irrelevant to this litigation. Second, Plaintiff Nader is seeking relief from the judgment regarding the money he owes to the firm arising from the Pennsylvania litigation in a separate proceeding. Compl. ¶ 203. Therefore, the issues regarding the validity of the Pennsylvania judgment are best left to that proceeding.

[19] District of Columbia courts have adopted a more lenient approach to dismissing claims for mootness and will consider a case on the merits where "it presents a matter of importance that is
Continued on following page

DCLIB-526584.2-NRFENNES 2/4/08 4:01 PM

Plaintiffs no longer have a legally cognizable interest in the injunctive relief they seek. The amended complaint requests injunctive relief to prevent Defendants from violating "Nader-Camejo's constitutional rights by preventing them from appearing on the ballot as candidates in the 2004 presidential election" (Compl. ¶ 66 iii), and from violating "Plaintiff-voters' constitutional rights, and those of others similarly situated, by denying voters their free choice of candidates in the 2004 presidential election." Compl. ¶ 66 iv. However, the 2004 election is over. This court has no power within its jurisdiction to go back in time to put Nader-Camejo back on the ballots as candidates.[20]

The "capable of repetition yet evading review" exception also does not apply to the Plaintiffs' claims. Neither Plaintiff Nader nor Camejo have alleged that they are planning to run for President and Vice President. Plaintiffs have not alleged that this so-called conspiracy continues to prevent their ability to engage in the political process or to compete as candidates for other offices. Any other claims of potential or future harm as a result of the alleged conspiracy are completely speculative. Therefore, all requests for injunctive relief should be dismissed, and because the voter-Plaintiffs only request injunctive relief, they should be dismissed from this case.

### III. CONCLUSION

For the foregoing reasons, the court should grant Defendant Reed Smith's motion to

---

Continued from previous page

likely to recur, yet evade review with respect to others similarly situated." *Teachey v. Carver,* 736 A.2d 998, 1002 (D.C. 1999) (citing *Lynch v. United States,* 557 A.2d 580, 582 (D.C. 1989) (en banc)). However, even if the court were to adopt this more lenient approach, the court must still dismiss Plaintiffs claim for injunctive relief as moot.

20 Plaintiffs may not properly continue to request injunctive relief based on alleged violations of their constitutional rights when they have amended their complaint to remove any federal claims.

dismiss the complaint.

DATED this the 4th day of February, 2008.

Respectfully submitted,

REED SMITH LLP

_____/s/_____
Douglas K. Spaulding
D.C. Bar No. 936948
Lasagne A. Wilhite
D.C. Bar No. 475438

REED SMITH LLP
1301 K Street, N.W.,
Suite 1100 - East Tower
Washington, D.C. 20005-3373
Telephone:   202 414 9200
Facsimile:   202 414 9299

*Counsel for Defendant Reed Smith*

DCLIB-526584.2-NRFENNES 2/4/08 4:28 PM

# Attachment 2

**450** Pa.        **905 ATLANTIC REPORTER, 2d SERIES**

since Officer Sollenberger did not determine her speed on his speedometer for three-tenths of a mile. *See* 75 Pa.C.S. § 3368(a); *Commonwealth v. Cohen,* 413 Pa.Super. 460, 605 A.2d 814, 817 (1992). However, "an actual violation of the [Motor Vehicle Code] need not ultimately be established to validate a vehicle stop, a police officer must have a reasonable and articulable belief that a vehicle or driver is in violation of the [Code] in order to lawfully stop the vehicle." *Commonwealth v. Snell,* 811 A.2d 581, 584 (Pa.Super.2002).[1]

The question is not whether the officer could *prove* a case of speeding; validity of a stop is never evaluated by the ultimate conviction or acquittal. Of course appellant was exceeding the posted limit—the officer clocked her, and thus had articulable and reasonable belief in the violation. Officer Sollenberger possessed probable cause to believe appellant was speeding in his jurisdiction; thus, he could have continued pursuit and stopped appellant's vehicle outside his jurisdiction. *See* 42 Pa. C.S. § 8953(a)(2).

NEWMAN joins this concurring opinion.



---

**In re Nomination Paper of Ralph NADER and Peter Miguel Camejo as Candidates of an Independent Political Body for President and Vice President in the General Election of November 2, 2004.**

**Linda S. Serody, Roderick J. Sweets, Ronald Bergman, Richard Trinclisti, Terry Trinclisti, Bernie Cohen–Scott, Donald G. Brown and Julia A. O'Connell.**

Appeal of Ralph Nader and Peter Miguel Camejo, and Their Independent Electors.

**In re Nomination Paper of Ralph Nader and Peter Miguel Camejo as Candidates of an Independent Political Body for President and Vice President in the General Election of November 2, 2004.**

**Linda S. Serody, Roderick J. Sweets, Ronald Bergman, Richard Trinclisti, Terry Trinclisti, Bernie Cohen–Scott, Donald G. Brown and Julia A. O'Connell.**

Appeal of Ralph Nader and Peter Miguel Camejo, and Their Independent Electors.

Supreme Court of Pennsylvania.

Argued March 1, 2006.

Decided Aug. 22, 2006.

**Background:** Voters filed objections to nomination papers of potential candidates for President and Vice President of the United States. After the Commonwealth Court, No. 568 MD 2004, Colins, J., issued order striking signatures from nomination

---

1. Effective February 1, 2004, the General Assembly *"lowered"* the quantum of cause an officer must possess from 'articulable and reasonable grounds' [which is equivalent to prob-

able cause] to 'reasonable suspicion' " to conduct a vehicle stop. 75 Pa.C.S. § 6308(b); *Commonwealth v. Cook,* 865 A.2d 869, 873 n. 1 (Pa.Super.2004) (emphasis in original).

IN RE NOMINATION PAPER OF NADER    Pa. **451**
Cite as 905 A.2d 450 (Pa. 2006)

papers and setting aside nomination papers, the Commonwealth Court issued order assigning costs for court stenographer and transcript preparation to the candidates, and a separate order approving objectors' bill of costs, directing candidates to pay $81,102.19. Candidates appealed both orders directing them to pay costs. Appeals were consolidated.

**Holdings:** The Supreme Court, Nos. 198 MAP 2004, 17 MAP 2005, Newman, J., held that:

(1) the first order was not a final, appealable order;

(2) Commonwealth Court was authorized, by statute to impose costs of challenge on the candidates;

(3) Commonwealth Court had subject matter jurisdiction to impose costs on the candidates; and

(4) imposition of costs did not unconstitutionally penalize candidates for their political speech.

Ordered accordingly.

Eakin, J., concurred in part and dissented in part and filed an opinion.

Saylor, J, dissented and filed an opinion.

See also 865 A.2d 8.

**1. Appeal and Error** ☞984(5)

Appellate review of an order of a tribunal awarding counsel fees to a litigant is limited solely to determining whether the tribunal palpably abused its discretion in making the fee award.

**2. Elections** ☞154(6)

In proceedings involving challenges to a nomination paper, the appellate court will reverse a trial court order only when the findings of fact are not supported by substantial evidence, there was an abuse of discretion, or errors of law were committed.

**3. Courts** ☞242(2)

Supreme Court has only that jurisdiction as is provided by law.

**4. Appeal and Error** ☞85

The appealability of an order raises an issue of the jurisdiction of the Court.

**5. Elections** ☞154(6)

Commonwealth Court's order directing potential candidates to pay costs of court stenographer and transcript preparation for voters' successful challenge to candidates' nomination papers was not a final order and, thus, was not appealable, where the Commonwealth Court issued a subsequent order establishing amount candidates were required to pay and ending the litigation. 42 Pa.C.S.A. § 723; Rules App.Proc., Rule 341(d)(1), 42 Pa.C.S.A. (2004).

**6. Elections** ☞154(6)

Potential candidates for President and Vice President of the United States did not waive, for appeal, their argument that voters who filed objections to the candidates' nomination papers were not entitled to payment of costs authorized by statute for proceedings arising out of their challenge to the nomination papers, although they failed to raise issue in their appeal of first order assigning costs, where appellants did raise such issue in their appeal from subsequent order, which fixed amount of costs assigned to candidates, and appeal from first order was quashed. 25 P.S. § 2937; 42 Pa.C.S.A. § 723.

**7. Elections** ☞154(13)

Commonwealth Court was authorized to impose, on potential candidates for President and Vice President of the United States, costs of voters' successful challenge to candidates' nomination papers, under the statute governing objections to nomination petitions and papers and authoriz-

ing courts to assign costs "in case any such petition is dismissed." 25 P.S. § 2937.

**8. Elections ⟬154(13)**

Commonwealth Court had subject matter jurisdiction to impose, on potential candidates for President and Vice President of the United States, costs of voters' successful challenge to candidates' nomination papers; Commonwealth Court possessed authority pursuant to the Election Code to adjudicate disputes concerning elections, the Commonwealth Court had original exclusive jurisdiction of matters relating to statewide office, and issue of imposition of costs was related to the adjudication of the challenged nomination papers. 25 P.S. § 2937; 42 Pa.C.S.A. § 764.

**9. Constitutional Law ⟬90.1(1.2)**
    **Elections ⟬154(13)**

Commonwealth Court's imposition, on potential candidates for President and Vice President of the United States, of costs of successful challenge to their nomination papers, under statute authorizing imposition of costs where nomination petitions were set aside, did not unconstitutionally penalize candidates for their political speech; cost provision did not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny, and even if the statute did burden ballot access, the burden would be reasonable and rationally related to the interest of the Commonwealth in ensuring honest and fair elections. 25 P.S. § 2937.

**10. Elections ⟬1**

The right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system.

**11. Elections ⟬21**

Limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable.

————

Marcus James Lemon, Esq., Ronald Lee Hicks, Jr., Esq., Basil Culyba, *pro hac vice*, Ross A. Dreyer, *pro hac vice*, Harrisburg, for Ralph Nader/Peter Miguel Camejo.

Daniel I. Booker, Esq., Pittsburgh, for Linda S. Serody.

Efrem M. Grail, Esq., Pittsburgh, for Ronald Bergman.

Cynthia E. Kernick, Esq., Pittsburgh, for Richard Trinclisti.

Kim M. Watterson, Esq., Melissa Joy Oretsky, Pittsburgh, for Bernie Cohen–Scott.

Louis Lawrence Boyle, Esq., for Bureau of Elections.

Michelle Stirman Pierson, Esq., Marcus James Lemon, Esq., J. Matthew Wolfe, Esq., Ronald Lee Hicks, Jr., Esq., Andrew Lee Noble, Esq., Basil Culyba, *pro hac vice*, Ross A. Dreyer, *pro hac vice*, for Peter Miguel Camejo/Ralph Nader.

William S. Gordon, Esq., Christopher K. Walters, Esq., Ira Steven Lefton, Esq., Philadelphia, for Linda S. Serody.

Milind Madhukar Shah, Esq., Barbara Kiely, Esq., for Roderick J. Sweets.

Nicholas R. Sabatine, III, Esq., Windgap, for Ronald Bergman.

Andrea Beth Simonson, for Richard Trinclisti.

Melissa Joy Oretsky, Philadelphia, for Bernie Cohen–Scott.

James P. Williamson, Philadelphia, for Donald G. Brown.

Brian Anthony Gordon, Esq., Gregory M. Harvey, Esq., Philadelphia, for Julia A. O'Connell.

Kim M. Watterson, Esq., Pittsburgh, for et al Linda S. Serody.

Cynthia E. Kernick, Esq., Jeffrey John Bresch, Esq., James Michael Doerfler, Esq., Jeremy David Feinstein, Esq., Mark Lawrence Tamburri, Esq., Efrem M. Grail, Esq., Lisa M. Campoli, Daniel I. Booker, Esq., John M. McIntyre, Pittsburgh, for et al Linda Serody.

Louis Lawrence Boyle, Esq., for Bureau of Commissions, Elections and Legislation.

Thomas W. Corbett, Jr., Esq., Harrisburg, for Commonwealth of PA.

Before: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice NEWMAN.

Appellants Ralph Nader (Nader) and Peter Miguel Camejo (Camejo) appeal two Orders of the Commonwealth Court assessing costs against them individually and against their unsuccessful campaign for the respective offices of President and Vice–President of the United States. For the reasons that follow, we affirm the Orders of the Commonwealth Court that required Appellants to pay transcription and stenography costs in the amount of $82,102.19 to Appellees.

## FACTS AND PROCEDURAL HISTORY

Appellees are registered voters in Pennsylvania who waged a successful battle to set aside Nomination Papers that Appellants filed to secure positions as candidates

on the Pennsylvania ballot for the November 2, 2004 General Election. The Commonwealth Court granted the relief that Appellees sought and found that wideranging fraud and deception had occurred during the signature-gathering process of Appellants. The stenographic and transcription costs that are the subject of this Opinion were incurred during hearings held regarding Appellees' challenge.

A review of the extensive litigation history regarding the campaign of Appellants is essential to understanding the issue presented today. The genesis of the controversy dates back to August 2, 2004, when Appellants filed Nomination Papers to appear as candidates on the Pennsylvania ballot for the November 2, 2004 General Election. On August 9, 2004, Appellees Linda S. Serody, *et al.*, filed a Petition alleging that the Nomination Papers contained insufficient valid, genuine, authentic, and complete signatures to qualify Nader and Camejo to appear on the ballot.

Appellants filed Initial Objections to the Petition on August 17, 2004, and on August 19, 2004, the Commonwealth Court ordered the parties to present all pre-trial evidentiary objections, including questions with regard to the manner in which the Commonwealth Court would review the challenged signatures. Appellants filed an Application to Dismiss the Petition, along with additional Objections on August 23, 2004 and August 24, 2004.

On August 30, 2004, the Commonwealth Court set aside the Nomination Papers and disqualified Nader and Camejo from the ballot because they had accepted the nomination of the Reform Party in Michigan, thus violating Section 951(e) of the Election Code.[1] The Commonwealth Court

1. Section 951(e) of the Election Code provides that:

There shall be appended to each Nomination Paper offered for filing an affidavit of each candidate nominated therein, stat-

**454** Pa.    **905 ATLANTIC REPORTER, 2d SERIES**

further disqualified Camejo for the reason that his candidate's affidavit falsely indicated that he was not enrolled in a political party, despite the fact that he was a member of the California Green Party. The Order also addressed Appellants' procedural objections. *In re Nomination Paper of Ralph Nader,* 856 A.2d 908 (Pa. Cmwlth.2004) (*rev'd, In re Nomination Paper of Ralph Nader,* 579 Pa. 561, 858 A.2d 58 (2004)).

Appellants appealed that Order to our Court, and on September 20, 2004, we reversed and vacated the Order and remanded the case for expedited evidentiary hearings. *In re Nomination Paper of Ralph Nader,* 579 Pa. 561, 858 A.2d 58 (2004). In a subsequently issued Opinion, we addressed Appellants' procedural challenges. *In re Nomination Papers of Ralph Nader,* 580 Pa. 22, 858 A.2d 1167 (2004).

On remand, the Commonwealth Court dedicated monumental effort and resources to implement the standards for signature review that we addressed. The court provided detailed and comprehensive hearing procedures and schedules to promote fairness and efficiency with respect to the challenged signatures. The Commonwealth Court held weeks of hearings

across the Commonwealth, with twelve judges conducting a line-by-line review of the challenged signatures in sixty-three counties.[2]

In addition to regular business hours, the court sat on evenings and weekends. The Commonwealth Court issued continuances regarding its regular hearing schedule to enable the judges to conduct these hearings.

After the hearings commenced, Appellants filed an Application to Amend the Order, arguing that the signatures of individuals who are not registered voters should be counted in evaluating the sufficiency of the Nomination Papers. On September 27, 2004, the Commonwealth Court denied this Application.

On September 27, 2004, Appellants filed an Application for Extraordinary Relief, asking this Court to exercise King's Bench jurisdiction. We denied that request, with Mr. Justice Saylor filing a concurring and dissenting opinion.

The previously mentioned statewide hearings in Commonwealth Court that began on September 27, 2004, continued until October 12, 2004. On October 13, 2004, the Commonwealth Court, following three weeks of hearings throughout the state,

ing—(1) the election district in which he resides; (2) the name of the office for which he consents to be a candidate; (3) that he is eligible for such office; (4) that he will not knowingly violate any provision of this act, or of any law regulating and limiting election expenses, and prohibiting corrupt practices in connection therewith; (5) that his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other Nomination Papers filed for any such office; (6) that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general

or municipal election in that same year; (7) that, in the case where he is a candidate for election at a special election, he is not a registered and enrolled member of a party. 25 P.S. § 2911(e), declared unconstitutional as applied by *In re Nomination Papers of Ralph Nader,* 580 Pa. 22, 858 A.2d 1167 (2004).

2. President Judge Colins, Judges Smith–Ribner, McGinley, Pellegrini, Friedman, Leadbetter, Cohn Jubelirer, Simpson, and Senior Judges Mirarchi, Kelley, Jiuliante, and Flaherty presided over the signature review process. There were four counties in which no challenges to the Nomination Papers were filed.

issued its Findings, Opinion, and Order setting aside the Nomination Papers. The court ordered the Secretary of the Commonwealth not to certify Appellants' names as candidates in the November 2, 2004 General Election.

The Order of the Commonwealth Court concluded that the Nomination Papers did not contain the required 25,697 valid signatures and found that the Nomination Papers contained only 18,818 valid signatures. Nearly two-thirds of the signatures that had been submitted in support of the Appellants were struck. The court concluded that:

> [T]his **signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon this Court. The conduct of the [Appellants] through their representatives (not their attorneys) shocks the conscience of the Court.** In reviewing signatures, it became apparent, that in addition to signing names such as "Mickey Mouse," "Fred Flintstone," "John Kerry," and the ubiquitous "Ralph Nader," **there were thousands of names that were created at random and then randomly assigned either existent or nonexistent addresses by the circulators.**

Commonwealth Court, October 13, 2004, Consolidated Findings, Opinion, and Order at 14 (emphasis added).

The Commonwealth Court issued the first Order that is the subject of this appeal on October 14, 2004. The Order stated:

> [E]xcept as otherwise ordered, all costs for court stenographer appearances and transcript preparation are hereby assessed against the Nader/Camejo campaign, Ralph Nader and Peter Miguel Camejo individually. The Chief Clerk is directed to forward any future invoices filed with the court by any court stenographer involved in the hearings ... to

the Nader/Camejo campaign and Ralph Nader and Peter Miguel Camejo for payment.

Commonwealth Court Order, 568 M.D. 2004, October 14, 2004.

On that same day, Appellants appealed to our Court from the Order of October 13, 2004, setting aside the Nomination Papers. Appellants also filed an Application for Supersedeas asking this Court to stay the Commonwealth Court Order.

On October 19, 2004, we issued a *per curiam* Order affirming the October 13, 2004 Order of the Commonwealth Court. Mr. Justice Saylor filed a dissenting statement on October 22, 2004. We also denied the Application for Supersedeas.

The Commonwealth Court issued its second Order relevant to this appeal on January 14, 2005. That Order stated that "the Court having given consideration to [Appellees'] Bill of Costs and the response filed in opposition thereto, said Bill of Costs is approved and [Appellants] are directed to pay $81,102.19 to [Appellees]." Commonwealth Court Order, 568 M.D. 2004, January 14, 2005.

A Bill of Costs submitted to the Commonwealth Court identified $42,835.19 of the total amount as costs of court reporter appearances, transcription of proceedings, and transcripts. Appellees' Reproduced Record, 17 MAP 2005, Petitioners' Bill of Costs, II. "Itemized Listing of Costs." The costs imposed for handwriting expert witnesses totaled $38,267.00. *Id.*

Appellants appealed these two Orders separately, with each case assigned its own docket number. On October 13, 2005, this Court granted oral argument and consolidated the separate matters. The Court issued a briefing schedule and directed the parties to file supplemental briefs on three issues: (1) whether the Order of the Commonwealth Court dated October 14, 2004,

**456** Pa.     **905 ATLANTIC REPORTER, 2d SERIES**

was an appealable Order; (2) whether the Commonwealth Court had jurisdiction to enter the Order dated January 14, 2005; and (3) whether Appellants preserved the question of the Commonwealth Court's authority to assess costs against them under 25 P.S. § 2937.[3]

The parties presented oral argument on these issues on March 1, 2006.

### DISCUSSION

[1] "[A]ppellate review of an order of a tribunal awarding counsel fees to a litigant is limited solely to determining whether the tribunal palpably abused its discretion in making the fee award." *Lucchino v. Commonwealth*, 570 Pa. 277, 809 A.2d 264, 268–69 (2002) (citing *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295, 299 (1996)).[4]

[2] The costs assessed to Appellants were incurred during hearings held with respect to the challenge of Appellees to

their Nomination Papers. In proceedings involving challenges to a nomination paper, the appellate court will reverse a trial court order only when the findings of fact are not supported by substantial evidence, there was an abuse of discretion, or errors of law were committed. *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327, 331 (2001).

The underlying issue for our examination is whether the Commonwealth Court was authorized to impose costs on Appellants, where Appellees were victorious in setting aside the Nomination Papers of those candidates. For the reasons that follow, we affirm the Orders of the Commonwealth Court, based on statutory authority set forth at 25 P.S. § 2937 and the dictates of our prior case law.

[3, 4] The first question we set forth in our briefing Order was whether the October 14, 2004 Order was appealable. The

---

3. Section 2937 (**Objections to nomination petitions and papers**) provides:

    **All nomination petitions and papers** received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for

filing said nomination petitions or papers. If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors entitled to sign under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside. If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, **the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify. In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just.**

25 P.S. 2937 (emphasis added).

4. In the matter *sub judice*, the Commonwealth Court Orders imposed only the actual costs of the litigation, which included the stenographic and transcription costs related to the hearings. The Orders did not encompass the legal fees that Appellees incurred in bringing their challenge.

IN RE NOMINATION PAPER OF NADER    Pa. **457**
Cite as 905 A.2d 450 (Pa. 2006)

briefing by the parties on this issue was cursory, with Appellants and Appellees agreeing that the Order should be considered appealable. However, this Court "has only that jurisdiction as is provided by law[,]" and the appealability of an order raises an issue of the jurisdiction of the Court. *Commonwealth v. Saunders,* 483 Pa. 29, 394 A.2d 522, 524 (1978) (quoting, PA. CONSTIT. ART. V § 2(c)). The fact that Appellees in the instant matter agreed that the Order was appealable cannot confer jurisdiction on the Court if it is otherwise lacking.

[5] Section 723 of the Judicial Code provides this Court with jurisdiction and states that as a general rule, "[t]he Supreme Court shall have exclusive jurisdiction of appeals from **final orders** of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a magisterial district judge or another governmental unit." 42 Pa.C.S. § 723(a) (emphasis added). Accordingly, for the October 14, 2004 Order to be appealable, it must constitute a "final order" of the Commonwealth Court.

Pursuant to Pa.R.A.P. 341(d)(1), a final order is "any order: that (1) disposes of all claims and all parties...." The October 14, 2004 Order did not dispose of the entire case of Appellants; therefore, it was not a final order. However, the subsequent Order of January 14, 2005, which established the amount that the Appellants were required to pay, ended the litigation and is a final order from which an appeal was permitted.

[6] Accordingly, with respect to the first issue, we hold that the October 14,

2004 Order was not a final Order and, as a result, we quash the appeal taken from that Order. Further, as to the contention of Appellees that Appellants waived the statutory argument concerning Section 2937 because they did not raise it in their appeal of the first Order, Appellants did advance that argument with respect to their appeal of the January 14, 2005 Order, and we find that the issue was not waived.

Despite the explicit findings of the Commonwealth Court regarding the massive deception and fraud involved in Appellants' signature campaign to qualify as candidates on the Pennsylvania ballot in the 2004 General Election, Appellants adhere to their position of victimization and blamelessness. "[T]he candidates [sic] nominating papers were not set aside based on any wrongdoing by the campaign or the candidates, but rather on a serious and legitimate question of statutory construction...." Brief of Appellants at 10.

Soldiering on with this same perspective, Appellants advise us that "[n]ow, their resources exhausted, [they] are assessed costs for defending their right to seek political office and, in so doing, have brought before this Court a case of first impression on a most substantive question of Pennsylvania Election Code interpretation that will inform all future elections in the Commonwealth." *Id.* at 10–11.

Appellants are incorrect on all points: (1) the Commonwealth Court did not assess costs in order to penalize Appellants' exercise of political speech; (2) the Election Code authorizes the assessment of costs; and (3) this Court has validated the imposition of costs where a nomination petition has been set aside in *In re Nominating Petition of Esther M. Lee,* 525 Pa. 155, 578 A.2d 1277, 1279 n. 3 (1990).[5]

---

**5.** In *Lee,* we reversed the Order of the Commonwealth Court that set aside the nomina-

tion petition of the candidate because the objector had failed to serve the Secretary of

Pursuant to setting aside nomination petitions or papers, Section 2937 provides:

> If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside. If the objections relate to material errors or defects apparent on the face of the nomination petition or paper, **the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs, as the said court may specify. In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just.**

25 P.S. § 2937 (emphasis added).

Thus, pursuant to Section 2937, the court, in situations it deems just, has the discretion to impose costs. Appellants' interpretation of this section is at best confusing and not well articulated.

[7]  First, Appellants claim that Section 2937 "does *not* authorize an award of costs against a candidate whose nomination *papers* are set aside." Supplemental Brief of Appellants at 4. Appellants argue that "[n]o where in § 2937 did the legislature confer subject matter jurisdiction on the court to order the payment of costs in any case where nomination papers are dismissed." *Id.* However, they provide no support for their position that the authority of a court to impose costs varies depending on whether it is adjudicating a challenge to a nomination petition as opposed to a nomination paper.

Appellants misconstrue that portion of Section 2937, which provides that "[i]n case any such **petition** is dismissed," costs can be awarded. Contrary to their assertion that the use of the word "petition" creates a distinction between nominating petitions and nomination papers, this Court, in discussing the meaning of "petition" at that Section, has determined that this phrase "discusses *both* nomination petitions and petitions to set aside a nomination petition. Thus, the court can impose costs, as justice requires, when either the nominating petition is set aside or the petition to set aside the nomination petition is dismissed." *In re Nominating Petition of Esther M. Lee,* 578 A.2d at 1279 n. 3. We did not make the distinction between "nomination papers" and "nomination petitions" that Appellants proffer. Instead, we affirmed the authority of the court "to impose costs, as justice requires" when a nominating petition is set aside. *Id.* In the instant case, the Commonwealth Court set aside Appellants' Nomination Papers based on "the most deceitful and fraudulent exercise ever perpetrated upon this Court." Commonwealth Court, October 13, 2004, Consolidated Findings, Opinion, and Order at 14.

[8]  In another misguided effort, Appellants argue that Section 2937 does not confer "subject matter jurisdiction on the court" to impose costs where nomination papers are dismissed, and that a court can do so only when a nomination petition is dismissed. This contention that the Commonwealth Court lacked "subject matter jurisdiction" to award costs is erroneous. Clearly, the Commonwealth Court possesses authority pursuant to the Election Code to adjudicate disputes concerning elections. Pursuant to 42 Pa.C.S. § 764

the Commonwealth with the petition to set aside. However, we noted that a court can

impose costs, *inter alia,* when a nominating petition is set aside.

(Election contests and other matters), the Commonwealth Court has original exclusive jurisdiction of matters relating to statewide office, including the instant dispute challenging the qualification of Appellants to appear on the Pennsylvania ballot as candidates for the offices of President and Vice–President of the United States. The issue of imposition of costs is clearly related to the Commonwealth Court's adjudication of the challenged Nomination Papers of Appellants.

[9] Finally, in their scattershot approach, Appellants allege that the Orders imposing costs are "manifestly unfair and constitute[ ] an unconstitutional penalty against the exercise of political speech." Brief of Appellants at 11. Appellants demonstrate their continuing state of denial regarding the findings of the Commonwealth Court that "[t]he conduct of the Candidates, through their representatives (not their attorneys) shocks the conscience of the Court." Commonwealth Court Opinion, Consolidated Findings, Opinions and Order at 13–14.

Not every statute that impinges on a political candidate in some fashion, no matter how farfetched, is unconstitutional. The United States Supreme Court has held that "[a]lthough these rights of voters [the right to vote and to political association] are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Further, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* (citation omitted).

Appellants' constitutional challenge cannot succeed because the cost provision in Section 2937 does not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny. Appellants have provided no evidence to show how the assessment of costs, following a finding by the Commonwealth Court that nearly two-thirds of the signatures on the nomination papers were invalid, penalized their exercise of free speech.

[10, 11] Even if the statute did burden ballot access, which it did not, the burden would be reasonable and rationally related to the interest of the Commonwealth in ensuring honest and fair elections. Unlike the provision declared unconstitutional in *Anderson*, where an Ohio statute imposed a disparate early filing requirement on an independent candidate for the office of President, Section 2937 allows the court to impose costs where the court deems it just. This is consistent with the interest of the Commonwealth in ensuring fair elections that are free from the taint of fraud. "[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). "[L]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Id.* at 440 n. 10, 112 S.Ct. 2059.

Given the magnitude of the fraud and deception implicated in Appellants' signature-gathering efforts, their claim that the Commonwealth Court acted in an unjust and unconstitutional fashion by assessing transcription and stenography costs does not pass the straight-face test. The legislature has determined that the court, in its discretion when it deems it just, can im-

**460** Pa.                905 **ATLANTIC REPORTER, 2d SERIES**

pose costs. Absent a palpable abuse of discretion, "it is not for the courts to undermine that determination by making a case by case assessment of" what the court found to be just with respect to the campaign that Appellants waged. *In re Nominating Petition of Esther M. Lee*, 578 A.2d at 1279.[6]

### CONCLUSION

The Commonwealth Court acted pursuant to statutory authority in assessing costs to Appellants, where their signature-gathering campaign involved fraud and deception of massive proportions. Appellants have raised no cognizable constitutional claim to invalidate the issuance of the Orders that imposed the costs of the hearings on Appellants. Precedent of this Court has established that the court is authorized to impose costs when a nominating petition is set aside or a petition to set aside a nominating petition is dismissed. *See In re Nominating Petition of Esther M. Lee*, 525 Pa. 155, 578 A.2d 1277, 1279 n. 3 (1990). Appellants have failed to demonstrate that the Commonwealth Court's findings of fact were not supported by substantial evidence, that there was an abuse of discretion, or that errors of law were committed.

Accordingly, we quash the appeal taken from the Order of October 14, 2004, and affirm the January 14, 2005 Order of the Commonwealth Court.

Chief Justice CAPPY and Justice CASTILLE and BAER and Justice BALDWIN join the opinion.

---

6. In *Lee,* the provision of Section 2937 that we reviewed regarded the requirement to file a petition objecting to nomination papers or petitions with the Secretary of the Commonwealth. However, the principle of respecting the determination of the legislature is analogous to the one we determine *sub judice.*

Justice EAKIN files a concurring and dissenting opinion.

Justice SAYLOR files a dissenting opinion.

Justice EAKIN, concurring and dissenting.

I agree with Mr. Justice Saylor's analysis of 25 P.S. § 2937; however, I write separately to note certain costs the Commonwealth Court ordered appellants to pay may have been awarded under separate authority.

The Commonwealth Court's October 14, 2004 order required appellants to pay transcription and stenography costs, but did not cite any authority for that charge. The court did not write an opinion explaining its rationale. The Commonwealth Court's January 14, 2005 order directed appellants to pay $81,102.19 in total costs and likewise omitted any citation to authority or opinion explaining its rationale. As the majority notes, a bill of costs submitted to the Commonwealth Court identified $42,835.19 of the total amount as costs of court reporter appearances, transcription of proceedings, and transcripts. Majority Slip Op., at 7 (citing Appellees' Reproduced Record, 17 MAP 2005, Petitioners' Bill of Costs, II. "Itemized Listing of Costs."). The costs imposed for handwriting expert witnesses totaled $38,267.00. *Id.*

While § 2937 cannot provide the basis for the January 14, 2005 order, the court could have levied the $42,835.19 in costs under § 322 of its Internal Operating Procedures.[1] However, there is no alternate

---

1. Section 322 provides in relevant part, "In any proceeding where a stenographer is present, the presiding judge or duty judge shall, incident to the disposition of the proceeding, provide by order for the allocation of the costs for the stenographer. Such costs normally include the appearance fee and the cost for

provision authorizing the imposition of expert witness fees in this instance;[2] thus, the Commonwealth Court lacked authority to charge appellants for the $38,267.00 in expert witness costs. Accordingly, I would affirm the January 14, 2005 order to the extent it awarded $42,835.19 in costs, and I would reverse it to the extent it awarded an additional $38,267.00 in costs.

Justice SAYLOR, dissenting.

I respectfully dissent, as I believe that Section 977 of the Election Code, by its terms, authorizes an assessment of costs against objectors upon the dismissal of petitions challenging nomination petitions and papers, but not against candidates upon the setting aside of nomination petitions and papers.

As the majority notes Section 977 provides, in relevant part, as follows:

**Objections to nomination petitions and papers:**

All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, *a petition* is presented to the court specifically *setting forth the objection thereto,* and praying that the said petition or paper be set aside. A copy of *said petition* shall, within the said period, be served on the officer of board with whom said nomination petition or paper was filed. Upon the presentation of *such a petition,* the court shall make an order fixing a time for hearing ... If the court shall find that said nomination petition or paper is defective ... it shall be set aside. ... In case *any such petition* is dismissed, the

court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just....

25 P.S. § 2937 (emphasis added). It seems apparent, at least to me, that each of the three highlighted references to "said petition," "such a petition," and "any such petition" is an abbreviated reference back to the petition to set aside nomination petitions and papers that is delineated at the outset of the statutory provision.

The majority's holding, however, is apparently that the last of these encompasses not only objection petitions, but additionally serves as a generic reference also subsuming both nomination petitions and papers filed by candidates. *See* Majority Opinion, *slip op.* at 11–12. I find such reading to be implausible for several reasons.

First, the two prior references back in the statute clearly could not serve such an enlarged function, since their context (discussing the service of objections and the requirement of a hearing triggered by the filing of objections) makes plain that they refer exclusively to objectors' petitions to set aside. I therefore have difficulty with the conclusion that a third and parallel reference was intended by the Legislature to serve a much more expansive purpose. Second, nowhere else in the statute (and, at least to my knowledge, in the Election Code) did the General Assembly use the word "petition" to generically include both nomination petitions and papers, let alone nomination petitions, nomination papers, and objections to nomination petitions and papers. Indeed, the General Assembly was otherwise very careful in Section 977

the transcription of the notes of testimony ...." 42 Pa.C.S. § 322.

**2.** The rules of civil procedure are not applicable to a challenge to a nomination petition or paper. *In re Nomination Petition of Johnson,* 509 Pa. 347, 502 A.2d 142, 145 (1985).

to specify both nomination "petitions and papers" in every proviso in which the candidates' filings are addressed. Further, a broad, generic use of the word "petition" to address three discrete forms of documents under the Election Code spanning both candidate and objector submissions is not only uncharacteristic, but also seems to me to be unnatural. Moreover, the more natural construction of the statute is consistent with the precept that the Election Code should be construed liberally, in favor of candidates' ballot access. *See In re Nomination Petition of Driscoll,* 577 Pa. 501, 507, 847 A.2d 44, 48 (2004). Fourth, in delineating the consequences of the filing of defective nomination petitions and papers, Section 977 indicates that these documents should be "set aside" upon appropriate and meritorious challenge, 25 P.S. § 2937, whereas the assessment of costs is authorized by the statute only when a petition is "dismissed." *Id.* The phraseology of "setting aside" attaching to the treatment of nomination petitions and papers comports with their filing with the Secretary of the Commonwealth or county boards of elections as opposed to in courts of law, *see* 25 P.S. §§ 2873, 2913, whereas, the use of the term "dismissal" in the cost-assessment provision more properly aligns with the disposition of documents submitted to the courts, here, objection petitions.

Finally, I do not find the Court's brief, footnoted expression to the contrary in *In re Nominating Petition of Lee,* 525 Pa. 155, 578 A.2d 1277 (1990), to be controlling. *See id.* at 160 n. 3, 578 A.2d at 1279 n. 3 (indicating that "the court can impose costs, as justice requires, when either the nominating petition is set aside or the petition to set aside the nominating petition is dismissed"). Significantly, such statement is manifestly dictum, since the Court had otherwise found no basis to support an award of costs against the candidate, who was successful in having his

nomination petition reinstated. *See id.* at 160, 578 A.2d at 1279. Therefore, the statement is not binding in this case, *see Commonwealth v. Singley,* 582 Pa. 5, 15, 868 A.2d 403, 409 (2005) (expressing the axiom that "a statement in [a] prior opinion, which clearly was not decisional but merely *dicta,* 'is not binding upon us'" (citation omitted)), in which the majority finds the relevant issue to be adequately preserved and squarely before the Court.

In summary, I believe that cost award against Appellants lacks a statutory basis, and therefore, I would reverse the orders of the Commonwealth Court.



**The INSURANCE ADJUSTMENT BUREAU, INC., Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Resubmitted June 23, 2006.

Decided Aug. 23, 2006.

**Background:** Public adjuster brought action against property insurer to recover for breach of contract, conversion, and breach of assignment by refusing to pay adjuster after the insureds terminated its services prior to settlement. The Court of Common Pleas, Philadelphia County, Civil Division No. 3448, November Term, 2002, Carrafiello, J., sustained insurer's objections in nature of demurrer. Adjuster appealed. The Superior Court, Nos. 3101 EDA 2003, 3256 EDA 2003, Kelly, J., 860

# Attachment 3

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

RALPH NADER, et al.,                      :

             Plaintiffs,          :

                                   :

v.                                        :        Civil Action No.: 07-2136-RMU

                                   :

THE DEMOCRATIC NATIONAL                   :
COMMITTEE, et al.,
                                   :

             Defendants.         :

                                   :

## ORDER

Upon consideration of Defendant Reed Smith's Motion to Dismiss Plaintiffs' Amended

Complaint and the Plaintiffs' opposition thereto, it is by the Court this ____ day of _____,

2008

ORDERED that the motion be, and it is hereby, granted and the Amended Complaint

herein is dismissed with prejudice.

                               _____

                               RICARDO M. URBINA

                               United States District Judge

# Attachment 4

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

RALPH NADER, et al.,                          :

        Plaintiffs,                       :

                             :

v.                                            :    Civil Action No.: 07-2136-RMU

                             :

THE DEMOCRATIC NATIONAL                       :
COMMITTEE, et al.,                            :

        Defendants.                       :

                             :

## CERTIFICATE OF SERVICE

       I hereby certify that on February 4, 2008, I electronically filed Defendant Reed Smith's

motion to dismiss and memorandum of law in support with the Clerk of the Court by using the

Court's CM/ECF system, which will notice the electronic filing to Oliver B. Hall counsel of

record for the Plaintiffs.

       I further certify that I caused such filing to be served by means of first class mail, postage

prepaid, on the following counsel for Plaintiffs:

Bruce Afran, Esq.
10 Braeburn Drive
Princeton, NJ 08540
*Of Counsel*

Mark R. Brown, Esq.
303 East Broad Street
Columbus, OH 43215
*Of Counsel*

Carl J. Mayer, Esq.
Mayer Law Group, LLC
1040 Avenue of the Americas
Suite 2400
New York, NY 10018
*Of Counsel*

Matt Gonzalez, Esq.
G. Whitney Leigh, Esq.
Bryan Vereschagin, Esq.
Gonzalez & Leigh, LLP
Two Shaw Alley
San Francisco, CA 94105
*Of Counsel*

I further certify that I caused such filing to be served by means of the Court's CM/ECF system upon the following parties:

Joseph E. Sandler, Esq.
John Hardin Young, Esq.
Sandler, Reiff & Young
50 E Street, S.E., #300
Washington, DC  20003

*Attorneys for Defendants Democratic*
*National Committee and Jack Corrigan*

Lawrence Noble, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111

*Attorneys for Defendants Toby Moffett,*
*Robert Brandon, Elizabeth Holtzman and*
*The Ballot Project, Inc.*

Laurence E. Gold, Esq.
Lichtman, Trister & Ross, PLLC
1166 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20036

Lyn Utrecht, Esq.
Ryan, Phillips, Utrecht & Mackinnon
1133 Connecticut Avenue, N.W.
Washington, D.C.  20036

*Attorneys for Defendants America*
*Coming Together*

Michael B. Trister, Esq.
Lichtman, Trister & Ross, PLLC
1666 Connecticut Avenue, N.W.
Suite 500
Washington, DC  20009

*Attorneys for Defendant Service Employees*
*International Union*

Mark E. Elias, Esq.
Perkins Coie
607 14th Street, N.W.
Washington, DC  20005

*Attorneys for Defendants*
*Kerry-Edwards 2004, Inc. and*
*Senator John Kerry*

Oliver B. Hall, Esq.
1835 16th Street, N.W.
Washington, DC  20009

*Counsel for Plaintiffs Ralph Nader, Peter*
*Miguel Camejo, D.B. Fanning, C.K. Ireland,*
*Julie Coyle, Herman Blankenship, Lloyd*
*Marbet and Gregory Kafoury*

Dated:  February 4, 2008

_____/s/_____
Douglas K. Spaulding
*Counsel for Defendant Reed Smith*