UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RALPH NADER, et al.,

                Plaintiffs,

   v.

THE DEMOCRATIC NATIONAL COMMITTEE, et al.,

                Defendants.

Civil Action No. 07-2136-RMU

## MOTION TO DISMISS OF DEFENDANT SENATOR JOHN KERRY AND DEFENDANT KERRY-EDWARDS 2004 INC.

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendant Senator John Kerry and defendant Kerry-Edwards 2004 Inc., by and through their undersigned counsel, hereby move this Court to dismiss plaintiffs' Amended Complaint and each of its Counts for failure to state a claim upon which relief can be granted and for failure to establish this Court's jurisdiction. The grounds for this motion are set forth in defendants' Memorandum in Support of their Motion, which defendants incorporate herein by reference.

DATED: February 4, 2008.

Respectfully submitted,

**PERKINS COIE LLP**

By: /s/ Marc E. Elias
    Marc E. Elias, Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street N.W.
Washington, D.C. 20005-2003
Telephone: 202.628.6600
Facsimile: 202.434.1690

*Counsel for Defendant John Kerry and
Defendant Kerry-Edwards 2004 Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, et al.,<br><br>               Plaintiffs,<br><br>   v.<br><br>THE DEMOCRATIC NATIONAL COMMITTEE, et al.,<br><br>               Defendants. | Civil Action No. 07-2136-RMU |

## MEMORANDUM IN SUPPORT OF DEFENDANTS JOHN KERRY AND

## KERRY-EDWARDS 2004 INC.'S MOTION TO DISMISS

Marc E. Elias
D.C. Bar No. 442007

PERKINS COIE LLP
607 Fourteenth Street N.W.
Washington, D.C.  20005-2003
Telephone:  202.628.6600
Facsimile:  202.434.1690

*Counsel for Defendant John Kerry and
Defendant Kerry-Edwards 2004 Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

    A.    The Parties ........................................................................................... 3

    B.    Procedural History ............................................................................... 4

    C.    Plaintiffs' Allegations ......................................................................... 5

ARGUMENT .................................................................................................................. 8

    A.    Plaintiffs' Amended Complaint, Taken in its Entirety, Fails to State a
          Claim Against Senator Kerry or the Campaign, Alleging Only Legal
          Conduct Protected by the First Amendment ..................................... 8

          1.    Plaintiffs fail to state a plausible claim for relief under state tort
              and conspiracy law ............................................................... 9

          2.    The First Amendment and the Noerr-Pennington doctrine
              protect Senator Kerry and the Campaign from Liability .................. 15

    B.    Each of Plaintiffs' State Malicious Prosecution and Abuse of Process
          Claims, Examined Independently, Is Time-Barred and Fails to State a
          Claim upon Which Relief Can Be Granted ..................................... 19

          1.    This Court should apply the law of the District of Columbia,
              but under the law of any of the relevant jurisdictions, plaintiffs'
              complaint fails ................................................................... 19

          2.    Plaintiffs' claims regarding the Arizona litigation are time-
              barred, and the Arizona allegations fail to state a claim against
              the Senator and the Campaign. ............................................. 21

          3.    Plaintiffs' claims regarding the Florida litigation are time-
              barred and the Florida allegations fail to state a claim against
              the Senator and the Campaign ............................................. 22

          4.    Plaintiffs' claims regarding the New Hampshire litigation are
              time-barred, and the New Hampshire allegations fail to state a
              claim against the Senator and the Campaign ............................ 24

          5.    Plaintiffs' claims regarding the Washington State litigation are
              time-barred, and the Washington allegations fail to state a
              claim against the Senator and the Campaign ............................ 25

    C.    The Voter Plaintiffs Lack Standing, and Therefore This Court Must
          Dismiss Their Claims for Lack of Jurisdiction Pursuant to Rule
          12(b)(1) ........................................................................... 27

CONCLUSION .............................................................................................................. 29

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454 (D.C. Cir. 1995)...............19

*Aktieselskabet AF 21 v. Fame Jeans, Inc.*, 511 F. Supp. 2d 1 (D.D.C. 2007).........................9

*\*Ammerman v. Newman*, 384 A.2d 637 (D.C. 1978) ................................................... passim

*Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)................................................................17

*Austin v. Am. Ass'n of Neurological Surgeons*, 253 F.3d 967 (7th Cir. 2001)......................17

*Baker v. Henderson*, 150 F. Supp. 2d 17, 19 (D.D.C. 2001)..................................................2

*Batten v. Abrams*, 28 Wash. App. 737 (1981)......................................................................26

*\*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................................8, 9

*Bown v. Hamilton*, 601 A.2d 1074 (D.C. 1992) ............................................................12, 21

*Brady v. Livingood*, 360 F. Supp. 2d 94 (D.D.C. 2004) .......................................................14

*Brown v. Hartlage*, 456 U.S. 45 (1982).........................................................................3, 18

*Brownsville Golden Age Nursing Home v. Wells*, 839 F.2d 155 (3d Cir. 1988)............. 16, 18

*Buckley v. Valeo*, 424 U.S. 1 (1976)..................................................................................19

*Bush v. Butler*, 521 F. Supp. 2d 63 (D.D.C. 2007) .............................................................14

*Cal. Motor Transp. v. Trucking Unlimited*, 404 U.S. 508 (1972) .......................................15

*Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119 (3d Cir. 1999).....................................16

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)...............................................................29

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) ....................................................................................................................................17

*Clark v. Baines*, 150 Wash. 2d 905 (2004) ........................................................................26

*Dennis v. Sparks*, 449 U.S. 24 (1980)................................................................................4

*\*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) 3, 9, 15, 16

*ERG, Inc. v. Barnes*, 137 N.H. 186 (1993)..........................................................................24

*Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385 (E.D. Va. 2002)................................................................................................................16

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000) .............14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167 (2000)......................27

*Fulani v. Brady,* 935 F.2d 1324 (D.C. Cir. 1991)................................................................29

*Fulani v. McAuliffe*, No. 04 Civ. 6973(LAP), 2005 WL 2276881 (S.D.N.Y. Sept. 19 2005) ..................................................................................................................... 1, 2, 4

*Giles v. Hill Lewis Marce*, 195 Ariz. 358 (App. Div. 2 1999) .............................................21

*Greaves v. State Farm Ins. Co.*, 984 F. Supp. 12 (D.D.C. 1997) .........................................20

*Hall v. Beals*, 396 U.S. 45 (1969).....................................................................................28

*Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971 (9th Cir. 1999)..........................2

*Hill v. Medlantic Health Care Group*, 933 A.2d 314 (D.C. 2007)......................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96 (D.D.C. 2003) .................2
*Huang v. D'Albora*, 644 A.2d 1 (D.C. 1994) ...............................................................19
*In re Asbestos School Litig.*, 46 F.3d 1284 (3d Cir. 1994) ...........................................17
*In re Nader*, 588 Pa. 450 (2006), *cert. denied*, 127 S.Ct. 995 (2007)....................................1
*In re Nomination of Nader*, 580 Pa. 134 (2004) ...............................................................2
*Kelly v. Harris*, 331 F.3d 817 (11th Cir. 2003) ...............................................................29
*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)......................................8
*Kucera* v. *Bradbury*, 337 Or. 384 (2004) .................................................................2, 28
*Levine v. Mills*, 114 A.2d 546 (D.C. 1955) ...................................................................10
*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ...........................................................28
*Long v. Long*, 136 N.H. 25 (1992)...............................................................................25
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................27
*McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003) ............................................18
*Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410 (D.C. Cir. 1998) ........................28
*Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971)..........................................................18
*Moore v. United States*, 213 F.3d 705 (D.C. Cir. 2000) ........................................10, 23
*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ...........................................17
*Nader 2000 Primary Comm. Inc. v. Hazeltine*, 226 F.3d 979 (8th Cir. 2000).......................4
*Nader v. Blackwell*, No. 2:06-CV-821, 2007 WL 2744357 (S.D. Ohio Sept. 19, 2007)..........1
*Nader v. Brewer*, 386 F.3d 1168 (9th Cir. 2004)..................................................2, 4, 21
*Nader v. Connor*, 388 F.3d 137 (5th Cir. 2004) ............................................................2
*Nader v. Ill. State Bd. of Elections*, 354 Ill. App. 3d 335 (2004) ...............................2, 4
*Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004)................................................................2
*Nader v. McAuliffe*, No. 1:07 CV 1101 JCC/TCB (E.D. Va. 2008) ...........................2, 5
*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................................8
*Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000) .......................................................14
*Peckham v. Union Finance Co.*, 48 F.2d 1016 (D.C. Cir. 1931).....................................16
*Plotkin v. Ryan*, 239 F.3d 882 (7th Cir. 2001)..............................................................28
*Rizzo v. Goode*, 423 U.S. 362 (1976)..........................................................................29
*Robertson v. Merola*, 895 F. Supp. 1 (D.D.C. 1995) ....................................................14
*Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162 (D.D.C. 2006).....................................12
*Rynn v. Jaffe*, 457 F. Supp. 2d 22 (D.D.C. 2006) ........................................................20
*Saunders v. Nemati*, 580 A.2d 660 (D.C. 1990) ..........................................................20
*Schaffer v. Clinton*, 240 F.3d 878 (10th Cir. 2001) ......................................................17
*\*Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996)..........................12, 13, 22, 23

# TABLE OF AUTHORITIES
## (continued)

Page

*SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, No. 07-0431 (RMU), 2008 WL 116391 (D.D.C. Jan. 14, 2008) ............................................. 8

*Secrist v. Harkin*, 874 F.2d 1244 (8th Cir. 1989) ....................................................... 19

*Shirk v. Garrow*, 505 F. Supp. 2d 169 (D.D.C. 2007) .............................................. 8

*Shulman v. Miskell*, 626 F.2d 173 (D.C. Cir. 1980) ................................................. 19

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) .................................................. 27

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ................................ 27, 28

*Storer v. Brown*, 415 U.S. 724 (1974) ...................................................................... 18

*Stuart v. WPIG, LLC*, No. 32328-1-II, 2005 WL 1100977 (Wash. Ct. App. May 10, 2005) ......................................................................................................................... 26

*Tri-State Hosp. Supply Corp. v. United States*, No. 00-01463 (HHK), 2007 WL 2007587 (D.D.C. July 6, 2007) ...................................................................... 11, 12, 20

*United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965) ................. 15

*Valdes v. GAB Robins North America, Inc.*, 924 So. 2d 862 (Fla. Dist. Ct. App. 2006) ........ 23

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)................. 27

*WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245 (D.D.C. 2007) ............................... 16

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................................... 28

*We, Inc. v. City of Philadelphia*, 174 F.3d 322 (3d Cir. 1999) ............................... 15

*Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992) ............................... 13, 16, 17, 25

*Whitney v. California*, 274 U.S. 357 (1927)............................................................. 19

*Winpisinger v. Watson*, 628 F.2d 133 (D.C. Cir. 1980)................................... 27, 28

*Wolter v. Safeway Stores*, 60 F. Supp. 12 (D.D.C. 1945) ....................................... 10

*Woods v. Paradis*, 380 F. Supp. 2d 1316 (S.D. Fla. 2005) ..................................... 23

*Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.*, 19 F. Supp. 2d 4 (D.D.C. 1998) ........... 12, 20

## Statutes

42 U.S.C. § 1983.................................................................................................. 2, 4, 5

42 U.S.C. § 1985.......................................................................................................... 4

D.C. Code § 12-301(4) ....................................................................................... passim

D.C. Code § 12-301(8).................................................................................. 19, 24, 26

## Regulations and Rules

Federal Rule of Civil Procedure 12(b)(1) .............................................. 1, 27, 29

Federal Rule of Civil Procedure 12(b)(6) .......................................... 1, 2, 8, 18

## TABLE OF AUTHORITIES
### (continued)

Page

**Other Authorities**

13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* 2d § 3531.6 (3d ed. 1998) ............................................................. 28

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004) ...................................................................................... 8

52 Am. Jur. 2d Malicious Prosecution § 46 (1970) ............................................... 25

Federal Election Commission, *Filing a Complaint* (July 1998) ............................ 17

*Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97 (D.D.C. 2007) ...... 8, 13

Scott Shane, *Nader Is Left With Fewer Votes, and Friends, After '04 Race*, N.Y. Times, Nov. 6, 2004 ................................................................................................. 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>THE DEMOCRATIC NATIONAL COMMITTEE, et al.,<br><br>      Defendants. | Civil Action No. 07-2136-RMU |

## MEMORANDUM IN SUPPORT OF DEFENDANTS JOHN KERRY AND KERRY-EDWARDS 2004 INC.'S MOTION TO DISMISS

  Defendant Senator John Kerry and defendant Kerry-Edwards 2004 Inc. respectfully submit this memorandum in support of their motion to dismiss the amended complaint, and each of its counts, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and, with respect to the voter plaintiffs, under Rule 12(b)(1) for lack of standing.

### INTRODUCTION

  This is yet another in a long line of cases in which Ralph Nader and his supporters have wasted valuable court resources with meritless litigation concerning elections in which they garnered almost no support at the ballot box. *See Fulani v. McAuliffe*, No. 04 Civ. 6973(LAP), 2005 WL 2276881 (S.D.N.Y. Sept. 19 2005); *Nader v. Blackwell*, No. 2:06-CV-821, 2007 WL 2744357 (S.D. Ohio Sept. 19, 2007); *In re Nader*, 588 Pa. 450 (2006), *cert. denied*, 127 S.Ct. 995 (2007). In 2004, Plaintiffs Ralph Nader and Peter Miguel Camejo were on the presidential ballot in 34 states and the District of Columbia. In the remaining 16 states, Nader was disqualified, not as the result of some unlawful "conspiracy," but because federal or state courts, after full and fair hearings, determined that he had not qualified in

those states,[1] or simply because Nader himself failed to meet the minimum requirements for access to the ballot. After all the votes were counted, Nader-Camejo received less than one-third of one percent of the popular vote, with zero electoral college votes.[2]

Rather than accepting the voters' decisive rejection of a Nader-Camejo presidency, Nader and his supporters have repeatedly filed baseless litigation in state and federal courts, alleging a vast conspiracy and deprivation of constitutional rights in violation of state tort law and 42 U.S.C. § 1983. *See, e.g., Fulani v. McAuliffe*, 2005 WL 2276881, *Nader v. McAuliffe*, No. 1:07 CV 1101 JCC/TCB (E.D. Va. 2008). Having abandoned their section 1983 argument in this amended complaint, plaintiffs plead that John Kerry and Kerry-Edwards 2004, Inc. ("the Campaign"), along with other defendants, entered into an unlawful conspiracy and engaged in malicious prosecution and abuse of process. While plaintiffs' claims against all defendants fail on their face, their case against Senator Kerry and the Kerry-Edwards Campaign borders on frivolous.

Plaintiffs offer no allegations of fact to link the Senator or the Kerry-Edwards Campaign to any abuse of process or malicious prosecution, or to the alleged conspiracy. Rather, plaintiffs allege that Senator Kerry and the Campaign engaged in activity that is both permissible under state and federal law and fully protected under the First Amendment's guarantee of the right to petition—a right that carries particular importance in the context of political campaigns, which are "at the heart of American constitutional democracy." *See*

---

[1] *See, e.g., Nader v. Connor*, 388 F.3d 137 (5th Cir. 2004); *Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004); *Nader v. Brewer*, 386 F.3d 1168 (9th Cir. 2004); *Nader v. Ill. State Bd. of Elections*, 354 Ill. App. 3d 335 (2004); *In re Nomination of Nader*, 580 Pa. 134 (2004); *Kucera* v. *Bradbury*, 337 Or. 384 (2004). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may consider "matters of which the court may take judicial notice," *Baker v. Henderson*, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001), including court records, without converting the motion to dismiss into one for summary judgment, *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 n.5 (D.D.C. 2003).

[2] *See, e.g.*, Scott Shane, *Nader Is Left With Fewer Votes, and Friends, After '04 Race*, N.Y. Times, Nov. 6, 2004. A court may take judicial notice of matters of a general public nature, *Hinton*, 257 F. Supp. 2d at 100 n.5, including newspaper articles and other public information, *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999).

*Brown v. Hartlage*, 456 U.S. 45, 53 (1982); *see also E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961) ("right of petition" is protected by the Bill of Rights and central to our democracy).  Plaintiffs' unsupported and conclusory allegations of a far-reaching conspiracy do not, and cannot, transform legal and constitutionally protected activity into an actionable tort.  Moreover, plaintiffs' claims against the Senator and the Campaign are time-barred, and the voter plaintiffs lack standing because they cannot show that they have suffered an injury-in-fact caused by defendants that this Court can redress.  Accordingly, this Court should dismiss the amended complaint against the Senator and the Campaign, with prejudice.

## BACKGROUND

A.    **The Parties**

Plaintiff Ralph Nader ran for President in 2004 as an independent.  Compl. ¶ 15.  Plaintiff Peter Miguel Camejo ran for Vice President on Nader's ticket.  *Id.* ¶ 16.  The six other plaintiffs are individuals who are registered to vote in the States of Arizona, Ohio, and Oregon.  *Id.* ¶¶ 17-22.

Defendant John Kerry, a United States Senator from Massachusetts, was the 2004 presidential candidate of the Democratic Party.  *Id.* ¶ 28.  Defendant Kerry-Edwards 2004 Inc. is the principal campaign committee of the Kerry-Edwards Campaign.  *Id.* ¶ 24.  Other defendants include the Democratic National Committee ("the DNC"), *id.* ¶ 23; the Ballot Project, *id.* ¶ 25, America Coming Together, *id.* ¶ 26; the Service Employees International Union, *id.* ¶ 27; the law firm of Reed Smith, *id.* ¶ 34; and a number of individuals affiliated with those organizations, *id.* ¶¶ 29-33.

Plaintiffs also name numerous non-defendant co-conspirators, including state parties, *id.* ¶ 35, unnamed law firms, *id.* ¶ 36, several section 527 organizations, political committees

and not-for-profits, *id.* ¶ 37-41, and the former chair of the New Hampshire Democratic Party, *id.* ¶ 42.

**B.**     **Procedural History**

In the last several years, Nader and his supporters have litigated—and lost—numerous cases in which they complained about unfair treatment in the 2000 and 2004 elections.[3]  This is not even the first case involving claims of conspiracy among Democrats. In 2005, individual voters and supporters of Nader filed a lawsuit against Senator Kerry, the DNC, and other "conspirators," alleging that defendants engaged in a vast conspiracy to keep Nader-Camejo off the 2004 ballot in violation of 42 U.S.C. §§ 1983 and 1985.  *Fulani v. McAuliffe*, No. 04 Civ. 6973 (LAP), 2005 WL 2276881 (S.D.N.Y. 2005).  A District Court in the Southern District of New York emphatically dismissed the case, noting that this was "yet another in a long line of cases in which" the courts were misused to pursue a political agenda that could not be "accomplish[ed] at the ballot box."  *Id.* at *1.  The court rebuked plaintiffs for arguing that defendants had illegally conspired simply by pursuing litigation to keep Nader-Camejo off the ballot:  "'[M]erely resorting to the courts and being on the winning side of a lawsuit,'" the court admonished, "'does not make a party' responsible for depriving a plaintiff of his rights."  *Id.* at *3 n.4 (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)).

Nader and several of his supporters filed this suit in the Superior Court for the District of Columbia on October 30, 2007.[4]  The original complaint alleged violations of both state tort law and 42 U.S.C. § 1983.  The very next day plaintiffs filed a virtually identical complaint in the Eastern District of Virginia, bearing the caption of the "Superior Court of the District of Columbia," alleging the same facts and causes of action, but naming different

---

[3] *See supra,* at 1; *see also, e.g.*, *Nader v. Brewer*, No. CV-04-1699-PHX-FJM, 2006 WL 1663032 (D. Ariz. June 8, 2006); *Nader v. Ill. State Bd. of Elections*, 354 Ill. App. 3d 335 (2004); *Nader 2000 Primary Comm. Inc. v. Hazeltine*, 226 F.3d 979 (8th Cir. 2000).

[4] Plaintiffs did not serve defendants Senator Kerry and the Kerry-Edwards Campaign with their District of Columbia complaint until November 13, 2007.

defendants. *Nader v. McAuliffe*, No. 1:07 CV 1101 JCC/TCB.  Though plaintiffs amended their Eastern District of Virginia complaint on November 1, 2007, fixing the caption, they left the Virginia complaint otherwise unchanged and duplicative of the District of Columbia complaint.

On November 27, 2007, the District of Columbia case was removed to this Court.  On January 23, 2008, nearly two months later, and just eight days before defendants' response was due, plaintiffs amended their complaint.  They changed nothing about the facts or nature of the injury alleged; they simply deleted Counts III and IV of their original complaint, which had alleged violations of 42 U.S.C. § 1983.  Plaintiffs also filed a motion to remand, but they provided no statement of specific points of law and authority supporting their motion.  *Cf.* LCvR 7(a) ("Each motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts. . . .").[5]  Defendants asked this Court to deny the motion for remand, and now move to dismiss the amended complaint.

C.    **Plaintiffs' Allegations**

In their amended complaint, plaintiffs assert that by engaging in litigation to challenge Nader's access to the 2004 Presidential ballot, defendants conspired to, and did in fact, abuse judicial process and engage in malicious prosecution in violation of the laws of eighteen states and the District of Columbia.  *See, e.g.*, Compl. ¶¶ 1, 232.  According to plaintiffs, "[d]efendants agreed and conspired to launch a nationwide legal assault on Mr. Nader's campaign, which would drain the campaign of money, time and other resources."

---

[5] Meanwhile, on January 30, 2008, plaintiffs sought leave to amend their Virginia complaint to add defendants from the District of Columbia suit and to dismiss their state law claims.  Thus, while plaintiffs have dropped their federal claims in this case, they continue to pursue them in the Eastern District of Virginia against principally the same defendants and based on the same facts.  *See Nader v. McAuliffe*, No. 1:07 CV 1101 JCC/TCB.  Defendants in the Virginia action have filed a motion to dismiss the Virginia suit or, in the alternative, to transfer the action pending in Virginia (including the section 1983 claims) to this Court on grounds that the interests of justice and judicial economy counsel in favor of one court hearing the same claims against the same defendants.

*Id.* ¶ 45.  To support their theory of a vast, illegal conspiracy, however, plaintiffs assert only that various defendants challenged Nader's nominating petitions in eighteen state agencies or courts.  Plaintiffs cite no court findings of procedural violations by any of the defendants, nor do they point to facts that would indicate abuse of court procedures by defendants.

Moreover, plaintiffs make clear that their use of the terms "defendants" and "conspirators," and their general and sweeping assertions of wrongdoing, "do *not* necessarily apply to every Defendant and every conspirator named in th[e] complaint."  *Id.* ¶ 14 (emphasis added).  With respect to Senator Kerry, plaintiffs make *no* assertion of wrongdoing.  Only three paragraphs in the 70-page complaint mention the Senator. One identifies his position as a United States Senator and former presidential candidate.  *Id.* ¶ 28. The other two state:

> Defendant John Kerry likewise denied involvement in conspirators' wrongful litigation.  "I respect [Mr. Nader].  I'm not going to attack him in any way," Mr. Kerry told the Associated Press in April 2004. "I'm just going to try to talk to his people and point out that we've got to beat George Bush. And I hope that by the end of this race I can make it unnecessary for people to feel they need to vote for someone else."  In fact, however, despite John Kerry's prior disavowal, the Kerry-Edwards Campaign directly participated in at least one lawsuit conspirators filed against Nader-Camejo.

*Id.* ¶ 65.

> Reed Smith has represented John Kerry, Teresa Heinz Kerry, the HJ Heinz Corporation and the Heinz Family Foundation. Reed Smith most recently defended Senator Kerry in a civil lawsuit for defamation, which arose out of the 2004 election and was decided in August 2006.  Furthermore, "Heinz is still a major and active client," *Legal Business* reported in December 2006/January 2007.

*Id.* ¶ 204.  Plaintiffs do not allege—even in conclusory terms—that Senator Kerry personally joined the alleged conspiracy, or that he encouraged, procured, or participated in any litigation whatsoever, let alone any abuse of process or malicious prosecution.  *Cf. id.* ¶¶ 28, 65, 204.

Plaintiffs also assert scant facts with regard to the Kerry-Edwards Campaign. In sum:

- Paragraph 58 alleges that a consultant to the DNC and the Campaign authored a document regarding Nader petition signers that was used in the alleged conspiracy.

- Paragraphs 59, 60, and 66 state in wholly conclusory terms that the Campaign was involved in the alleged conspiracy of "unprecedented . . . magnitude and scope." *Id.* ¶ 66.

- Paragraph 73 alleges that individuals who filed suit in Arizona challenging Nader's nomination papers informed the Campaign about their lawsuit.

- Paragraphs 93 and 94 allege that an attorney named Katherine Pringle, along with several other lawyers, submitted an appellate brief in Florida litigation challenging Nader's nomination papers, and that Pringle's bio on her firm's website states that she served as co-counsel to the Kerry for President Campaign in litigation concerning the 2004 Florida election ballot.

- Paragraphs 59, 138, and 140 state that Judy Reardon, alleged deputy national director for the Campaign for Northern New England, helped draft a complaint that was used to challenge Nader's nomination papers in New Hampshire.

- Paragraphs 209 and 210 assert that two individuals who self-identified on the Internet as being affiliated with and supporters of the Campaign were plaintiffs in a Washington State lawsuit.

## ARGUMENT

**A.**     **Plaintiffs' Amended Complaint, Taken in its Entirety, Fails to State a Claim Against Senator Kerry or the Campaign, Alleging Only Legal Conduct Protected by the First Amendment.**

Taking as true for purposes of this Rule 12(b)(6) motion all material allegations composing the factual predicate of the action, the complaint should be dismissed for failure to state a claim because plaintiffs have failed to allege, with regard to Senator Kerry and the Kerry-Edwards Campaign, a plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007); *see also SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, No. 07-0431 (RMU), 2008 WL 116391 (D.D.C. Jan. 14, 2008).

To withstand a motion to dismiss, plaintiffs must state a claim upon which relief can be granted. While a complaint need not include "detailed factual allegations" or provide a "heightened fact pleading of specifics" to avoid dismissal, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." *Twombly*, 127 S.Ct. at 1964-65, 1974 (internal quotations and citation omitted; alteration in original); *Shirk v. Garrow*, 505 F. Supp. 2d 169, 172-73 (D.D.C. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004)); *see also Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97, 99 (D.D.C. 2007). Moreover, "the court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Where a natural explanation exists to explain defendants' conduct, the obligation to plead sufficient facts "to nudge" the claim that defendants acted illegally "'across the line from conceivable to plausible'" is particularly important. *See Aktieselskabet*

*AF 21 v. Fame Jeans, Inc.*, 511 F. Supp. 2d 1, 16-19 (D.D.C. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

With respect to Senator Kerry and the Kerry-Edwards Campaign, the complaint falls far short of these pleading requirements. It offers no facts to show that Senator Kerry or the Campaign engaged in any improper litigation and offers absolutely no evidence that either entered into an agreement to violate the law. Rather, the conduct alleged is legal, fully protected by the First Amendment's right to petition, *see Noerr*, 365 U.S. at 138, and an integral part of the political process.

**1.    Plaintiffs fail to state a plausible claim for relief under state tort and conspiracy law.**

The amended complaint is absurdly lacking with respect to Senator Kerry and the Kerry-Edwards Campaign. Plaintiffs make numerous sweeping allegations about the conduct of unspecified defendants. *See, e.g.*, Compl. ¶¶ 1, 45. But they allege no illegal conduct on the part of the Senator or the Campaign. Rather, plaintiffs expressly disclaim the notion that their broad accusations apply to all defendants. *Cf. id.* ¶ 14 ("Unless otherwise stated, the terms 'Defendants' and 'conspirators' or 'co-conspirators' and the charges alleged herein do not necessarily apply to every Defendant and every conspirator . . . . .").

The weakness of the complaint can be seen, most clearly, in the paucity of the allegations against the Senator. Plaintiffs assert only that Senator Kerry "denied involvement in conspirators' wrongful litigation," saying he would not "attack [Nader] in any way," *id.* ¶ 65, and that a law firm that has represented the Senator and his wife in other matters acted improperly while representing another client, the DNC, *id.* ¶ 204. Plaintiffs do not assert, even in conclusory terms, that the Senator participated in any litigation whatsoever, or that he knew of or agreed to any conspiracy to violate the law. This is simply not enough to state a claim for any civil action against the Senator, whether it be one based on malicious prosecution, abuse of process, conspiracy, or a violation of civil rights.

Plaintiffs' allegations against the Campaign are similarly lacking.  Plaintiffs assert that the Campaign knew about litigation that challenged Nader's access to the ballot—specifically, that individuals employed by the Campaign participated in litigation in New Hampshire, *id.* ¶¶ 59, 138, 140, that individuals who claimed to have some affiliation with the campaign participated in litigation in Florida, *id.* ¶¶ 93-94, and Washington State, *id.* ¶¶ 209-10, and that the Campaign was informed about litigation in Arizona, *id.* ¶ 73.  They also assert in conclusory terms that the Campaign conspired to violate state tort law.  *See, e.g.*, *id.* ¶¶ 59, 60, 66.  But the torts of malicious prosecution and abuse of process, in all of the relevant jurisdictions,[6] require plaintiffs to allege more than a private organization's participation in, or knowledge of, litigation adverse to plaintiffs, while conspiracy requires the plaintiffs to plead more than the assertion that a conspiracy existed.  Plaintiffs' failure to do so here is fatal.

Plaintiffs face a high burden in stating a claim for malicious prosecution:  The law disfavors the tort because it has a chilling effect upon the right of free access to the courts. *Levine v. Mills*, 114 A.2d 546 (D.C. 1955); *see also Ammerman v. Newman*, 384 A.2d 637, 639, 641 (D.C. 1978).  To state a claim for malicious prosecution, plaintiffs must allege that (1) the defendant initiated or procured the filing of an action, (2) without probable cause, (3) with malicious intent, and (4) the action terminated in plaintiff's favor.  *Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000); *Ammerman*, 384 A.2d at 639.  "Mere passive knowledge, or acquiescence or consent in the acts of another person, is not sufficient to impose liability for malicious prosecution.  There must be some affirmative action that the defendant instituted or caused the prosecution to be instituted."  *Wolter v. Safeway Stores*, 60 F. Supp. 12, 15 (D.D.C. 1945); *see also Moore*, 213 F.3d at 710.  The requirement of probable cause requires only a good-faith belief that the action was just and proper.

---

[6] For the reasons explained *infra*, at 19-20, this Court should apply the law of the District of Columbia, but under the law of any of the relevant jurisdictions, plaintiffs have failed to state a claim.

*Ammerman*, 384 A.2d at 639-40.  To show malice, the plaintiff must allege "the existence of

an evil purpose or motive, a wicked or mischievous intent, or a wilful, wanton, reckless or

oppressive disregard to the rights of the plaintiff."  *Id.* at 640-41.  Finally, for a plaintiff in

the District of Columbia to prevail in an action for malicious prosecution in a civil suit, he

must prove special injury, that is, "some injury which would not necessarily occur in all suits

prosecuted for similar causes of action."  *Tri-State Hosp. Supply Corp. v. United States*,

No. 00-01463 (HHK), 2007 WL 2007587, at *5 (D.D.C. July 6, 2007) (internal quotations

and citation omitted); *see also Ammerman*, 384 A.2d at 639.

　　　Plaintiffs' malicious prosecution claim against the Senator meets none of these

requirements.  They allege not a single fact even suggesting that the Senator procured or

participated in any litigation at all, let alone that he did so with malice or an absence of

probable cause, or that he caused special injury.  Instead, they state only that John Kerry is a

Senator, that he ran for President, and that he promised not to attack Nader.  *See* Compl.

¶¶ 28, 65.  Their claim is, quite simply, baseless, if not frivolous.

　　　Plaintiffs' malicious prosecution claim against the Campaign also fails on its face.

Plaintiffs do not allege that the Campaign initiated the litigation in Arizona or Florida, and

the connection they allege between the Campaign and the Washington litigation is

speculative, at best.  *See infra*, at 21-27 (discussing allegations in each state).  But even

assuming plaintiffs sufficiently allege that the Campaign initiated or procured litigation, they

plead no facts that even suggest the Campaign had evil intent or a lack of probable cause.  At

most, the facts they plead suggest the normal and proper motive of any political adversary in

an election contest: to promote the candidacy of one political aspirant, while opposing the

candidacy of an opponent.  To the extent plaintiffs allege malice on the part of other

defendants, it cannot be imputed to the Campaign.  *See Ammerman*, 384 A.2d at 641

(rejecting attempt to impute malice of one individual to another).  Nor do they point to any

special injury: Any financial loss suffered by Nader-Camejo is one that would normally

occur as a consequence of litigation and therefore does not provide grounds for a malicious

prosecution claim. *See Tri-State Hosp. Supply Corp.*, 2007 WL 2007587, at *7; *see also*

*infra*, at 19-27 (demonstrating that plaintiffs have failed to state a claim for malicious

prosecution under the law of Arizona, Florida, Washington, New Hampshire, and the District

of Columbia and that the claims are time-barred).

Nor have plaintiffs stated a claim for abuse of process against either the Senator or

the Campaign. As with malicious prosecution, courts carefully circumscribe the abuse of

process tort in order "to avoid infringing upon the right of the public to utilize our courts."

*Bown v. Hamilton*, 601 A.2d 1074, 1050 (D.C. 1992). Abuse of process requires that the

defendant use "the legal system 'to accomplish some end which is without the regular

purview of the process, or which compels the party against whom it is used to do some

collateral thing which he could not legally and regularly be required to do.'" *Scott v. District*

*of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting *Bown v. Hamilton*, 601 A.2d 1074,

1079 (D.C. 1992)). There is no abuse of process when, although a person "acts spitefully,

maliciously, or with an ulterior motive in instituting a legal proceeding," the proceeding in

question is also used for its intended purpose. *Id.*; *see also Rogers v. Johnson-Norman*, 466

F. Supp. 2d 162, 175 (D.D.C. 2006).[7]

Again, the complaint is wholly lacking with respect to Senator Kerry. Plaintiffs point

to no facts suggesting that the Senator used the legal process at all, let alone abusively. And

the charge against the Campaign is equally deficient. Plaintiffs assert only that the Campaign

---

[7] Abuse of process and malicious prosecution are similar in that each involves improper use
of the courts and the judicial process. They differ, however, in that abuse of process requires an
abuse of process *after* a claim is filed. *Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.*, 19 F. Supp. 2d 4,
7-8 (D.D.C. 1998). "It is well-established that a plaintiff's characterization of his claim is not
necessarily controlling." *Id.* at 8. Thus, plaintiffs cannot circumvent the one-year statute of limitation
that applies to malicious prosecution claims, *see* D.C. Code § 12-301(4); *infra*, at 19-20, by dressing
up their claims in the language of abuse of process.

was informed of or involved in litigation; they do not allege any facts that could plausibly show that the Campaign engaged in "a perversion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge." *Whelan v. Abell*, 953 F.2d 663, 670 (D.C. Cir. 1992) (internal quotations and citation omitted).  Assisting with litigation to test the Nader ballot petitions and to keep Nader-Camejo off the ballot in the event those petitions were inadequate is a perfectly proper use of the court system.  Even assuming defendants had an ulterior motive, such as costing Nader money and siphoning votes away from him, plaintiffs' claim fails:  "The fact that [defendants] expected to realize some benefit . . . simply points to an ulterior motive, not the kind of perversion of the judicial process that gives rise to a cause of action for abuse of process." *Scott*, 101 F.3d at 756; *see also Kopff*, 519 F. Supp. 2d at 99; *infra*, at 19-27 (demonstrating that plaintiffs have failed to state a claim for abuse of process under the law of Arizona, Florida, Washington, New Hampshire, and the District of Columbia, and that the claims are time-barred).

   In an effort to transform Senator Kerry and the Campaign's wholly legal activity into an actionable wrong, plaintiffs assert in conclusory terms that a vast conspiracy "unprecedented in its magnitude and scope" was hatched against Nader.  Compl. ¶ 66.  The complaint, however, includes not a single allegation even asserting that the Senator participated in this supposedly vast conspiracy.   It is also fatally nonspecific with regard to the Campaign.  Plaintiffs contend that the "Kerry-Edwards Campaign also joined the conspiracy, coordinating with lawyers and directly participating in the conspiracy's litigation," *id*. ¶ 59, and that "[t]he DNC, the Kerry-Edwards Campaign, the Ballot Project, 18 state or local Democratic Parties, at least 95 lawyers from 53 law firms, and hundreds if

not thousands of Democratic Party operatives conspired" to prevent Nader from running for President, *id.* ¶ 66. These allegations are wholly insufficient to state a claim for conspiracy.[8]

It is longstanding precedent that complaints alleging conspiracy cannot survive a motion to dismiss if they do not support their claims that a defendant agreed to violate the law with references to material facts about the defendant's participation. *See Brady v. Livingood*, 360 F. Supp. 2d 94 (D.D.C. 2004). "The mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." *Bush v. Butler*, 521 F. Supp. 2d 63, 69 (D.D.C. 2007); *see also Robertson v. Merola*, 895 F. Supp. 1, 4 (D.D.C. 1995); *Hill v. Medlantic Health Care Group*, 933 A.2d 314 (D.C. 2007); *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000).

Even if plaintiffs had alleged facts to connect the Campaign or the Senator to the alleged agreement to engage in concerted litigation, plaintiffs' claim would fail. To state a claim for civil conspiracy, plaintiffs must allege "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of the parties to the agreement, and in furtherance of the common scheme." *Hill*, 933 A.2d at 334. "Civil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Id.* (internal quotations and citation omitted); *see also Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000). Because plaintiffs have alleged no underlying tort of malicious prosecution or abuse of process, there cannot be an actionable conspiracy. In short, "[t]he record does not reveal *any* facts, with the exception of [plaintiffs'] own conclusions, that the [defendants] participated in a civil conspiracy." *Hill*, 933 A.2d at 334.

---

[8] Plaintiffs allege a meeting during the Democratic convention where "the organizers and leaders of the conspiracy met privately to discuss their plans." Compl. ¶ 46. They do *not* assert that any representative of the Campaign attended that meeting.

2.    **The First Amendment and the *Noerr-Pennington* doctrine protect Senator Kerry and the Campaign from Liability.**

Not only does plaintiffs' complaint fail to state a claim for relief against the Senator and the Campaign under state tort law, but the activity alleged—filing lawsuits to challenge the nomination petitions of the Nader-Camejo campaign—is protected by the First Amendment. *See E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).

The First Amendment guarantees a citizen's right to petition the government for redress of grievances. U.S. Const. amend. I. This right is fundamental to our nation's system of democracy. *See Noerr*, 365 U.S. at 138-39. Accordingly, the Supreme Court has developed the *Noerr-Pennington* doctrine to immunize individuals from liability for injuries allegedly caused by their petitioning of the government. *See Cal. Motor Transp. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); *Noerr*, 365 U.S. at 138.

In its original form, the *Noerr-Pennington* doctrine protected business competitors from Sherman Act antitrust liability when they joined together to influence administrative or legislative action, even though the objective of the alliance was to eliminate competition. *Noerr*, 365 U.S. at 135-38; *see also We, Inc. v. City of Philadelphia*, 174 F.3d 322, 323, 326 (3d Cir. 1999). The doctrine now extends to protect coordinated action in petitioning courts and administrative agencies, as well as executive and legislative bodies. *See Cal. Motor Transp.*, 404 U.S. at 510 (stating that doctrine applies to institution of suits before administrative agencies and courts because "the right to petition extends to all departments of the Government").

Courts have also extended *Noerr-Pennington* immunity beyond federal antitrust liability to "confer immunity from a variety of tort claims, including claims of . . . abuse of process," *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d

385, 392 (E.D. Va. 2002), and malicious prosecution, *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999); *see also Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C. Cir. 1995) ("[T]he common law torts of malicious prosecution and abuse of process . . . in some of their applications [may] be found to violate the First Amendment."); *Brownsville Golden Age Nursing Home v. Wells*, 839 F.2d 155, 159-60 (3d Cir. 1988) (recognizing applicability of *Noerr-Pennington* doctrine to conspiracy, abuse of process, and other claims).

The D.C. Circuit has recognized that an individual "cannot be held liable as a result of his or her filing a good-faith lawsuit." *Whelan*, 48 F.3d at 1253 (internal quotations and citation omitted). Indeed, the District of Columbia's law on abuse of process and malicious prosecution incorporates these essential First Amendment concerns, recognizing that "'the courts are open and free to all who have grievances and seek remedies therefor, and there should be no restraint upon a suitor, through fear of liability resulting from failure in his action, which would keep him from the courts.'" *Ammerman*, 384 A.2d at 641 (quoting *Peckham v. Union Finance Co.*, 48 F.2d 1016, 1017-18 (D.C. Cir. 1931)).

Plaintiffs can avoid the application of *Noerr-Pennington* only if they allege sufficient facts to show that defendants' ballot litigation was a sham. *See Noerr*, 365 U.S. at 144; *Whelan*, 48 F.3d at 1253 (*Noerr-Pennington* immunity does not apply to complaints that are willfully false). They have utterly failed to do so: They do not allege that any litigation brought by the Campaign was so objectively baseless that no reasonable litigant could realistically expect success on the merits or that the litigation concealed an attempt to interfere with plaintiffs' rights through the use of governmental process, as opposed to through the outcome of the process, *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245, 251 (D.D.C. 2007), or that any complaints filed were willfully false, *Whelan*, 48 F.3d at 1253.

Even assuming plaintiffs had alleged that other defendants engaged in wrongful conduct while pursuing the ballot litigation, neither Senator Kerry nor the Campaign can be

held liable. An individual who associates with others in First Amendment protected activity is protected from liability, even if some of the others are engaged in wrongful conduct, unless there is evidence that the particular individual's actions "were specifically intended to further such wrongful conduct." *In re Asbestos School Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 919 (1982). The court must judge whether a particular individual had the specific intent "according to the strictest law." *Claiborne Hardware*, 458 U.S. at 919 (internal quotations and citations omitted). Here, plaintiffs have failed to allege any specific intent on the part of the Senator or the Campaign to further wrongful conduct: Indeed, the complaint is almost bereft of factual allegations involving the Senator at all, and it states only that the Campaign participated in litigation.

The litigation that was filed by other defendants challenging the nomination papers of the Nader-Camejo campaign falls squarely within the protection of the First Amendment. *See Whelan*, 48 F.3d at 1253. States have the incontrovertible "right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983). As the Supreme Court has recognized, "it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Id.*

It is not unusual for candidates, campaigns, and their supporters to petition the government for redress during the course of a political campaign. During each election cycle, for example, dozens of candidates file complaints with the Federal Election Commission against political opponents.[9] Campaigns also routinely challenge the petition

---

[9] According to the Federal Election Commission website, in the election year 2006 alone, over one hundred complaints were filed, many by campaigns against opponents. The Commission encourages any citizen to file a complaint regarding violations of the campaign finance laws. *See* Federal Election Commission, *Filing a Complaint* (July 1998), *available at* http://www.fec.gov/pages/brochures/complain.shtml#anchor460355. This Court can take judicial notice of reliable information published on the internet. *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 (6th Cir. 2005); *Schaffer v. Clinton*, 240 F.3d 878, 885 (10th Cir. 2001); *Austin v. Am. Ass'n of Neurological Surgeons*, 253 F.3d 967, 971 (7th Cir. 2001).

signatures of opponents through litigation.[10]  Such petitioning activity is an integral part of

the electoral contest, and helps to ensure that election laws are vigorously enforced.  As the

Supreme Court has recognized, "there must be a substantial regulation of elections if they are

to be fair and honest and if some sort of order, rather than chaos, is to accompany the

democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).  Under plaintiffs' theory,

however, any candidate who fails to gain access to the ballot as a result of litigation brought

by an opponent could bring suit, even years after the election is over.  Subjecting political

campaigns to suit by political opponents on the basis of their proper petitioning efforts would

severely chill activity "at the heart of American constitutional democracy—the political

campaign." *Hartlage*, 456 U.S. at 53.  Neither the First Amendment nor state tort law allows

plaintiffs to do so here.

Indeed, the context in which the underlying litigation took place makes Rule 12(b)(6)

requirements and *Noerr-Pennington* all the more important, for the First Amendment

provides heightened protection in political campaigns.  The Supreme Court has recognized

that "[t]he free exchange of ideas provides special vitality to the process traditionally at the

heart of American constitutional democracy—the political campaign." *Id.*  The First

Amendment's "'guarantee has its fullest and most urgent application precisely to the conduct

of campaigns for political office.'"  *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 205

(2003) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)).

It is critical, therefore, that the Campaign and the Senator be "protected by the firmly

rooted principle, endemic to a democratic government," that citizens may petition the

Nations' courts.  *See Brownsville Golden Age Nursing Home*, 839 F.2d at 160.  Plaintiffs'

contention that Senator Kerry can be held personally liable based on one comment he made

---

[10] *See, e.g.*, *In re Nomination Papers of Rogers*, 908 A.2d 948 (Pa. Commw. Ct. 2006); *Klebba v. Carpenter*, 213 Ariz. 91 (2006); *Iaboni v. Sunderland*, 175 A.D.2d 893 (N.Y. App. Div. 1991).

to a newspaper about ongoing litigation, *cf.* Compl. ¶ 65, illustrates the outrageous nature of plaintiffs' complaint. The heightened protection given by the First Amendment to political campaign speech applies with special force to the speech of political candidates themselves. *Buckley v. Valeo*, 424 U.S. 1, 52-53 (1976) (per curiam) (citing *Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring)); *see also Secrist v. Harkin*, 874 F.2d 1244, 1249 (8th Cir. 1989). To permit a suit challenging the Senator's statements about petitioning activity, or the Campaign's alleged peripheral involvement in such activity, would provide a dangerous tool for retaliation against those individuals who take part in the intense and often combative contest our modern democracy requires, severely chilling protected First Amendment activity.

## B. Each of Plaintiffs' State Malicious Prosecution and Abuse of Process Claims, Examined Independently, Is Time-Barred and Fails to State a Claim upon Which Relief Can Be Granted.

### 1. This Court should apply the law of the District of Columbia, but under the law of any of the relevant jurisdictions, plaintiffs' complaint fails.

Because the District of Columbia is the forum state, its statute of limitation applies to plaintiffs' claims. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) ("Looking to the D.C. choice-of-law rules, we see that they treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations."); *Huang v. D'Albora*, 644 A.2d 1, 4 (D.C. 1994) (except where part of the cause of action itself, limitations period is governed by the law of the forum state, regardless of whether another state's substantive law is to apply).

The statute of limitation for malicious prosecution in the District of Columbia is one year. D.C. Code § 12-301(4). It runs from the date on which the prior, allegedly malicious, suit was terminated. *Shulman v. Miskell*, 626 F.2d 173, 176 (D.C. Cir. 1980). The statute of limitation for abuse of process is three years, running from the date of the last act constituting the tort. D.C. Code § 12-301(8); *see also Saunders v. Nemati*, 580 A.2d 660, 662 (D.C.

1990).  Plaintiffs, however, cannot circumvent the one-year limitations period that applies to malicious prosecution claims by labeling their claims "abuse of process."  *See Rynn v. Jaffe*, 457 F. Supp. 2d 22, 24-25 (D.D.C. 2006); *Zandford v. Nat'l Ass'n of Sec. Dealers*, 19 F. Supp. 2d 4, 7-8 (D.D.C. 1998).  Because the gravamen of plaintiffs' complaint is that defendants brought unfounded litigation against Nader, their abuse of process claims "actually concern malicious prosecution," and the one-year limitations period should apply.  *See Rynn*, 457 F. Supp. 2d at 24-25.  But, as explained below, even if this Court applies the three-year limitations period, plaintiffs' claims are time-barred under District of Columbia law.

    This Court also should apply the substantive law of the District of Columbia to plaintiffs' abuse of process and malicious prosecution claims.  The alleged injury was an outgrowth of decisions made by persons located within the District of Columbia; the parties' relationships were centered in the District of Columbia; and the District has as great an interest in the outcome as the foreign states in which process was allegedly abused.  *See Tri-State Hosp. Supply Corp. v. United States*, No. 00-01463 (HHK), 2007 WL 2007587 (D.D.C. July 6, 2007) (applying the District of Columbia's law in context of malicious prosecution and abuse of process action).  Furthermore, because there is no real conflict between the law of the forum state and the other states, the law of the forum state should apply.  *Greaves v. State Farm Ins. Co.*, 984 F. Supp. 12 (D.D.C. 1997).  But whether this Court applies the law of the District of Columbia or the law of the states where the underlying litigation was filed, plaintiffs have failed to state a claim against the Senator or the Campaign upon which relief can be granted.

2.    **Plaintiffs' claims regarding the Arizona litigation are time-barred, and the Arizona allegations fail to state a claim against the Senator and the Campaign.**

Plaintiffs allege that defendants engaged in malicious prosecution and abuse of process in Arizona. According to the complaint, on June 23, 2004, two registered voters filed suit in Arizona challenging Nader's nomination papers; Nader subsequently withdrew the papers. Compl. ¶¶ 72-74. The Campaign, plaintiffs allege, was informed about this litigation. *Id.* ¶ 73. Subsequently, Nader filed suit challenging Arizona's filing deadline, and one of the registered voters intervened; Nader's request for injunctive relief was denied on September 10, 2004 and Nader did not appear on the ballot. *Id.* ¶¶ 75-78.[11]

The claim that defendants engaged in malicious prosecution in Arizona is time-barred. The Arizona lawsuit about which the Campaign was allegedly informed was filed in June 2004, and terminated shortly thereafter when Nader withdrew his nomination papers— well over one year before this complaint was filed on October 30, 2007. The abuse of process claim is similarly time-barred. Because both Arizona lawsuits identified by plaintiffs were filed and completed by September 10, 2004, over three years before Nader filed this action, abuse of process could not possibly have occurred within the limitations period.

Even if the claims are not time-barred, plaintiffs have failed to state a malicious prosecution claim against the Senator or the Campaign. Under both Arizona and District of Columbia law, the tort of malicious prosecution requires plaintiffs to show that the defendant instituted a civil action that was motivated by malice, begun without probable cause, terminated in favor of the plaintiff, and damaged the plaintiff. *Giles v. Hill Lewis Marce*, 195 Ariz. 358 (App. Div. 2 1999); *Bown v. Hamilton*, 601 A.2d 1074, 1080 n.14 (D.C. 1992) (citing *Ammerman v. Newman*, 384 A.2d 637 (D.C. 1978)). Here, plaintiffs do not allege that

---

[11] The complaint does not mention that voters aligned with Nader then brought yet *another* action in U.S. District Court seeking to compel the Secretary of State to put Nader on the ballot. The U.S. District Court denied the Nader parties' motion for injunctive relief, and that decision was affirmed by the Ninth Circuit. *Nader v. Brewer*, 386 F.3d 1168 (9th Cir. 2004).

they prevailed in the Arizona litigation, nor can they.  They also do not assert that the Senator or the Campaign was responsible for instituting any litigation:  According to the complaint, the Campaign was simply informed of the litigation.  *See* Compl. ¶ 73.

Plaintiffs also have failed to state a claim for abuse of process in Arizona, for they do not allege that the Senator or the Campaign undertook any process in the state, let alone any abuse of process.  *See Giles*, 195 Ariz. at 361 ("The essential elements of such a claim are an ulterior purpose and a willful act in the use of judicial process not proper in the regular conduct of the proceeding."); *accord Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1997).  They allege only that the Campaign was informed that registered voters had filed a lawsuit.  Compl. ¶ 73.  These facts utterly fail to state a claim upon which relief can be granted.

> **3.      Plaintiffs' claims regarding the Florida litigation are time-barred and the Florida allegations fail to state a claim against the Senator and the Campaign.**

With respect to Florida, plaintiffs allege that registered voters and the Florida Democratic Party filed a complaint challenging Nader-Camejo's nomination papers on September 2, 2004, and that other registered voters filed a similar, but separate, complaint on the same day.  *Id*. ¶¶ 87-88.  The voters and the Party prevailed in the trial court, *id*. ¶¶ 89, 92, and Nader-Camejo appealed, *id*. ¶ 91-93.  A group of attorneys, plaintiffs allege, then "submitted a separate appellees' brief in support of plaintiffs below."  *Id*. ¶ 93.  According to the complaint, the website of one of those attorneys, Katherine Pringle, "states that she 'served as co-counsel to the Kerry for President Campaign in litigation concerning the 2004 election ballot.'"  *Id*. ¶ 94.  On September 17, 2004, the Florida Supreme Court reversed the trial court and Nader appeared on the Florida ballot.  *Id*. ¶ 97.  Plaintiffs allege that the litigation was financed by the Ballot Project, the Florida Democratic Party, and the DNC.  *Id*. ¶ 99.

Again, plaintiffs' claims are time-barred under both the District of Columbia's one-year statute of limitation for malicious prosecution, *see* D.C. Code § 12-301(4), and its three-year statute of limitation for abuse of process, *see id.* § 12-301(8).  Per the complaint, the Florida litigation terminated on September 17, 2004, more than three years before this action was filed.  Compl. ¶ 97.

Even if not time-barred, plaintiffs' claim against the Senator and the Campaign with respect to the Florida litigation fails.  Plaintiffs allege only that an attorney, whose website states she represented the Campaign, worked on an appellate brief that opposed Nader's place on the Florida ballot.  *Id.* ¶ 94.  Even assuming that Ms. Pringle acted at the behest of the Campaign—a fact the complaint does not actually allege—nothing in the complaint indicates that Ms. Pringle or the Campaign was "the legal cause of the original proceeding" as necessary for a malicious prosecution claim under Florida and District of Columbia law. *See Woods v. Paradis*, 380 F. Supp. 2d 1316, 1330 (S.D. Fla. 2005); *Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000).  Rather, according to the complaint, Ms. Pringle simply filed an appeal brief in support of some of the voter plaintiffs who were challenging Nader-Camejo's nomination papers.  Nor do plaintiffs provide any facts to support the conclusion that Ms. Pringle or the Campaign lacked probable cause for the litigation or that they acted with malice—both of which are essential elements of an action for malicious prosecution. *See Ammerman*, 384 A.2d at 639-41; *Woods*, 380 F. Supp. at 1330.  Plaintiffs' abuse of process claim suffers from the same critical flaw:  Even assuming that Ms. Pringle actually represented the Campaign in the appeal, plaintiffs fail to allege "an illegal, improper or perverted use of process."  *Valdes v. GAB Robins North America, Inc.*, 924 So. 2d 862, 867 n.2 (Fla. Dist. Ct. App. 2006); *see also Scott*, 101 F.3d at 756.

4.    **Plaintiffs' claims regarding the New Hampshire litigation are time-barred, and the New Hampshire allegations fail to state a claim against the Senator and the Campaign.**

Plaintiffs also fail to state a claim for malicious prosecution and abuse of process with regard to the litigation in New Hampshire.  Plaintiffs allege that, on August 10, 2004, the New Hampshire Democratic Party Chair, Kathleen Sullivan, filed an FEC complaint against the Nader-Camejo Campaign, and that the FEC dismissed the complaint on June 23, 2005.  Compl. ¶ 135.  Plaintiffs do not allege that the Campaign or the Senator was involved with this litigation.  *See id.*  On September 7 and 13, 2005, plaintiffs allege, Ms. Sullivan filed complaints with the New Hampshire Ballot Law Commission challenging Nader-Camejo's nomination papers.  *Id.* ¶ 137.  According to plaintiffs, Judy Reardon, the Kerry-Edwards Campaign's deputy national director for Northern New England, drafted the September 13 complaint.  *Id.* ¶ 138.  On September 24, 2004, the Commission denied the complaints.  *Id.* ¶ 139.

Again, plaintiffs' claims are time-barred under the District of Columbia's one-year statute of limitation for malicious prosecution, and its three-year statute of limitation for abuse of process.  *See* D.C. Code § 12-301(4), (8).  As the complaint makes clear, the New Hampshire litigation with which the Campaign was allegedly involved terminated on September 24, 2004, more than three years before this action was filed.

Even if plaintiffs' claims were not time-barred, they have failed to state a claim upon which relief can be granted.  Under New Hampshire law, as under the law of the District of Columbia, "[a] successful action for malicious prosecution requires proof that the plaintiff was subjected to a civil proceeding instituted by the defendant without probable cause and with malice."  *ERG, Inc. v. Barnes*, 137 N.H. 186, 190 (1993) (citation omitted).  In order to establish malice, plaintiffs must show "the existence of an evil purpose or motive, a wicked or mischievous intent, or a wilful, wanton, reckless or oppressive disregard to the rights of the plaintiff."  *Ammerman*, 384 A.2d at 640-41 (citing 52 Am. Jur. 2d Malicious Prosecution

§ 46 (1970)).   Here, plaintiffs make no allegation that Ms. Reardon or the Campaign acted without probable cause, or with any evil or wicked intent.  Compl. ¶¶ 137-39.  At most, plaintiffs suggest that the Campaign sought to advance the candidacy of Senator Kerry by litigating Nader's nomination papers, a perfectly legal and proper motive.  Similarly, plaintiffs fail to state a claim for abuse of process, for they do not allege that Ms. Reardon or the Campaign engaged in "a perversion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge."  *Whelan v. Abbell*, 953 F.2d 663, 670 (D.C. Cir. 1992) (internal quotations and citation omitted); *see also Long v. Long,* 136 N.H. 25, 29 (1992).  All they allege is that Ms. Reardon drafted a complaint that was subsequently denied.  Compl. ¶¶ 137-138.

     **5.**     **Plaintiffs' claims regarding the Washington State litigation are time-barred, and the Washington allegations fail to state a claim against the Senator and the Campaign.**

Plaintiffs fail to state a claim upon which relief can be granted with respect to the Washington state litigation as well.  They allege that on September 8, 2004, several attorneys filed a complaint in Washington State court on behalf of the Washington State Democratic Central Committee and several individuals; the suit challenged Nader-Camejo's nomination papers and the secretary of state's decision to allow Nader onto the ballot.  Compl. ¶ 209. According to plaintiffs, two of the individual plaintiffs in that suit were affiliated with the Campaign:  "DiAnne Grieser signed an online petition to support John Kerry as the Democratic Party's presidential nominee in 2008, identifying herself as the 2003-2004 moderator for the Kerry-Edwards Campaign blog.  Randy Poplock identified himself on the John Kerry Meetup Online Message Board as an affiliate of the 527 United Progressives for Victory, and an organizer for the Kerry-Edwards Campaign."  *Id*. ¶ 210.  On September 15, 2004, the court upheld the Secretary of State's decision to allow Nader-Camejo on the ballot.

Plaintiffs' Washington State claims, like their other claims against the Campaign, are time-barred under the one-year statute of limitation for malicious prosecution, and the three-year statute of limitation for abuse of process. *See* D.C. Code § 12-301(4), (8). According to the complaint, the Washington litigation in which Grieser and Poplock participated terminated on September 15, 2004, more than three years before this action was filed.

And, as in Arizona, Florida, and New Hampshire, even assuming that plaintiffs' claims are not time-barred, the complaint fails to state a claim upon which relief can be granted. The allegation that two individuals—one who identified herself as a Campaign blog moderator and another who identified himself as a Campaign organizer—participated in ballot-related litigation simply does not state a claim of malicious prosecution or abuse of process by the Campaign under the law of the District of Columbia or Washington state, *see Clark v. Baines*, 150 Wash. 2d 905, 911-12 (2004) (Malicious prosecution of a civil action consists of seven elements: "(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; . . . (5) that the plaintiff suffered injury or damage as a result of the prosecution[;] . . . (6) arrest or seizure of property and (7) special injury (meaning injury which would not necessarily result from similar causes of action)." (internal quotations and citation omitted)); *Stuart v. WPIG, LLC*, No. 32328-1-II, 2005 WL 1100977, at *2 (Wash. Ct. App. May 10, 2005) (quoting *Batten v. Abrams*, 28 Wash. App. 737, 745 (1981)) (A plaintiff must prove two elements to succeed on an abuse of process claim: "(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.").

In sum, plaintiffs' claims are time-barred in all of the states in which plaintiffs allege involvement in litigation by Senator Kerry or the Kerry-Edwards Campaign, and plaintiffs have failed to assert any facts to support the conclusion that the Senator or the Campaign maliciously prosecuted any civil actions or abused process in any of the states. As discussed, *supra*, at 9-14, because plaintiffs have failed to allege an underlying tort, and because they allege only their own conclusions that Senator Kerry and the Campaign entered into an agreement to violate the law, without providing any factual support, they have also failed to state a claim for conspiracy.

**C.    The Voter Plaintiffs Lack Standing, and Therefore This Court Must Dismiss Their Claims for Lack of Jurisdiction Pursuant to Rule 12(b)(1).**

In addition to dismissing for failure to state a claim, this Court should dismiss the voter plaintiffs' claims for lack of standing. The Supreme Court has set forth three elements that plaintiffs must satisfy to meet the constitutional requirements for standing. *First*, they must demonstrate that they have suffered an "injury in fact,"—*i.e.,* an invasion of a legally-protected interest that is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). *Second*, plaintiffs must establish "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] . . . some third party not before the court." *Id.* at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). *Third*, they must show a substantial likelihood that the requested relief will be redressed by a favorable decision; mere speculation is not enough. *Id.*; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 180-81 (2000); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000); *Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002); *Winpisinger v. Watson*, 628 F.2d 133 (D.C. Cir. 1980);

13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* 2d § 3531.6 (3d ed. 1998).

Even assuming, *arguendo*, that the voter plaintiffs meet the injury-in-fact requirement, they have not alleged sufficient facts to demonstrate either causation or redressability. *First*, they cannot show that their injury is fairly traceable to the actions of defendants, as opposed to the numerous other variables that kept Nader off the ballot, such as his failure to garner sufficient support from the electorate. *See Kucera v. Bradbury*, 337 Or. 384 (2004); *cf. Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

*Second*, even assuming plaintiffs have alleged a concrete and imminent "injury in fact" and causation, they cannot demonstrate that they will benefit from court action. *Simon*, 426 U.S. at 46, 54-56; *see also Warth v. Seldin*, 422 U.S. 490, 508 (1975) (no standing because plaintiffs had not alleged "specific, concrete facts demonstrating" that they "personally would benefit in a tangible way from the court's intervention"); *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973) (no standing because prospect that court remedy would result in redress of plaintiff's injury could "at best, be termed only speculative").

The only harm the voters allege is that they were unable to select the candidate of their choice. It is no longer possible for a court to redress this injury: The "election is history" and the court cannot order that it be rerun. *Hall v. Beals*, 396 U.S. 45, 48 (1969); *see also Plotkin v. Ryan*, 239 F.3d 882, 884-85 (7th Cir. 2001) (voter-plaintiffs who alleged that defendants' illegal conduct skewed the election results and, in the process, diluted the impact of their votes lacked standing because court could not rescind election and any other remedy would not redress the alleged injury); *Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410, 1412-13 (D.C. Cir. 1998) (petitioner in contract action who sought specific performance lacked standing because there was no action the court could take on review that would restore the seller's ability to effect specific performance).

Not only is the court without power to redress the alleged past harm, but any claim that court action here would enable plaintiffs to choose Nader in the future is too speculative to give rise to standing.  *See, e.g., Fulani v. Brady,* 935 F.2d 1324, 1330 (D.C. Cir. 1991); *Kelly v. Harris*, 331 F.3d 817, 820-21 (11th Cir. 2003).  Similarly, the theory that defendants might engage in another conspiracy to keep Nader off the ballot at some unnamed point in the future is too speculative to give rise to standing.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 110-12 (1983); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976).  Because the voters cannot demonstrate an injury in fact, that was caused by defendants and can be redressed by this Court, they lack standing and their claims should be dismissed pursuant to Rule 12(b)(1).

## CONCLUSION

Because plaintiffs have failed to state any claim against Senator Kerry or the Kerry-Edwards Campaign upon which relief can be granted, and because the voter plaintiffs lack standing, this Court should dismiss the case, with prejudice.

DATED: February 4, 2008.                    Respectfully submitted,

**PERKINS COIE LLP**

By: /s/ Marc E. Elias
     Marc E. Elias, Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street N.W.
Washington, D.C.  20005-2003
Telephone:  202.628.6600
Facsimile:  202.434.1690

*Counsel for Defendant John Kerry and
Defendant Kerry-Edwards 2004 Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Motion to Dismiss on this 4th day of February 2008 by means of the Court's CM/ECF system, on the following parties:

Oliver B. Hall
1835 16th Street, N.W.
Washington, DC  20009

*Counsel for Plaintiffs Ralph Nader Peter Miguel Camejo, D.B. Fanning C.K. Ireland, Julie Coyle, Herman Blankenship, Lloyd Marbet and Gregory Kafoury*

Lawrence Noble
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005

*Counsel for Defendants Toby Moffett, Robert Brandon, Elizabeth Holtzman and The Ballot Project, Inc.*

Laurence E. Gold
1666 Connecticut Avenue, NW
Suite 500
Washington, DC  20009

Lyn Utrecht
RYAN, PHILLIPS, UTRECHT & MACKINNON
1133 Connecticut Avenue, NW
Washington, DC  20036

*Counsel for America Coming Together*

Michael B. Trister
LICHTMAN, TRISTER & ROSS, PLLC
1666 Connecticut Avenue, N.W. Suite 500
Washington, DC  20009

*Counsel for Defendant Service Employees International Union*

Douglas K. Spaulding
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005

*Counsel for Defendant Reed Smith, LLP*

Joseph E. Sandler
John Hardin Young
Stephen E. Hershkowitz
SANDLER, REIFF & YOUNG, P.C.
50 E Street, SE #300
Washington, DC  20003

*Counsel for Defendants Democratic National Committee, Jack Corrigan, and Mark Brewer*

/s/ Marc E. Elias
Marc E. Elias D.C. Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street, NW, Suite 800
Washington, D.C.  20005-2011
Telephone:  202.628.6600
Facsimile:  202.654.9126
*Counsel for Defendants*
*John Kerry and Kerry-Edwards 2004 Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, et al., <br><br>             Plaintiffs, <br><br>    v. <br><br> THE DEMOCRATIC NATIONAL COMMITTEE, et al., <br><br>             Defendants. | Civil Action No. 07-2136-RMU |

**[PROPOSED] ORDER GRANTING THE MOTION TO DISMISS OF DEFENDANT SENATOR JOHN KERRY AND DEFENDANT KERRY-EDWARDS 2004 INC.**

Upon consideration of the Motion to Dismiss of Defendant Senator John Kerry and Defendant Kerry-Edwards 2004 Inc., it is hereby **ORDERED** that the motion is **GRANTED**, and the case is **DISMISSED** as to Defendant Senator John Kerry and Defendant Kerry-Edwards 2004 Inc.

ENTERED this ___ day of February 2008.

_____

RICARDO M. URBINA

United States District Judge