UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2136-RMU |
| | ) | |
| THE DEMOCRATIC NATIONAL | ) | |
| COMMITTEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO DISMISS THE AMENDED COMPLAINT
OF DEFENDANTS THE BALLOT PROJECT, INC., TOBY MOFFETT,
ELIZABETH HOLTZMAN, AND ROBERT BRANDON**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants The Ballot

Project, Inc., Toby Moffett, Elizabeth Holtzman, and Robert Brandon (collectively

"Defendants"), respectfully move this Court to dismiss the Amended Complaint for failure to

state a claim for which relief can be granted.  In support of their motion, Defendants submit the

accompanying memorandum of points and authorities.

Dated: February 4, 2008

Respectfully submitted,

_____/S/_____
Lawrence M. Noble
D.C. Bar No. 244434
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
(202) 371-7000

Preeta D. Bansal
D.C. Bar No. 431195
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000

*Counsel for Defendants The Ballot Project, Inc.
Robert Brandon, Elizabeth Holtzman, and
Toby Moffett*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2136 (RMU) |
| | ) | |
| THE DEMOCRATIC NATIONAL | ) | |
| COMMITTEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT OF DEFENDANTS THE BALLOT PROJECT, INC., TOBY MOFFETT, ELIZABETH HOLTZMAN AND ROBERT BRANDON

Plaintiffs Ralph Nader and his supporters bring this action in an attempt yet again to relitigate, in essence, the merits of various state court and administrative proceedings in 2004 that resulted in Nader failing to appear on the general election ballots of several states during the 2004 Presidential election. The gravamen of Plaintiffs' complaint is that Defendants and their co-conspirators either initiated or materially assisted a series of lawsuits in eighteen states against the Nader-Camejo campaign in 2004 "not to vindicate legal claims, but rather to bankrupt Nader-Camejo's campaign by forcing the candidates to spend their limited resources of time, talent and money on the defense of unfounded lawsuits." Amended Complaint (hereinafter "Am. Compl.") ¶ 4. Plaintiffs allege that Defendants thereby committed the torts of malicious prosecution and abuse of process under the laws of the various states. But in order to attribute sweeping allegations of purportedly abusive conduct to all Defendants without particularity,

Plaintiffs graft on to their complaint a broad civil conspiracy claim that they allege in only the

most general and conclusory terms.

This is not the first case in which Nader and his supporters have alleged conspiracy

(unsuccessfully) against some of these Defendants concerning substantially similar allegations

relating to the 2004 election. In *Fulani v. McAuliffe*, No. 04 Civ. 6973, 2005 WL 2276881

(S.D.N.Y. Sept. 19, 2005), a federal district court in New York rejected allegations of conspiracy

among Democrats, including some of the Defendants herein: the Democratic National

Committee (DNC), John F. Kerry, and Toby Moffett. Included in the alleged conspiracy in that

case were claims, like here, that "Defendant Moffet[sic] coordinated a national plan 'to drain

[Nader's] resources' and trained lawyers to help in that effort," *id.* at *1, and that "Democratic

Party lawyers and operatives generally reviewed Nader-Camejo nominating petitions 'with a fine

tooth comb' and instituted challenges against the petitions in Arizona, Colorado, Illinois, Iowa,

Maine, Michigan, Missouri, Nevada, New Jersey, New Mexico, Oregon, Pennsylvania and

Wisconsin." *Id.* The district court granted dismissal of the conspiracy claims, noting that

"Plaintiffs claim to have identified a conspiracy among Defendants generally, yet they fail to

specify when the conspiracy was formed, where the conspiracy was formed, or who participated

in the conspiracy." *Id.* at *4.

Similarly, here, Plaintiffs' Amended Complaint should be dismissed. Each of the state-

law claims for abuse of process, malicious prosecution, and conspiracy—arising out of

proceedings fully litigated in 2004—is time-barred under the governing limitations period.

Moreover, Plaintiffs have failed to state a claim for abuse of process or malicious prosecution,

and their allegations of conspiracy are too conclusory to withstand a motion to dismiss. Finally,

Defendants have protected First Amendment rights to seek redress of the government to ensure

2

that state statutory procedures for ballot access are followed, and thus their challenged conduct is protected activity under the *Noerr-Pennington* doctrine.

## STATEMENT OF THE CASE

**Procedural History**

Plaintiffs, Ralph Nader and Peter Miguel Camejo and two registered voters each from the states of Arizona, Ohio and Oregon, *see* Am. Compl. ¶¶ 15-22, commenced this litigation in the Superior Court of the District of Columbia on October 30, 2007. They named as Defendants the DNC; the Kerry-Edwards 2004 Inc. campaign committee; The Ballot Project, Inc. (a section 527 organization); America Coming Together (also a section 527 organization allegedly funded in part by the Service Employees International Union (SEIU)); the SEIU; Senator John Kerry; Jack Corrigan (a lawyer who allegedly worked for the DNC and the Kerry-Edwards campaign); three individuals allegedly associated in some way with The Ballot Project, Inc. (Toby Moffett, Elizabeth Holtzman and Robert Brandon); Mark Brewer, the chair of the Michigan Democratic Party; and Reed Smith, a law firm headquartered in Pittsburgh. *Id.* ¶¶ 23-34. The complaint also names as non-defendant co-conspirators other section 527 organizations, campaign committees and non-profits, *id.* ¶¶ 37-41; unidentified state Democratic Party affiliates, *id.* ¶ 35; unidentified law firms and lawyers who "combined and conspired with Defendants and who, acting as Defendants' agents, implemented defendants' illegal scheme in various states as set forth herein," *id.* ¶ 36; and certain specified state party officials, attorneys, and officers and affiliates of the section 527 and nonprofit organizations, *id.* ¶¶ 42-44.

The original complaint asserted four counts: first, conspiracy to commit abuse of process and malicious prosecution; second, abuse of process and malicious prosecution under the various states' laws; third, conspiracy to violate "43 [sic] U.S.C. § 1983" and the United States

3

Constitution; and fourth, violation of "43 [sic] U.S.C. § 1983" and the United States Constitution. *See* Original Complaint ¶¶ 233-55.

One day after the complaint was filed in the D.C. Superior Court, a virtually identical complaint was filed in the United States District Court for the Eastern District of Virginia, Civ. Action No. 1:07-cv-01101-JCC-TCB. Indeed, the filing of that complaint in Virginia on October 31, 2007 seemed almost to have been an after-thought, as it was virtually a copycat of the D.C. complaint, even bearing an unchanged caption reading "In the Superior Court of the District of Columbia." The Virginia action named only two defendants—Terry McAuliffe, associated with the DNC, and Steve Raikin, associated with The Ballot Project, Inc. —and named all Defendants in this action as additional non-defendant co-conspirators in the Virginia action. But otherwise, in all other respects, the Virginia complaint asserted identical facts and claims for relief as the original complaint in the D.C. Superior Court.

Apparently to avoid having the improperly-captioned complaint dismissed or stricken, Plaintiffs one day later filed an amended complaint in Virginia, bearing the correct name of that court on the caption. In virtually all other respects, the amended complaint in Virginia is identical to the complaint initially filed in the D.C. Superior Court (with the exception of the additional named Defendants in this action, as compared to additional non-defendant co-conspirators in the Virginia action). The amended complaint in Virginia, in fact, still seeks a jury trial pursuant to the District of Columbia Rules of Civil Procedure.

On November 27, 2007, this case was removed from the D.C. Superior Court to this Court pursuant to 28 U.S.C. § 1441(a) because the original complaint included claims pursuant to 42 U.S.C. § 1983 for violations of federal rights, over which the district courts of the United States have original jurisdiction. Then began Plaintiffs' ham-fisted attempts to "handle" the

identical litigation in two forums. After Defendants' counsel in the Virginia action conferred with Plaintiffs' counsel concerning the intended motion to transfer the Virginia proceeding to this Court, Plaintiffs responded with a series of procedural maneuvers designed to forestall such a motion in Virginia by attempting to divest this Court of federal jurisdiction. Apparently not wanting the case to be heard in this Court, Plaintiffs amended (as of right) the District of Columbia complaint on January 23, 2008 to remove the counts alleging the federal section 1983 claims, and moved to remand the case back to the D.C. Superior Court. That motion remains pending. (Defendants today have filed a joint opposition to the motion to remand for its failure to comply with the procedural rules of the Court and, should the motion be re-filed in compliance therewith, Defendants intend to oppose the motion to remand on the merits.)

Then, on January 30, 2008, Plaintiffs filed a motion to amend, for the second time, the Virginia complaint to include new parties (some of the Defendants in this action) and to dismiss the non-federal claims. It appears this latest step is an attempt by Plaintiffs somehow to offset their amendment of the D.C. Complaint in a convoluted effort to shuffle the claims between forums—so that the federal section 1983 claims are heard in the Eastern District of Virginia, and the common law claims based on identical facts are heard in the D.C. Superior Court—without any regard for judicial economy of the respective forums or the substantive merits of how the claims will be heard against what parties and where.

While the Plaintiffs' motion for leave to amend the Virginia complaint to drop the common-law claims remains pending, Defendants in the Virginia action moved, on January 31, 2008, to dismiss the existing amended complaint in Virginia (including both the section 1983 claims and the common law and conspiracy claims) on the merits or, in the alternative, to

5

transfer the action to this Court. The hearing date on that motion currently has been noticed for February 22, 2008.

**Plaintiffs' Allegations**

The Amended Complaint in this action includes only two counts: Count I asserts conspiracy to commit abuse of process and malicious prosecution by Defendants who allegedly conspired and agreed to file "24 complaints against the Nader-Camejo Campaign within 12 weeks between June and September of 2004, pursu[ed] unfounded and abusive litigation against the campaign in 18 different states [and] engaged in acts of harassment, intimidation and sabotage, often under fraudulent pretenses." Am. Compl. ¶ 236; and Count II alleges abuse of process and malicious prosecution under the common law of 18 states for similar conduct.

The "factual" allegations in the Amended Complaint consist largely of conclusory, generalized assertions about conspiracy—with no specificity as to the time, place or nature of the asserted agreement; parties to the agreement; or scope or duration of the agreement. *See, e.g.,* Am. Compl. ¶ 47 ("The leaders and organizers of the conspiracy specifically agreed to sue and otherwise obstruct Nader-Comejo not only in these 'battleground' states, but also in as many other states as possible."); *id.* ¶ 53 ("That 'Game Plan,' which Defendants jointly planned and executed with their co-conspirators, was to file groundless and abusive lawsuits and otherwise obstruct the Nader-Camejo Campaign as many times in as many states as possible during the 2004 election."). Nor do these allegations isolate an illegal motive or an agreement to engage in unlawful conduct: that Defendants plausibly might have shared a common goal of ensuring that Nader's candidacy did not result in a defeat for the Kerry-Edwards ticket is not unlawful. Indeed, as Plaintiffs allege, the so-called "memo [that] outlined the conspirators' comprehensive plan of

6

attack . . . involved not only a nationwide legal assault, but also a communications plan intended to convince voters not to vote for Nader-Camejo." *Id.* ¶ 50.

The Amended Complaint's allegations include, as asserted overt acts in support of the alleged conspiracy and the alleged tortious conduct, (i) the filing of twenty-four lawsuits and administrative challenges in eighteen states; (ii) the filing of five complaints to the Federal Election Commission ("FEC"); and (iii) alleged "acts of harassment, intimidation and sabotage . . . specifically intended to prevent Nader-Camejo from complying with state election laws, and to manufacture legal grounds for the conspirators' otherwise baseless claims" (*id.* ¶ 67) in Ohio, Oregon and Pennsylvania (*id.* ¶¶ 68-70, 156, 167-71 ). Although the Amended Complaint frequently refers to challenges to ballot access brought by conspirators, in fact, as the Amended Complaint also details, most such challenges were brought by individuals who are not named as either defendants or co-conspirators.

Indeed, there is *no* allegation that Defendants The Ballot Project, Inc., Toby Moffett, Elizabeth Holtzman or Robert Brandon initiated or filed any litigation against Nader-Camejo's ballot access efforts. Instead, The Ballot Project allegedly was established "to coordinate and finance Defendants' litigation against Nader-Camejo," *id.* ¶ 25, and "to recruit attorneys to provide counsel for the conspiracy's nationwide legal assault," *id.* ¶ 60. Defendants Moffett, Holtzman and Brandon allegedly have been officers, directors or otherwise associated with The Ballot Project. *Id.* ¶¶ 30-32. The state and local Democratic Parties allegedly "materially supported such lawsuits filed in their states." *Id.* ¶ 54. The DNC allegedly, "on information and belief, coordinated with The Ballot Project to secure *pro bono* counsel in other states." *Id.* ¶ 57.

With regard to the asserted "bad" motives behind the conspiracy and abusive litigation, the Amended Complaint alleges they consisted of Defendants' desires to: (i) force Nader-

7

Camejo to expend and drain resources through litigation, *see, e.g., id.* ¶ 4 ("Defendants' admitted purposes for bringing these lawsuits . . . was not to vindicate valid legal claims, but rather to bankrupt Nader-Camejo's campaign by forcing the candidates to spend their limited resources of time, talent and money on the defense of unfounded lawsuits."); *see also id.* ¶¶ 45, 47, 51, 62, 66; (ii) "to convince voters not to vote for Nader-Camejo" through "a communications campaign," *id.* ¶ 50; (iii) to help "John Kerry and John Edwards win the election by forcing their competitors from the race," *id.* ¶ 4; and (iv) to cause "financial injury and other damages to Mr. Nader and Mr. Camejo personally," *id.* ¶ 8; *see also id.* ¶ 66(ii).

But Plaintiffs allege no facts to support their claims that the state lawsuits were frivolous or abusive. To the contrary, the Amended Complaint admits that the lawsuits against Nader-Camejo's ballot access attempts were successful in part. Following these challenges, Mr. Nader did not appear on the general election ballot in four states: Ohio, Oregon, Pennsylvania and Illinois. *See* Am. Compl. ¶¶ 71, 109, 162-63, 176, 190. In Arizona, the Amended Complaint alleges that Nader-Camejo withdrew nomination papers in response to a litigated challenge, and that Nader-Camejo did not prevail on a subsequent challenge to Arizona's filing deadline; their names accordingly did not appear on the Arizona ballot either. *See id.* ¶¶ 74-77. In four other states, lower trial or appellate courts found in favor of challengers to Nader-Camejo's ballot access attempts, but those determinations were reversed on subsequent appeal or modified in light of subsequent parallel proceedings. *See, e.g., id.* ¶¶ 80-81 (Arkansas); ¶¶ 89, 91-92, 97 (Florida); ¶¶ 144-47 (New Mexico); ¶¶ 223-25 (Wisconsin). With respect to the FEC complaints, the Amended Complaint states that the FEC "took no action" on any of the five complaints. *See id.* ¶¶ 126, 135, 227.

8

Virtually all of the allegations relating to litigation in the eighteen states aver that such litigation was both initiated and finally resolved in 2004—after Mr. Nader announced his candidacy on February 22, 2004 (*id.* ¶ 45) and before the November 2004 Presidential election. *See generally id.* ¶ 236 (Count I) ("[Conspirators] filed 24 complaints against the Nader-Camejo Campaign [within] 12 weeks between June and September of 2004."); *id.* ¶ 239 (Count II) (similar). Only in a few instances are there allegations that even reference events beyond November 2004: one FEC complaint, filed on September 17, 2004, was dismissed on June 23, 2005 (*id.* ¶ 126); another FEC complaint, filed on August 10, 2004, was dismissed on June 23, 2005 (*id.* ¶ 135); the three other FEC complaints were dismissed on February 10, 2005, June 23, 2005, and April 21, 2006 (*id.* ¶ 227); and there was a bill of costs submitted in the Pennsylvania litigation, in which Nader-Camejo did *not* prevail, in December 2004 that was approved by the Pennsylvania court on January 14, 2005 (*id.* ¶¶ 191-94) – resulting in efforts by alleged co-conspirator Reed Smith to collect those costs through collateral litigation that remains pending (*id.* ¶¶ 202-03).

Although Defendants The Ballot Project and Moffett, Holtzman and Brandon allegedly "directed" the conspiracy, they are hardly referenced in any of the "factual" allegations of the Amended Complaint. They are not alleged to have engaged in any of the asserted acts of harassment, intimidation and sabotage in Ohio, Oregon or Pennsylvania, *see id.* ¶¶ 67-71, and they are not alleged as having had any role in the filing of the FEC complaints, *see id.* ¶¶ 126, 135, 227. With regard to the asserted 24 state law complaints filed in 18 states, The Ballot Project is alleged only to have played a role with respect to four: It allegedly coordinated with counsel in Colorado with respect to one of two filed complaints in that state, *id.* ¶ 86; to have paid, in part, fees of counsel in Florida with respect to one of two filed complaints in that state, *id.*

9

¶ 99; to have paid $12,000 in legal consulting fees for one lawyer in an Illinois case, *id.* ¶ 110; and to have reimbursed $6,000 in costs for one lawyer in one of the Pennsylvania actions, *id.* ¶ 205.[1]

Notably, in all of those four states except for Illinois, Plaintiffs allege that there were other parallel actions filed or directed against Nader-Camejo by other Defendants -- thus belying the assertion or inference of coordinated conspiracy. Moreover, the lawsuits allegedly directed by Defendants in Illinois and Pennsylvania were successful, and the Florida challenge was meritorious enough to have succeeded at the trial level, though later reversed on appeal. There are no specific allegations that the Colorado litigation was frivolous on the merits or abusive in any way.

**ARGUMENT**

**THE AMENDED COMPLAINT SHOULD BE DISMISSED**

**I.    The Amended Complaint Should Be Dismissed As Time-Barred.**

With the arguable exception of certain very limited allegations relating to the Pennsylvania litigation (none of which implicate in any way The Ballot Project or Defendants Moffet, Holtzman and Brandon), all of Plaintiffs' allegations of malicious prosecution and abuse of process in Count II are time-barred under the applicable one-year statute of limitations because they relate to events prior to October 31, 2006. Because Plaintiffs' abuse of process and malicious prosecution claims are time-barred, their conspiracy claim (Count I) similarly fails.

---

[1]    In addition, Toby Moffett is alleged to have "told New Mexico State Democratic Party Chair and DNC official John Wertheim that he should appoint someone to spearhead the party's efforts to deny Nader-Camejo ballot access in New Mexico. Mr. Wertheim agreed to do so, stating, 'This is a central focus of my own duties as chairman.'" Am. Compl. ¶ 141. Such an allegation hardly asserts unlawful conduct.

In the federal courts in the District of Columbia, the rule is that the statute of limitations of the forum state ordinarily applies. *See, e.g., A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) ("Looking to the D.C. choice-of-law rules, we see that they treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations.") (citing *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C. App. 1966)); *see also Rendall-Speranza v. Nassim*, 942 F. Supp. 621 (D.D.C. 1996) (statute of limitations governing common law tort claims is determined by the applicable law of the forum), *reversed on other grounds*, 107 F.3d 913 (D.C. Cir. 1997); *Bell v. Kelly Motor Lines, Inc.*, 95 F. Supp. 682 (D.D.C. 1951) (D.C. limitation period applied to Virginia common law personal injury action).

The statute of limitations for a malicious prosecution claim filed in the District of Columbia is one year, *see* D.C. Code § 12-301(4), and runs from the date of termination of the underlying civil action. *See Fraternal Order of Police, D.C. Lodge 1, Inc., v. Gross*, Civ. Action No. 04-1531, 2005 WL 3201400, at *1 n.1 (D.D.C. Nov. 9, 2005) (statute of limitations for malicious prosecution action begins to run from time of final disposition in favor of malicious prosecution plaintiff); *Wiggins v. State Farm Fire & Cas. Co.*, 153 F. Supp. 2d 16, 20 (D.D.C. 2001) (same).

The statute of limitations for an abuse of process claim filed in the District of Columbia is three years, *see* D.C. Code § 12-301(8) —running from the date of the last act constituting the tort, *see In re Rothenberg*, 173 B.R. 4, 11 (Bankr. D. Dist. Col. 1994); *Neumann v. Vidal*, Civ. Action No. 81-0459, 1981 WL 2218, at *3 (D.D.C. July 2, 1981) (in an abuse of process action, "[t]he statute [of limitations] begins to run from the termination of the acts that constitute the complained of abuse and not from the institution of the claim"). But significantly, in cases

11

where plaintiffs' abuse of process claim rests upon allegations concerning the wrongful *initiation* of litigation or legal process, rather than the abuse of legal process once initiated, the one-year statute of limitations for malicious prosecution applies. *See, e.g., Rynn v. Jaffe*, 457 F. Supp. 2d 22, 24-25 (D.D.C. 2006) (despite plaintiffs' characterization, because plaintiffs alleged wrongful initiation of proceeding, "abuse of process" claim against police officer was actually a malicious prosecution claim for limitations purposes); *Morfessis v. Baum*, 281 F.2d 938, 940 (D.C. Cir. 1960) ("to describe or rationalize what is here alleged as an abuse of process does not change it from the tort of malicious prosecution" for limitations purposes).

Thus, "a plaintiff's characterization of his claim is not necessarily controlling." *Zandford v. Nat'l Ass'n of Secs. Dealers, Inc.*, 19 F. Supp. 2d 4, 8 (D.D.C. 1998) (citations omitted). Rather, "if a defendant maliciously causes process to issue without probable cause, the plaintiff will have a claim sounding in malicious prosecution, but if a defendant causes process to issue, even where there is probable cause, and later misuses that process, the plaintiff will have a claim sounding in abuse of process." *Id.* at 7. *See also generally* 1 AM. JUR. 2D, *Abuse of Process*, § 3 (2007) ("malicious prosecution concerns maliciously or wrongfully causing process to issue, while abuse of process concerns the improper use of process after it has been issued"); 22 PROSSER ON TORTS § 121, at 856-857 (4th ed. 1971) ("Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance.").

Here, all of Plaintiffs' allegations of abuse of process concerning the asserted 24 state court complaints brought in 18 states (with the exception of certain allegations relating to the

12

Ohio and Pennsylvania actions, which *were* successfully litigated against Nader-Camejo) relate

to the decision to *initiate* litigation during 12 weeks in the middle of 2004—rather than relating

to any litigation processes that had been abused once the actions had been commenced. The one-

year statute of limitations thus applies. Moreover, even if the three-year statute of limitations

were to apply, *all* state court actions were concluded before October 30, 2004—such that Nader-

Camejo either did or did not appear on the general election ballots in those states on November 2,

2004. Inasmuch as Plaintiffs seek by this action review and rejection of a Pennsylvania state

court judgment awarding costs that post-dated the 2004 election, their claims are barred by the

*Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

291-92 (2005). Moreover, there are no allegations relating to the Ballot Project or to Defendants

Moffett, Holtzman and Brandon with regard to the *successful* Pennsylvania litigation efforts to

file and collect on a bill of costs after November 2004.

　　　The malicious prosecution and abuse of process claims accordingly should be dismissed

as time-barred. Because Plaintiffs' abuse of process and malicious prosecution claims are time-

barred, their conspiracy claim suffers from the same defect. The statute of limitations for a civil

conspiracy claim is "established by the statute of limitations governing the underlying tort."

*Thomas v. News World Commc'ns*, 681 F. Supp. 55, 73 (D.D.C. 1988) (holding that plaintiffs'

claims of conspiracies to commit libel and assault were subject to the one-year limitation period

for libel and assault claims set forth in D.C. Code Ann. § 12-301(4)); *Hancock v. Homeq*

*Servicing Corp.*, 2007 U.S. Dist. LEXIS 31051, at *28 (D.D.C. April 27, 2007) (holding that

plaintiffs' conspiracy to commit fraud claim was subject to the three-year limitation period for

fraud claims set forth in D.C. Code Ann. § 12-301(8)). That is in part because "civil conspiracy

depends on performance of some underlying tortious act." *Halberstam v. Welch*, 705 F.2d 472,

479 (D.C. Cir. 1983). Civil conspiracy is "not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Id.*

Thus, if the malicious prosecution and abuse of process claims are dismissed on statute of limitations grounds or any other ground, then the court will be required to dismiss the conspiracy claim because there would be no underlying claim. *See, e.g., Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 73 (D.D.C. 2005) (dismissing plaintiffs' intentional interference with employment claim, and thereafter holding that there is no longer an "underlying tortious act" to support claim of civil conspiracy); *see also Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000).

All counts of the Amended Complaint accordingly should be dismissed as time-barred.

## II.    The Amended Complaint Should Be Dismissed For Failure To State A Claim.

Plaintiffs' claims for conspiracy, abuse of process and malicious prosecution should furthermore be dismissed for failure to state a claim.

In the absence of more specific allegations, the conspiracy claim cannot stand. It is not enough merely to state that a conspiracy took place. "Rather, a cause of action for civil conspiracy must allege the formation and operation of the conspiracy, wrongful acts done in furtherance of the common scheme, and damages suffered as a result." *Higgs v. Higgs*, 472 A.2d 875, 877 (D.C. 1984) (citations omitted); *see also Weishapl v. Sowers*, 771 A.2d 1014, 1023-24 (D.C. 2001).

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), to survive a motion to dismiss, it is not enough to set forth allegations of a conspiracy that are consistent with an unlawful agreement. Rather, to be viable, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 1965. The factual

14

allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1965
(citation and internal quotation marks omitted); *see also Shirk v. Garrow*, 505 F. Supp. 2d 169,
173 (D.D.C. 2007) (applying *Twombly* and holding that a "plaintiff's obligation to provide the
grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do").

Applying these standards, Plaintiffs have not adequately pled an unlawful conspiracy.
Plaintiffs have simply named as co-conspirators anyone and everyone who played a role in
challenging Nader-Camejo's ballot access in 2004, including independent expenditure groups
that were required by law to act independently from and without coordination with the national
and state parties. Because these parties all allegedly shared the goal of assisting in a Kerry-
Edwards or Democratic victory in 2004, Plaintiffs claim they conspired to bring unfounded,
baseless lawsuits—many of which succeeded on the merits. Yet they plead none of the specific
facts from which one might plausibly infer the existence of an agreement rather than a mere
shared purpose or common objectives among parties acting independently, and they plead no
facts to suggest that any such agreement (even if made) was to bring *baseless* litigation, rather
than meritorious challenges. To the contrary, as the Amended Complaint *expressly states*
without greater specificity or elaboration, "the charges alleged herein do not necessarily apply to
every Defendant and every conspirator named in this complaint." (Am. Compl. ¶ 14).

As noted, *see supra* pp. 9-10, the only charges that Plaintiffs *do* direct specifically to The
Ballot Project, Inc., Toby Moffett, Elizabeth Holtzman or Robert Brandon relate to lawsuits
brought in four states: Colorado, Florida, Illinois, and Pennsylvania. All of those allegations
relate to the decision to *initiate* those lawsuits, rather than the conduct of the litigation once
initiated, and thus can assert liability only as to the basis of malicious prosecution. Two of those

four actions (in Illinois and Pennsylvania) did *not* result in a favorable termination for Nader-Camejo, and therefore cannot be the subjects of valid malicious prosecution claims as a matter of law. *See, e.g., Shulman v. Miskell*, 626 F.2d 173, 174 (D.C. Cir. 1980) ("At common law and in jurisdictions everywhere in the United States termination of the underlying criminal or civil proceeding in favor of the defendant is an essential element of a malicious prosecution action."). The Florida action resulted in a favorable trial court decision, later reversed on appeal, and thus there is no basis to conclude that the initiators of that lawsuit lacked probable cause to bring the action so as to support a later claim of malicious prosecution. *See, e.g., Lyles v. Micenko*, 404 F. Supp. 2d 182, 190 (D.D.C. 2005) ("The fact that Ms. Lyles was ultimately acquitted does not negate the initial determination of probable cause necessary for the U.S. Attorney's office to proceed in the first place."). With regard to the Colorado action, Plaintiffs neither allege lack of probable cause for initiating the lawsuit, nor malice or evil purpose (as opposed to possibly mixed motives) on the part of Defendants in bringing the challenge, nor sufferance of special injury – all essential elements of a malicious prosecution claim. *See generally Brown v. Carr*, 503 A.2d 1241, 1244 (D.C. 1986) (elements of malicious prosecution claim); *see also Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1997) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."); *Tri-State Hosp. Supply Corp. v. United States*, Civil Action No. 00-01463, 2007 WL 2007587, at *9-10 (D.D.C. July 6, 2007) (dismissing malicious prosecution and abuse of process claims despite allegations of improper or ulterior motive).

Under these circumstances, Plaintiffs have failed to state a claim for malicious prosecution, abuse of process or conspiracy as a matter of law.

16

**III.    The Amended Complaint Is Directed At Constitutionally Protected Activity.**

The actions allegedly taken by Defendants in facilitating lawsuits challenging the nomination papers of the Nader-Camejo campaign in various states are protected by the First Amendment right to petition the government. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) ("*Noerr*"); *see also United Mine Workers v. Pennington*, 381 U.S. 657 (1965) ("*Pennington*"). The First Amendment principles announced in *Noerr* and *Pennington* have been extended to protect coordinated action in petitioning administrative agencies and courts, as well as executive and legislative bodies. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Courts have also extended the immunity provided by the doctrine beyond federal antitrust liability to include such causes of action as federal civil rights claims, abuse of process, and civil conspiracy (among other causes of action). *See, e.g., Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 160-61 (3d Cir. 2001) (recognizing *Noerr-Pennington* immunity as a defense to causes of action arising under federal civil rights law); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (finding *Noerr-Pennington* precluded defendant's liability as conspirator with city in violation of civil rights under 42 U.S.C. § 1983); *Protect Our Mountain Env't, Inc. v. Dist. Court*, 677 P.2d 1361, 1369 (Sup. Ct. Colo. 1984) (*Noerr-Pennington* analysis applicable to suit for abuse of process and civil conspiracy).

The Supreme Court has stated that states have the "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 n. 9 (1983); *see also Am. Party of Texas v. White*, 415 U.S. 767 (1974); *Jenness v. Fortson*, 403 U.S. 431 (1971). Therefore, citizens of a

17

state may associate together in petitioning the government to determine whether a particular candidate is meeting the requirements of state law in demonstrating that support.

Even if Defendants conspired to ensure through litigation that Nader-Camejo strictly adhered to state ballot access laws, or otherwise to persuade voters not to vote for Nader-Camejo, their actions are protected by the *Noerr-Pennington* doctrine. *See Whelan v. Abell*, 48 F.3d 1247, 1253 (D.C. Cir. 1995).

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint should be granted.

Dated:  February 4, 2008                    Respectfully submitted,


                                            _____/S/_____
                                            Lawrence Noble
                                            D.C. Bar No. 244434
                                            SKADDEN, ARPS, SLATE, MEAGHER &
                                                 FLOM, LLP
                                            1440 New York Avenue, N.W.
                                            Washington, DC  20005-2111
                                            (202) 371-7000

                                            Preeta D. Bansal
                                            D.C. Bar No. 431195
                                            SKADDEN, ARPS, SLATE, MEAGHER &
                                                 FLOM, LLP
                                            Four Times Square
                                            New York, NY  10036-6522
                                            (212) 735-3000

                                            *Counsel for Defendants The Ballot Project,*
                                            *Inc., Toby Moffett, Elizabeth Holtzman and*
                                            *Robert Brandon*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2008, copies of the foregoing Motion to Dismiss and Memorandum of Points and Authorities in Support of the Motion to Dismiss were filed electronically. Notice of these filings will be sent to all parties by operation of the Court's electronic filing system. Parties may access these filings through the Court's CM/ECF system.

/S/

Lawrence M. Noble
D.C. Bar No. 244434
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
(202) 371-7000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2136-RMU |
| | ) | |
| THE DEMOCRATIC NATIONAL | ) | |
| COMMITTEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## [PROPOSED] ORDER GRANTING MOTION TO DISMISS THE AMENDED COMPLAINT OF DEFENDANTS THE BALLOT PROJECT, INC., TOBY MOFFETT, ELIZABETH HOLTZMAN, AND ROBERT BRANDON

Having considered the Motion to Dismiss the Amended Complaint filed by Defendants The Ballot Project, Inc., Toby Moffett, Elizabeth Holtzman, and Robert Brandon (collectively "Defendants"), along with the papers filed in support of and in opposition to that motion, the Court finds that the Amended Complaint fails to state a claim on which relief can be granted, and that Plaintiffs are unable to cure these defects by amendment.

Therefore, the Court hereby GRANTS Defendants' Motion to Dismiss the Amended Complaint without leave to amend; and it is further ORDERED, ADJUDGED and DECREED the Complaint be and the same is hereby DISMISSED with PREJUDICE as to Defendants The Ballot Project, Inc., Toby Moffett, Elizabeth Holtzman, and Robert Brandon and that, there being no reason for delay, said judgment be entered immediately pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

DATED: _____, 2008    _____
RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE