UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

_____
                               )
Ralph Nader, et al.,           )
                               )      Civ. Action No. 07-2136 (RMU)
v.                             )      Reply Memorandum
                               )
The Democratic National Committee,)
                     et al.    )
_____)

**DEFENDANTS DEMOCRATIC NATIONAL COMMITTEE'S, JACK CORRIGAN'S AND MARK BREWER'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

At bottom, this is a case brought by Ralph Nader, a candidate for President in 2004 against certain of his actual and presumed political competitors who, he believes, conspired to defeat his candidacy to assist the Democratic candidate.  However, the Plaintiffs have merely alleged that Mr. Nader's political competitors tested his ballot access petitions according to the law of the various states.  Significantly, the Plaintiffs have not alleged that any of those challenges violated state laws or state court rules of procedure.   In certain of those states, such as Pennsylvania, the Nader-Camejo campaign failed to produce adequate petitions, and they were denied access to the ballot.  More than three years later, Mr. Nader is looking for some one to hold accountable for his inability to gain access to those ballots.  But his claims are stale; he has only his campaign to blame for submitting inadequate ballot petitions; and no court has held that any of the ballot petition challenges violated any court rules.  To the extent that he wished his campaign had more funds, that is a perennial complaint of most candidates in contested elections, and the solution is to raise more funds – not sue one of the major party organizations.  Plaintiffs have attempted to obscure the essential issue before this Court by weaving

conspiratorial webs out of normal political practices and by alleging legal misconduct in state courts where none were found by those courts.  Accordingly, Plaintiffs have not alleged any violative conduct, and this case should be dismissed.

Defendants Democratic National Committee, Jack Corrigan and Mark Brewer reply to the assertions in Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss ("Opp.") in the order presented in Defendants' opening memorandum.  Defendants also rely on the grounds for dismissal presented by the other Defendants in their memoranda and replies.

**A.  THE STATUTE OF LIMITATIONS BARS THE CLAIMS.**

Plaintiffs do not contest that the appropriate statute of limitations for malicious prosecution is D.C. Code § 12-301(4), a one-year period from notice of the violation, and that the abuse of process allegations are so intertwined that the one-year statue of limitations is also appropriate for those allegations.  Plaintiffs' Opp. at 26, nonetheless, assumes there is a three year statute without any citation or explanation.  Even assuming the Plaintiffs are correct, the complaint was still filed after the statute of limitations expired.

Plaintiffs allege that two events occurred within their three-year period, which they allege tolled the statute of limitations for the entire alleged conspiracy.  The first event is one administrative complaint filed with the Federal Election Commission ("FEC") more than three years before the Complaint was filed, but was dismissed within the Plaintiffs' three-year period.  Second, Plaintiffs assert that the Pennsylvania ballot access case is continuing today because Plaintiff Nader has refused to comply with the Pennsylvania court's order to pay litigation costs.  The successful Pennsylvania petition challengers are pursing that judgment, which has nothing to do with ballot access.

Plaintiffs assert that these events are part of a continuing tort that tolls the statute of limitations. But, the continuing tort theory only applies to the amount of damages, and not the notice requirement that begins the statute of limitations period. "The statute of limitations period for continuing torts begins to run once a plaintiff has inquiry notice of a potential cause of action." *Jung v. Mundy, Holt & Mance, P.C.*, 372 F. 3d 429, 433 (D.C. Cir. 2004) (*see also Hendel v. World Plan Executive Council*, 705 A.2d 656, 667 (D.C. 1997). According to the Complaint, Plaintiffs have been on notice of the initiation of these events for more than three years before the Complaint was filed.

All of the ballot access cases were filed and concluded more than three years before the Complaint was filed, and well before the applicable one-year statute of limitations.

While Defendants have explained that the FEC administrative complaints legally cannot be part of an agreement or plan to prevent ballot access, all of those complaints were filed more than three years before the Complaint was filed. (*See* FEC Enforcement Query System, www.FEC.gov). The FEC does not have any jurisdiction over elections or ballot access. It only investigates sworn statements describing facts that might be campaign finance or disclosure violations. The agency has no authority to impose sanctions but must file suit in Federal district court unless the respondent agrees to sanctions. *See generally* 2 U.S.C. 437g. Therefore, FEC complaints are not the equivalent of filing suit in court and cannot be the subject of a malicious prosecution or abuse of process claim. Furthermore, to the extent that any act by an alleged conspirator occurred, the act began and was completed by the filing of the complaint. Thereafter, the person filing the complaint plays no role in the FEC's administrative complaint processing proceedures and is not even informed of the FEC's progress. *See* e.g. 2 U.S.C. §437g(a)(12) (FEC investigations are confidential until concluded).

The other event that Plaintiffs assert tolls the statute of limitations is the D.C. Superior Court proceeding to enforce a judgment against Mr. Nader. Ironically, Plaintiff Nader's defiance of a Pennsylvania court order to pay litigation costs is asserted as a continuing violation by the one of the alleged conspirators, the Reed Smith law firm. Although litigation to enforce that judgment for costs is being pursed in the D.C. Superior Court, that case has nothing to do with the alleged conspiracy to prevent ballot access. Rather, costs were imposed pursuant to a state statute as a result of Plaintiffs' conduct in submitting outrageous petitions. In addition, Plaintiffs request that this Court award them damages, because the Pennsylvania court ordered them to pay costs, is barred by the *Rooker-Feldman* doctrine, which bars "state-court losers [from] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

Even if the Court were to accept the Plaintiffs' reasoning, this case must still be dismissed for staleness. Plaintiffs lost the ballot access challenge and subsequent appeal. The order to pay costs was also appealed and Plaintiffs lost. Therefore, they cannot meet the requirement for a malicious prosecution claim that Plaintiffs be the prevailing party. As even the Plaintiffs note, Opp. at 23, the underlying suit of a malicious prosecution claim must have been terminated in the plaintiffs' favor. Thus, the Pennsylvania litigation cannot be part of the malicious prosecution claim and cannot toll the statute of limitations for such claims.

Plaintiffs confuse the doctrine that tolls the statute of limitations with the liberal pleading and discovery doctrine. The Complaint alleges events that took place in public, such as filing ballot petition challenges and administrative complaints, which put them on notice of the alleged malicious prosecution and abuse of process. Whether there are facts to be discovered about

those allegations does not change the fact that the Plaintiffs were on notice of these events when they became public in 2004.  Therefore, whatever facts might be learned during discovery does not change the date when Plaintiffs were put on notice and the statute of limitations period began.  Even if they were not put on notice by all of the newspaper articles cited in the Complaint, they knew when the ballot access challenges were filed and the administrative FEC complaints were filed.  Thus, they have not provided a reason to toll the statute of limitations.

Plaintiffs do not contest that "[b]ecause civil conspiracy depends on an actionable underlying tort, the statute of limitations for plaintiffs' conspiracy claim is 'established by the statute of limitations governing the underlying tort,' and begins to run when the plaintiff is on notice of the underlying injury." *Hancock v. HomEq Servicing Corp.*, 2007 U.S. Dist. LEXIS 31051, *28 (D.D.C. 2007) (internal citation omitted).  Like the underlying torts, the conspiracy claims are more than a year old and are time barred.

## B.  PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IS MOOT.

Plaintiffs deny that injunctive relief is moot by relying on the exception for conduct that is "capable of repetition, yet evading review." Yet, Plaintiffs fail to respond to Defendants' opening memorandum that the conduct alleged would require an extraordinary number of events to recur.  Such speculation about remote events do not satisfy the "capable of repetition, yet evading review" exception to mootness.  But more importantly, the alleged violative conduct took place in court rooms before the 2004 election, and those cases were fully litigated through appeal.  Thus, should the alleged misconduct recur, it would not evade review if the Plaintiffs file their objections promptly.  Their complaints for injunctive relief, like the ballot access cases, would be decided by the courts before the election.  Any claims for damages could be heard on a

similar schedule, but they could be heard later. Thus, Plaintiffs claims are moot and new claims would not escape review.

**C. PLAINTIFFS DO NOT HAVE STANDING TO LITIGATE THEIR CLAIMS.**

Plaintiffs' first response to support standing is to complain that the Pennsylvania court's order, that Plaintiffs Nader and Camejo pay costs, is a real harm caused by the conspiracy. Opp. at 34. However, that order is not part of the alleged conspiracy to deny ballot access, and a remedy would require this Court to overrule the Pennsylvania Supreme Court – a result barred by the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp.*, 544 U.S. at 283-84. Thus, the Pennsylvania Court's order is not a harm arising from the alleged conspiracy, was caused by the Plaintiffs own actions in court, and cannot be rejected by this Court. Therefore, it does not provide standing.

Next, Plaintiff voters assert they were harmed by being denied their right to vote for Nader-Camejo in 2004. Opp. at 34-35. However, that harm was caused by the filing of inadequate ballot petitions by the Nader-Camejo campaign not the Defendants, and this Court cannot give those Plaintiff voters the ability to vote in the 2004 election.

Finally, Plaintiffs artfully suggest that the Defendants caused Mr. Nader to loan $100,000 to his campaign. Opp. at 35. Even a liberal reading of the Complaint does not allege that the Defendants had the power to <u>cause</u> Mr. Nader to spend his own money or, in any legal way sufficient for standing, caused Mr. Nader to loan funds to his campaign. Indeed. the Complaint never alleges that the Defendants forced Mr. Nader to make a loan to his campaign. The Complaint does not allege that the campaign never had the funds to repay the loan, or that the Defendants are responsible for the campaign's lack of fundraising. In short, Mr. Nader's loan to his campaign is not a harm unless the

6

campaign defaults. Even if the campaign does default, the loan was not caused by the Defendants, the Defendants were not a party the loan, and they are not responsible for repaying the loan.

Plaintiffs fail to respond to the other reasons described in Defendants' opening memorandum about why they do not have standing, except for making a blanket statement that the Defendants are merely denying allegations that must be taken as true. Opp. at 35. However, they only point to conclusory statements that do not have to be assumed to be true and are insufficient to establish standing as described in our opening memorandum.

### D. PLAINTIFFS HAVE NOT ALLEGED AN ABUSE OF PROCESS OR A CONSPIRACY OF AN ABUSE OF PROCESS.

Plaintiffs assert that filing 24 complaints in 18 states with the ulterior motive of bankrupting the Nader-Camejo campaign is an abuse of process. Opp at 21. Plaintiffs do not allege that the Defendants used the courts improperly to challenge the ballot petitions or violated state court procedures. "There is no abuse of process when, although a person 'acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding,' the proceeding in question is also used for its intended purpose." *Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162, 175 (D.D.C. 2006) (citation omitted) (emphasis added). "Thus, the entirely justified prosecution of another on a criminal charge does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm . . . ." *Id*. (quoting *Restatement (Second) of Torts* § 682 cmt. b (1977))." *Id.* (citation omitted). Whatever the ulterior motive, Plaintiffs do not allege that any court found that any of the petition challengers abused the judicial system, and the Complaint contains no such allegation. Thus, there was no abuse of process alleged and there cannot be a conspiracy to abuse process.

7

### E. PLAINTIFFS HAVE FAILED TO ALLEGE MALICIOUS PROSECUTION OR A CONSPIRACY OF A MALICIOUS PROSECUTION.

Defendants rely on their opening memorandum at 21-24 that demonstrates the Plaintiffs do no meet the criteria for a malicious prosecution and offer the following responses to two elements that the Plaintiff must plead: (1) malice on the part of the defendant and (2) special injury.

Plaintiffs' sole allegation of malice is the assertion that Defendants "evinced a 'willful, wanton, reckless or oppressive disregard to the rights of the plaintiff[s]'" by filing complaints "'in a deliberate attempt to use the sheer burden of litigation itself as a means to prevent Mr. Nader from running for public office,'" and "'to deny Plaintiff-voters and others the choice of voting for [Nader-Camejo].' Am. Comp. at ¶¶ 2, 45." Opp. at 22-23. Plaintiffs allege two special injuries: "'repeated abuse of [court] processes'" (i.e. filing 24 complaints in 18 states), Opp. at 25 and, alternatively, the Pennsylvania court order to pay costs.

Plaintiffs fail to respond to Defendants' showing that malicious prosecution requires a particular antisocial state of mind – an evil or wicked intent, personal spite, rancor or antisocial motive. Defendants' Opening Mem. at 23. The Complaint does not allege any such purpose or motive. Indeed, the only motive alleged was to help the Kerry-Edwards ticket through the legal means of challenging ballot petitions of as political competitor. Rather, the Plaintiffs ascribe only a political adversary's motive to Defendants, who were concerned that Nader's candidacy would draw votes that otherwise would be cast for the Democratic candidate. That motive is not antisocial and does not indicate malice towards Mr. Nader. Rather than disregarding the rights of the Plaintiffs, the Defendants are alleged to have gone to court to test their right to have only qualified candidates on the ballot. The costs of defending those challenges were a necessary by-

8

product of the legal system, and not a malicious motive on the part of the Defendants, who were not seeking any property from the Plaintiffs.

Plaintiffs allege a special injury by being forced to defend multiple proceedings. Assuming *arguendo*, that all of the ballot access cases were instigated by a single group acting together, the Defendants could not have resolved their challenges in a single action; the law requires a challenge to be initiated in each state. Thus, the multiple proceedings were a legal necessity and not a voluntary decision by the Defendants. Thus, the legally necessary multiple proceedings cannot constitute a special injury. Moreover, there is no allegation that multiple proceedings were instituted for a common frivolous purpose or by the same plaintiff or to obtain property from the Plaintiffs, and therefore, this case is distinguishable from the cases cited by the Plaintiffs.

As described above, Plaintiffs lost the Pennsylvania litigation, and it cannot constitute part of a malicious prosecution charge (which requires the plaintiff to have prevailed), and therefore, the court's order to pay costs cannot be a special injury that supports a malicious prosecution claim.

Because Plaintiffs have not alleged a malicious prosecution, they cannot allege a conspiracy to engage in a malicious prosecution.

**CONCLUSION**

      In view of the above, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b).

April 10, 2008                                        Respectfully submitted,

                                                               _____/s/_____
                                                               Joseph E. Sandler,
                                                               D.C. Bar No. 255919
                                                               John Hardin Young
                                                               D.C. Bar No. 190553
                                                               Stephen E. Hershkowitz
                                                               D.C. Bar No. 282947

                                                               SANDLER, REIFF & YOUNG, P.C.
                                                               300 M Street, S.E., Suite 1102
                                                               Washington, D.C. 20003
                                                               (202) 479-1111
                                                               (202) 479-1115 (facsimile)
                                                               young@sandlerreiff.com

                                                               Attorneys for Defendants
                                                               The Democratic National Committee
                                                               Jack Corrigan
                                                               Mark Brewer