## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RALPH NADER, et al., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 07-2136-RMU |
| THE DEMOCRATIC NATIONAL COMMITTEE, et al., | : | |
| Defendants. | : | |

## REPLY IN SUPPORT OF DEFENDANT REED SMITH'S
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss ("Opposition")

takes liberal license in depicting the comprehensiveness of the allegations in the Complaint, and

yet it still fails to disguise Plaintiffs' failure to state viable claims against Reed Smith.  At

bottom, Plaintiffs have attacked Reed Smith for representing its clients in legitimate litigation

and prevailing against Plaintiffs Nader and Camejo.  Reed Smith has not engaged in a

conspiracy, malicious prosecution or abused court processes in the representation of its clients,

and, as a matter of law, the Amended Complaint does not succeed in stating these claims against

Reed Smith.  Therefore, the Court should dismiss Plaintiffs' claims against Reed Smith.

### ARGUMENT

**I.**     **Plaintiffs Do Not State a Claim for Civil Conspiracy.**

**A.**     **Reed Smith Committed No Wrongdoing By Representing Its Clients.**

In a very remarkable – and improper – tactic, Plaintiffs are suing the Reed Smith law firm

simply for doing what a law firm is supposed to do: represent its clients zealously in an action

that is well-founded in law and fact.  Plaintiffs have sued Reed Smith because Reed Smith

represented its clients, Pennsylvania voters, in a meritorious challenge to the Nader-Camejo nomination papers, an action in which Reed Smith's clients prevailed. Reed Smith did not "conspire" with any person or entity by simply representing clients in an action that the clients had a right to undertake.

As a matter of law, it is inappropriate for Plaintiffs to sue a law firm for pursuing legitimate claims on behalf of a client. D.C. courts have held that the type of "sour grapes" claims that Plaintiffs have brought against Reed Smith are improper. *See Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 381 (D.C. 2007) (stating that a party is very rarely justified in suing the opponent's lawyer); *Ammerman v. Newman*, 384 A.2d 637, 640-41 (D.C. 1978) (finding invalid the malicious prosecution claims brought against opponent's lawyer). Even if a client did engage in a conspiracy – which Reed Smith's Pennsylvania voter clients did not – the conspiratorial conduct cannot be imputed to the law firm. *See Fraidin v. Weitzman*, 611 A.2d 1046, 1079 (Md. App. 1993) (stating that an attorney is not responsible for wrongs attributed to the client where the attorney's participation is within the scope of legal representation), *cited in Fischer v. Flax*, 816 A.2d 1, 5 (D.C. 2003). Where, as here, a law firm acts with legal justification in bringing suit, it is improper to sue the firm for litigation undertaken for a client. *See id.*; 25 P.S. § 2937 (authorizing voters to challenge nomination papers, and stating "[i]n case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings"). Thus, Plaintiffs' conspiracy claims against Reed Smith, leveled for the sole reason that Reed Smith lawyers performed their function as lawyers, are inappropriate and unsustainable.

**B.    Plaintiffs Have Not Made Allegations Necessary to State a Conspiracy Claim.**

Rather than bolster Plaintiffs' claims, the Opposition underscores Plaintiffs' failure to state a claim for civil conspiracy against Reed Smith. Plaintiffs have not, and cannot, allege

facts to meet the elements of the claim: "1) an agreement between two or more persons; 2) to accomplish an unlawful purpose or a lawful purpose by unlawful means; and 3) resultant damages to plaintiff." Pls.' Opp'n at 11 (citing *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. App. 2000)).

Plaintiffs have not alleged the essential element that Reed Smith entered into an agreement to accomplish an unlawful purpose or act by unlawful means. Plaintiffs lift from their complaint a laundry list of supposed wrongdoing by the alleged conspirators, seeking to conceal weaknesses in their allegations against any single defendant by lumping all of the conduct and all of the defendants together. *See, e.g.,* Pls.' Opp'n at 11. However, Plaintiffs' complaint is devoid of any allegation that *Reed Smith* entered into any agreement. For instance, Plaintiffs describe a July 2004 meeting at the Four Seasons, but never allege that Reed Smith was present. *See id.* (citing Am Compl. ¶¶ 46-47).[1] Plaintiffs allege that the DNC, the Kerry-Edwards Campaign and The Ballot Project "orchestrated a nationwide conspiracy," but never allege that Reed Smith had a role in orchestrating the conspiracy. *See id.* (citing Am Compl. ¶¶ 45-66). They name conspirators that distributed an action memo at the Democratic National Convention, but do not name Reed Smith among them. *See id.* at 12 (citing Am Compl. ¶¶ 49-52). Although it is true that Plaintiffs need not allege an express agreement among all alleged co-conspirators, Plaintiffs still must allege an improper agreement between Reed Smith and at least one alleged conspirator. *See Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984); *Exec. Sandwich Shoppe*, 749 A.2d at 738 (requiring an agreement between two or more persons). Plaintiffs do not do so. *See generally* Am. Compl.

---

[1] Reed Smith does not concede that any of the alleged conduct against any of the other alleged Defendant "conspirators" was conspiratorial, or that any Defendant engaged in a conspiracy.

Plaintiffs would have the Court infer a conspiratorial agreement by noting that Reed

Smith has had professional relationships with one or more of the Defendants. *See* Pls.' Opp'n at

17. For instance, Plaintiffs allege that Teresa Heinz Kerry and John Kerry have been Reed Smith

clients. *See id.* (citing Am. Compl. ¶¶ 70, 179-205). Yet, again, Plaintiffs have not alleged any

agreement between Reed Smith and the Kerry's regarding the presidential election, litigation

against Mr. Nader, or any issue related to Plaintiffs' instant claims. There is no basis to infer a

conspiracy between Reed Smith and its clients simply because the firm has previously

represented the clients on unrelated matters.

Plaintiffs attempt to gloss over the lack of an agreement by stating that Reed Smith

"participated" in the conspiracy by representing clients to challenge the Nader-Camejo

nomination papers, and by initiating attachment proceedings to secure the costs due Reed

Smith's clients. *See* Pls.' Opp'n at 16. Alleged "participation" does not establish any

agreement.[2] Nor do these allegations establish any unlawful purpose or unlawful means. It was

entirely lawful for Pennsylvania voters to challenge the Nader-Camejo nomination papers, and to

seek their costs. *See* 25 P.S. § 2937.

Because Reed Smith has represented its clients in lawful litigation, Plaintiffs' conspiracy

claim cannot survive Reed Smith's motion to dismiss. The U.S. Supreme Court explained last

term that a conspiracy claim can avoid a motion to dismiss only if it sets forth facts inconsistent

---

[2] Even if activity by Reed Smith or its clients were similar to activities by others, such similarity does not establish an "agreement," and allegations merely describing similar activity do not support a conspiracy. *See, e.g., Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-66 (2007) (holding in an antitrust context that "lawful parallel conduct fails to bespeak unlawful agreement"; "[e]ven 'conscious parallelism'… is 'not in itself unlawful.'"); *Theatre Enters., Inc. v. Paramount*, 346 U.S. 537, 540-41 (1954) (holding that parallel conduct without an agreement does not establish a conspiracy); *U. S. Football League v. NFL*, No. 84 CIVIL 7484 PKL, 1986 WL 10620, 23 (S.D.N.Y. 1986) ("[S]imply because several people associated with one another, or met together and discussed common interests, or engaged in similar conduct does not necessarily establish the existence of a conspiracy. If their actions were taken … without any agreement or mutual understanding among them, then there would be no conspiracy.)

with lawful, non-conspiratorial explanations for the actions of an alleged conspirator.  *See*

*Twombly*, 127 S.Ct. at 1964-67 (holding that plaintiffs failed to satisfy the pleading standard of

Rule 8(a)(2) in pleading their conspiracy claim, where the conduct alleged could describe lawful

behavior).  Here, Reed Smith's alleged conduct is entirely consistent with the lawful, non-

conspiratorial representation of Pennsylvania voters to challenge the Nader-Camejo nomination

papers.  Therefore, the Court should dismiss Plaintiffs' conspiracy claim as to Reed Smith.

## II.    Plaintiffs' Own "Facts" Defeat Their Malicious Prosecution Claim against Reed Smith.

Plaintiffs' malicious prosecution claim against Reed Smith fails on its face because

Plaintiffs cannot meet the first requirement for making such a claim: that the underlying suit

terminated in Plaintiffs' favor.  *See Joeckel v. Disabled American Veterans*, 793 A.2d 1279,

1282 (D.C. 2002).  Plaintiffs note that several suits against the Nader-Camejo campaign were

unsuccessful, but they concede that the underlying litigation in Pennsylvania resulted in a

judgment against the Nader-Camejo campaign.  *See* Am. Compl. ¶ 71; Pls.' Opp'n at 23; *see*

*also In re Nomination Paper of Ralph Nader*, 905 A.2d 450 (Pa. 2006) (hereinafter "*In re*

*Nader*").  Therefore, Plaintiffs' claim for malicious prosecution against Reed Smith fails as a

matter of law because Reed Smith's clients *prevailed* in the underlying litigation.

Moreover, Plaintiffs do not dispute in their Opposition that the one year statute of

limitations on their malicious prosecution claim has run.  *See* D.C. Code § 12-301(4).  Because

Plaintiffs have failed to respond to this argument in their Opposition, the Court may treat these

arguments as conceded.  *See Lewis v. Dist. of Columbia*, __ F. Supp. 2d __, 2008 WL 190397, at

*9 (D.D.C. Jan. 24, 2008) (Urbina, J.); *Fox v. Am. Airlines, Inc.*, 2003 WL 21854800, at *2

(D.D.C. Aug. 5, 2003) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to

address certain arguments made by the defendant, the court may treat those arguments as

conceded."). Therefore, the Court may dismiss Plaintiffs' malicious prosecution claim as time-barred.

**III.    Plaintiffs' Cited Authority Fails to Support Its Abuse of Process Claim against Reed Smith.**

Plaintiffs argue that numerous or "repeated" lawsuits against a single entity amounts to abuse of process. *See* Pls.' Opp'n at 19-23. Plaintiffs cite law to suggest that Defendants' filing of a total of 24 complaints qualifies as the "repeated abuse of [court] processes" criticized by D.C. courts. Plaintiffs mischaracterize the law. Plaintiffs fail to note that the case addressing abuse of process through repetitive claims involves repetitive suits *by the same party*. *See Soffos v. Eaton*, 152 F.2d 682, 682-83 (D.C. Cir. 1945) (concerning four suits brought by or on behalf of a single defendant). Reed Smith, on behalf of its clients, filed only one suit against Nader-Camejo. *See generally In re Nader*, 905 A.2d 450. Reed Smith obtained a judgment, and when Mr. Nader failed to satisfy the judgment, Reed Smith sought to domesticate the judgment in the District of Columbia. *See generally In re Nomination Paper of Ralph Nader*, Case No. 2007 003385 F, Judgment, entered 4/23/07 (D.C. Super. Ct.) (hereinafter *"Serody v. Nader"*). As a matter of law, such conduct cannot constitute an abuse of process.

Further, Reed Smith and its clients did not engage in litigation to accomplish any "end unintended by law." According to Plaintiffs, Reed Smith challenged the Nader-Camejo nomination papers for the supposed improper purpose of keeping Nader and Camejo off of the Pennsylvania general election ballot. Yet, that purpose was proper under the law. This Court can take judicial notice of the Pennsylvania court's finding that the "[Nader-Camejo] signature gathering process was the most deceitful and fraudulent exercise ever perpetrated upon [the] Court." *In re Nader*, 905 A.2d at 455. A lawsuit to challenge fraudulent signatures cannot constitute abuse of process. Moreover, the U.S. Supreme Court has endorsed states'

requirements for qualification of new parties and independent candidates for ballot positions,

recognizing a state's compelling interest in maintaining a ballot of reasonable length. *See Storer*

*v. Brown*, 415 U.S. 724, 729-36 (1974); *American Party of Texas v. White*, 415 U.S. 767, 779-88

(1974).

Thus, contrary to Plaintiffs' incomplete recitation of the law, an abuse of process claim

cannot lie here, regardless of whether there was any "ulterior motive," because Reed Smith's suit

on behalf of Pennsylvania voters sought an end intended by law.[3]

## IV.     Plaintiffs' Continuing Tort and Fraudulent Concealment Arguments are Unavailing.

### A.     The Continuing Tort Exception Does Not Apply.

Plaintiffs recognize that all of their claims would be time-barred by a straightforward

application of the statute of limitations. The "injuries" Plaintiffs complain of – depriving Mr.

Nader and Mr. Camejo from appearing on 2004 general election ballots, expending financial

resources to defend ballot-challenge litigation, and not being able to vote for the Nader-Camejo

ticket – all are injuries that accrued outside the three year statute of limitations for the abuse of

process and civil conspiracy claims. *See* D.C. Code § 12-301(8).

Plaintiffs turn to the "continuing tort" exception to justify their untimely claims.

Plaintiffs rely on language from *Whelan v. Abell*, to argue that "prosecution of a lawsuit can

constitute a continuing tort." *See* Pls.' Opp'n at 27 (citing *Jung v. Mundy, Holt, & Mance P.C.*,

372 F.3d 429, 433 (D.C. Cir. 2004) (quoting *Whelan*, 953 F.2d 663, 673 (D.C. Cir. 1992)).

---

3 Even if there were an additional, questionable motive – which Reed Smith does not concede – Reed Smith and its clients used the nomination paper challenge for its intended purpose. "There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162, 175 (D.D.C. 2006) (quoting *Scott v. Dist. of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1997)).

However, the *Whelan* court's characterization of a lawsuit as a continuous event does not aid the

Plaintiffs in getting around the statute of limitations bar.  As the D.C. Court of Appeals noted in

*Beard v. Edmondson and Gallagher*, the *Whelan* court deemed a lawsuit to be a continuous event

"for the purpose of assessing its impact, not for the purpose of tolling the running of the statute

of limitations."  790 A.2d 541, 548 (D.C. 2002).

The "continuing nature of the litigation" does not allow Plaintiffs "to sit on claims [they]

knew or should have known of until the litigation ended." *Jung*, 372 F.3d 429, 433 (D.C. Cir.

2004).  Once Plaintiffs have been put on notice of an injury and the defendants' wrongful

conduct in causing it, the policy "disfavoring stale claims makes application of the 'continuous

tort' doctrine inappropriate." *Advantage Health Plan v. Knight*, 139 F. Supp. 2d 108, 112

(D.D.C. 2001) (quoting *Hendel v. World Plan Executive Council*, 705 A.2d 656, 667 (D.C.

1997)); *see also Beard*, 790 A.2d at 548; *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715

A.2d 873, 883 (D.C. 1998); *Nat'l R.R. Passenger Corp. v. Krouse*, 627 A.2d 489, 497-98 (D.C.

1993).

Here, Plaintiffs have no basis for applying the "continuing tort" exception to toll the

statute of limitations for their abuse of process and conspiracy claims because they were put on

notice of Defendants allegedly "wrongful conduct" during the course of the litigation leading up

to Election Day in 2004.   Plaintiffs concede this point by citing a number of 2004 newspaper

articles in their Amended Complaint that allegedly demonstrate the Defendants' wrongful

conduct. *See, e.g.* Am. Compl. ¶¶ 2, 45, 53, 60, 62, 63, 64, 65, 182.  Furthermore, applying the

"continuing tort" exception to Plaintiffs' malicious prosecution claims would be misplaced

because there is no "continuous and repetitious wrong" – the termination of the lawsuit

constitutes the accrual of the cause of action. *See Shulman v. Miskell*, 626 F.2d 173, 175, (D.C.

Cir. 1980) (finding statute of limitations is "properly computed from the date of the disposition of the underlying civil or criminal action."); *see also Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162, 174 (D.D.C. 2006). Therefore, Plaintiffs' reliance on the continuing tort exception to justify their untimely claims is inappropriate.

Furthermore, Plaintiffs' misplaced reliance on the continuing tort theory makes Plaintiffs' motivation in proceeding against Reed Smith transparent: Plaintiffs are attempting to avoid the applicable statute of limitations. It is clear from Plaintiffs' Opposition that Plaintiffs have named Reed Smith to resurrect stale claims because Plaintiffs have improperly characterized the pending attachment proceedings in D.C. Superior Court as a "continuing tort," and repeatedly refer to the proceedings as a primary reason why the statute of limitations does not apply. *See* Pls.' Opp'n at 26 ("[T]he barrage of litigation... continues to the present day in the form of attachment proceedings that Defendant Reed Smith initiated...."); *id.* at 27-28; Am Compl. ¶ 207.

Plaintiffs' "continuing tort" argument is unavailing. First, the activities of Reed Smith in seeking to collect on a duly-entered judgment in favor of their clients does not constitute "unlawful activity" during the limitations period and therefore cannot be part of the "continuing tort." Second, collecting on a duly-entered judgment is a completely separate activity from the alleged conspiracy. According to the Plaintiffs, the purpose of the alleged conspiracy was to "prevent Ralph Nader and Peter Miguel Camejo ... from running for President and Vice-President of the United States, respectively, during the 2004 General Election...." Pls.' Opp'n at 2. Therefore, the actions of the Pennsylvania plaintiffs in obtaining a judgment for costs from Plaintiff Nader *after the election* served no end in furthering the alleged *purpose of the conspiracy, i.e.,* to prevent Mr. Nader and Mr. Camejo from running for office in 2004.

**B.    Defendants Did Not Fraudulently Conceal their Conduct.**

Plaintiffs' attempts to toll the statute of limitations on the basis that Defendants fraudulently concealed their conduct also must fail.  Plaintiffs have failed to allege an affirmative act by Defendants to conceal from Plaintiffs the alleged wrongful conduct.  *See, e.g., William J. Davis, Inc. v. Young,* 412 A.2d 1187, 1191-92 (D.C. 1980) ("[Defendant] must have done something of an affirmative nature designed to prevent discovery of the cause of action."); *see also Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1491 (D.C. Cir. 1989); *Richards v. Mileski,* 662 F.2d 65, 70 (D.C. Cir. 1981); *Searl v. Earll,* 221 F.2d 24 (D.C. Cir. 1954).  Instead, Plaintiffs attempt to base their fraudulent concealment argument upon Reed Smith's failure to disclose its alleged "improper" ties to members of the Pennsylvania Supreme Court.   Am. Compl. ¶ ¶ 196-98.  However, Defendants' "mere silence [or] failure to disclose…may not ordinarily constitute fraudulent concealment for these purposes."[4]  *See Young,* 412 A.2d at 1191-92 (internal citations omitted).  Because Plaintiffs do not, and cannot, allege an affirmative act of concealment by Defendants, the fraudulent concealment doctrine does not apply.

**V.    The Noerr-Pennington Doctrine Applies.**

Plaintiffs have failed to demonstrate how their allegations would fit into the "sham exception" of the *Noerr-Pennington* doctrine to prevent the doctrine's application to Defendants' First Amendment activities.  Recognizing their inability, Plaintiffs provide conclusory allegations that the "sham exception" would apply and assert that these conclusory allegations must be "taken as true" because "what the proof will show is not known."  Pls.' Opp'n at 31.

In order to invoke the "sham exception," Plaintiffs would have to allege that the ballot

---

[4] Furthermore, as detailed in Reed Smith's opening memorandum, the ties were disclosed publicly.  *See* Mem. in Supp. of Mot. to Dismiss at 17 n.13.

challenge petitions by Reed Smith's clients were objectively baseless, by, for example, alleging

that the petitions were "based on known falsehoods," *see Whelan*, 48 F.3d at 1255, or that

Defendants had used "overtly corrupt conduct," such as bribes or misrepresentation, to influence

the government's response to the petitions, *see Federal Prescription Serv. Inc. v. American*

*Pharmaceutical Ass'n*, 663 F.2d 253, 263 (D.C. Cir. 1981).   As to Reed Smith, Plaintiffs have

not and cannot in good faith make these types of allegations (or any factual allegations) that

would support application of the "sham exception" in this case.   Therefore, the *Noerr-*

*Pennington* doctrine should be applied to prevent imposition of liability on Defendants for

exercising their First Amendment rights to petition the government. *See, e.g., N.A.A.C.P. v.*

*Claiborne Hardware Co.*, 458 U.S. 886, 919 (1982); *Barnes v. Township of Lower Merion*, 242

F.3d 151, 160-61 (3d Cir. 2001); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d

155, 160 (3d Cir. 1988); *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc.*,

858 F.2d 1075, 1084 (5th Cir. 1988).

## VI.      The Rooker-Feldman Doctrine Applies.

Plaintiffs' characterization of the *Rooker-Feldman* doctrine demonstrates exactly why the

doctrine applies in this case.   *See* Pls.' Opp'n at 33.   Plaintiffs (state court losers in Pennsylvania)

are complaining of injuries caused by a state court judgment (the invalidation of nomination

papers and imposition of costs by the Pennsylvania Commonwealth Court) entered before the

commencement of the instant litigation in federal district court, and Plaintiffs seek review of that

state court judgment (by way of awarding damages to Plaintiffs, including the costs imposed on

them by the Pennsylvania state courts).   *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,

544 U.S. 280, 284 (2005); *see also Lance v. Dennis*,   546 U.S. 459, 464 (2006) ("*Rooker-*

*Feldman* is a narrow doctrine, confined to cases brought by state-court losers complaining of

injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

Plaintiffs attempt to muddy the waters by claiming that they are not really challenging the state court judgments, but rather are seeking damages from the defendants for engaging in a conspiracy to initiate "groundless and abusive litigation against them in eighteen state courts." Pls.' Opp'n at 33. However, Plaintiffs' claims against Reed Smith are a direct challenge to the state court judgment entered against the Plaintiffs in Pennsylvania. *See In re Nader*, 905 A.2d 450 (Pa. 2006), *cert denied* 127 S.Ct. 995 (2007). Plaintiffs call Reed Smith's efforts, on behalf of its clients, to collect the duly-entered judgment against the Nader-Camejo campaign "an ongoing act in furtherance of Defendants conspiracy" and characterize the state court judgment as "unprecedented in the history of American jurisprudence." *See* Pls.' Opp'n at 5, 4. Plaintiffs even include the amount of the Pennsylvania judgment as part of the "financial injury" they seek as damages. *See* Am. Compl. ¶ 229.

Clearly, Plaintiffs are inviting this federal court to declare that the Pennsylvania state court judgment was wrongly entered.[5] This is exactly the type of activity that the *Rooker-Feldman* doctrine is intended to prevent. *See District of Columbia Court of Appeals v. Feldman*; 460 U.S. 462, 482-83; (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-15 (1923). Plaintiffs have already appealed the Pennsylvania state court judgment regarding costs all the way to the United States Supreme Court – and lost. 127 S.Ct. 995 (2007). They are not permitted to use this federal court to obtain *another* review of the Pennsylvania judgment. Therefore, Plaintiffs claims against Reed Smith should be barred by the *Rooker-Feldman*

---

[5] Plaintiff Nader is also currently seeking a ruling from the D.C. Superior Court that the Pennsylvania state court judgment was wrongly entered. *See Serody v. Nader*, Defs.' Mot. for Relief from J., filed 11/7/07. Principles of comity and abstention would preclude this Court from litigating that presently pending Superior Court issue.

doctrine.

## **CONCLUSION**

For these reasons, and the reasons set forth in Reed Smith's Memorandum of Law in Support of Reed Smith's Motion to Dismiss, the Court should dismiss with prejudice Plaintiffs' claims against Reed Smith in their entirety.

Respectfully submitted,

REED SMITH LLP

By   /s/ Lasagne A. Wilhite
    Douglas K. Spaulding
    D.C. Bar No. 936948
    Lasagne A. Wilhite
    D.C. Bar No. 475438
    1301 K Street, N.W.
    Suite 1100 - East Tower
    Washington, D.C.  20005-3373
    Telephone: 202.414.9200
    Facsimile: 202.414.9299

*Counsel for Defendant Reed Smith*

Dated:  April 10, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 2008, I served a copy of the foregoing

Reply in Support of Defendant Reed Smith's Motion to Dismiss Plaintiffs' Amended Complaint

via the Court's CM/ECF system upon the following parties:

Joseph E. Sandler, Esq.
John Hardin Young, Esq.
Sandler, Reiff & Young
50 E Street, S.E., #300
Washington, DC 20003

*Counsel for Defendants Democratic*
*National Committee and Jack Corrigan*

Lawrence Noble, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111

*Counsel for Defendants Toby Moffett,*
*Robert Brandon, Elizabeth Holtzman and*
*The Ballot Project, Inc.*

Laurence E. Gold, Esq.
Lichtman, Trister & Ross, PLLC
1166 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20036

Lyn Utrecht, Esq.
Ryan, Phillips, Utrecht & Mackinnon
1133 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Counsel for Defendants America*
*Coming Together*

Michael B. Trister, Esq.
Lichtman, Trister & Ross, PLLC
1666 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20009

*Counsel for Defendant Service Employees*
*International Union*

Mark E. Elias, Esq.
Perkins Coie
607 14th Street, N.W.
Washington, DC 20005

*Counsel for Defendants*
*Kerry-Edwards 2004, Inc. and*
*Senator John Kerry*

Oliver B. Hall, Esq.
1835 16th Street, N.W.
Washington, DC 20009

*Counsel for Plaintiffs*

   */s/ Lasagne A. Wilhite*
   Lasagne A. Wilhite
   *Counsel for Defendant Reed Smith*