UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

RALPH NADER, et al.,          )
                              )
                              )
        Plaintiffs,           )
                              )
v.                            )   C.A. No. 1:07-cv-02136 (RMU)
                              )
                              )
THE DEMOCRATIC NATIONAL       )
COMMITTEE, et al.,            )
                              )
        Defendants.           )
_____)

**REPLY MEMORANDUM
IN SUPPORT OF
SEIU'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiffs' memorandum in opposition to the motions to dismiss filed by each of the named defendants in this action continues their practice of merging all defendants into a single group of allegations without identifying which of the defendants are alleged to have committed specific actions.  The opposition memorandum similarly fails to identify which arguments were made by which defendants, thereby confusing their opposition to certain arguments and implying that defendants have all made the same arguments.  Finally, the opposition memorandum confuses the issues raised by the amended complaint in *this* action with issued raised by the amended complaint in the case now transferred from the Eastern District of Virginia to this court, notwithstanding that the claims and parties in that case are not the same as the claims and parties in this case.    These difficulties aside, plaintiffs have failed to demonstrate that their claims for relief in this case should not be dismissed.

I.  **Plaintiffs' Count II Claims Against SEIU for Abuse of Process and Malicious Prosecution Should Be Dismissed Because They Are Time-Barred And Because They Fail To State Claims For Relief.**

The amended complaint in this case contains two separate Counts: Count I alleges vicarious liability under a theory of civil conspiracy to commit abuse of process and malicious prosecution; Count II alleges direct claims of abuse of process and malicious prosecution.[1] The claims of *direct* tortious conduct in Count II are wholly separate from the *vicarious* claims of civil conspiracy in Count I, and they must stand or fall based on the specific allegations applicable to each named defendant, not by allegations pertaining to the other members of the alleged conspiracy. In their response, however, plaintiffs' confuse the conspiracy claims in Count I with the direct torts alleged in Count II with respect to both the timeliness of their claims and the substantive allegations.

A.  Statute of Limitations.  Plaintiffs do not even attempt to refute SEIU's arguments that all of the actions allegedly taken by SEIU in Oregon that could possibly serve as the basis for the Count II claims in the amended complaint occurred well outside of the applicable one-year and three-year statutes of limitation under District of Columbia law. *See* Memorandum of Points and Authorities In Support of SEIU's Motion to Dismiss the Amended Complaint (hereinafter "SEIU Mem."), 5-7. Instead. in collectively addressing the defendants' arguments that the complaint is time-barred, plaintiffs rely on actions of other defendants or non-defendant conspirators which, they contend, took place within three years of the date they filed their

---

[1] As noted in SEIU's initial memorandum, it is unclear from the amended complaint whether plaintiffs are even asserting claims of abuse of process and malicious prosecution against SEIU, which was not a party in the Oregon ballot access litigation. SEIU Mem., 6. Plaintiffs do not clarify this point in their Opposition. This discussion in this section assumes that plaintiffs

complaint, *see* Plaintiffs' Response In Opposition To Defendants' Motions To Dismiss (hereinafter "Pls.' Opp."), 26  ( referring to FEC complaints filed by non-defendants that were not resolved until April 21, 2006),[2] or are still on-going.  *See* Pls.' Opp., 26-27 (referring to attachment proceedings brought by defendant Reed Smith.)   These allegations, even if true, have no bearing on the timeliness of the Count II claims brought against SEIU which are based on wholly separate factual allegations.    Similarly, plaintiffs allege that a question of fact has been raised by their contention that one of the defendants, Reed Smith, fraudulently concealed the existence of a cause of action.  *See* Pls.' Opp., 27-28.   Again, this argument cannot avoid the application of the statute to the claims of direct tortious conduct by SEIU in Count II of the amended complaint.

     B.  <u>Failure to State a Claim for Malicious Prosecution.</u>   Plaintiffs' malicious process claim against SEIU must also be dismissed because it fails to state a claim for relief.  As plaintiffs concede, in order to state a valid claim of malicious prosecution, the underlying suit must have terminated in plaintiffs' favor.  *See* Pls.' Opp., 23.  Plaintiffs also concede that the Oregon litigation was not terminated in its favor.  *Id.*    Since this is the only litigation that could be even remotely the basis for a malicious prosecution claim against SEIU based on its own actions, rather

---

intend to assert Count II claims against SEIU.
     [2]     In addition to the fact that plaintiffs cannot rely on the actions of other defendants or non-defendant conspirators to support their claims of direct tort liability against SEIU or other defendants not alleged to have had any direct role in those actions, their arguments must fail for other reasons as well.  In the case of the FEC complaints, for example, even if it is true that the FEC proceedings were not resolved in plaintiffs' favor until April 21, 2006, this is still outside of the one-year limitations period for direct claims of malicious prosecution.  With respect to plaintiffs' abuse of process claim, the claim accrued when the complaints were filed in 2004, not when they were resolved, as in the case of the malicious prosecution claim, and therefore they are outside of the three-year limitations period for such claims under District of Columbia law.  *See*

than the actions of its alleged co-conspirators, it therefore must be dismissed.[3]

      C.  <u>Failure to State a Claim for Abuse of Process.</u>  Finally, plaintiffs contend that their claim of abuse of process is sufficient by relying on facts alleged against other defendants in this case, not the SEIU.  Specifically, plaintiffs allege that "[d]efendants caused twenty-four complaints to be filed against their political competitors in eighteen states in the months immediately preceding the 2004 General Election," Pls.' Opp., 21, and that "[i]n so doing" defendants perverted the process for challenging candidates' qualifications for public office." *Id.* Similarly, they allege that the "entire nationwide litigation strategy was illegitimate." Pls.' Opp., 22.  The only specific allegations in the complaint involving actions by SEIU, however, involve litigation in a single state (Oregon), not repeated cases in numerous venues.  Whatever relevance the "cumulative effect" of the alleged "nationwide litigation strategy" may have to plaintiffs' civil conspiracy claims, or to its claims of abuse of process against other named defendants who allegedly may have taken action in more than one state, it has no relevance to plaintiffs' direct

---

*Simpson v. District of Columbia Met. Police Dept.,* 789 F. Supp. 5, 11 (D.D.C. 1992).

[3]    Plaintiffs' seem to suggest, without any supporting authority, that the fact that litigation in some states terminated in plaintiffs' favor means that they may bring a malicious prosecution claim against those defendants whose actions occurred in states where the litigation terminated in a manner that was not favorable to plaintiffs.  *See* Pls.' Opp., 23.  This is erroneous as a matter of law; the multiple claims of malicious prosecution brought against the various defendants must stand or fall separately based on the allegations pertinent to each individual defendant.  Plaintiffs also fail to address SEIU's arguments that no claim for malicious prosecution will lie against it because it did not bring any litigation against the Nader-Camejo campaign.  *See* SEIU Mem., 10-11.  The fact that SEIU filed a brief *amicus curiae* in the Oregon Supreme Court does not mean that plaintiffs have stated a claim.  We are aware of no case in any jurisdiction in which a malicious prosecution claim has been based on the filing of an *amicus* brief with the permission of the court in litigation instigated by another party, here one of the plaintiff's himself, and plaintiffs have cited no authority for their position.

claim of abuse of process by SEIU.[4]  This claim too must therefore be dismissed.

**II.    Plaintiffs' Amended Complaint Fails to State a Claim of Civil Conspiracy Against SEIU and That Claim Also Is Time-Barred.**

Count I of the amended complaint fails to state a claim of civil conspiracy against SEIU because (A) it does not allege "plausible grounds" from which it may be inferred that SEIU entered into an agreement with the other alleged conspirators, and (B) it fails to allege that SEIU's actions were specifically intended to further any unlawful actions of the other defendants and alleged co-conspirators.   In addition, (C) the civil conspiracy claim in Count I is time-barred.

A.   <u>No Plausible Grounds From Which To Infer Any Agreement.</u>   In seeking to demonstrate that the amended complaint contains sufficient allegations to state a claim for civil conspiracy, plaintiffs contend that "[w]hen a conspiracy is pled, the allegations must *suggest only that discovery will reveal evidence sufficient to infer an illegal agreement,* but not that the evidence of such agreement is probable."  Pls.' Opp., 10 (emphasis added).  *See also, id.* at 13 ("Plaintiffs' allegations clearly *suggest that discovery will reveal evidence from which an illegal agreement could be inferred* with respect to each named Defendant, and this is all that Plaintiffs must do to state a claim for conspiracy.")(emphasis added).   Not only is this is a patently incorrect statement of plaintiffs' burden under Rule 8, as construed by the Supreme Court, but plaintiffs have failed to satisfy their burden when it is properly understood.

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. ____, 127 S.Ct. 1955 (2007), the case on

---

[4]    Plaintiffs do not respond to SEIU's arguments that it did not abuse any process because the Oregon ballot access litigation was filed not by SEIU but by plaintiff Nader in response to actions of the Secretary of State and because there is no allegation that, even if SEIU is deemed to have initiated some kind of process, it had an ulterior motive in the actions it took other than to keep Nader/Camejo off of the Oregon ballot.  *See* SEIU Mem., 11-13.

which plaintiffs rely, the Supreme Court held that the plaintiff's reliance on allegations of "parallel conduct unfavorable to competition," were not sufficient to state a conspiracy claim under the Sherman Act. "[S]tating such a claim." the Court held, "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made ...[including] plausible grounds to infer an agreement ...." *Id.* "Plausible grounds," moreover, "requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do... Factual allegations must be enough to raise a right to relief above the speculative level. .... " 127 S.Ct. at 1964-65 (citations omitted). Plaintiffs' contention in this case that the amended complaint may survive because the evidence "suggests" that discovery will uncover the existence of an agreement in which SEIU participated simply cannot be sustained as a matter of law.[5]

Here, plaintiffs have not alleged sufficient facts with respect to defendant SEIU to establish "plausible grounds" that SEIU entered into an agreement with any of the other defendants or alleged co-conspirators. Plaintiffs do not claim that SEIU was one of the organizers or leaders of the alleged conspiracy against them. *See* Pls.' Opp., 2 ("The DNC directed Defendants' conspiracy in conjunction with the Kerry-Edwards Campaign and The Ballot Project..."); 11 ("Plaintiffs allege that the DNC, the Kerry-Edwards Campaign and a Section 527 organization called The Ballot Project orchestrated a nationwide conspiracy ....") They do not allege that SEIU attended the meeting at which the plans for the conspiracy were

---

[5] In a different context, courts have similarly held that personal jurisdiction will not lie in the District of Columbia against a foreign defendant based solely on unsupported and general allegations that the foreign defendant conspired with DC-based defendants. *See First Chicago Int'l v. United Exchange Co., Ltd.,* 836 F. 2d 1375, 1378 (D.C. Cir. 1988); *Richards v. Duke University,* 480 F.Supp. 2d 222, 231 (D.D.C. 2007), sum. aff'd, 2007 U.S. App. LEXIS 30275 (D.C.Cir. 2007); *Lapoint v. Van Note,* 2004 U.S. Dist. LEXIS 27691, *25-28 (D.D.C.

allegedly laid, *see* Pls.' Opp., 11, or participated in subsequent efforts to organize the alleged conspiracy. *Id.* Most importantly, they do not allege where, how, or when SEIU allegedly joined the conspiracy. Instead, plaintiffs allege that SEIU participated in certain activities in Oregon allegedly aimed at making it difficult for Nader/Camejo to obtain access to the ballot, that it sought to intervene in litigation brought by the Oregon Secretary of State, and that when this effort was denied, it filed an *amicus* brief in the case. *See* Pls.' Opp., 17. These allegations are at most the kind of "parallel conduct" which the Supreme Court found in *Twombly* is not sufficient to support a conspiracy claim even at the motion to dismiss stage; they therefore do not provide "plausible grounds" to infer that SEIU agreed to participate in any conspiracy.[6]

As the Supreme Court recognized in *Twombly,* the denial of a motion to dismiss in a conspiracy case opens the opportunity for massive discovery that could be both costly and burdensome to the defendants and the court. *See* 127 S. Ct. at 1966-67. Here, plaintiffs allege the existence of a "nationwide litigation strategy," Pls.' Opp., 22, including 24 complaints filed in 18 different states and involving hundreds of lawyers and other parties whose "cumulative effect," *id.,* was to injure plaintiffs. The full scope of discovery potentially relevant to such a claim is impossible to gauge, but it surely is massive. Moreover, because the conspiracy allegedly involved actions by a candidate, a political party, and independent organizations in connection with the conduct of a federal election, discovery regarding the alleged conspiracy will necessarily

---

2004).

[6] As in *Twombly,* there is "an obvious alternative explanation," 127 S.Ct. at 1972, for SEIU's own efforts to keep Nader/Camejo off the Oregon ballot, if this in fact occurred, namely the potential negative impact of Nader's candidacy on the candidate whom SEIU was supporting. After the 2000 election, SEIU did not need to participate in a conspiracy in order to recognize the potential harm that could result from a Nader candidacy.

delve into the most sensitive political activities protected by the First Amendment. *See AFL-CIO v. FEC,* 333 F.3d 168, 170 (D.C. Cir. 2003), quoting *FEC v. Machinists Non-Partisan Political League,* 655 F.2d 380, 388 (D.C.Cir. 1981) (investigations into alleged violations of federal election law frequently involve subpoenaing materials of a "delicate nature . . . represent[ing] the very heart of the organism which the first amendment was intended to nurture and protect: political expression and association concerning federal elections and officeholding.") Plaintiffs should be required to provide more than mere speculation about the existence of a conspiracy before they are permitted to force SEIU to participate in what plaintiffs themselves acknowledge is a fishing expedition.

  B. <u>No Specific Intent to Support the Conspiracy's Alleged Unlawful Purposes.</u>.  Even if the amended complaint did contain "plausible grounds" to infer some agreement between SEIU and other defendants or conspirators, the civil conspiracy claim against SEIU would still be deficient because the amended complaint fails to allege that SEIU's alleged agreement to join the conspiracy was specifically intended to further any unlawful actions of the other defendants and alleged co-conspirators. *See* SEIU Mem., 19-20.  Plaintiffs do not attempt to show that the amended complaint includes such allegations; rather they argue that no such showing is necessary as a matter of law. *See* Pls.' Opp., 31-32.  Specifically, plaintiffs contend that under the leading case of *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886 (1982), a showing of specific intent to further the conspiracy's *unlawful* purposes is necessary only where the alleged conspirators are being held liable solely on the basis of their association with the group, not on the basis of "their conduct in furtherance of an unlawful conspiracy." *Id.*  This is not what *Claiborne Hardware* held, as Justice Stevens' opinion makes clear.

First, significant numbers of the petitioners in the case were found to have undertaken "conduct in furtherance of the boycott," including participating in the management of the boycott, taking leadership roles in the boycott, or acting as enforcers of the boycott. 458 U.S. at 897. The Court made no distinction between these groups of petitioners and those who merely attended meetings or were associated with the boycott in a passive way. Indeed, the Court expressly held that liability could not be imposed on individuals who were "store watchers" or members of a group of boycott enforcers known as the "Black Hats". *See* 458 U.S. at 924-25. The Court also held that liability could not be imposed on Charles Evers, even though he "unquestionably played the primary leadership role in the organization of the boycott." 458 U.S. at 926. In reaching this conclusion, the Court ruled that Evers could not be held liable based solely on "his active participation in the boycott," *id.,* but only if he "authorized, directed, or ratified specific tortious activity [by others]," "incit[ed] lawless action," or "gave other specific instructions to carry out violent acts or threats." 458 U.S. at 927. So too here, in seeking to impose vicarious liability on SEIU under Count I, as distinct from direct liability under Count II, plaintiffs must show "that specific parties agreed to use unlawful means." 458 U.S. at 933. Plaintiffs' amended complaint fails to allege sufficient facts to show that SEIU endorsed any of the tortious acts allegedly committed by the other conspirators and it therefore fails to state a claim for civil conspiracy against SEIU.

Second, the Supreme Court's rationale in *Claiborne Hardware* did not depend upon whether an individual joined the boycott passively or through conduct in furtherance of its objectives. Rather, the key element of the Court's analysis was that at least some of the aims of the civil rights boycott and the means by which they were achieved were constitutionally

protected.  *See* 458 U.S. at 907 ("Each of these elements of the boycott is a form of speech or conduct that is ordinarily entitled to protection under the First and Fourteenth Amendments."), 911 ("In sum, the boycott clearly involved constitutionally protected activity.")  The constitutional protection afforded to these activities, moreover, was not forfeited because some members of the boycott undertook unlawful activities which were not protected.  *See* 458 U.S. at 908 ("The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected.") In order to protect a person who joined the boycott in order to further its constitutionally protected activities, the Court held, it was necessary to show that the group "possessed unlawful goals *and* that the individual held a specific intent to further those illegal aims." 458 U.S. at 920 (emphasis added).  When the Court stated that the First Amendment restricts the ability of the State to impose liability on an individual "solely" because of his association with another, 458 U.S. at 919, it was not limiting its holding to those who passively, rather than actively, supported the boycott, as plaintiffs here argue, it was merely stating that in addition to joining in the lawful, protected activities of the boycott, it must also be shown that defendants held a specific intent to support the unlawful goals of the boycott before liability could attach.

Like the boycott in *Claiborne Hardware,* the core activities of the alleged conspiracy in this case were constitutionally protected.  Even if the defendants and others joined together to keep Nader/Camejo off the 2004 ballot, this is associational political activity of the most lawful and fundamental kind, and defendants may be held liable only to the extent that their activities became unlawful in specific instances.  Insofar as plaintiffs seek to hold SEIU vicariously liable

for the tortious acts of other defendants and conspirators, plaintiffs must allege that SEIU, when it allegedly agreed with others to keep Nader/Camejo off the ballot, knew of the tortious methods of the alleged conspiracy and intended to support those activities. There are no such allegations in the amended complaint.

(C)   <u>The Civil Conspiracy Claim is Time-Barred.</u>  Since there are no valid direct claims of abuse of process or malicious prosecution against SEIU, the union can only be held vicariously liable under a civil conspiracy theory if there are timely and valid claims of abuse of process or malicious prosecution against one or more of the other defendants. Plaintiffs' opposition makes no greater effort to support the timeliness of its direct tortious claims against any of the other defendants than it has against SEIU, with the possible exception of defendant Reed Smith. Plaintiffs' argument with respect to Reed Smith is difficult to comprehend. As to the ballot access litigation filed in Pennsylvania, it is clear that any possible malicious prosecution claim is substantively invalid because that proceeding was not resolved in favor of the plaintiffs. Any such claim would also be time-barred because the Pennsylvania ballot access litigation was terminated far more than a year before the complaint in this case was filed. Similarly, plaintiffs' abuse of process claim based on the Pennsylvania ballot access litigation is also time-barred and substantively invalid for the reasons set forth by Reed Smith in its opening and reply memoranda.

Plaintiffs attempt to get around these arguments by arguing that Reed Smith's efforts to collect on the judgement of costs rendered in favor of its clients is a continuing tort which extends the statute of limitations for all of the injuries they allegedly suffered from the Pennsylvania ballot access litigation. But this is not what the "continuing tort" theory means. Under that theory, a plaintiff may only seek to "pursue claims 'for injuries attributable to the part of the

continuing tort that was committed within the limitations period immediately preceding the date on which suit [was] brought.'" *Jung v. Mundy, Holt & Mance,* 372 F.3d 429, 430 (D,C,Cir. 2004), quoting *Beard v. Edmondson & Gallagher,* 790 A. 2d 541, 548 (D.C. 2002).   The continuing tort theory cannot, therefore, reinvigorate plaintiffs' otherwise time-barred claims arising from the Pennsylvania ballot access litigation.  The DC attachment proceedings, moreover, cannot provide a basis for recovery because they  have not been resolved in favor of plaintiffs, although apparently a motion to reconsider is still pending. More importantly, the DC attachment proceedings cannot support a civil conspiracy claim against SEIU because the purpose of the alleged conspiracy, even under plaintiffs' exaggerated view, was complete in November 2004, when the presidential election occurred, and there are no facts alleged which would link SEIU in any manner to the DC attachments.

### III.     The Voter Plaintiffs Lack Standing To Bring This Action.

Plaintiffs contend that the six voter plaintiffs should not be dismissed from the case because they "seek damages for the deprivation of their constitutional rights ..."  Pls.' Opp., 37. The fatal flaw in this argument is that plaintiffs voluntarily dropped their constitutional claims on behalf of all of the plaintiffs and against all of the defendants when they filed  their amended complaint.  Even if defendants' actions in connection with the ballot access litigation were tortious, as alleged, only the parties involved in those cases could possibly have suffered any injury as a result of those actions, and the amended complaint alleges no such injury resulting from the litigation on the part of the voter plaintiffs.  Amend. Compl. ¶¶ 218-230, 232.  The voter plaintiffs do not have standing to seek relief for the alleged violations of constitutional rights in

this case, since they no longer seek such relief in this case.[7]

## Conclusion

For the foregoing reasons, and the reasons set forth in SEIU's initial memorandum in support of its motion to dismiss, all of the claims against SEIU should be dismissed.

April 10, 2008                                       Respectfully submitted,

/s/ Michael B. Trister

Michael B. Trister
DC Bar No. 54080
Lichtman, Trister & Ross PLLC
1666 Connecticut Avenue, NW
Washington, D.C. 20009
(202) 328-1666

Judith A. Scott
General Counsel
D.C. Bar No. 374089
John J. Sullivan
Associate General Counsel
D.C. Bar No. 371278
SEIU
1800 Massachusetts Avenue, NW
Washington, D.C. 20036
(202) 730-7465

*Attorneys for Defendant Service Employees International Union*

---

[7] In a cryptic footnote, plaintiffs state that they "expect" this case to be consolidated with another case originally filed in the Eastern District of Virginia and recently transferred to this court, which includes constitutional claims against parties who are not defendants in this case. *See* Pls.' Opp., 35 n. 10. It is hornbook law, however, that consolidation under Rule 42, F.R.Civ.P., "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 496-67 (1933). Even if the two cases are ultimately consolidated for purposes of discovery or trial, it would remain true that there are no constitutional claims against the defendants in this case, including SEIU.