UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE DEMOCRATIC NATIONAL COMMITTEE, et al.,<br><br>        Defendants. | Civil Action No. 07-2136-RMU |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANTS JOHN KERRY AND KERRY-EDWARDS 2004 INC.'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

      Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss ("Opposition") only confirms that, with respect to Senator John Kerry and Kerry-Edwards 2004 Inc. ("the Campaign"), this action not only fails on its face, but borders on frivolous. Plaintiffs try to obfuscate the weaknesses of their complaint with generalized legal arguments and repeated accusations of a vast and continuing conspiracy. Yet the Opposition only exposes that the amended complaint offers no allegations of fact to link the Senator or the Campaign to any abuse of process, malicious prosecution, or conspiracy. In short, plaintiffs allege activity that is both permissible under state and federal law and fully protected under the First Amendment's guarantee of the right to petition: that Senator Kerry made public comments about his opponent and that the Campaign knew of, or assisted in, election-related litigation designed to benefit the Senator's candidacy for President. Plaintiffs, therefore, have not alleged a plausible claim for relief. Moreover, having waited nearly four years (and shopped several other forums) before bringing this suit, plaintiffs' claims against the Senator and the

Campaign are now time-barred. Accordingly, this Court should dismiss the amended complaint, with prejudice.

## ARGUMENT

The initial moving brief of defendants Senator Kerry and the Kerry-Edwards Campaign set forth the reasons the claims against them—relating to litigation in Arizona, Florida, New Hampshire and Washington State—should be dismissed. In reply to plaintiffs' Opposition, Senator Kerry and the Campaign make the following discrete points:

### I.

### PLAINTIFFS' ABUSE OF PROCESS, MALICIOUS PROSECUTION, AND CONSPIRACY CLAIMS AGAINST DEFENDANTS SENATOR KERRY AND THE KERRY-EDWARDS CAMPAIGN FAIL ON THEIR FACE

Plaintiffs' Opposition confirms that they have failed to allege any acts at all by Senator Kerry or the Kerry-Edwards Campaign sufficient to state a claim for abuse of process, malicious prosecution, or conspiracy. As discussed in Defendants' initial brief, the amended complaint draws sweeping legal conclusions about the conduct of unspecified defendants, *e.g.*, Am. Compl. ¶¶ 1, 14, 45, but it barely references Senator Kerry or the Campaign. Now, pressed to specify allegations of wrongdoing by the Senator and the Campaign in their Opposition to the motions to dismiss, plaintiffs provide none.

With respect to Senator Kerry, plaintiffs state only that the alleged conspiracy was an effort to help the Senator win the 2004 election, Opp'n at 2; that the Senator is an important client of Reed Smith, *id.* at 5; and that the Senator had knowledge of lawsuits filed against Nader, though he denied personal involvement in them, *id.* at 15-16. This is simply not enough to state a claim against Senator Kerry. There is no allegation that the Senator

procured or participated in any litigation at all, let alone that he did so with malice or an absence of probable cause causing special injury, as required for a malicious prosecution claim. *See Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000). Nor is there any allegation that Senator Kerry, as required for abuse of process, used the legal system in any way, let alone as a means "'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)).

Similarly, plaintiffs' Opposition only underscores that they have failed to state a claim against the Kerry-Edwards Campaign. Plaintiffs allege that the Campaign was an intended beneficiary of the ballot litigation; that Judy Reardon, a member of the Campaign's staff, drafted a complaint challenging Nader's access to the ballot in New Hampshire; and that she coordinated with the state Democratic Party officials and attorneys who filed that complaint. *See* Opp'n at 15-16; Am. Compl. ¶¶ 137-39; *see also id*. ¶¶ 73, 93-94, 209-10 (alleging that individuals who claimed to have some affiliation with the campaign participated in litigation in Florida, and Washington State, and that the Campaign was informed about litigation in Arizona). Plaintiffs, however, do *not* allege that Ms. Reardon or others from the Campaign initiated litigation without probable cause, and with any evil or wicked intent, as required to state a claim for malicious prosecution. *See Moore*, 213 F.3d at 710. Nor do they allege that the Campaign generally, or Ms. Reardon in particular, engaged in "a perversion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge," as necessary for abuse of process. *Whelan v. Abbell*, 953

F.2d 663, 670 (D.C. Cir. 1992) (internal quotations and citation omitted); *see also Scott*, 101 F.3d at 755 ("There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.").

Tellingly, plaintiffs, in their Opposition, do not even argue that the facts they allege about Senator Kerry or the Campaign, including Ms. Reardon, are sufficient to state a claim of abuse of process or malicious prosecution against those defendants. Rather, they attempt to link the Senator and the Campaign to generalized arguments about abuse of process and malicious prosecution, *see* Opp'n at 19-26, by contending that they have stated a claim for conspiracy, *see* Opp'n at 15-16.[1]

This effort to transform the Senator and the Campaign's wholly legal activity into an illicit conspiracy is unavailing. Plaintiffs have not, and cannot allege facts to meet the elements of conspiracy: "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of the parties to the agreement, and in furtherance of the common scheme." *Hill v. Medlantic Health Care Group*, 933 A.2d 314, 334 (D.C. 2007).

Plaintiffs do not allege that Senator Kerry entered into an agreement to participate in any unlawful acts. Indeed, their amended complaint includes not a single allegation to connect the Senator to any litigation. The Opposition underscores this failing: In making the

---

[1] As plaintiffs concede, their amended complaint disclaims the notion that their broad accusations apply to all defendants. Opp'n at 13; *see also* Am. Compl. ¶ 14 ("Unless otherwise stated, the terms 'Defendants' and 'conspirators' or 'co-conspirators' and the charges alleged herein do not necessarily apply to every Defendant and every conspirator . . . . ."). Though plaintiffs now argue that their allegations *may* apply to all defendants, their Opposition does not alter the basic flaw in their pleadings, nor does it attempt to clarify which allegations apply to all defendants.

conspiracy argument against the Senator, the Opposition points only to actions by other defendants allegedly designed to benefit Senator Kerry and to the Senator's "public statements" that he would not attack Nader. *See* Opp'n at 7, 16; *cf.* Am. Compl. ¶ 65. Plaintiffs thus fail to state a conspiracy claim against the Senator.

The amended complaint is also fatally lacking with regard to the Campaign. It contains repeated conclusory assertions that "the Kerry-Edwards Campaign joined the conspiracy," Am. Compl. ¶ 59; *see also id.* ¶ 66. But complaints alleging conspiracy cannot survive a motion to dismiss if they do not support their claims that a defendant agreed to violate the law with references to material facts about the defendant's participation. *See, e.g, Bush v. Butler*, 521 F. Supp. 2d 63, 69 (D.D.C. 2007); *Robertson v. Merola*, 895 F. Supp. 1, 4 (D.D.C. 1995). Contrary to plaintiffs' arguments, mere speculation, labels and conclusions are not enough. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (2007) (complaint must contain "enough factual matter (taken as true) to suggest that an agreement" to engage in illegal conduct was made).

Again, plaintiffs offer no allegations of material facts. Though they allege a meeting during the Democratic Convention where "the organizers and leaders of the conspiracy met privately to discuss their plans," Am. Compl. ¶ 46, they do *not* assert that any representative of the Campaign attended that meeting, *id.*; *see also* Opp'n at 15-16. And while plaintiffs' Opposition urges the Court to infer from the alleged activity of Ms. Reardon that the Campaign entered into an agreement to engage in coordinated litigation against Nader, it points to no facts from which one might plausibly conclude that the Campaign or the Senator agreed *to engage in baseless litigation or to abuse process*. *See id.* Without any allegation of an agreement to engage in unlawful acts, plaintiffs do not and cannot state a claim for

conspiracy. *See Hill*, 933 A.2d at 334; *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000); *Higgs v. Higgs*, 472 A.2d 875, 877 (D.C. 1984).

Seeking to disguise the failures of their complaint, plaintiffs put great emphasis on what they allege to be the defendants' ulterior motive: to drain Nader of resources in order to benefit the Senator and Campaign in the 2004 election. *See* Opp'n at 21, 23-24. But the allegation that other defendants sought to benefit the Kerry-Edwards Campaign does not state a claim that the Campaign or the Senator made an agreement to abuse process or to engage in malicious prosecution.

At bottom, plaintiffs ask this Court to rely on their own speculation that discovery might turn up facts to support their claims against the Senator or the Campaign. *See* Opp'n at 16. Such conjecture, however, cannot be the basis for a civil action: A complaint does not survive a motion to dismiss simply because the pleadings leave open "the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. *Twombly*, 127 S. Ct., at 168. While the facts alleged by plaintiffs must be taken as true, "[i]t is not … proper to assume that [a plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In a last ditch effort to identify factual allegations that support their claim of an agreement to engage in unlawful acts, plaintiffs argue that various defendants violated federal election law. *See, e.g.*, Opp'n at 3. This too fails as a matter of law. The only channel for private civil enforcement of the Federal Election and Campaign Act ("FECA") is 2 U.S.C. § 437g(a)(8). That provision permits private parties to file a petition in federal court only after the Federal Election Commission ("FEC") has failed to act on their administrative

complaint. *Id*.; *see also Friends of Phil Gramm v. Ams. for Phil Gramm in '84*, 587 F. Supp. 769, 772-73 (E.D. Va. 1984) (explaining that section 437g(a)(8)(A) codifies the doctrine of "primary jurisdiction," which grants agencies the right to determine, in the first instance, how the law should be applied). Congress was unequivocal in its intention to limit sharply private civil actions: "Except as provided in section 437g(a)(8) of this title, the power of the Commission to initiate civil actions under subsection (a)(6) of this section shall be the exclusive civil remedy for the enforcement of the provisions of this Act." 2 U.S.C. § 437d(e). Moreover, Congress expressly preempted state law in the FECA. *Id*. § 453(a) ("[T]he provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office."). Thus, federal preemption rules prevent plaintiffs from circumventing the FECA "by filing an action in court based on state law." *Friends of Phil Gramm*, 587 F. Supp. at 772 (holding that the FECA preempted a common law fraud claim); *see also, e.g.*, *Nat'l Comm. of Reform Party v. DNC*, 168 F.3d 360, 363 (9th Cir. 1999). If plaintiffs believe that Senator Kerry or the Campaign violated federal election law—alone or in concert with others—they must pursue those claims in accordance with the procedure set forth in the FECA, and not by manufacturing a conspiracy suit.

## II.

### THE BALLOT LITIGATION ABOUT WHICH PLAINTIFFS COMPLAIN DOES NOT AND CANNOT CONSTITUTE ILLEGAL CONDUCT

At their core, plaintiffs' claims against the Senator and the Campaign are no more than a challenge to activity that is both permissible under state and federal law and fully protected under the First Amendment's guarantee of the right to petition. As demonstrated in

the moving brief of Senator Kerry and the Campaign, the First Amendment and the Supreme Court's *Noerr-Pennington* doctrine guarantee a citizen's right to petition the government for redress of grievances.  *See E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961) ("right of petition" is protected by the Bill of Rights and central to our democracy); *accord United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); *see also Whelan*, 48 F.3d at 1254 (an individual "cannot be held liable as a result of his or her filing a good-faith lawsuit").  This right carries particular importance in the context of political campaigns, which are "at the heart of American constitutional democracy."  *Cf. Brown v. Hartlage*, 456 U.S. 45, 53 (1982).

     Plaintiffs' argument that the First Amendment's protections do not apply here is wholly unavailing.  Plaintiffs acknowledge that the *Noerr-Pennington* doctrine protects the right of defendants to engage in concerted litigation.  *See* Opp'n at 30.  All they argue is that the First Amendment may not be used as a pretext for achieving "substantive evils"; the *Noerr-Pennington* doctrine does not apply to acts of harassment, intimidation, and sabotage.  *Id*.  Therefore, plaintiffs assert, defendants should be held liable.  *Id*.  This logic fails.  Although it is true that acts of harassment, intimidation, and sabotage are not protected, plaintiffs do not and cannot allege that Senator Kerry or the Campaign engaged in any such acts, or agreed to engage in such acts.[2]  Plaintiffs also do not and cannot allege that the litigation with which the Campaign was allegedly associated was objectively baseless or that the Senator or the Campaign used corrupt conduct to influence the government's response to

---

[2] For this reason, plaintiffs' attempt to distinguish *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 919 (1982) is unavailing.  An individual who associates with others in First Amendment protected activity is protected from liability, even if some of the others are engaged in wrongful conduct, unless there is evidence that the particular individual's actions "were specifically intended to further such wrongful conduct."  *In re Asbestos School Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994).

the petitions. *See Whelan*, 48 F.3d at 1255; *Federal Prescription Serv. Inc. v. American Pharmaceutical Ass'n*, 663 F.2d 253, 263 (D.C. Cir. 1981). Thus, plaintiffs cannot demonstrate that their allegations fit into the "sham exception" of the *Noerr-Pennington* doctrine. Accordingly, the *Noerr-Pennington* doctrine applies to prevent imposition of liability on the Senator and the Campaign. *See, e.g., Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988).

The importance of shielding defendants from liability is particularly great in this context. As the Supreme Court has recognized, states have the "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983). Candidates routinely challenge the petition signatures of opponents through litigation. *See, e.g., In re Nomination Papers of Rogers*, 908 A.2d 948 (Pa. Commw. Ct. 2006); *Iaboni v. Sunderland*, 175 A.D.2d 893 (N.Y. App. Div. 1991). Candidates also have a right to challenge the campaign finance activity of their opponents with the Federal Election Commission. *See* 2 U.S.C. § 437g(a)(1); 11 C.F.R. § 111.4. Such petitioning activity is an integral part of the electoral contest, and helps ensure that election laws are vigorously enforced. As the Supreme Court has recognized, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).

Under plaintiffs' theory, however, any campaign that challenges an opponent's ballot petitions, files campaign finance complaints, or pursues other litigation, could be sued even years after the election is over—particularly if supporters announce that they will engage in

litigation in advance of doing so. Subjecting political campaigns to suit by political opponents on the basis of their proper petitioning efforts, or their plans to engage in such petitioning, would hamper the enforcement of election laws, while severely chilling activity "at the heart of American constitutional democracy—the political campaign." *Hartlage*, 456 U.S. at 53. Neither the First Amendment nor state tort law allows plaintiffs to do so here.

### III.

### PLAINTIFFS' CLAIMS ARE TIME BARRED

Plaintiffs all but concede that their state law abuse of process and malicious prosecution claims against Senator Kerry and the Campaign are time-barred: Plaintiffs acknowledge that the statute of limitation for malicious prosecution in the District of Columbia is one year, running from the date on which the prior, allegedly malicious, suit was terminated, D.C. Code § 12-301(4); *Shulman v. Miskell*, 626 F.2d 173, 176 (D.C. Cir. 1980), and the statute of limitation for abuse of process is three years, running from the date of the last act constituting the tort, D.C. Code § 12-301(8); *see also Saunders v. Nemati*, 580 A.2d 660, 662 (D.C. 1990) Their complaint makes clear that all of the litigation in which the Senator and the Campaign were allegedly involved—in Arizona, Florida, New Hampshire, and Washington State—terminated well outside these time periods. *See* Am. Compl. ¶¶ 75-78, 97, 139, 211.[3] Not surprisingly, therefore, plaintiffs do not even attempt to argue in

---

[3] As discussed in defendants' opening brief, plaintiffs cannot circumvent the one-year limitations period that applies to malicious prosecution claims by labeling their claims "abuse of process." *See Rynn v. Jaffe*, 457 F. Supp. 2d 22, 24-25 (D.D.C. 2006); *Zandford v. Nat'l Ass'n of Sec. Dealers*, 19 F. Supp. 2d 4, 7-8 (D.D.C. 1998). Because the gravaman of plaintiffs' complaint is that defendants brought unfounded litigation, their abuse of process claims "actually concern malicious prosecution," and the one-year limitations period should apply. *See Rynn*, 457 F. Supp. 2d at 24-25. But even if this Court applies the three-year limitations period, plaintiffs' claims of abuse of process and malicious prosecution against the Senator and the Campaign would be time-barred.

opposition to this motion that these claims are actionable. Consequently, the Court may treat these arguments as conceded. *See Lewis v. Dist. of Columbia*, __ F. Supp. 2d __, 2008 WL 190397, at *9 (D.D.C. Jan. 24, 2008).

Having abandoned their abuse of process and malicious prosecution claims against the Senator and the Campaign, plaintiffs attempt to convince the Court that their conspiracy claim remains actionable. This argument fails as well. The limitations period for a civil conspiracy claim is "established by the statute of limitations governing the underlying tort." *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 73 (D.D.C. 1988). Thus, the one- or three-year statute of limitations applies. All of plaintiffs' allegations of abuse of process and malicious prosecution concerning the 24 state court complaints were concluded more than three years before this action was filed: Nader-Camejo either did or did not appear on the ballots in those states on November 2, 2004. The conspiracy claim is therefore barred.

In the face of this clear time-bar, plaintiffs rely on three unavailing theories in an effort to revive their claim. *First*, plaintiffs argue that because the FEC actions of some "conspirators" were not resolved until April 21, 2006, all of plaintiffs' state law claims were tolled, and remain actionable against all defendants under the three-year statute of limitation for abuse of process. This contention is preposterous: The argument that plaintiffs were permitted to sit on their claims against all defendants because the FEC took several years to resolve other "conspirators'" complaints makes no sense—and plaintiffs provide no law to support it. Moreover, to the extent plaintiffs are resting the viability of their complaint on the allegedly baseless nature of actions filed with the FEC, their claims are preempted. As discussed above, the only channel for contesting the merits of federal election law claims is found in the FECA. *See* 2 U.S.C. § 437g(a)(8); *Friends of Phil Gramm*, 587 F. Supp. at 773.

State laws are completely preempted if they encroach on federal election law, even if their purpose is completely unrelated to elections. *See Teper v. Miller*, 82 F.3d 989, 995 (11th Cir. 1996). Finally, even if the FEC-related claims were not preempted, they would be barred by the one-year limitations period for malicious prosecution: Plaintiffs allege no abuse of process before the FEC, so cannot seek the benefit of that longer limitations period. *See Rynn v. Jaffe*, 457 F. Supp. 2d 22, 24-25 (D.D.C. 2006); *Zandford v. Nat'l Ass'n of Sec. Dealers*, 19 F. Supp. 2d 4, 7-8 (D.D.C. 1998). Any conspiracy claim arising from the FEC claims would be similarly time-barred. *See Thomas v. News World Commc'ns*, 681 F. Supp. at 73.

*Second*, plaintiffs argue that they deserve the benefit of the continuing tort theory, on the ground that defendant Reed Smith continues to pursue attachment proceedings against Nader. They point to *Whelan v. Abell*, 953 F.2d at 673, and *Jung v. Mundy, Holt, & Mance P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004), for the proposition that "prosecution of a lawsuit can constitute a continuing tort." Opp'n at 27. This argument fails as well. *Whelan* and *Jung* do *not* stand for the proposition that any act by any alleged conspirator that is related to an alleged conspiracy, and that occurred within the limitations period, extends the limitations period as to all of the underlying tort claims against all conspirators. Moreover, as the court made clear in *Jung*, the "continuing nature" of litigation does not allow plaintiffs "to sit on claims [they] knew or should have known of . . . ." *Jung*, 372 F.3d 429, 433 (D.C. Cir. 2004). Rather, "the statute of limitations period for continuing torts begins to run once a plaintiff has inquiry notice of a potential cause of action." *Id.* (citing *Hendel v. World Plan Executive Council*, 705 A.2d 656, 667 (D.C. 1997)). Here, plaintiffs' own allegations

demonstrate they had notice of defendants' allegedly wrongful conduct during the period leading up to Election Day in 2004.  *See* Am. Compl. ¶¶ 2, 45, 53, 60, 63, 64, 65, 182.[4]

*Third*, plaintiffs argue that the statutes of limitation should be extended under a theory of "fraudulent concealment."  But plaintiffs have failed to allege any affirmative act by defendants to conceal from plaintiffs the alleged conduct, as is necessary to toll the limitations period.  *See, e.g.*, *William J. Davis v. Young*, 412 A.2d 1187, 1191-92 (D.C. 1980).  Indeed, the grounds upon which plaintiffs rest their allegations of conspiracy, abuse of process, and malicious prosecution are press reports published in 2004 about a meeting at the Democratic National Convention.  Because plaintiffs knew or had reason to know of these press reports in 2004, and were well aware of the subsequent litigation, their "fraudulent concealment" argument fails as a matter of law.

### IV.

### THE VOTER PLAINTIFFS LACK STANDING

As defendants Senator Kerry and the Campaign argued in their opening brief, the voter plaintiffs cannot demonstrate an injury in fact, that was caused by defendants, and can be redressed by this Court.  Accordingly, they lack standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 110-12 (1983); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976).  In their Opposition, plaintiffs argue that Nader and Camejo suffered monetary injuries that can be redressed, but they offer no support for the position that the voter plaintiffs suffered a redressable injury.  *See* Opp'n 35-36.  The only

---

[4] In any event, the activities of Reed Smith in seeking to collect on a duly-entered judgment do not constitute "unlawful activity" in furtherance of conspiracy's alleged purpose—to prevent Nader from running for office in 2004—and therefore cannot be part of the "continuing tort."  To the extent plaintiffs seek review and rejection of a Pennsylvania state court judgment awarding costs that post-dated the 2004 election, their claims are barred by the *Rooker-Feldman* doctrine.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

harm the voters allege is that they were unable to select the candidate of their choice, but it is no longer possible for a court to redress this injury.  *See Hall v. Beals*, 396 U.S. 45, 48 (1969).  Moreover, any claim that court action here would enable plaintiffs to choose Nader in the future is too speculative to give rise to standing.  *See, e.g.*, *Fulani v. Brady*, 935 F.2d 1324, 1330 (D.C. Cir. 1991).  The voter plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in their moving brief, defendants Senator John Kerry and Kerry-Edwards 2004 Inc. respectfully submit that this Court should grant the motion and dismiss the amended complaint with prejudice.

DATED: April 10, 2008.

Respectfully submitted,

**PERKINS COIE LLP**

By: /s/ Marc E. Elias
    Marc E. Elias, Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street, N.W.
Washington, D.C.  20005-2003
Telephone:  202.628.6600
Facsimile:  202.434.1690

*Counsel for Defendant John Kerry and Defendant Kerry-Edwards 2004 Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing Motion to Dismiss on this 7th day of April 2008 by means of the Court's CM/ECF system, on the following parties:

Oliver B. Hall
1835 16th Street, N.W.
Washington, DC  20009

*Counsel for Plaintiffs Ralph Nader Peter Miguel Camejo, D.B. Fanning C.K. Ireland, Julie Coyle, Herman Blankenship, Lloyd Marbet and Gregory Kafoury*

Lawrence Noble
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005

*Counsel for Defendants Toby Moffett, Robert Brandon, Elizabeth Holtzman and The Ballot Project, Inc.*

Laurence E. Gold
1666 Connecticut Avenue, NW
Suite 500
Washington, DC  20009

Lyn Utrecht
RYAN, PHILLIPS, UTRECHT & MACKINNON
1133 Connecticut Avenue, NW
Washington, DC  20036

*Counsel for America Coming Together*

Michael B. Trister
LICHTMAN, TRISTER & ROSS, PLLC
1666 Connecticut Avenue, N.W. Suite 500
Washington, DC  20009

*Counsel for Defendant Service Employees International Union*

Douglas K. Spaulding
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005

*Counsel for Defendant Reed Smith, LLP*

Joseph E. Sandler
John Hardin Young
Stephen E. Hershkowitz
SANDLER, REIFF & YOUNG, P.C.
50 E Street, SE #300
Washington, DC  20003

*Counsel for Defendants Democratic National Committee, Jack Corrigan, and Mark Brewer*

/s/ Marc E. Elias
Marc E. Elias D.C. Bar No. 442007
MElias@perkinscoie.com
607 Fourteenth Street, NW, Suite 800
Washington, D.C.  20005-2011
Telephone:  202.628.6600
Facsimile:  202.654.9126
*Counsel for Defendants*
*John Kerry and Kerry-Edwards 2004 Inc.*