UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>        Defendants. | Civil Action No. 07-2136-RMU |

# REPLY OF DEFENDANT AMERICA COMING TOGETHER TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Defendant America Coming Together ("ACT") respectfully submits this reply to plaintiffs' opposition to ACT's motion to dismiss ("Pl. Opp."). ACT's motion is predicated on four essential points:

1. Plaintiffs fail to allege facts sufficient to state a conspiracy claim against ACT.

2. Plaintiffs fail to allege facts sufficient to state a malicious prosecution or abuse of process claim against ACT with respect to Oregon.

3. All of plaintiffs' malicious prosecution and abuse of process claims against ACT are barred by the applicable statutes of limitations.

4. Because these two tort claims are time-barred, plaintiffs' claim that ACT conspired to commit them is time-barred as well.

As to each point, plaintiffs fail to overcome ACT's arguments in favor of dismissal.

-1-

I. **Plaintiffs Fail to Allege Sufficient Facts to State a Conspiracy Claim Against ACT**

As ACT pointed out previously, except with respect to Oregon plaintiffs' complaint fails to allege any conduct by ACT anywhere at any time, let alone facts sufficient to allege that ACT participated in a nationwide conspiracy to commit malicious prosecution or abuse of process.[1] Memorandum in Support of Motion to Dismiss of Defendant America Coming Together ("ACT Mem.") at 2-8. Plaintiffs' opposition underscores the paucity of plaintiffs' allegations against ACT. Here, in full, is how plaintiffs characterize their complaint's factual allegations that, they state, are "[s]ufficient to [s]tate a [civil conspiracy] [c]laim [a]gainst ACT":

> Plaintiffs allege that Defendant ACT directly participated in Defendants' conspiracy by orchestrating, in conjunction with Defendant SEIU, a coordinated campaign to sabotage Nader-Camejo's Oregon nomination papers, and by engaging in other unlawful acts to deny Nader-Camejo ballot access in Oregon. Facts alleged to support these allegations include a written statement by a former ACT employee, who provided a detailed description of the specific manner in which "the higher echelons" ACT and SEIU management jointly planned to sabotage Nader-Camejo's nomination papers. Am. Comp. ¶ 171. In addition, an ACT spokesperson publicly stated that the organization would "mobilize to make sure [Nader-Camejo] doesn't get on the ballot." *Id.* at 69.

Pl. Opp. at 18.

Notably, neither this passage nor plaintiffs' plaintiffs' complaint makes any factual allegation that ACT had anything to do with any defendant other than SEIU or did anything outside of Oregon. The bare allegation that an unidentified "ACT spokesperson" was quoted in a news report in April 2004 that ACT *might* "mobilize to make sure [Nader-Camejo] doesn't get on the ballot" in some unspecified location, see Am. Com. ¶ 69, is plainly insufficient to support a claim that AC subsequently engaged in a conspiracy to do so, let alone to do so in a tortious manner. And, having conceded in their complaint that "the terms 'Defendant,' 'conspirators' or 'co-conspirators' and the charges alleged [in the Amended Complaint] do not necessarily apply

---

[1] In fact, plaintiffs twice assert that the alleged conspiracy was to violate their "constitutional rights," see Pl. Opp. at 13, 26, even though plaintiffs dropped all constitutional claims against ACT and the other defendants when they amended their complaint on January 23.

to every defendant and every conspirator named in [the Amended Complaint]," Am. Com. ¶ 14, plaintiffs now concede that *none* of the factual allegations so styled in fact refers to ACT, and that the *sole* basis of ACT's potential liability is that ACT is "'vicariously liable for all acts [by others] in furtherance of the conspiracy.'" Pl. Opp. at 13.

However, plaintiffs' conspiracy allegations against ACT do require plaintiffs to allege facts concerning ACT's participation in a conspiracy, but plaintiffs allege none.  At most, as with the Sherman Act complaint considered in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007), plaintiffs have alleged "parallel conduct" by ACT in Oregon – *although, as we next discuss, not even that* – and made a "bare assertion of conspiracy."  But "[w]thout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Id. at 1966.  "Factual allegations must be enough to raise a right to relief above the speculative level…." Id. at 1965. As Judge Leon has articulated the civil conspiracy pleading standard:

> A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an *agreement* between the parties to inflict a wrong against, or injury upon another, and an overt act that results in that damage….A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a civil conspiracy claim against a motion to dismiss.

*Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (interior quotation marks, citations and footnote omitted) (emphasis in original).  *Cf. Bancoult v. McNamara*, 217 F.R.D. 280, 285 (D.D.C. 2003) (Urbina, J.) (mere knowledge of actions of others "is not sufficient to infer…some kind of conspiracy"; "the plaintiffs' optimistic conclusion that these facts create[] a reasonable basis for plaintiffs' conspiracy and continuing involvement theories is a classic example of a conclusory allegation unsupported by factual data").

Accordingly, the Court should dismiss plaintiffs' conspiracy claim against ACT.

**II.    Plaintiffs Fail to Allege Facts to Support a Malicious Prosecution or Abuse of Process Claim Against ACT With Respect to Oregon**

ACT previously showed that, as to Oregon, both the facts as alleged and the facts that are available to the Court through judicial notice of other judicial proceedings reflect no judicial or administrative proceeding that ACT initiated, no process that ACT issued and, indeed, no other conduct by ACT that could be subject to a malicious prosecution or abuse of process claim.  To the contrary, the allegations and judicially noticeable facts reveal that *plaintiffs* brought the ballot-access litigation in Oregon and that plaintiffs did not prevail in that litigation.  ACT Mem. at 8-12.  Therefore, as a matter of law, plaintiffs state neither a malicious prosecution nor an abuse of process claim against ACT with respect to Oregon.  Plaintiffs do not controvert, or even address, these facts and ACT's legal argument from them.  See Pl. Opp. at 18-26.  "'[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.'" *Lewis v. District of Columbia,* 2008 U.S. Dist. LEXIS 4571 at *27 (D.D.C. 2008) (Urbina, J.), quoting *Fox v. American Airlines, Inc.*, 2003 U.S. Dist. LEXIS 13606 at *2 (D.D.C. 2003).

Plaintiffs' malicious prosecution and abuse of process claims against ACT, then, rely entirely on the sufficiency of their allegations concerning the commission of these torts in *other* states and on ACT's alleged vicarious liability as a "conspirator" in them.  Except for their discussion of Pennsylvania, however, plaintiffs fail to address the facts or law with respect to any of the 18 states at issue.  Instead, plaintiffs' contention that they allege causes of action rests entirely upon their novel theory that the alleged torts should be considered on some national basis – that even if they cannot state a claim with respect to a particular state proceeding, they can state overarching claims of malicious prosecution and abuse of process by considering all of the state proceedings together.  So, plaintiffs assert, they satisfy the "favorable termination"

element of malicious prosecution because the outcome "in every state except" five (including Oregon) was favorable to them, Pl. Opp. at 23 (and plaintiffs do not explain if or why they are entitled to prevail on that claim with respect to defendants' conduct in the five exception states).[2]

There is no authority for the proposition that either tort may be alleged and litigated other than separately with respect to the proceedings[3] in each state.  Plaintiffs rely upon *Soffos v. Eaton*, 152 F. 2d 682, 683 (D.C. Cir. 1945), which held that "one who twice sues another maliciously and without probable cause is responsible to him in damages" (footnote omitted). But this decision, which predated modern definitions of, and distinctions between, the malicious prosecution and abuse of process torts, concerned successive lawsuits brought *in the same court* by or for the same individual, a landlord, against the same individual, a tenant, to recover possession of the same property.  That is a far cry from a holding that distinct proceedings brought in different states under varying laws to challenge separate ballot qualifications could comprise malicious prosecution or abuse of process separate and apart from the specific applicability of those tort claims within each state.  In fact, *Soffos* establishes only that "being subject to successive baseless actions regarding the same underlying dispute may constitute [the] special injury" element of an ordinary malicious prosecution claim in the District of Columbia. *See Tri-State Hospital Supply Corp. v. United States*, 2007 U.S. Dist. LEXIS 48609 at *19; *Weisman v. Middleton*, 390 A. 2d 996, 1000 (D.C. 1978).

---

[2] In this portion of their argument and elsewhere, plaintiffs also play fast and loose with the facts they allege, perhaps in order to bolster the appeal of their unprecedented uber-tort theory: They repeatedly refer to "twenty-four complaints in eighteen state courts," see Pl. Opp. 2, 20, 21, 23 and 25; see also *id*. at 27 ("eighteen different lawsuits"),  but, in fact, the allegations of their Amended Complaint and the judicially noticeable facts are that 14 state court complaints were filed in ten states by persons other than plaintiffs themselves, as well as various administrative proceedings initiated in the other eight states.  See Addendum to ACT Mem.

[3] However, under District of Columbia law, it is unclear whether or not an administrative proceeding can include the issuance of "process" for purposes of an abuse of process claim. *Tri-State Hospital Supply Corp. v. United States*, 2007 U.S. Dist. LEXIS 48609 at *30-31 (D.D.C. 2007).

Accordingly, the Court should decline plaintiffs' invitation to recognize their proposed expansion of these common-law claims and instead should address defendants' motions to dismiss plaintiffs' complaint separately with respect to each of the state proceedings they have placed at issue.

### III.   Plaintiffs' Malicious Prosecution and Abuse of Process Claims are Time-Barred

#### A.   Plaintiffs Concede the Applicable Limitations Periods

In its earlier submission, ACT showed that plaintiffs' malicious prosecution claims are subject to the one-year limitations period of D.C. § 12-301(4), and their abuse of process claims are subject to the three-year limitations period of D.C. Code § 12-301(8). ACT Mem. at 13-14. Plaintiffs do not address these arguments, and therefore concede that those limitations periods apply. See *Lewis v. District of Columbia*, *supra*. Indeed, they concede the applicability of those periods even to their proposed "national" torts and instead offer two arguments, to which we now turn, as to why those limitations periods do not apply here.

#### B.   Plaintiffs Do Not Allege a "Continuing Tort" Under District of Columbia Law, and, Even If They Did, They Could Recover Only For Damages Resulting From Conduct That Occurred During the Limitations Period

Plaintiffs contend that the alleged conspiracy is a "continuing tort," and, apparently, that they can recover damages resulting from all of the allegedly wrongful state litigation without regard to any limitations period. Pl. Opp. at 26-28. However, plaintiffs do not allege a continuing tort, and, even if they did, they could not recover for conduct that predated the limitations period.

A continuing tort is "(1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole rather than from each individual act, and (3) at least one injurious act must occur within the limitations period." *DeKine v. District of Columbia*, 422 A. 2d 981, 988 n.

-6-

16 (D.C. 1980) (citation omitted).  The continuing tort doctrine, however, enjoys very limited scope in the District of Columbia in order that it not undermine the integrity of applicable limitations periods:

> Generally, the continuing tort doctrine applies only to acts which are by nature of a repetitive character and for which no single act can be identified as the cause of significant harm…A continuous, cumulative chain of tortuous activity, however, does not include the uncorrected denial of one's constitutional rights, even when done by a conspiracy over time.  If it did, then all civil conspiracy cases would fall within its ambit, greatly expanding the doctrine beyond its original intent.  The statute of limitations in such cases would become virtually meaningless.

*Pope v. Bond*, 641 F. Supp. 489, 496 (D.D.C. 1986).  *See also Fitzgerald v. Seamans*, 553 F. 2d 220, 230 (D.C. Cir. 1977); *Starchild v. Federal Bureau of Investigation*, 1991 U.S. Dist. LEXIS 7077 (D.D.C. 1991).

In fact, our courts have consistently rejected application of the continuing tort doctrine in all circumstances other than matters concerning physical ailments and injuries where, by their nature, the wrongful conduct or its effects occur and manifest themselves only gradually over time.  *See*, *e.g*., *Richards v. Duke University*, 2007 U.S. App. Lexis 30275 (D.C. Cir. 2007), *aff'g* 480 F. Supp. 2d 222, 236 (D.D.C. 2007); *LaPointe v. Van Note,* 2004 U.S. Dist. Lexis 27691 at *30-33 (D.D.C. 2004);  *Beard v. Edmondson and Gallagher,* 790 A. 2nd 541, 547-49 (D.C. 2002); *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A. 2nd 873, 882-83 (D.C. 1998); *Hendel v. World Plan Executive Council,* 705 A. 2nd 656, 667 (D.C. 1997).

Plaintiffs' complaint offers a wholly inappropriate vehicle for the application of this doctrine.  As described above, malicious prosecution and abuse of process are well-established torts and are subject to well-established rules as to when each cause of action accrues.  And, a civil conspiracy claim is subject to the same limitations period as is its underlying tort.  *Hamcock v. Homeq Servicing Corp.,* 2007 U.S. Dist. Lexis 31051 at *27-28 (D.D.C. 2007).

Amalgamating multiple prior proceedings under a civil conspiracy banner as a "continuing tort" undermines the applicable limitations periods in the manner that the case law explicitly rejects.

Moreover, the litigation activities about which plaintiffs complain are not "acts which are by nature of a repetitive character and for which no single act can be identified as the cause of significant harm." *Pope v. Bond*, 641 F. Supp. at 496.  To the contrary, plaintiffs' alleged harms – their inability to qualify for particular states' ballots, and even the burden placed on their financial resources -- flowed from discrete actions, namely, particular state court and administrative proceedings, and they occurred at definite points in time, all of which preceded the limitations periods applicable to the alleged torts in this case.  Each proceeding and "process" potentially gave rise to a distinct cause of action, just like each of many allegedly defamatory statements does, *see LaPonte v. Van Note*, 2004 U.S. Dist. LEXIS 27691 at *31-33; *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A. 2d at 883, and neither multiple proceedings nor multiple statements comprise a "continuing tort."

The continuing tort doctrine is also inapplicable here for a related reason: "[O]nce the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuing tort' doctrine inappropriate." *Beard v. Edmondson and Gallagher*, 790 A. 2d at 548 (interior quotation marks omitted).  Plaintiffs plainly were on notice of their alleged injuries and the conduct that caused them: the court and administrative proceedings about which they complain were, of course, public and the Nader-Camejo campaign actively participated in all of them.

Finally, even if there were a continuing tort, plaintiffs' potential recovery is limited to damages "'*attributable to the part of the continuing tort that was committed within the limitations period immediately preceding the date on which suit is brought.*'" *Jung v. Mundy,*

*Holt & Mance, P.C.,* 372 F. 3d 429, 433 (D.C. Cir. 2004), quoting *Beard v. Edmondson and Gallagher*, 790 A. 2d at 548 (emphasis added); *Gaudreau v. American Promotional Events, Inc.* 511 F. Supp. 2d 152, 156-58 (D.D.C. 2007); *L'Enfant Plaza East, Inc. v. John McShain, Inc.,* 359 A. 2d 5, 7 (D.C. 1976). Accordingly, under no circumstances could plaintiffs recover for any conduct by ACT (or any other defendant) that precedes the respective one- and three-year limitations periods calculated from October 30, 2007, the date plaintiffs filed their original complaint.

Therefore, plaintiffs are time-barred from any recovery with respect to their malicious prosecution and abuse of process claims regarding court and administration actions brought by persons other than the plaintiffs that ended prior to the respective limitations periods – that is, *all but one of them*. The only ballot-access proceeding in which any person issued any process *during* the limitations period was the Pennsylvania litigation, to which plaintiffs pay considerable attention in their opposition brief. But plaintiffs did *not* prevail in that action, and the only "process" that was issued during the limitations period was a bill of costs filed by defendant Reed Smith against plaintiffs on December 3, 2004, Am. Com. ¶¶ 191-92 – and plaintiffs did not prevail in that dispute either. *Id*. at ¶ 194. Later, in a separate action brought in the District of Columbia Superior Court during the limitations period, defendant Reed Smith filed a writ of attachment against plaintiff Nader on July 13, 2007, Am. Com. ¶ 202, and subsequent motions to freeze Nader's accounts. *Id*. at 203.

Plaintiffs, of course, fail to allege any direct involvement or conspiratorial conduct by ACT in connection with either the bill of costs or the new District of Columbia proceeding, and *none* of those actions interfered with plaintiffs' ability to qualify for the ballot or campaign in any state during 2004, the alleged harms at the core of their claims. Yet those three Reed Smith

pleadings comprise the entirety of the conduct that might not be time-barred in this litigation. Accordingly, plaintiffs state no cause of action against ACT with respect to Reed Smith's conduct.

### C. Plaintiffs' Amended Complaint Precludes Application of the Fraudulent Concealment Doctrine Against ACT

Plaintiffs also contend that the limitations period was tolled due to "fraudulent concealment" by the defendants. Pl. Opp. at 28-30. But that argument is unavailable here. A fraudulent concealment occurs only in the following circumstances:

> [D]efendants must engage in some misleading, deceptive or otherwise contrived action or scheme in the course of committing the wrong, that is designed to mask the existence of a cause of action…[T]he defendants must conceal 'not only their involvement, but the very conduct itself.'"

*Hobson v. Wilson*, 737 F. 2d 1, 34-35 (D.C. Cir. 1984) (interior quotation marks omitted). The defendant "must have done something of an affirmative nature designed to prevent discovery of the cause of action," *William J. Davis, Inc. v. Young*, 412 A. 2d 1187, 1191-92 (D.C. 1980); "[c]oncealment by mere silence is not enough." *Hobson v. Wilson*, 737 F. 2d at 33 (interior quotation marks omitted). And, a plaintiff must act with "reasonable diligence" with respect to discovery of claim and initiation of a lawsuit. *Id*. at 35.

Plaintiffs simply do not satisfy this exacting standard. As to their Amended Complaint, plaintiffs rely only upon ¶¶ 66 and 67, but neither alleges either fraudulent concealment or any fact to support such a contention; instead, they contain some of the repetitious and conclusory "conspiracy" allegations that pervade the Amended Complaint, and they do *not* allege that ACT (or any defendant) concealed the judicial or administrative actions themselves, which plaintiffs of course knew about, participated in and immediately recognized as a source of injury to them. *See, e.g, Wiggins v. State Farm Fire and Casualty Co.*, 153 F. Supp. 2d 16, 21 (D.D.C. 2001)

("There is no evidence that State Farm fraudulently concealed from plaintiff the proceedings in Superior Court; indeed, plaintiff knew of and moved to intervene in those proceedings."). "The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Sparshott v. Feld Entertainment, Inc.*, 311 F. 3d 425, 431 (D.C. Cir. 2002).

Moreover, even if plaintiffs did not know the identities of all of the potential defendants until some time after the proceedings ended, as they assert (although not in the Amended Complaint[4]), they were on notice of their claims and could have sued those who filed complaints and moved the Court later to add additional defendants. *See Fitzgerald v. Seamans*, 553 F. 2d at 229. Even so, *plaintiffs allege and show nothing to demonstrate reasonable diligence concerning their failure to make ACT a defendant within one year or three years of when their causes of action accrued.*

In their opposition brief, plaintiffs also attribute fraudulent concealment to "[t]he extent of financial cooperation among the defendants, in violation of federal law, [which] was not something Plaintiffs could have discovered until financial disclosures were made in [Federal Election Commission] [FEC] filings *after the conclusion of the 2004 election*." Pl, Opp. at 29-30 (emphasis in original). However, the Amended Complaint is devoid of any allegation about any ACT "financial cooperation" with other defendants, whether or not reportable to the FEC; as a matter of law, it cannot be "fraudulent concealment" for a political committee to disclose its financial transactions in accordance with the Federal Election Campaign Act; under the applicable FEC reporting requirements, all transactions occurring within 20 days of a general election must be reported to the FEC on reports that are immediately public on the Internet at

---

[4] Indeed, to the contrary, the Amended Complaint relies upon alleged statements by various defendants, including ACT, that were *publicly reported* prior to October 30, 2004. See Am. Com. ¶¶ 42, 52, 53, 60, 62 and 69.

periodic intervals culminating 12 days before a general elections, see 2 U.S.C. § 434(a); 11 C.F.R. § 104.5(c) (in 2004, by October 21, over three years before plaintiffs filed their complaint); and, plaintiffs have not alleged that *any* pertinent financial transaction occurred within 20 days of the November 2, 2004 general election.

Accordingly, the doctrine of fraudulent concealment cannot toll the limitations periods as to ACT.

### D.  Any Cause of Action Predicated on the FEC Complaints is Untimely

Plaintiffs assert that "[d]efendants concede that the conspirators' FEC actions were not resolved in Plaintiffs' favor until April 21, 2006, well within three years of the date that Plaintiffs filed their complaint, October 31, 2007." Pl. Mem. at 26. ACT concedes no such thing; as we showed, all five FEC proceedings – none of which plaintiffs allege ACT had anything to do with, other than by being part of the alleged "conspiracy" – ended by June 23, 2005. See ACT Mem. at 15-16. Accordingly, any malicious prosecution claim, which would accrue as to each FEC proceeding when it concluded, *see generally Shulman v. Miskell*, 626 F. 2d 173 (D.C. Cir. 1980), is barred by the one-year limitations period (and would be similarly barred even if plaintiffs' date were correct).

Plaintiffs' abuse of process claims regarding these FEC proceedings are time-barred as well. Such a claim accrues from "the last act constituting the tort," that is, the defendant's last issuance of process, *not* the final termination of the prior proceeding. *Simpson v. District of Columbia Metropolitan Police Dept.*, 789 F. Supp. 5, 11 (D.D.C. 1992). As we showed, ACT Mem. at 15-16, no FEC complaint or supplemental complaint postdated October 25, 2004, so all arguable "process" was filed more than three years before this lawsuit was commenced. Accordingly, any abuse of process claims based upon them are barred as well.

## **CONCLUSION**

For the reasons set forth above and in ACT's earlier submission, ACT respectfully requests that its motion to dismiss the complaint be granted.

> Respectfully submitted,
>
> */s/ Laurence E. Gold*
>
> Laurence E. Gold
> D.C. Bar No. 336891
> 1666 Connecticut Avenue, N.W.
> Suite 500
> Washington, DC  20036
> (202) 328-1666, ext. 1352
>
> */s/ Lyn Utrecht*
>
> Lyn Utrecht
> D.C. Bar No. 272666
> RYAN, PHILLIPS, UTRECHT & MACKINNON
> 1133 Connecticut Avenue, N.W.
> Washington, DC  20036
> (202) 293-1777
>
> *Counsel for Defendant America Coming Together*

Dated: April 10, 2008