UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH NADER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-2136 (RMU) |
| ) | |
| THE DEMOCRATIC NATIONAL ) | |
| COMMITTEE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER
SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT
OF DEFENDANTS THE BALLOT PROJECT, INC., TOBY MOFFETT,
ELIZABETH HOLTZMAN AND ROBERT BRANDON**

Plaintiffs' Response in Opposition to the Defendants' Motions to Dismiss ("Pl. Resp." or "Plaintiffs' Opposition") concedes, in essence, the statute-of-limitations bar to their maintenance of this action. Plaintiffs' Opposition admits, for example, that Defendants' alleged nationwide conspiracy was related to the filing of litigation in state courts and complaints before the Federal Election Commission ("FEC") "all within a twelve-week period between June and September of 2004." Pl. Resp. at 2. The purpose of these complaints, they state, was to drain and distract the Nader Presidential campaign "in the months immediately preceding the [2004] election." *Id.* Under even a three-year limitations period, therefore, Plaintiffs' claims – filed in this Court on October 30, 2007 – would be time barred.

But Plaintiffs go even farther in their concessions. They essentially admit that the one-year statute of limitations applies, measured from the date of termination of the underlying litigation, rather than the three-year limitations period applicable to abuse-of-process claims.

This is because they concede that "malicious prosecution refers to the wrongful *initiation* of process, whereas abuse of process refers to the wrongful use of process *after* it has been properly issued." Pl. Resp. at 19-20 (emphasis in original) (citations omitted). And they do not deny that "a plaintiff's characterization of his claim is not necessarily controlling," *Zandford v. Nat'l Ass'n of Secs. Dealers, Inc.*, 19 F. Supp. 2d 4, 8 (D.D.C. 1998) (citations omitted), such that in cases where plaintiffs' abuse of process claim rests upon allegations concerning the wrongful *initiation* of litigation or legal process, rather than the abuse of legal process once initiated, the one-year statute of limitations for malicious prosecution applies. *See, e.g.*, *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 24-25 (D.D.C. 2006) (despite plaintiffs' characterization, because plaintiffs alleged wrongful initiation of proceeding, "abuse of process" claim against police officer was actually a malicious prosecution claim for limitations purposes); *Morfessis v. Baum*, 281 F.2d 938, 940 (D.C. Cir. 1960) ("to describe or rationalize what is here alleged as an abuse of process does not change it from the tort of malicious prosecution" for limitations purposes).

Because all of Plaintiffs' allegations in the Amended Complaint – with the exception of steps by Reed Smith to collect fees awarded in the *successful* Pennsylvania litigation – relate to alleged wrongful *initiation* of state court litigation or FEC complaints that ultimately were concluded before October 30, 2006, their allegations must be dismissed on statute-of-limitations grounds.

To try to get around this substantial legal hurdle, Plaintiffs invoke two legal theories: the "continuing violation" doctrine and allegations of fraudulent concealment. Neither theory is availing.

    1.   <u>Continuing Violation Doctrine</u>. Plaintiffs' "continuing violation" theory is a confused mish-mash of case law from disparate contexts. On the one hand, they seem to be

arguing that the pendency of a lawsuit is a continuing tort, such that the limitations period does not begin to run until "the complaining party ceases prosecution of the suit." Pl. Resp. at 27 (*quoting Whelan v. Abell*, 953 F.2d 663, 674 (D.C. Cir. 1992)). But this is besides the point for a malicious prosecution claim, the statute of limitations for which admittedly does not commence until after cessation of the lawsuit. Because all of the litigation and FEC complaints allegedly commenced by Defendants – litigation and proceedings that were the subject of the civil conspiracy claims – ceased well before October 2006 (with the exception of the ancillary proceedings by Reed Smith to collect litigation costs pursuant to a Pennsylvania Supreme Court order), there can be no defense of "continuing tort" based upon the continuation of the underlying ballot access litigation.

On the other hand, Plaintiffs seem to be arguing that because they alleged some overt acts in furtherance of Defendants' alleged conspiracy within the limitations period (i.e., the ancillary proceedings to collect Pennsylvania court costs), they can recover damages for alleged violations occurring before this period, even though recovery would be time-barred if those violations were sued upon individually. Pl. Resp. at 27 ("Defendants' conspiracy thus constitutes a continuing tort, and Plaintiffs' claims are actionable on the alternative ground that wrongful acts in furtherance of the conspiracy remain ongoing."). This theory, too, is misplaced.

Under D.C. law, the statute of limitations in a civil conspiracy action "runs separately from each overt act that is alleged to cause damage to the plaintiff." *Lawrence v. Acree*, 665 F.2d 1319, 1324 (D.C. Cir. 1981); *United States v. Network Software Assocs., Inc.*, 180 F. Supp. 2d 192, 195 (D. D.C. 2002) (same). Thus, overt acts committed outside the statutory limitation period are not actionable even if they are part of a continuing conspiracy that included overt acts within the limitation period. *See id.* While a plaintiff "may attempt to prove the underlying

conspiratorial agreement through those overt acts that occurred" during the applicable limitations period, it cannot do so through those overt acts that occurred outside the limitations period. *Network Software Assocs.*, 180 F. Supp. at 195. Likewise, "if successful, [the plaintiff] may recover damages [only] for all violations committed as a part of the conspiracy" that occurred during the limitations period. *Id.*; *see also Scherer v. Balkema*, 840 F.2d 437, 439-40 (7th Cir. 1988) (explaining why a "rule allowing plaintiffs in civil conspiracy actions to recover only for overt acts alleged to have occurred within the applicable limitations period makes sense").

In the Amended Complaint, none of the alleged overt acts within the one- and three-year limitation periods – the Pennsylvania litigation or the FEC complaints – relate to Defendants The Ballot Project, Holtzman, Moffett, or Brandon. *See, e.g.*, *Gual Morales v. Hernandez Vega*, 579 F.2d 677, 681 (1st Cir. 1978) ("[P]laintiff must allege . . . that each defendant to be charged committed an action constituting a . . . violation in furtherance of the conspiracy within the limitation period."). Thus those Defendants cannot be liable for any alleged overt acts occurring within the limitations period, and the claims as to them must be dismissed.

    2.    <u>Fraudulent Concealment</u>.  Similarly unavailing in overcoming the statute-of-limitations bar is Plaintiffs' theory of fraudulent concealment. Under D.C. law, "'the doctrine of fraudulent concealment has no applicability at all if the plaintiff was on notice of the wrong complained of.'" *Bender v. Rocky Mountain Drilling Assocs.,* 648 F. Supp. 330, 335 (D.D.C.1986) (citation omitted). Moreover, the limitation period is not tolled if a plaintiff has a reasonable basis to suspect a wrong, and fails to exercise due diligence to investigate the matter. *See id.* Thus, even absent actual knowledge of a wrong, a cause of action accrues when the injured party a cause of action accrues when the injured party discovers, *or in the exercise of due diligence should have discovered*, facts underlying its cause of action. *See Cevenini v.*

*Archbishop of Washington*, 707 A.2d 768, 774 (D.C. 1998) ("An act of fraudulent concealment by a defendant does not relieve a plaintiff of his independent duty to pursue his cause of action diligently. On the contrary, the case law makes clear that a claim of fraudulent concealment is available only to a plaintiff who has exercised due diligence in the pursuit of his cause."); *see also Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 849 (D.C. 2005) (under discovery rule of District of Columbia law, plaintiff is on inquiry notice of wrongdoing when he has reason to suspect that defendant did some wrong, even if full extent of wrongdoing is not yet known).[1]

Plaintiffs allege throughout their Amended Complaint that newspaper articles published in 2004 allegedly demonstrated Defendants' wrongful conduct and conspiracy. *See, e.g.,* Am. Compl. ¶¶ 2, 45, 53, 60, 62, 63, 64, 65, 182. These published reports put Plaintiffs on inquiry notice of alleged wrongdoing, and are sufficient by themselves to defeat a claim of fraudulent concealment as a matter of law. *See, e.g., Forbes v. Eagleson,* 228 F.3d 471, 487 (3d Cir. 2000) (even assuming defendants engaged in affirmative acts of fraudulent concealment, published reports and articles on defendant union director's fraudulent activities were sufficient to provide notice to plaintiffs of their alleged RICO injury); *United Klans of Am. v. McGovern,* 621 F.2d

---

[1] *See also Estate of Grant v. U.S. News & World Report, Inc.*, 639 F. Supp. 342 (D. D.C. 1986) ("Once a potential plaintiff is put on notice of facts indicating that 'further inquiries might be appropriate[,]' he comes under a duty 'to discover that which was concealed.' . . . In other words, a potential plaintiff 'is held to be on notice of all facts he could have learned through reasonably diligent inquiry."); *Diamond v. Davis*, 680 A.2d 364, 375-76 (D.C. 1996) (holding that for that for statute of limitations purposes, the discovery rule in cases involving fraud and fraudulent concealment is the same as in all other cases to which the discovery rule applies; thus, the statute of limitations begins to run once a plaintiff actually knows, or with the exercise of reasonable diligence, would have known, of some injury, its cause-in-fact, and some evidence of wrongdoing, and a "plaintiff guilty of ordinary negligence in not earlier discovering a cause of action may not avoid the bar of the statute of limitations merely because a fraud or fraudulent concealment is involved").

152, 154-55 (5th Cir.1980) (claim of fraudulent concealment defeated by evidence of press conference receiving national coverage including television coverage, express mention of plaintiff as subject of probe, coverage in two local newspapers, Senate report about the program, and notice by letter to president of plaintiff that he may have been target of investigation); *Korwek v. Hunt*, 646 F. Supp. 953 (S.D.N.Y. 1986), *aff'd*, 827 F.2d 874 (2d Cir. 1987) (defendants' alleged fraudulent concealment of conspiracy to manipulate price of silver and silver futures did not toll running of statute, where, among other things, substantial media coverage of underlying events had occurred).

       3.    *Rooker-Feldman* doctrine.  Finally, and independently, even if Plaintiffs could seek recovery from those Defendants associated with The Ballot Project for acts within the limitations period relating to Reed Smith's attempts to recover court costs from Plaintiffs, such recovery would be barred by the *Rooker-Feldman* doctrine.  Plaintiffs' challenge to the cost collection efforts post-dating the Pennsylvania litigation relate not to any claim of injury arising from the alleged conspiracy to keep Nader-Camejo off the 2004 ballot, but rather constitute a collateral attack on the wisdom and propriety of a Pennsylvania Supreme Court order.  Whatever else the *Rooker-Feldman* doctrine is *not* intended to encompass, *see Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), it is – at its core – intended to bar "state-court losers [from] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006).

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint should be granted.

Dated:  April 10, 2008

Respectfully submitted,

_____/S/_____
Lawrence Noble
D.C. Bar No. 244434
SKADDEN, ARPS, SLATE, MEAGHER &
        FLOM, LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111
(202) 371-7000

Preeta D. Bansal
D.C. Bar No. 431195
SKADDEN, ARPS, SLATE, MEAGHER &
        FLOM, LLP
Four Times Square
New York, NY  10036-6522
(212) 735-3000

*Counsel for Defendants The Ballot Project, Inc., Toby Moffett, Elizabeth Holtzman and Robert Brandon*

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 10, 2008, copies of the foregoing Motion to Dismiss and Memorandum of Points and Authorities in Support of the Motion to Dismiss were filed electronically. Notice of these filings will be sent to all parties by operation of the Court's electronic filing system. Parties may access these filings through the Court's CM/ECF system.

                                                /S/
                                     Lawrence M. Noble
                                     D.C. Bar No. 244434
                                     SKADDEN, ARPS, SLATE, MEAGHER &
                                          FLOM LLP
                                     1440 New York Avenue, N.W.
                                     Washington, D.C. 20005-2111
                                     (202) 371-7000